Case 1:22-cr-20114-KMW Document 1 Entered on FLSD Docket 03/25/2022 Page 1 of 13

FILED by KS D.C.

Mar 24, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-20114-CR-WILLIAMS/MCALILEY

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1957
18 U.S.C. § 2
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

CARLOS RAMON POLIT FAGGIONI,

Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

### RELEVANT INDIVIDUALS AND ENTITIES

1. **CARLOS RAMON POLIT FAGGIONI** was a citizen of Ecuador and served as the comptroller general ("comptroller") of Ecuador from in or around 2007 to 2017 ("the relevant period").

2. Ecuador created the office of comptroller to prevent fraud and corruption relating to the use of Ecuador's public funds. The comptroller had the power to initiate investigations, to impose fines, and to prepare reports relating to the misuse of public funds.

3. Co-Conspirator 1, an individual whose identity is known to the Grand Jury, was a relative of **CARLOS RAMON POLIT FAGGIONI**. Co-Conspirator 1 resided in the Southern District of Florida.

4. Co-Conspirator 1 controlled a number of companies, incorporated in Florida, including among others, Florida Company 1 through Florida Company 14 (together, the "Florida Companies"). The Florida Companies maintained bank accounts in the Southern District of Florida.

5. Intermediary Companies 1, 2, and 3 (together, the "Intermediary Companies") maintained bank accounts in Panama.

6. Odebrecht S.A. was a Brazilian holding company that, through its subsidiaries and companies in which it was a majority shareholder (collectively "Odebrecht"), conducted business in multiple industries, including engineering, construction, infrastructure, energy, chemicals, utilities, and real estate. Odebrecht had its headquarters in Salvador, state of Bahia, Brazil, and operated in at least 27 other countries, including Ecuador.

7. Co-Conspirator 2, an individual whose identity is known to the Grand Jury, was a senior manager at Odebrecht from approximately 2010 to 2016, whose regional responsibility included Ecuador during the relevant time period.

8. Seguros Sucre S.A. ("Seguros Sucre") was the state-owned insurance company of Ecuador that was controlled by the government of Ecuador.

9. Co-Conspirator 3, an individual whose identity is known to the Grand Jury, was an Ecuadorean businessperson.

## COUNT 1
## Conspiracy to Commit Money Laundering
## (18 U.S.C. § 1956(h))

1. Paragraphs 1 through 9 of the General Allegations Section are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around January 2010, continuing until at least May 2017, in the Southern District of Florida, and elsewhere, the defendant,

**CARLOS RAMON POLIT FAGGIONI,**

did knowingly and voluntarily combine, conspire, confederate and agree with Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and others, known and unknown to the Grand Jury, to commit offenses under Title 18, United States Code, Section 1956 and 1957, as follows:

    a. to knowingly conduct a financial transaction which involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B);

    b. to knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

    c. to knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce in criminally derived property of a value greater than

$10,000 that is derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is an offense against a foreign nation, specifically Ecuador, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, as provided by Title 18, United States Code, Section 1956(c)(7)(B)(iv).

## PURPOSE OF THE CONSPIRACY

3. It was the purpose of the conspiracy for **CARLOS RAMON POLIT FAGGIONI** and Co-Conspirator 1 to unlawfully enrich themselves by laundering bribes that **CARLOS RAMON POLIT FAGGIONI** solicited and received from Co-Conspirators 2 and 3, among others, into and through bank accounts in the Southern District of Florida and elsewhere, as well as through the purchase of real estate and other assets in South Florida and elsewhere.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **CARLOS RAMON POLIT FAGGIONI** and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following conduct in the Southern District of Florida and elsewhere:

4. Beginning in or around 2010, and continuing until at least 2014, **CARLOS RAMON POLIT FAGGIONI** solicited and received bribe payments from Co-Conspirator 2 in exchange for using his official position and influence as comptroller of Ecuador to prevent the imposition of large fines on Odebrecht by the comptroller's office relating to Odebrecht's construction projects in Ecuador.

5. From in or around 2010 to 2014, Co-Conspirator 2 paid approximately $8 million in cash bribes to **CARLOS RAMON POLIT FAGGIONI** in exchange for using his official

position as comptroller to influence official actions by the Ecuador comptroller's office in order to benefit Odebrecht and its business in Ecuador. In furtherance of the scheme, **CARLOS RAMON POLIT FAGGIONI** told Co-Conspirator 2 that **POLIT** used Co-Conspirator 1 to make the cash "disappear."

