UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20114-KMW

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

CARLOS RAMON POLIT FAGGIONI,

        Defendant.

_____/

## DEFENDANT'S UNOPPOSED MOTION TO RECONSIDER CONDITIONS OF RELEASE

Defendant Carlos Ramon Polit Faggioni ("Mr. Polit"), by and through undersigned counsel hereby files this Motion to Reconsider Conditions of Release contained in the bond ordered by this Court on April 1, 2022 (D.E. 8), and in support thereof, states as follows:

I.      **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

Mr. Polit was arrested in Miami, Florida after being charged by indictment with conspiracy to commit money laundering, money laundering, and engaging in transactions in criminally derived property. (D.E. 1.) Mr. Polit's initial appearance took place on March 29, 2022. (D.E. 6.) On April 1, 2022, Mr. Polit, supported by his wife and four of his adult children, appeared before this Court for a bond amount hearing.

Prior to the hearing, the Government and Mr. Polit had agreed to a bond package of the following: a cash bond of $1 million (10% deposited in the Court registry), a personal surety bond of $10 million with five co-singers secured by property, and home confinement with electronic monitoring. According to that agreement, Mr. Polit's family was willing to make an eleven million

dollar promise that he would return to court and abide by the conditions of release. This was a promise backed up by seven properties that the Government identified as belonging to Mr. Polit's family with a total value of nearly fourteen million dollars that would not be encumbered or transferred while he remained on bond. The parties informed the Court that Mr. Polit is a 71-year-old United States citizen who has two sons, a daughter and a wife who live in Miami-Dade County, all of whom were present in court, ready and willing to sign as personal guarantors. Mr. Polit's other daughter lives in Ecuador, but she was also in court, ready to sign as personal guarantor. The Government also informed the Court that Mr. Polit had self-surrendered. The family's corporate counsel was also present and assured the Court that the properties in question would be held open, ready to be seized by the United States Government if Mr. Polit strayed from his obligations.

However, this Court rejected the parties' proposed bond and instead set the conditions of release at an eight-million dollar corporate surety bond and a ten million dollar personal surety bond. This Court was concerned that there was insufficient information presented about the properties identified by the Government relating to their ownership and value.

At the conclusion of the hearing, this Court informed the parties that they could ask for reconsideration of the bond amount. Mr. Polit asks for that reconsideration now, and in doing so, presents this Court with additional information about the status of the properties in question. Specifically, we attach the following documents to this Motion as Composite Exhibit "A":

1. The deeds for the properties to be attached to the personal surety bond;
2. The operating agreements of the relevant LLC's that own the properties, showing that the LLC's are in fact fully owned and controlled by members of Mr. Polit's family;
3. A title search, showing the status of any encumbrances on the properties;
4. A signed Declaration from John Polit, the son of Carlos Polit, attesting to his ownership of the properties; and
5. Statements of Authority for each LLC, signed by John Polit.

Based on this property information, which we have provided to the Government in

advance of filing this Motion, Mr. Polit humbly requests that this Court reduce the bond and accept the parties' originally proposed bond package of a cash bond of $1 million (10% deposited in the Court registry), a personal surety bond of $10 million with five co-singers secured by property, and home confinement with electronic monitoring.

## II. MEMORANDUM OF LAW

Mr. Polit and the Government presented the proposed bond package to this Court after extended negotiations between the parties. The Government had largely the same concern the Court did: making sure that, if Mr. Polit violated his bond conditions, they could collect the money owed from his family members who were willing to sign on as guarantors to the bond. To assuage those concerns the Government identified multiple properties held by the members of Mr. Polit's family that it wanted encumbered until the case was resolved. Counsel for Mr. Polit and the Government eventually agreed to a set of real property that would be pledged to ensure that, if Mr. Polit violated his bond, the Government could swiftly collect on the collateral provided by his family.

