UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20114-KMW

UNITED STATES OF AMERICA,

v.

CARLOS RAMON POLIT FAGGIONI,

    Defendant.
_____/

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTIONS TO DISMISS INDICTMENT

This cause is before the Court on Defendant Carlos Ramon Polit Faggioni's Motion to Dismiss the Indictment for Failure to State an Offense and Motion to Dismiss Counts 1 through 5 of the Indictment based on the applicable statute of limitations (the "Motions"). [ECF. Nos. 63 and 64]. The Motions were referred to the Undersigned by the Honorable Kathleen M. Williams. [ECF No. 75]. For the reasons addressed below it is **RECOMMENDED** that the Motions be **DENIED**.

### BACKGROUND AND RELEVANT PROCEDURAL HISTORY

Polit was indicted by a federal grand jury on March 24, 2022, on several felony charges including: (1) conspiracy to commit money laundering under 18 U.S.C. § 1956(h) (Count 1); (2) money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 2–4); and (3) engaging in transactions in criminally derived property under 18 U.S.C. § 1957 (Counts 5–6). *See* [*Id*.]. The Government alleges that Polit solicited and received over $11 million in bribes while serving as Comptroller General of Ecuador from 2010 through 2017. [ECF. No. 71 at 2].

Polit filed the instant Motions, which primarily advance three arguments: (1) the indictment fails to allege all the essential elements of the offenses charged, thereby violating Polit's Fifth and

1

Sixth Amendment rights; (2) disclosure of the grand jury transcripts is necessary to determine whether the grand jury was properly instructed; and (3) Counts 1–5 should be dismissed because they are barred by the statute of limitations. [ECF. Nos. 63 and 64].

I. **Factual Background**

A. **Conviction in Ecuador**

Polit was convicted of taking bribes before an Ecuadorian court one year before the Department of Homeland Security ("DHS") began its investigation linked to the present charges.[1] [ECF. No. 64 at 2–3]. The Ecuadorian criminal inquiry came about after Polit's submission of a report outlining government corruption and self-dealing by Carlos Baca Mancheno, an official who would later serve as the Attorney General of Ecuador. [*Id.*]. Thus, Polit suggests that the criminal charges against him in Ecuador were a direct result of his investigation into Baca.[2]

B. **The U.S. Indictment and the Alleged Scheme**

The Indictment asserts that Polit and Co-Conspirator 1 unlawfully enriched themselves by laundering bribes that Polit solicited and received from Co-Conspirators 2 and 3, among others, through bank accounts located in the Southern District of Florida. [ECF. No. 1 at 4]. Co-Conspirator 1 is alleged to have controlled several companies incorporated in Florida, which maintained bank accounts in the Southern District of Florida. [*Id.* at 2]. Co-Conspirator 2 was a senior manager at Odebrecht, a Brazilian holding company that conducted business in multiple

---

[1] This information was produced by the Government as part of discovery. [ECF. No. 64 at 3].
[2] According to Polit's Motion, DHS interviewed Jose Conceicao Santos, Odebrecht's former Ecuadorian representative, who had a key role in the Ecuadorian conviction. [ECF. No. 64]. DHS also interviewed witnesses that alleged that the El Juri family, a wealthy family in Ecuador, was the source of the funds that the Government attributes to Polit's bribes. [*Id.*]. The two family members in charge of managing the family's wealth passed away in 2014 and 2021, respectively. [*Id.* at 1].

industries and operated in at least 27 countries, including Ecuador. [*Id.*]. Co-Conspirator 3 was an Ecuadorian businessperson. [*Id.*].

The alleged scheme was simple: Co-Conspirators 2 and 3 made bribe payments to Polit in exchange for Polit's influence as Comptroller General of Ecuador. Soon thereafter, Co-Conspirator 1 laundered the payments through Florida corporations, purchasing businesses and real estate. The purpose of the bribe payments from Co-Conspirator 2 was to prevent the imposition of large fines on Odebrecht related to its construction projects in Ecuador. [*Id.*]. Co-Conspirator 3 sought assistance in obtaining contracts from Seguros Sucre, the state-owned (and controlled) insurance company of Ecuador. [*Id.* at 2, 6].

