# EXHIBIT 1

**United States v. Chi, 936 F.3d 888 (2019)**
19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

936 F.3d 888
United States Court of Appeals, Ninth Circuit.

UNITED STATES of America, Plaintiff-Appellee,
v.
Heon-Cheol CHI, Defendant-Appellant.

No. 17-50358
|
Argued and Submitted December 7, 2018 Pasadena, California
|
Filed August 30, 2019

**Synopsis**
**Background:** Defendant was convicted in the United States District Court for the Central District of California, No. 2:16-cr-00824-JFW-1, John F. Walter, J., of engaging in monetary transaction of over $10,000 derived from offense against foreign nation involving bribery of public official, and he appealed.

**Holdings:** The Court of Appeals, Bea, Circuit Judge, held that:

[1] South Korean statute prohibiting public officials from receiving, demanding or promising to accept bribe in connection with his or her duties could properly be classified as describing offense involving "bribery of a public official," within meaning of statute of conviction, and

[2] there was sufficient evidence that wire transfers to defendant's bank account came from violation of South Korea bribery statute to support his conviction.

Affirmed.

**Procedural Posture(s):** Appellate Review; Pre-Trial Hearing Motion; Trial or Guilt Phase Motion or Objection.

© 2023 Thomson Reuters. No claim to original U.S. Government Works. 1

**United States v. Chi, 936 F.3d 888 (2019)**
19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

West Headnotes (9)

**[1]    Criminal Law⚖︎Review De Novo**

Indictment's sufficiency is subject to de novo review.

**[2]    Criminal Law⚖︎Review De Novo
        Criminal Law⚖︎Instructions**

Court of Appeals reviews wording of jury instructions for abuse of discretion, but reviews de novo whether jury instructions omit or misstate statutory crime's elements or adequately cover defendant's proffered defense.

2 Cases that cite this headnote

**[3]    Criminal Law⚖︎Construction in favor of government, state, or prosecution
        Criminal Law⚖︎Reasonable doubt**

In reviewing conviction for sufficiency of evidence, Court of Appeals first considers evidence presented at trial in light most favorable to prosecution, and then determines whether evidence so viewed is adequate to allow any rational trier of fact to find crime's essential elements beyond reasonable doubt.

**[4]    Statutes⚖︎Undefined terms**

Unless otherwise defined, words in statute will be interpreted as taking their ordinary, contemporary, common meaning.

**United States v. Chi, 936 F.3d 888 (2019)**
19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

[5]  **Statutes** Express mention and implied exclusion; expressio unius est exclusio alterius

Where Congress includes particular language in one section of statute but omits it in another section of same Act, it is generally presumed that Congress acts intentionally and purposely in disparate inclusion or exclusion.

[6]  **Currency Regulation** Monetary transactions in unlawfully derived property

Phrase "bribery of a public official," as used in federal statute prohibiting monetary transactions of over $10,000 derived from offense against foreign nation involving bribery of public official, was not reference to federal bribery statute; rather, its meaning was to be ascertained by considering its ordinary, contemporary, common meaning at time that Congress enacted statute. 18 U.S.C.A. §§ 201, 1956(c)(7)(B)(iv), 1957.

1 Case that cites this headnote

[7]  **Currency Regulation** Monetary transactions in unlawfully derived property

Phrase "bribery of a public official," as used in federal statute prohibiting monetary transactions of over $10,000 derived from offense against foreign nation involving bribery of public official, requires that there be: (1) two parties—one who paid, offered, or conferred bribe, and one who received, solicited, or agreed to accept it; (2) something to be given by bribe-giver—either private favor, pecuniary benefit, or any benefit; and (3) something to be given by bribe-taker—either official action, recipient's decision, opinion, recommendation, vote or other exercise of discretion as public servant, or violation of known legal duty as public servant. 18 U.S.C.A. §§

**United States v. Chi, 936 F.3d 888 (2019)**
19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

1956(c)(7)(B)(iv), 1957.

1 Case that cites this headnote

[8]  **Currency Regulation**  Monetary transactions in unlawfully derived property

South Korean statute prohibiting public officials from receiving, demanding or promising to accept bribe in connection with his or her duties could properly be classified as describing offense involving "bribery of a public official," within meaning of federal statute prohibiting monetary transactions of over $10,000 derived from offense against foreign nation involving bribery of public official, even though statute did not require corrupt intent to be influenced. 18 U.S.C.A. §§ 1956(c)(7)(B)(iv), 1957.