6. From in or around 2010, and continuing until at least 2017, at the direction of **CARLOS RAMON POLIT FAGGIONI**, Co-Conspirator 1 caused the proceeds of **CARLOS RAMON POLIT FAGGIONI's** bribery schemes to "disappear" by (a) registering the Florida Companies in Florida in the names of associates of Co-Conspirator 1 (often without the associates' knowledge); (b) using funds received from **CARLOS RAMON POLIT FAGGIONI's** bribery schemes to purchase and renovate real estate in South Florida and elsewhere and to purchase restaurants, a dry cleaner, and other businesses; and (c) causing these real estate assets and other businesses to be held in the name of the Florida Companies to conceal that these assets were for the benefit of **CARLOS RAMON POLIT FAGGIONI** and his relatives.

7. In or around 2013 and 2014, **CARLOS RAMON POLIT FAGGIONI** provided cash to Co-Conspirator 3 in Ecuador and caused Co-Conspirator 3 to wire transfer funds to accounts in South Florida controlled by Co-Conspirator 1, as directed by **CARLOS RAMON POLIT FAGGIONI**.

8. In or around 2014, Co-Conspirator 2 requested that **CARLOS RAMON POLIT FAGGIONI** accept bribe payments from Odebrecht through bank wire transfers rather than in cash and requested that **CARLOS RAMON POLIT FAGGIONI** provide bank account wiring instructions to facilitate making bribe payments.

9. In or around 2014, Co-Conspirator 1 provided **CARLOS RAMON POLIT FAGGIONI** with bank account wiring information for accounts of Intermediary Companies 1, 2, and 3 in Panama.

10. From in or around April to November 2014, **CARLOS RAMON POLIT FAGGIONI** caused Odebrecht to make at least three million dollars in bribe payments for the benefit of **CARLOS RAMON POLIT FAGGIONI** by wire transfer to accounts in Panama of Intermediary Companies 1, 2 and 3. By causing these international wire transfers, for which payment cleared through U.S. correspondent banks, Odebrecht, **CARLOS RAMON POLIT FAGGIONI**, and others promoted the unlawful scheme to bribe **CARLOS RAMON POLIT FAGGIONI** to influence official actions of the Ecuadorean comptroller's office.

11. From in or around June 2014 through March 2016, **CARLOS RAMON POLIT FAGGIONI** caused Co-Conspirator 1 and Intermediary Companies 1, 2 and 3 to wire transfer millions of dollars in funds from accounts in Panama to an account of Florida Company 1 at a bank in South Florida and subsequently to other accounts, including accounts of other Florida Companies, for the purchase of assets in South Florida and elsewhere for the benefit of **CARLOS RAMON POLIT FAGGIONI** and his relatives.

12. In or around 2015, **CARLOS RAMON POLIT FAGGIONI** solicited and agreed to receive a bribe of approximately $500,000 from Co-Conspirator 3 in exchange for using his official position and influence as comptroller to assist Co-Conspirator 3 in obtaining contracts from Seguros Sucre that benefitted Co-Conspirator 3's company.

13. **CARLOS RAMON POLIT FAGGIONI** directed Co-Conspirator 3 to coordinate the payment of the bribe with Co-Conspirator 1.

14. **CARLOS RAMON POLIT FAGGIONI** and Co-Conspirator 1 caused Co-Conspirator 3 to wire transfer the bribe payment of approximately $510,000 to an account of Florida Company 2 in South Florida on or about December 2, 2015, for the benefit **CARLOS RAMON POLIT FAGGIONI** and his relatives. Co-Conspirator 1 caused the issuance of a fake invoice for purported "technical advice" in connection with this payment.

15. From in or around 2014 through in or around 2015, **CARLOS RAMON POLIT FAGGIONI** and Co-Conspirator 1 caused funds derived from the bribes **CARLOS RAMON POLIT FAGGIONI** received from Odebrecht and Co-Conspirator 3 to be used to upgrade a luxury residence in Coral Gables held in the name of Florida Company 4 and sold in 2017 for $4.1 million for the benefit of **CARLOS RAMON POLIT FAGGIONI** and his relatives.