To show this Court why those properties were selected, the following chart presents the approximate value of those properties, the ownership of those properties, and any outstanding mortgages. The property value was derived from *Zillow* estimates:

| Property Address | Property Value | Property Ownership | Outstanding Mortgage |
|---|---|---|---|
| 90 SW 3rd Street, Unit 503, Miami, FL 33130 | $520,000 | Fully owned by Charles G. Polit | None |
| 1820 SW 3rd Ave, | $3,500,000 | Fully owned by John | None |

3

| | | | |
|---|---|---|---|
| Miami, FL 33129 | | C. Polit | |
| 1830 SW 3rd Avenue, Miami, FL 33129 | $3,500,000 | Fully owned by John C. Polit | $1,400,667.76 by City National Bank |
| 1900 SW 22nd Street, Miami, FL 33145 | $5,000,000 | Fully owned by John C. Polit | $1,290,713.84 by City National Bank |
| 301 Altara Avenue, Unit 702, Coral Gables, FL 33146 | $809,300 | Fully owned by John C. Polit | None |
| 88 SW 7th St Unit 1202 Miami, FL 33130 | $1,596,700 | Fully owned by John C. Polit | None. |
| 1010-1030 NW 9th Court | $317, 720 | Owned by BuildCo Structures LLC which is owned 50% by John C. Polit and 50% by Jose Luis Alvarez | $255, 500.00 by Europe in Bunea Vista LLC |

In total, Mr. Polit's family agreed to freeze assets worth nearly $13 million (calculated by adding the total value of the properties and subtracting the outstanding mortgages). That leaves two million in value over the $11 million promise reflected in the cash and personal surety bond, and a nearly five million dollar excess to the roughly eight million dollar total the Government

claims was laundered into the United States by Mr. Polit. If Mr. Polit violates the conditions of his bond, there is no question that the Government will be able to collect the money the family has agreed to owe under the originally proposed bond conditions.

In fashioning a bond, the governing law requires a Court to craft the "least restrictive" conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(c)(B). "The purpose of a bail bond is not punitive; it is to secure the presence of the defendant." *United States v. Bass,* 573 F.2d 258, 260 (5th Cir. 1978); *Campbell v. Johnson*, 586 F.3d 835, 843 (11th Cir. 2009) ("[T]he purpose of bail is to secure the presence of the defendant, ... its object is not to enrich the government or punish the defendant[.]"). The factors this court must consider when setting bond are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

Here, the proposed bond package of a cash bond of $1 million (10% deposited in the Court registry), a personal surety bond of $10 million with five co-singers secured by property, and home confinement with electronic monitoring, is beyond the least restrictive conditions to assure Mr. Polit's presence. This District is not unfamiliar with the prosecution of foreign officials who are alleged to have taken bribes. Just recently, another Ecuadorian government official, Juan Ribas Domenech, was arrested and charged in connection with a large money laundering conspiracy. (Case No. 20-cr-20179-DPG, D.E. 3). Mr. Ribas was given a $500,000 corporate surety bond and a $500,000 personal surety bond. (*Id.* D.E. 38, 39.) In other words, Mr. Riba's bond was set at 1/11th of the proposed bond package here.

Mr. Polit is not asking for the same bond as Mr. Ribas, but merely provides a reference

point for a similar case for a bond that was successful in protecting the community and ensuring the defendant's return to court. Mr. Polit concedes that every case and defendant is different; that is why he reached an agreement with the Government that he believes satisfies their concerns, and can satisfy this Court's, under the factors to be considered under 18 U.S.C. § 3142(g).

The nature and circumstances of the offense charged, including whether the offense is a crime of violence, weighs in favor of releasing Mr. Polit under the joint bond proposal. Mr. Polit is charged with conspiracy to commit money laundering, money laundering, and engaging in transactions in criminally derived property. (D.E. 1.) The conspiracy described in the indictment involves a bribery scheme related to the Odebrecht corruption scandal. While Mr. Polit acknowledges the crimes he is accused of are serious, there is no allegation of violence, drug activity, or anything beyond a purely financial bribery scheme.