Between 2010 and 2014, Co-Conspirator 2 paid approximately $8 million in cash bribes to Polit, which Co-Conspirator 1 caused to "disappear" through the various Florida corporations. [*Id.* at 4–5]. Furthermore, between 2013 and 2014, Co-Conspirator 3—at the direction of Polit—received cash payment from Polit, and later transferred the funds via wire to accounts in South Florida controlled by Co-Conspirator 1. [*Id.* at 5]. Co-Conspirator 2 subsequently requested that Polit accept bribe payments directly from Odebrecht as opposed to cash. [*Id.*]. Ultimately, the company made at least $3 million in bribe payments to bank accounts in Panama for the benefit of Polit. [*Id.* at 6]. These funds were later transferred to the Florida corporations' accounts for purchase of assets in South Florida. [*Id.*].

## **LEGAL STANDARD**

Federal Rule of Criminal Procedure 7 provides that an indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). A defendant may challenge the sufficiency of an indictment by filing a motion to dismiss an indictment under Federal Rule of Criminal Procedure 12(b). "The sufficiency of a

3

criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). To pass minimal constitutional muster an indictment must: "(1) present[] the essential elements of the charged offense; (2) notif[y] the accused of the charges to be defended against; and (3) enable[] the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Dabbs*, 134 F.3d 1071, 1079 (11th Cir. 1998).

In evaluating a motion to dismiss an indictment the court must take the allegations in the indictment as true. *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). As such, "a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." [*Id.*]. "[W]hen analyzing challenges to the sufficiency of an indictment, courts give the indictment a common-sense construction, and its validity is to be determined by practical, not technical, considerations." *United States v. Poirier*, 321 F.3d 1024, 1029 (11th Cir. 2003) (internal quotation marks and citation omitted).

## **DISCUSSION**

In his Motions to Dismiss, Polit argues that the Indictment fails to identify the elements of the "specified unlawful activity" alleged to sustain the money laundering charges—particularly the foreign statutory provision that was violated. [ECF. No. 63 at 10]. Therefore, Polit argues that the grand jury's probable cause finding may have been erroneous, and the Indictment failed to provide Polit with sufficient notice of the charges against him. [*Id.* at 10–11]. Polit also seeks disclosure of the grand jury transcripts (or, alternatively, an *in camera* review of the transcripts) to determine whether the grand jury was properly instructed. [*Id.* at 16]. Finally, he seeks dismissal of counts 1–5 based on the applicable statute of limitations. [*See* ECF. No. 64]. The Court will address each argument in turn.

I. **Elements of "specified unlawful activity" are not essential**

The Eleventh Circuit has held that a "conviction will not be upheld if the indictment upon which it is based does not set forth the essential elements of the offense." *United States v. Fern*, 155 F.3d 1318, 1324–25 (11th Cir. 1998) (quoting *United States v. Gayle,* 967 F.2d 483, 485 (11th Cir.1992) (*en banc*), *cert. denied,* 507 U.S. 967 (1993)). The rule serves to put the defendant on notice of "the nature and cause of the accusation as required by the Sixth Amendment" and "fulfills the Fifth Amendment's indictment requirement, ensuring that a grand jury only return an indictment when it finds probable cause to support all the necessary elements of the crime." *Gayle,* 967 F.2d at 485.

As an initial matter, the Government's 18 U.S.C. §§ 1956 and 1957 charges are based on alleged "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7).[3] The Government delineated Polit's specified unlawful activity as "*an offense against a foreign nation*, specifically Ecuador, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official . . .." (emphasis added) [ECF. No. 1 at 4]. Polit argues that "specified unlawful activity" is an essential element of the offense, and the Government failed to identify the elements of what constitutes "bribery of a public official" or "misappropriation, theft, and embezzlement of public funds" and did not "reference the Ecuadorian criminal code" that was violated. [ECF. No. 63 at 2]. He contends that warrants dismissal. The Government argues that the elements of the specified unlawful activity are not essential, relying primarily on *United States v. Lazarenko*, 564 F.3d 1026, 1033–34 (9th Cir. 2009). The Court agrees with the Government and the Ninth Circuit's conclusion.