1 Case that cites this headnote

[9]  **Currency Regulation**  Monetary transactions in unlawfully derived property

There was sufficient evidence that wire transfers to South Korean official's United States bank account came from violation of South Korea bribery statute to support official's conviction for engaging in monetary transaction of over $10,000 derived from offense against foreign nation involving bribery of public official, in light of evidence that official was responsible for purchasing geological equipment for South Korean government, that transfers were labeled as "commission" payments from seismometer manufacturer, that official had no intention of transferring funds to his agency, that manufacturer deposited payments made to legitimate distributor to bank in South Korea, whereas "advice fee" payments to official were made to bank in United States, and that official provided manufacturer with illicit service in return. 18 U.S.C.A. §§ 1956(c)(7)(B)(iv), 1957.

United States v. Chi, 936 F.3d 888 (2019)
19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

**Attorneys and Law Firms**

**\*890** Benjamin L. Coleman (argued), Coleman & Balogh LLP, San Diego, California, for Defendant-Appellant.

John-Alex Romano (argued), David M. Fuhr, and Anna G. Kaminska, Trial Attorneys; John P. Cronan, Acting Assistant Attorney General; Poonam G. Kumar, Assistant United States Attorney; Nicola T. Hanna, United States Attorney; United States Department of Justice, Criminal Division, Washington, D.C.; for Plaintiff-Appellee.

Appeal from the United States District Court for the Central District of California, John F. Walter, District Judge, Presiding, D.C. No. 2:16-cr-00824-JFW-1
Before: Johnnie B. Rawlinson and Carlos T. Bea, Circuit Judges, and Benjamin H. Settle,[*] District Judge.

[*]   The Honorable Benjamin H. Settle, United States District Judge for the Western District of Washington, sitting by designation.

**OPINION**

BEA, Circuit Judge:

Dr. Heon-Cheol Chi, a citizen of South Korea, was employed as a principal researcher and director at the Korea Institute of Geoscience and Mineral Resources (KIGAM), a government-funded geological research institute in South Korea. Over nearly fifteen years, Chi solicited and received payments from two seismometer manufacturers. In exchange, he ensured that KIGAM purchased their products, and he gave the companies inside information about their competitors. He asked the companies to route his payments—which totaled over a million dollars—to a bank account in the United States. An FBI investigation ensued, and Chi was arrested on December 12, 2016.

Chi was indicted for six counts of violating 18 U.S.C. § 1957, which criminalizes

**United States v. Chi, 936 F.3d 888 (2019)**
19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

engaging in monetary transactions of over $10,000 derived from certain "offense[s] against a foreign nation," including crimes involving "bribery of a public official." 18 U.S.C. § 1956. The "offense against a foreign nation" here was a violation of Article 129 of the South Korean Criminal Code. The district court concluded that Article 129 could properly be classified as describing an offense involving "bribery of a public official," and the jury was instructed on the elements of that offense. Chi was convicted on one count, Count 6.[1]

[1] Count 6 was based on the November 22, 2016, deposit into Chi's Merrill Lynch account of a $56,000 check from his Bank of America account.

On appeal, Chi argues that the district court misinterpreted the term "bribery of a public official" as used in § 1956. According to Chi, "bribery of a public official" is a reference to the federal bribery statute, 18 U.S.C. § 201, and the district court erred by failing to ensure that the crime described in Article 129 fell within the elements of the crime described in said § 201. We disagree. We hold that "bribery of a public official" in § 1956 is defined by that phrase's "ordinary, contemporary, common **\*891** meaning," *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979), and is not constrained by 18 U.S.C. § 201, a statute to which § 1956 makes no reference. Furthermore, because we find the crime described in Article 129 of the South Korean Criminal Code fits comfortably within the ordinary meaning of "bribery of a public official" as used in § 1956, we find the indictment was sufficient and that there was no instructional error. Accordingly, we affirm the judgment of the district court.