16. In or around May 2016, **CARLOS RAMON POLIT FAGGIONI** and Co-Conspirator 1 caused funds derived from bribes **CARLOS RAMON POLIT FAGGIONI** received from Odebrecht to be used to purchase an office building in Coral Gables for $2.6 million, held in the name of Florida Company 5 for the benefit of **CARLOS RAMON POLIT FAGGIONI** and his relatives.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS 2 - 4**
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

1. Paragraphs 1 through 9 of the General Allegations Section and paragraphs 1 through 16 of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth in each count below, in the Southern District of Florida and elsewhere, the defendant,

**CARLOS RAMON POLIT FAGGIONI,**

conducted, and aided and abetted, and caused to be conducted, and attempted to conduct, a financial transaction involving the proceeds of specified unlawful activity, knowing that the property involved represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, source, ownership, and control of the proceeds of the specified unlawful activity, that is, an offense against a foreign nation, specifically Ecuador, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv):

| Count | Approximate Date | Description of Transaction |
|---|---|---|
| 2 | December 2, 2015 | Check of approximately $300,000 from an account of Florida Company 2 in the Southern District of Florida to an account of Florida Company 3 in the Southern District of Florida |
| 3 | March 22, 2016 | Transfer of approximately $3,453,184 from an account of Intermediary Company 3 in Panama to an account of Florida Company 1 in the Southern District of Florida |
| 4 | October 7, 2016 | Transfer of approximately $34,300 from an account of Intermediary Company 1 in Panama to an account of Florida Company 1 in the Southern District of Florida |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

<u>**COUNTS 5-6**</u>
**Engaging in Transactions in Criminally Derived Property**
**(18 U.S.C. § 1957)**

1. Paragraphs 1 through 9 of the General Allegations Section and paragraphs 1 through 16 of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth in each count below, in the Southern District of Florida and elsewhere, the defendant,

**CARLOS RAMON POLIT FAGGIONI,**

8

did knowingly engage in, and aid, abet, and cause others to engage in, and attempt to engage in, a monetary transaction affecting interstate commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, that is an offense against a foreign nation, specifically Ecuador, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv):

| Count | Approximate Date | Description of Transaction |
|---|---|---|
| 5 | May 27, 2016 | Transfer of approximately $1,375,450 from Florida Company 1's account in South Florida to an escrow account for the purchase of an office building located at 1902 SW 22 Street in Miami, Florida |
| 6 | April 28, 2017 | Transfer of approximately $3,664,583.61 from an attorney escrow account in South Florida to the account of Florida Company 4 in South Florida for the sale of the property located at 7233 Los Pinos Boulevard in Coral Gables, Florida |

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE
### (18 U.S.C. § 982(a)(1))

1. The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **CARLOS RAMON POLIT FAGGIONI,** has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1956 or 1957, as alleged this Indictment, the defendant, **CARLOS RAMON POLIT FAGGIONI,** shall

9

forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

3. The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, the following:

   a. Real property located at 1902 SW 22 Street, Miami, Florida 33145;

   b. Real property located at 301 Altara Ave, Unit 702, Miami, Florida 33146; and

   c. Real property located at 1010-30 NW 9th Ct, Miami, Florida 33136.

4. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, 982(b)(1).

A TRUE BILL

_____
FOREPERSON

_____
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

_____
JOSEPH BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION

_____
Michael N. Berger
Assistant United States Attorney

_____
Jill Simon
Alexander Kramer
Trial Attorney

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

CARLOS RAMON POLIT FAGGIONI,

_____Defendant._____/

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)
- [✓] Miami
- [ ] Key West
- [ ] FTL
- [ ] WPB
- [ ] FTP

New defendant(s) [ ] Yes [ ] No
Number of new defendants _____
Total number of counts _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.
3. Interpreter: (Yes or No) **Yes**
   List language and/or dialect **Spanish**
4. This case will take **11** days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I    0 to 5 days     [ ]
   - II   6 to 10 days    [ ]
   - III  11 to 20 days   [✓]
   - IV   21 to 60 days   [ ]
   - V    61 days and over [ ]

   (Check only one)
   - Petty         [ ]
   - Minor         [ ]
   - Misdemeanor   [ ]
   - Felony        [✓]

6. Has this case previously been filed in this District Court? (Yes or No) **No**
   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) _____
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No) _____

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No**
8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**
9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No**

_____
Michael N. Berger
Assistant United States Attorney
Court ID No.    A5501557

*Penalty Sheet(s) attached                                          REV 3/19/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: <u>CARLOS RAMON POLIT FAGGIONI</u>

**Case No**: _____

Count #: 1

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

* **Max. Penalty**: Twenty (20) Years' Imprisonment

Count #: 2-4

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i)

* **Max. Penalty**: Twenty (20) Years' Imprisonment

Count #: 5-6

Engaging in Transactions in Criminally Derived Property

Title 18, United States Code, Section 1957

* **Max. Penalty**: Ten (10) Years' Imprisonment

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.