The history and characteristics of Mr. Polit also weigh in favor of this Court accepting the joint bond proposal. This factor considers the defendant's "character, physical and mental condition, family ties, employment, community ties, past conduct, history related to drug or alcohol abuse, [and] criminal history[.]" *United States v. Sierra,* 622 F. Supp. 1034, 1037 (S.D. Fla. 1985). Mr. Polit is 71 years old and has lived in the community for the last six years.  His wife and three of his adult children live in Miami. He has surrendered his American and Italian passports to his attorneys and previously surrendered his Ecuadorian passport to the Ecuadorian consulate in Miami. Undersigned counsel has a receipt for the Ecuadorian passport in its possession. Mr. Polit has no intention or means of leaving the United States.

As this Court noted, he cannot return to his native country of Ecuador without facing immediate imprisonment. Mr. Polit suffers from a heart condition and is on a range of medications that he must take regularly.  A man who is over 70, in ill health, with strong ties to Miami-Dade

County, and who will doom his wife, children, and entire family to economic ruin if he violates his bond conditions does not pose the same risk of flight as a younger man with nothing to lose if he runs.

Under these circumstances, the bond agreed to by the parties—a cash bond of $1 million (10% deposited in the Court registry), a personal surety bond of $10 million with five co-singers and secured by property, and home confinement with electronic monitoring—is sufficient to assure Mr. Polit's appearance and safety of the community and others.

At the initial bond hearing, this Court set a corporate surety bond because it did not believe that the personal surety bond could ensure that, if Mr. Polit fled, the Government could collect the money owed to it as a result. However, as the Government argued at the hearing, the personal surety bond and cash bond serve that goal better than a corporate surety bond. The Government has identified that the Polit family has sufficient assets that could be seized if Mr. Polit violated his bond conditions. By setting a corporate surety bond of $8 million dollars, the Court has ensured that if Mr. Polit violates his bond, a private entity will get a substantial first bite at the apple of the Polit family finances. And a corporate surety will require that 15% of the total bond amount be paid up front, meaning the Polit family will be required to present $1.2 million dollars to the surety regardless of any other collateral. That money will be lost, forever uncollectable, regardless of whether or not Mr. Polit violates his bond conditions.

Mr. Polit's family should not be forced to surrender over a million dollars to a private entity when they can instead pledge assets directly to the United States Government as assurances that Mr. Polit will abide by any conditions of release this Court sets. Mr. Polit's family fully understands that if he violates *any* condition of release, they will suffer financial devastation. But there is no reason, at this point, to force the family to suffer a financial blow of over $1 million

dollars when Mr. Polit has even yet to be released.

For these reasons, Mr. Polit humbly requests this Court reconsider the conditions of bond and amend those conditions to those proposed by the parties: a cash bond of $1 million (10% deposited in the Court registry), a personal surety bond of $10 million with five co-singers secured by property, and home confinement with electronic monitoring.

Undersigned has conferred with the Government, which does not object to the bond package proposed in this Motion.

WHEREFORE, Mr. Polit respectfully requests that this Court grant his Motion to Reconsider Conditions of Release.

Respectfully submitted,

**COFFEY BURLINGTON, P.L.**
*Counsel for Carlos Polit Faggioni*
2601 South Bayshore Drive, Penthouse
Miami, Florida 33133
Tel:  305-858-2900

By:  */s/ Fernando Tamayo*
Fernando Tamayo, Fla. Bar No. 28530
Kendall Coffey, Fla. Bar No. 259861
ftamayo@coffeyburlington.com
kcoffey@coffeyburlington.com
service@coffeyburlington.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on April 9, 2022, on all counsel or parties of record.

*/s/ Fernando Tamayo*
Fernando Tamayo