---

[3] For 18 U.S.C. § 1957, "specified unlawful activity" is also defined under 18 U.S.C. § 1956(c)(7). *See* 18 U.S.C. § 1957(f)(3).

In *Lazarenko*, a former Ukrainian public official was indicted on charges of conspiracy, money, laundering, wire fraud, and interstate transportation of stolen property. *Id.* at 1029. As Polit does here, the public official sought dismissal because the Government failed to include the conduct that violated Ukrainian law in the indictment. *Id.* at 1033. In ruling for the Government, the court explained that the relevant statutes set forth the essential elements of the charged offenses, describing the public official's argument as "seek[ing] to import an additional element into these offenses, claiming that the Ukrainian law at issue is also an essential element because the government must prove a violation of Ukrainian law to sustain a conviction." *Id.*

As in *Lazarenko*, the case law does not require the Government to specifically plead a foreign law in its charges. Although our circuit has not faced the issue head on, our district court has. In *United States v. Diaz*, the defendant was charged in a bribery and money laundering scheme. No. 9:18-cr-80160-WPD, ECF. No. 1 (S.D.F.L. Oct. 18, 2022). As here, defendant argued that the Government's failure to identify the specific violation of Venezuelan law in its indictment warranted dismissal. *Diaz*, ECF. No. 210. After hearing oral argument, Judge William P. Dimitrouleas denied the motion, stating that it is "persuaded by" *Lazarenko*. *Id.*

Polit's reliance on *United States v. Tarkoff*, 242 F.3d 991, 994 (11th Cir. 2001) to argue that the Indictment must allege the elements of the "specified unlawful activity" is also unavailing. In *Tarkoff*, the circuit court affirmed a conviction under 18 U.S.C. § 1956(a)(1)(B)(i) and outlined the four elements of the offense, one of which are the proceeds of "specified unlawful activity." *Id.* Indeed, this Court agrees that the specified unlawful activity is an essential element of the offense. *See also, United States v. Majors,* 196 F.3d 1206, 1212 (11th Cir. 1999) (listing elements of 18 U.S.C. § 1956(a)(1)(B)(i) offense). Here, the Government has adequately pled the specified unlawful activity: an offense against a foreign nation—Ecuador—involving bribery of a public

6

official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official. [ECF. No. 1 at 4]. No further inquiry is necessary.

Furthermore, Polit concedes in his Motion that an "offense against a foreign nation" means that the underlying conduct must be *proscribed* by a foreign nation. [ECF. No. 63 at 4]. In other words, the phrase "merely requires that the conduct be prohibited under the law of the foreign nation in which it is committed." *United States v. One 1997 E35 Ford Van, VIN 1FBJS31L3VHB70844*, 50 F. Supp. 2d 789, 802 (N.D. Ill. 1999). A more restrictive interpretation would limit the government's ability to prosecute money laundering crimes with the purpose of promoting criminal activity abroad. *Id.* In *United States v. Chi*, the court summarized the requirements of an offense against a foreign nation, stating that "not *every* violation of foreign law is a 'specified unlawful activity.' To qualify, the 'offense against a foreign nation' must fall within the bounds of one of the listed categories—say, 'bribery of a public official.'" 936 F.3d 888, 894 (9th Cir.), *amended sub nom. United States v. Heon-Cheol Chi*, 942 F.3d 1159 (9th Cir. 2019).

Here, the conspiracy and money laundering allegations center on bribery of a public official. [ECF. No. 1 at 4]. As the Government correctly points out, other courts have clarified that additional details (including the specific foreign law that was allegedly violated) need not be alleged in the Indictment. *See e.g.*, *United States v. Smith*, 44 F.3d 1259, 1265 (4th Cir. 1995) (stating that "[b]ecause the [money laundering] requirement that the funds be illegally derived is not the distinguishing aspect and therefore does not lie at the core of the offense, details about the nature of the unlawful activity underlying the character of the proceeds need not be alleged."); *United States v. Teyf*, No. 5:18-CR-00452-FL-1, 2020 WL 598660, at *3 (E.D.N.C. Feb. 6, 2020) (holding that the indictment need not indicate a specific foreign law).