## BACKGROUND

KIGAM is a government-funded geological research institute in South Korea. KIGAM's Earthquake Research Center operates a nationwide acoustic network to monitor seismic activity and artificial blasts. In addition, it serves as South Korea's data center for the United Nations Comprehensive Test Ban Treaty Organization (CTBTO), which monitors nuclear weapons tests around the world.

Chi was a seismologist at KIGAM. He worked as a principal researcher and was the director of the Earthquake Research Center. Additionally, he served on a technical working group for the CTBTO, and he advised the President of South Korea on nuclear weapons testing as well. KIGAM purchases and distributes a large amount of geological

equipment; over time, Chi became intimately involved in the procurement process.

KIGAM frequently purchased equipment from Guralp Systems, a seismometer manufacturer in England. On September 7, 2015, Guralp Systems' executive chairman, Christopher Potts, noticed that the company had paid Chi "several hundred thousand dollars" over the previous several years, which "seemed like a large amount of money." Upon further inspection, he discovered that Guralp Systems had paid Chi "nearly a million dollars from 2003 through to 2015" pursuant to a one-page, hand-written consulting agreement. But the letter didn't "look like a consulting agreement at all." Potts became apprehensive that the payments "could ... be bribes."

After discussing the matter with his associates, Potts confronted Chi over lunch on September 15, 2015. He told Chi that he believed the arrangement to be inappropriate and illegal. Chi did not disagree, but promptly called "his boss or his director," spoke briefly to him in Korean, and then reassured Potts that his superior "had agreed that it was okay to have an official agreement between [Guralp Systems] and KIGAM." Potts declined such an arrangement.

Over the next several months, Chi attempted a variety of pricing maneuvers to receive what he termed "advice fees" from Guralp Systems. Potts consistently rebuffed him. In December 2015, Potts confronted Chi again, this time at a geophysics conference in San Francisco. Chi admitted that he was a government official and that the previous arrangement was illegal, but after the conference concluded, he renewed his efforts to be paid. He emailed Potts asking for a "consulting agreement" that would pay $300,000 over the next three years, and demanded payment for services rendered under the previous agreement.[2] Potts never replied. Instead, he notified the United Kingdom Serious Fraud Office (SFO), which began an investigation. At some point, the FBI became involved as well.

[2] As before, Chi admitted that he was "a government officer," and that the "previous [contract] was illegal," but claimed that he now had "permission from [his] president on the contracts."

The FBI investigation revealed the existence of another company: Kinemetrics, a seismometer manufacturer headquartered *892 in Pasadena, California.[3] Like Guralp Systems, Kinemetrics paid Chi money in exchange for recommending and purchasing their products. In addition, Chi provided Kinemetrics information about the company's competitors, sending them confidential presentations from other manufacturers. Chi was surprisingly candid in his communications with Kinemetrics, often admitting that his conduct was against the law.

| | |
|---|---|
| 3 | Some of the agreements entered into by Chi were with Quanterra, a wholly-owned subsidiary of Kinemetrics. We refer to both entities as Kinemetrics. |

The investigation also revealed a money trail. Because Chi had to report his "cash flow ... to [the] government every year," he asked Kinemetrics and Guralp Systems to deposit his fees in a Bank of America account in Glendora, California. Between 2009 and 2016, the two companies wired $1,044,690 to that account. Chi then transferred $521,000 from the Bank of America account to a Merrill Lynch account in Fort Lee, New Jersey. From there, he transferred the money to his Citibank account in South Korea. None of the money was ever transferred to KIGAM.

On December 12, 2016, Chi flew to San Francisco for a seismology convention, where the FBI arrested him in the airport. A grand jury returned an indictment charging Chi with six counts of engaging in monetary transactions derived from a "specified unlawful activity," in violation of 18 U.S.C. § 1957. The "specified unlawful activity" articulated in the indictment was—as defined in 18 U.S.C. § 1956(c)(7)(B)—"an offense against a foreign nation involving ... bribery of a public official." And the offense against a foreign nation involving "bribery of a public official" was Article 129 of the South Korean Criminal Code.[4]

| | |
|---|---|
| 4 | As translated in district court, Article 129 states, in relevant part:<br>A public official or an arbitrator who receives, demands or promises to accept a bribe in connection with his/her duties, shall be punished by imprisonment for not more than five years or suspension of qualifications for not more than ten years. |