II.        The Indictment provides sufficient notice of the charges

7

In determining the sufficiency of an indictment, courts read the indictment as a whole, giving it a "common sense construction." *United States v. Gold,* 743 F.2d 800, 813 (11th Cir.1984); *United States v. Markham,* 537 F.2d 187, 192 (5th Cir.1976). Practical considerations determine its validity. *Gold,* 743 F.2d at 812. "An indictment that tracks the language of the relevant statute is sufficient, as long as it also provides a statement of facts and circumstances that give notice of the offense to the accused." *United States v. Walker,* 490 F.3d 1282, 1296 (11th Cir.2007) (*citing Russell v. United States,* 369 U.S. 749, 765 (1962)). Notice allows the defendant to "adequately prepare his defense." *United States v. Adkinson*, 135 F.3d 1363, 1373 (11th Cir. 1998) (quoting *United States v. Alford,* 516 F.2d 941, 945 (5th Cir. 1975)).

Polit argues that the Government's failure to indicate the foreign statutory provision in its Indictment imposes an undue burden on him, warranting dismissal. [ECF. No. 63 at 13]. He relies on *United States v. Bobo*, 344 F.3d 1076, 1084–1086 (11th Cir. 2003), in which the circuit court held that the indictment was defective because it made "a broad allegation of fraud . . . without the required specificity" and failed to set forth the "manner and means by which the scheme and artifice to defraud operated . . .." Polit also relies on *United States v. Scott*, 993 F.2d 1520–1522 (11th Cir. 1993), in which the circuit court held that the indictment was defective for failure to indicate the subsection that was charged under 18 U.S.C. § 1703. The Government's argument relies solely on the facts presented in the Indictment, providing a summary of the role played of Polit and Conspirators 1–3 in the alleged scheme. [ECF. No. 71 at 6].

The Government has the better argument here. Polit solicited and received over $11 million in bribes from Co-Conspirators 2 and 3 in exchange for using his position and influence as Comptroller General of Ecuador for the conspirators' benefit. The Indictment, as well as the Government's opposition to the Motion, tracks the language of the relevant statutes (18 U.S.C. §§

1956 and 1957) and provides the "facts and circumstances that give notice of the offense to the accused." *Walker,* 490 F.3d at 1296 (citing *Russell,* 369 U.S. at 765).

Moreover, Polit's reliance on *Bobo* and *Scott* misses the mark. In *Bobo*, the Indictment lacked specificity as to the manner and means of the alleged scheme, providing only a barebones, single paragraph explanation. *Bobo*, 344 F.3d at 1084. The Government also failed to incorporate relevant sections of the charging statute, 18 U.S.C. § 1347(1). *Id.* This is not the case here. The Indictment against Polit provides a detailed account of the alleged scheme, including the role of each co-conspirator, relevant dates, and the purpose behind the payments. *See* [ECF. No. 1 ¶¶ 4–16].

*Scott* is equally unavailing. The Government here pled the section of the charging statute with specificity: (1) conspiracy to commit money laundering under 18 U.S.C. § 1956(h) (Count 1); (2) Money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 2–4); and (3) engaging in transactions in criminally derived property under 18 U.S.C. § 1957 (Counts 5–6). *See* [ECF. No. 1]. The Government did not merely "reference" the statute, as Polit claims. [ECF. No. 63 at 13]. The Indictment in this case provided fair notice of the essential elements of the charged offense, which enabled Polit to prepare a defense.

Finally, Polit argues that the statutory language of §§ 1956(c)(7)(B)(iv) and 1957(f)(3) are ambiguous. [ECF. No. 63 at 14]. Specifically, Polit suggests that "an offense against a foreign nation" and "bribery of a public official" are ambiguous terms. *Id*. He supports his argument by stating that § 1956(c)(7)(B)(iv) is the only subsection in this provision that does not refer to another statute for definitional reference. [ECF. No. 63 at 14].