Chi moved to dismiss the indictment on the ground that it did not adequately allege the offense. He claimed that in addition to alleging a violation of Article 129, the indictment was required to allege a violation of 18 U.S.C. § 201, the federal bribery statute.[5] The district court denied Chi's motion. During trial, Chi made a similar argument, suggesting that the jury should be instructed on domestic bribery law in addition to the elements of Article 129. The court rejected that argument too. It agreed that "it must ensure that the definition of 'bribery' under Article 129 of the South Korea Criminal Code falls within the category of conduct of a bribery of a public official, as contemplated by Section 1956(c)." But it found that the definition in Article 129 did fall within that category, thereby rejecting Chi's claim.[6] Importantly, the court read the translated Article 129 to the jury.

**United States v. Chi, 936 F.3d 888 (2019)**
19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

[5]   Specifically, Chi asked the district court to issue an instruction requiring the jury to find that he "intend[ed] to be influenced in the performance of an official act."

[6]   The district court ultimately defined the elements of Article 129 as requiring the government to prove that:
  (1) The defendant is a public official for the purposes of Article 129; and
  (2) The defendant received, demanded, or promised to accept a payment in exchange for exercising his official duties, or in other words, as a quid pro quo for exercising his official duties.
The district court instructed the jury that as a matter of law, "a director or researcher at [KIGAM] is a public official for the purposes of Article 129."

The jury ultimately convicted Chi on Count 6, which arose from a $56,000 check sent from the Bank of America account in **\*893** California to the Merrill Lynch account in New Jersey. It was unable to reach a verdict on the five remaining counts. Chi now appeals, arguing that the crime described in Article 129 of the South Korean Criminal Code must also fall within the ambit of the crimes described in 18 U.S.C. § 201, and that the indictment and jury instructions were in error as a result. Chi also argues that the court incorrectly interpreted South Korean law, and that insufficient evidence supported his conviction on Count 6.

## STANDARD OF REVIEW

[1] [2]The sufficiency of an indictment is subject to de novo review. *United States v. Berger*, 473 F.3d 1080, 1097 (9th Cir. 2007). In addition, we review "the wording of jury instructions for an abuse of discretion, but review de novo whether jury instructions omit or misstate elements of a statutory crime or adequately cover a defendant's proffered defense." *United States v. Kaplan*, 836 F.3d 1199, 1214 (9th Cir. 2016) (citation omitted).

[3]In reviewing a conviction for sufficiency of the evidence, our court conducts a two-step inquiry. First, we "consider the evidence presented at trial in the light most favorable to the prosecution, and second, [we] determine whether the evidence so viewed is adequate to allow any rational trier of fact to find the essential elements of

**United States v. Chi, 936 F.3d 888 (2019)**
19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

the crime beyond a reasonable doubt." *United States v. Lemus*, 847 F.3d 1016, 1020 (9th Cir. 2016).

## DISCUSSION

**A. Section 1956(c)(7)(B) Should Be Interpreted to Take the Ordinary, Contemporary, Common Meaning of "Bribery of a Public Official" at the Time Congress Enacted the Statute**

The legal question at the heart of this case is simple: what does an "offense against a foreign nation involving ... bribery of a public official," as found in 18 U.S.C. § 1956(c)(7)(B), mean?

To understand where § 1956(c)(7)(B) fits within the statutory scheme, we begin with its neighboring statute, § 1957. That statute reads:

> (a) Whoever ... knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

18 U.S.C. § 1957. In order to define the term "specified unlawful activity," § 1957 declares that the term "shall have the meaning given ... in section 1956 of this title." 18 U.S.C. § 1957(f). That brings us to § 1956(c), which states:

(7) the term "specified unlawful activity" means—

(B) with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving—

(i) the manufacture, importation, sale, or distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act);

(ii) murder, kidnapping, robbery, extortion, destruction of property by means of explosive or fire, or a crime of violence (as defined in section 16);

(iii) fraud, or any scheme or attempt to defraud, by or against a foreign bank (as defined in paragraph 7 of section 1(b) of the International Banking Act of 1978);

(iv) *bribery of a public official*, or the misappropriation, theft, or embezzlement **\*894** of public funds by or for the benefit of a public official;