This Court has already addressed the scope of an "offense against a foreign nation," as defined in *United States v. Chi*. [*See* § I]. In addition, the Supreme Court has addressed the meaning

9

of "bribery" in the context of the Travel Act, holding that a "generic definition of bribery, rather than a narrow common-law definition, was intended by Congress." *Perrin v. United States*, 444 U.S. 37, 49 (1979). Furthermore, simply because a subsection of a statute is not defined by reference does not indicate that the term is ambiguous. In fact, the court in *Chi*—which analyzed the same issue in the context of §§ 1956 and 1957 charges—addressed this argument and relied on the Supreme Court's interpretation in *Perrin*. *See Chi*, 936 F.3d at 888.

### III. No "particularized need" was provided to justify disclosure of grand jury transcripts

"The general rule is that grand jury proceedings are to be kept secret." *United States v. Williams*, 180 F.App'x 108, 109 (11th Cir. 2006). "The English rule of grand jury secrecy has been incorporated into our federal common law and remains an integral part of our criminal justice system." *United States v. Aisenberg*, 358 F.3d 1327, 1346 (11th Cir. 2004) (citations and quotations omitted). Federal Rule of Criminal Procedure 6(e) "codifies this secrecy principle and prohibits the disclosure of grand jury material except in the limited circumstances enumerated in Rule 6(e)(3)." *Id.* at 1346-47. These exceptions apply only when a party shows a "particularized need," which requires that "(1) the material sought is needed to avoid possible injustice in another judicial proceeding; (2) the need for disclosure is greater than the need for continued secrecy; and (3) the request is designed to cover only necessary material." *United States v. Valencia-Trujillo*, 462 F. App'x 894, 898 (11th Cir. 2012) (citing *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)).

The defendant must also demonstrate that "circumstances had created certain difficulties peculiar to this case, which could be alleviated by access to *specific* grand jury materials, without doing disproportionate harm to the salutary purpose of secrecy embodied in the grand jury process . . . ." *United States v. Elliott*, 849 F.2d 554, 558 (11th Cir. 1988) (quoting *United States v. Liuzzo,*

739 F.2d 541, 545 (11th Cir. 1984)). Further, "a district court need not undertake *in camera* review where . . . a defendant fails to show the existence of a factual basis for his claim." *United States v. Roemmele*, 646 F. App'x 819, 822 (11th Cir. 2016) (citing *United States v. Rodriguez,* 765 F.2d 1546, 1559 (11th Cir. 1985)).

Polit argues that the Government was required to instruct the grand jury as to the specific foreign offense that satisfied the "specified unlawful activity" element of the charges. [ECF. No. 63 at 18]. He concludes that, because the Indictment fails to mention the foreign offense, the grand jury did not find probable cause on the specified unlawful activity. [*Id.*] The Government's argument is threefold: (1) the foreign law is not a necessary element of the charged offense; (2) the Indictment explicitly identifies the specified unlawful activity; and (3) the Indictment details the conduct from which the criminal proceeds were derived. [ECF. No. 71 at 8].

The Government has the better argument here. First, as analyzed in § I, the Government did in fact identify the specified unlawful activity in its Indictment, which included bribery of a public official and misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official. [ECF. No. 1 at 4]. In addition, even though the grand jury is no longer sitting (thereby minimizing the need for secrecy), Polit fails to articulate a particularized need for the disclosure of the grand jury materials based on the factors established by the Supreme Court in *Douglas Oil Co. of Cal*., as applied in our circuit by *Valencia-Trujillo*. More than mere speculation is needed, and, therefore, disclosure of the grand jury minutes and an *in-camera* review of the legal instructions are not warranted.

IV.     **Statute of Limitations**

The statute of limitations on all the charges in the Indictment is five years. 18 U.S.C. § 3282(a). A district court's decision to suspend the running of the statute of limitations applies

when: "1) . . . an official request has been made; and 2) . . . it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country." 18 U.S.C. § 3292(a)(1). The statute of limitations "shall" be suspended if both considerations are met. *United States v. Broughton*, 689 F.3d 1260, 1273 (11th Cir. 2012). The statute of limitations may be suspended for up to three years if the Government obtains a court order, or "on the date on which the foreign court or authority takes final action on the request." 18 U.S.C. § 3292(b). A final action "occurs when a foreign court or authority provides a dispositive response to each of the items listed in the government's official request for information." *United States v. Torres*, 318 F.3d 1058, 1065 (11th Cir. 2003). A dispositive response is a response by the foreign government "to each requested item, even if its response simply communicates that it cannot comply. *Id.* at 1065 n. 12.