(v) smuggling or export control violations involving—

(I) an item controlled on the United States Munitions List established under section 38 of the Arms Export Control Act (22 U.S.C. 2778); or

(II) an item controlled under regulations under the Export Administration Regulations (15 C.F.R. Parts 730–774);

(vi) an offense with respect to which the United States would be obligated by a multilateral treaty, either to extradite the alleged offender or to submit the case for prosecution, if the offender were found within the territory of the United States; or

(vii) trafficking in persons, selling or buying of children, sexual exploitation of children, or transporting, recruiting or harboring a person, including a child, for commercial sex acts;

18 U.S.C. § 1956 (emphasis added). In other words, for an act to qualify as "specified unlawful activity," it must be "an offense against a foreign nation." But not *every* violation of foreign law is a "specified unlawful activity." To qualify, the "offense against a foreign nation" must fall within the bounds of one of the listed categories— say, "bribery of a public official." The question here is how to define the categorical boundaries of such "bribery of a public official."

Though we have never resolved this question, our circuit has adjudicated matters under § 1956(c)(7)(B) before. In *United States v. Lazarenko*, Pavel Lazarenko, the former Prime Minister of Ukraine, was charged with engaging in a monetary transaction derived from a violation of an "offense against a foreign nation involving ... extortion" under § 1956(c)(7)(B). 564 F.3d 1026, 1029–31 (9th Cir. 2009). "[T]he jury was instructed that it had to find a violation of Ukra[i]nian law and was provided with the elements of the relevant Ukra[i]nian statutes." *Id.* at 1034. The Ukrainian extortion statutes did not require the jury to find that Lazarenko had used violent means to accomplish the extortion. On appeal, Lazarenko argued that "extortion" in § 1956(c)(7)(B) was limited to "extortion through violence" and therefore made the Ukrainian law he had allegedly violated inapplicable. *Id.* at 1038.

We disagreed. We acknowledged that some federal statutes used the term "extortion" to refer to "extortion by violence," but explained that those statutes also used the term to mean "extortion under color of official right." *Id.* at 1039. We also highlighted the common law definition of extortion—which "resembled what we know as bribery"—and noted that this "broad interpretation" was supported by extortion's "ordinary meaning." *Id.* at 1039–40. In other words, regardless whether one interpreted § 1956(c)(7)(B) by consulting federal statutes, common law, or the term's ordinary meaning, the Ukrainian law describing the required elements of extortion fell comfortably within the category of "extortion" even though the Ukrainian law did not require violence as an element. *Id.*

We next considered § 1956(c)(7)(B) in *United States v. Chao Fan Xu*, though like *Lazarenko*, that opinion shed little light on the statute's interpretation. 706 F.3d 965 (9th Cir. 2013), *abrogated on other grounds by RJR Nabisco, Inc. v. European Cmty.*, ––– U.S. ––––, 136 S. Ct. 2090, 195 L.Ed.2d 476 (2016). In *Chao Fan Xu*, four Chinese nationals engaged in a complex series of financial crimes, diverting bank funds from the Bank of China and entering into fraudulent marriages in the United States to conceal their scheme. *Id.* at 972–73. After fleeing to the United States, they were arrested and charged **\*895** with several crimes, including engaging in monetary transactions derived from violations of an "an offense against a foreign nation involving ... fraud" under § 1956(c)(7)(B). *Id.* at 986. This time, the foreign offenses were two articles of the Criminal Law of the People's Republic of China.

Among other arguments, the defendants in *Chao Fan Xu* contended that the rule of lenity should apply to "an offense against a foreign nation involving ... fraud." *Id.* at 986–87. We rejected that claim. Noting that "we resort to the rule of lenity only if the statute is 'truly ambiguous,' " *United States v. Gonzalez-Mendez*, 150 F.3d 1058, 1061 (9th Cir. 1998), we said that "American law provides a straightforward definition of common fraud." 706 F.3d at 987–88. But our conclusory reference to "American law" did not specify a methodological approach, nor did it reference a particular statute. Thus, we left the question of how to interpret § 1956(c)(7)(B) unanswered.