Polit argues that the orders suspending the running of the statute of limitations do not dictate how long the suspensions should last and no evidence was presented of a dispositive response from the foreign governments as to the items the Government requested. [ECF. No. 64 at 6–8]. He further also argues that Counts 2 and 5 are domestic wire transfers, and therefore the information requested from the foreign governments is not relevant to those charges. [*Id.* at 9].

Here, the events that gave rise to each count occurred on the following dates: For Count 1, January 2010 through May 2017; for Count 2, December 2, 2015; for Count 3, March 22, 2016; for Count IV, October 7, 2016; for Court V, May 27, 2016. [ECF. No. 1 at 3, 8, and 9]. The Government submitted official requests to Panama (on April 27, 2020), Curacao (on October 9, 2020), and Ecuador (on November 30, 2020). [ECF. No. 72 at 2, 7]. The Government subsequently filed two *ex parte* applications seeking a suspension of the statute of limitations, one on October 27, 2020, and another on December 1, 2020. [*Id.* at 3]. The district court granted both applications,

suspending the statute of limitations through the statutory period. [*Id.*] The date of final action on the last request was May 25, 2022. [*Id.*].[4] The statute of limitations was therefore suspended from April 27, 2020, through May 25, 2022, a period of 758 days (or 2 years and 28 days), which falls within the three-year tolling limit under 18 U.S.C. § 3292(c)(1). After consideration of the parties' detailed account of the relevant dates on each count, the dates of the official requests sent to the foreign governments (including the date of final action), and the orders granting the Government's application to suspend the statute of limitations, this Court agrees that claims 1–5 are not barred by the statute of limitations.

Polit's argument that Counts 2 and 5 cannot be suspended because they allege purely domestic transactions fare no better. Count 2 alleges that a check of approximately $300,000 was sent from one Florida account to another. [ECF. No. 1 at 8]. Count 5 alleges that approximately $1.3 million in a Florida escrow account was used to purchase property. [ECF. No. 1 at 9]. Polit cites *Broughton*, 689 F.3d at 1273 to argue that evidence related to Counts 2 and 5 could not be located in the countries in which the requests were made, so a foreign investigation was not necessary. [ECF. No. 64 at 9]. In its reply, Polit relies on *United States v. Leon-Perez*, 4:17-CR-00514, 2022 WL 4002321 (S.D. Tex. July 11, 2022) to demonstrate a successful challenge to a suspension of the statute of limitations. But *Leon-Perez* has since been reversed by *United States v. Rafoi*, 60 F.4th 982 (5th Cir. 2023), where the court held that precluding the Government from tolling the statute of limitations "would be inconsistent with the purpose of § 3292." *Id.* at 1002.

In its response, the Government explains that it reasonably believed that evidence related to the charged offenses was located in Panama, Ecuador, and Curacao, and further outlined the records sought from the latter two. [ECF. No. 72 at 10–11]. Based on the Government's response,

---

[4] The grand jury sitting in Miami returned the Indictment on March 24, 2022. *See* [ECF. No. 1].

13

the information sought from the foreign governments appears to be relevant to Counts 2 and 5, regardless of whether the allegations are purely domestic.

## CONCLUSION

For the foregoing reasons it is **RECOMMENDED** that Defendant, Carlos Ramon Polit Faggioni's Motions to Dismiss Indictment [ECF Nos. 63 and 64] be **DENIED**.

Objections to this Report may be filed with the district judge within **fourteen** (14) days of receipt of a copy of the Report. Failure to timely file objections waives a party's right to review issues related to the Defendants' plea under Fed. R. Crim. P. 11 before the District Judge or the Court of Appeals. *See* Fed. R. Crim. P. 59(b)(2); 11th Cir. R. 3-1; *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 17th day of August, 2023.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:   **United States District Judge Kathleen M. Williams;**

**All Counsel of Record**