[4]Our circuit precedent may not provide much guidance, but the Supreme Court's jurisprudence in other contexts is instructive. Like § 1956(c)(7)(B), the Travel Act, the Armed Career Criminal Act (ACCA), and the Racketeer Influenced and Corrupt Organizations Act (RICO) contain categories of crimes within which other laws fall—in those cases, state criminal statutes. In analyzing those statutes, the Supreme Court has consistently adopted the "fundamental canon of statutory construction ... that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin*, 444 U.S. at 42, 100 S.Ct. 311. We adopt

**United States v. Chi, 936 F.3d 888 (2019)**

19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

that same approach here.

*Perrin* involved a prosecution for bribery under the Travel Act, 18 U.S.C. § 1952 (1961), which criminalizes those who travel or use "interstate or foreign commerce" with the intent to further "unlawful activity." *Id.* at 38, 100 S.Ct. 311. The Travel Act defines "unlawful activity" as "extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States." 18 U.S.C. § 1952 (1961). The defendants, who were indicted for committing a commercial bribery scheme in violation of Louisiana law, argued that their indictment failed to state an offense because "bribery" carried its common law meaning, and "commercial bribery was not an offense at common law." *Perrin*, 444 U.S. at 41, 100 S.Ct. 311. But the Court found it unlikely that Congress was unaware that "the common understanding and meaning of 'bribery' had extended beyond its early common-law definitions" when the Travel Act was enacted in 1961. *Id.* at 45, 100 S.Ct. 311. The Court therefore applied the maxim that "words generally should be interpreted as taking their ordinary, contemporary, common meaning," holding that a "generic definition of bribery, rather than a narrow common-law definition, was intended by Congress," thereby affirming the defendants' conviction. *Id.* at 49, 100 S.Ct. 311.

Three decades later, the Court adopted the same approach in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). There, the Court considered the meaning of the word "burglary" in the ACCA, which applies a sentencing enhancement to individuals convicted of several categories of crimes. *Id.* at 577–78, 110 S.Ct. 2143. Citing *Perrin*, the Court concluded that what "Congress meant by 'burglary' " was the "generic sense in which the term is now used." *Id.* at 598, 110 S.Ct. 2143. Thus, using the Model Penal Code and a contemporary criminal law hornbook, the Court announced that "a person has been convicted of burglary for purposes of [the ACCA] if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or **\*896** structure, with intent to commit a crime." *Id.* at 599, 110 S.Ct. 2143. The Court then remanded the case for further proceedings, instructing the lower court to analyze whether the burglary statutes in question included the elements of "generic burglary." *Id.* at 602, 110 S.Ct. 2143.

The Court also adopted this approach to statutory interpretation in *Scheidler v. National Organization for Women, Inc.*, a RICO case. 537 U.S. 393, 410, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003). *Scheidler* considered the definition of an "act or threat involving ... extortion, ... which is chargeable under State law." *Id.* at 409, 123 S.Ct. 1057 (quoting 18 U.S.C. § 1961(1)). The defendants, found guilty of committing extortion under a state extortion statute that did not require them to obtain property as part of the crime, argued for a generic definition of "extortion." The Court

**United States v. Chi, 936 F.3d 888 (2019)**
19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

agreed. Referencing *Taylor*, it held that "extortion" under RICO was limited to state statutes that criminalized conduct that would be "generically classified as extortionate." *Id.* at 409, 123 S.Ct. 1057. And because the Model Penal Code and a majority of state statutes required a party to obtain property in order to commit extortion, the Court reversed the judgment of conviction. *Id.* at 410, 123 S.Ct. 1057.

[5]Rather than consult the "ordinary, contemporary, common meaning" in interpreting § 1956(c)(7)(B), Chi urges us to hold that "bribery of a public official" is a reference to 18 U.S.C. § 201. That reading is belied by the rest of the statute. Several of the categories in § 1956(c)(7)(B) include references to specific federal laws, such as §§ 1956(c)(7)(B)(i) (Controlled Substances Act), 1956(c)(7)(B)(iii) (International Banking Act of 1978), 1956(c)(7)(B)(v)(I) ( 22 U.S.C. § 2778), and 1956(c)(7)(B)(v)(II) (15 C.F.R. Parts 730–74). § 1956(c)(7)(B)(iv), which includes "bribery of a public official," contains no such reference. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (citation omitted). In the words of the district court, "had Congress intended to criminalize the laundering of bribery proceeds only where the foreign bribery statutes tracked the requirements of § 201, it would have said so."

[6]Furthermore, even if "bribery of a public official" were interpreted as a reference to a specific federal statute, it is not clear to which statute it would refer. To be sure, 18 U.S.C. § 201 is frequently referred to as "the federal bribery statute." *McDonnell v. United States*, ––– U.S. ––––, 136 S. Ct. 2355, 2365, 195 L.Ed.2d 639 (2016). But it is "merely one strand of an intricate web of regulations, both administrative and criminal, governing the acceptance of gifts and other self-enriching actions by public officials." *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 409, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999). Various federal statutes apply to federal employees who participate in proceedings relating to a matter in which they have a financial interest, 18 U.S.C. § 208; employees who receive "any contribution to or supplementation of salary ... from any source other than the [g]overnment," 18 U.S.C. § 209; or employees who "solicit or accept anything of value from a person ... whose interests may be substantially affected by the performance or nonperformance of the individual's official duties," 5 U.S.C. § 7353. Faced with this web of regulation, § 1956(c)(7)(B) gives no indication which—if any—federal law should define the meaning of "bribery of a public official." Hence, absent a statutory basis to refer to and adopt the elements **\*897** of § 201, we interpret "bribery of a public official" per *Perrin*'s instruction.

**B. The "Ordinary, Contemporary, Common Meaning" of "Bribery of a Public Official" in 2001 Included Article 129 of the South Korean Criminal Code.**

🚩 § 1956(c)(7)(B)(iv)—"bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official"—was added to the statute as part of the Patriot Act in 2001. Thus, to interpret the meaning of "bribery of a public official," we look to the ordinary meaning of the term at that time.

In 2001, the latest edition of Black's Law Dictionary defined "bribery" as "[t]he corrupt payment, receipt, or solicitation of a private favor for official action." *Bribery*, Black's Law Dictionary (7th ed. 1999). The Model Penal Code (MPC), meanwhile, defines bribery as:

> [O]ffer[ing], confer[ring] or agree[ing] to confer upon another, or solicit[ing], accept[ing] or agree[ing] to accept from another:
>
> (1) any pecuniary benefit as consideration for the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter; or ...
>
> (3) any benefit as consideration for a violation of a known legal duty as [a] public servant or party official.

Model Penal Code § 240.1, Bribery in Official and Political Matters (Am. Law Inst., 1962). The MPC defines "public servant" as "any officer or employee of government, including legislators and judges, and any person participating as juror, advisor, consultant or otherwise, in performing a governmental function; but the term does not include witnesses." *Id.*

[7] These sources demonstrate that based on the common understanding of the term at the time the statute was enacted, "bribery" contained several elements. First, it required two parties—one who "paid," "offered," or "conferred" the bribe, and one who "received," "solicited," or "agreed to accept" it. Second, it required something to be given by the bribe-giver—either a "private favor," a "pecuniary benefit," or "any benefit." And third, it required something to be given by the bribe-taker—either "official action," "the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant," or "a violation of a known legal duty as

**United States v. Chi, 936 F.3d 888 (2019)**
19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

public servant."

**[8]** The foreign law at issue, Article 129 of the South Korean Criminal Code, contains all three requirements. As translated in district court and read to the jury, it states, in relevant part:

> A public official or an arbitrator who receives, demands or promises to accept a bribe in connection with his/her duties shall be punished by imprisonment for not more than five years or suspension of qualifications for not more than ten years.

The first requirement is satisfied by "public official," which—in addition to matching the MPC and dictionary definition—undoubtedly aligns with the phrase "bribery by a *public official*" in § 1956. The verbs expressed in the statute ("receives, demands, or promises") mirror those found in contemporary sources as well ("receive, solicit, or agree to accept"). The second requirement is satisfied by the word "bribe," which encompasses a "private favor," "pecuniary benefit," or "any benefit."

Chi argues that Article 129 does not fit within the category of "bribery" because the third requirement is missing. But by immediately preceding the phrase "in connection with his/her duties," the word "bribe" limits the scope of what follows. A bribe itself is a "price, reward, gift, or favor bestowed or promised with a view to ***898** pervert the judgment of or influence *the action of a person in a position of trust*." *Bribe*, Black's Law Dictionary (7th ed. 1999) (emphasis added). The thing given by the bribe-taker is therefore "the action of a person in a position of trust" given "in connection with his/her duties." In other words, for the jury to convict Chi, they had to find that Chi *acted* in consideration of and in exchange for the money he received—aligning with the third requirement of bribery.

Article 129 of the South Korean Criminal Code therefore falls within the category given in § 1956(c)(7)(B)(iv): "bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official." The district court did not err in so finding, nor did it err in instructing the jury to that effect. Chi's argument that the indictment was in error fails for the same reason. The indictment alleged a violation of Article 129; it did not need to also allege a violation of federal bribery law.

Lastly, Chi contends that even if Article 129 is the applicable standard, the jury instructions were flawed because they failed to communicate a necessary component

**United States v. Chi, 936 F.3d 888 (2019)**

19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

of bribery: the "corrupt intent to be influenced." But Chi's only authorities for finding a "corrupt intent to be influenced" to be necessary for bribery are § 201 and *Sun-Diamond Growers of California*, 526 U.S. at 404, 119 S.Ct. 1402, a case that interpreted that statute. This claim, then, is merely a restatement of Chi's general argument that § 1956(c)(7)(B) is to be defined by § 201. It fails for the same reasons.[7]

[7] Nor—contrary to Chi's claims—is *McDonnell* applicable here, as its holding also rested upon § 201. 136 S. Ct. at 2372. And to the extent that *McDonnell* alluded to constitutional considerations, those considerations are not present here either. Chi was charged with a crime for engaging in a quid pro quo exchange with foreign businesses, not the "people [he] serve[d]." *Id.* Similarly, by virtue of applying to "offenses against a foreign nation," the indictment and jury instructions did nothing to implicate the issues of federalism present in *McDonnell*.

**C. Chi's Conviction Was Supported by Sufficient Evidence**

Chi's final argument is that insufficient evidence supported his conviction. He claims that there was no evidence to support the claim that the transaction in Count 6—the $56,000 check from Chi's Bank of America Account deposited in his Merrill Lynch account on November 22, 2016—actually came from a violation of Article 129. At trial, the government proffered bank records indicating that Chi made two wire transfers in late 2015 labeled as "commission" payments from Kinemetrics. Chi claims that the government provided no evidence that those wires arose from impermissible activity.

[9] Strictly speaking, that is true: Kinemetrics' controller, Michelle Harrington, merely verified that the transfers had taken place. But plenty of circumstantial evidence gave rise to the inference that those transfers were bribes. Chi's communication with Kinemetrics showed that he intended to keep the money for himself rather than transfer it to KIGAM. His emails also showed that he provided Kinemetrics with an illicit service in return. In one email, for instance, Chi reported on the competing bids of several companies (including Guralp Systems) to Kinemetrics, advising them on which products to present during the bidding process. And on May 24, 2015—approximately six months ***899** before the wire transfers—Chi sent Kinemetrics an email providing them with confidential information about a competing company. He instructed Kinemetrics not to distribute it.

Chi also used the term "advice fees" in his contemporaneous emails to Kinemetrics, the same term that he used when speaking with Guralp Systems. Potts testified that "advice fees" were bribes, and Chi had previously admitted that the "advice fees" were illegal.

**United States v. Chi, 936 F.3d 888 (2019)**
19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

Chi's emails to Kinemetrics showed considerable consciousness of guilt that a jury could conclude was inconsistent with legal behavior. And evidence was presented that Kinemetrics deposited payments made to a legitimate distributor to a bank in South Korea, whereas the "advice fee" payments were made to a bank in the United States.

All this evidence could give rise to the conclusion that the money transferred to Chi's Merrill Lynch account on November 22, 2016 was money received in violation of Article 129. For Chi to succeed, "all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1165 (9th Cir. 2010). That is not true here.

**AFFIRMED.**

**All Citations**

936 F.3d 888, 19 Cal. Daily Op. Serv. 8742, 2019 Daily Journal D.A.R. 8402

End of Document © 2023 Thomson Reuters. No claim to original U.S. Government Works.