UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20114-KMW

UNITED STATES OF AMERICA

vs.

CARLOS RAMON POLIT FAGGIONI,

      **Defendant.**

_____/

UNITED STATES' NOTICE OF INTENT TO USE EVIDENCE
OF OTHER CRIMES, WRONGS OR ACTS PURSUANT TO
FEDERAL RULE OF EVIDENCE 404(b)

      The United States of America, by and through undersigned counsel, hereby provides notice to the defendant of its intent to introduce evidence of additional crimes, wrongs or acts during its case-in-chief pursuant to Rule 404(b) of the Federal Rules of Evidence.  The government believes that the proposed evidence is intrinsic or inextricably intertwined, but files this 404(b) notice in an abundance of caution.

      The defendant is charged in a six-count indictment with conspiracy to commit money laundering (18 U.S.C. § 1956(h)), concealment money laundering (18 U.S.C. § 1956(a)), and engaging in monetary transactions in criminally derived property (18 U.S.C. § 1957).  The indictment alleges that, from 2010 to 2017, the defendant, as Comptroller General of Ecuador, engaged in a scheme to enrich himself by receiving bribes and laundering the bribes into South Florida with the assistance of Co-Conspirator 1.  The indictment alleges that defendant and Co-Conspirator 1 laundered bribes that the defendant received from: (a) an Odebrecht representative for the defendant's assistance in preventing the imposition of large fines on Odebrecht's projects and (b) an Ecuadorean businessperson ("Ecuadorean Businessperson 1") for defendant's

assistance in reobtaining contracts for Ecuadorean Businessperson 1 with Ecuador's state-owned insurance company.

The government also seeks to introduce evidence about a scheme by the defendant to receive bribes from the owner of a Spanish company ("Spanish Businessperson 1") and to launder those bribes through Co-Conspirator 1.  The government has identified emails from the personal email accounts of both the defendant and Co-Conspirator 1 indicating (1) that the defendant received bribes from Spanish Businessperson 1 for defendant's help with the Spanish company's outstanding tax issues with the Ecuadorean authorities and (2) that the defendant caused these bribes to be laundered through Co-Conspirator 1.

At trial, the government seeks to introduce email exchanges from the defendant's personal email account and Spanish Businessperson 1's email account from late 2015 and early 2016 discussing various calls and in-person meetings between the two, including the defendant's efforts to arrange a meeting between Spanish Businessperson 1 and the Ecuadorean President's office. For example, in January 2016, the parties exchanged the following email:

- **January 8, 2016**: Spanish Businessperson 1 emailed the defendant's personal email account and wrote: "[I]t would be desirable for me if you could get me a meeting at Carondelet [Ecuador's equivalent of the White House]" the first week of February.

- **January 11, 2016**: The defendant responded to Spanish Businessperson 1: "I will be waiting for your arrival, and I will speak with Pedro Solines so that he can speak with the President, he is the Secretary of Public Administration."

Later, in April 2016, the parties exchanged an email summarizing the course of events:

2

- **April 18, 2016**: Spanish Businessperson 1 emailed the defendant's personal email account and wrote: "[D]espite efforts made with the [Ecuadorean tax authorities], mediated by the Controller's office, we are heading to arbitration."

- **April 18, 2016**: The defendant responded to Spanish Businessperson 1: "[U]nfortunate what is happening with your problem and the arbitration . . . I would love if your attorney visits me Wednesday or Thursday to review the matter . . . see you on arrival."

The government has separately identified a series of emails from Co-Conspirator 1's personal email account where the defendant had previously directed Spanish Businessperson 1 to make apparent bribe payments for the defendant in connection with this tax dispute.

- **March 18, 2015**: Co-Conspirator 1 sent an email to Spanish Businessperson 1 with the subject line "[t]ransfer for the friend" and wrote that the "friend" asked me to send along the following wire transfer information for a transfer of 109,800 euros. In the email, Co-Conspirator 1 provided wiring instructions for a bank account in Spain.

- **March 29, 2015**: Spanish Businessperson 1 forwarded the above email to an associate and stated that he/she had spoken to "C.P." (defendant's initials) who said that Co-Conspirator 1 would call. In the email, Spanish Businessperson 1 stated that "C.P." had reviewed the issue and that it would be resolved by the legal office of the President and that C.P. had discussed the possible intervention of his friend "A.M." who was handling the matter.

Shortly thereafter, on March 31, 2015, Spanish Businessperson 1 sent an email to Co-Conspirator 1 confirming a transfer of 109,800 euros to a bank account in Spain. On August 6, 2015, an associate of Spanish Businessperson 1 sent Co-Conspirator 1 a list showing total transfers made of approximately 573,000 euros.

The above exchanges are consistent with the *modus operandi* of the defendant's bribery and money laundering operation. Specifically, the defendant negotiated directly with a businessperson to receive a bribe on a matter where the defendant had influence based on his official Ecuadorean government role. The defendant then arranged for Co-Conspirator 1 to launder the bribe proceeds from the bribe payer.

## Analysis

### *The Proposed Evidence Should Be Admissible as Intrinsic Evidence*

Evidence of uncharged conduct that is part of the same scheme and uses the same *modus operandi* as the charged offenses is admissible as intrinsic evidence outside the scope of Rule 404(b). United States v. U.S. Infrastructure, Inc., 576 F.3d 1195, 1210–11 (11th Cir.2009) (such evidence admissible if it "is linked in time and circumstances with the charged crime and concerns the context, motive or setup of the crime; or forms an integral part of the crime; or is necessary to complete the story of the crime"). Transactions "connected with the offenses charged have long been used to show a general pattern, the necessary criminal intent, or the guilty knowledge of the defendant." United States v. Muscatell, 42 F.3d 627, 631 (11th Cir. 1995).

The indictment charges that the defendant conspired with Co-Conspirator 1 to launder bribe proceeds received by the defendant in connection with his official position from 2010 to 2017. At trial, the government intends to introduce evidence that the defendant negotiated with an Odebrecht representative to receive millions of dollars in bribes so that the comptroller's office

4

would remove or not impose fines on Odebrecht. The government intends to present evidence that the defendant told the Odebrecht representative that Co-Conspirator 1 made the bribery funds disappear. Further, the government intends to introduce witnesses and evidence that Co-Conspirator 1 arranged for various foreign bank accounts to receive bribe proceeds from Odebrecht between 2013 and 2014 as part of the defendant's bribery scheme.

Furthermore, at trial, the government intends to introduce evidence that the defendant solicited a bribe from Ecuadorean Businessperson 1 in exchange for defendant's assistance in reobtaining contracts for Ecuadorean Businessperson 1 from an Ecuadorean state-owned insurance company. Ecuadorean Businessperson 1 will testify that the defendant directed Ecuadorean Businessperson 1 to coordinate with Co-Conspirator 1 to make a bribe payment for the defendant of approximately $500,000. The government intends to introduce evidence that Ecuadorean Businessperson 1 subsequently paid the bribe to a bank account as directed by Co-Conspirator 1 in December 2015.

Just as with the Odebrecht representative and Ecuadorean Businessperson 1, the scheme with Spanish Businessperson 1 involves the same *modus operandi*. In short, the defendant negotiated a bribe from a businessperson for the defendant's use of his government influence to assist the businessperson and directed Co-Conspirator 1 to coordinate receipt of the bribe proceeds. Moreover, the bribes and laundering occurred during the course of the charged conspiracy involving defendant and Co-Conspirator 1. Since the bribes paid by Spanish Businessperson 1 for the defendant are part of the same criminal laundering scheme, they should be admitted as intrinsic evidence. See United States v. McNair, 605 F.3d 1152, 1203-04 (11th Cir. 2010) (in bribery case, upholding admission of other contemporaneous bribes in the same period as inextricably intertwined); United States v. Ford, 784 F.3d 1386, 1394 (11th Cir. 2015) (in fraudulent tax refund

filing scheme, evidence of uncharged fraudulent tax returns that were filed as part of the scheme was "intrinsic evidence" and outside scope of Rule 404(b); see also Muscatell, 42 F.3d at 631 (in mortgage fraud scheme, upholding admission of evidence of prior mortgage fraud transactions that were part of the same series of transactions as intrinsic).   As in these cases, so too here.

***The Proposed Evidence Should Also Be Admissible as 404(b) Evidence***

In the alternative, the evidence should be admissible under Federal Rule of Evidence 404(b).  This rule provides that evidence of an uncharged "crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character."  Such evidence may be admissible for other purposes; such as, intent, knowledge, identity, proof of motive, opportunity, plan, or absence of mistake or accident. A defendant who enters a not guilty plea makes his intent to commit the act which he is charged a material issue and imposes a substantial burden on the Government to prove intent, which may be done by qualifying Rule 404(b) evidence.  United States v. Zapata, 139 F.3d 1355, 1358 (11th Cir. 1998).

Relevant extrinsic evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.  Fed. R. Evid. 403.  The key factors in determining whether to admit 404(b) evidence are the following: (1) whether defendant was likely to contest the issue of intent, (2) the overall similarity of the charged and extrinsic offenses, and (3) the temporal proximity between the charged and extrinsic evidence.  United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007).

Each of these factors in the case weighs in favor of admissibility. First, the defendant will almost certainly contest knowledge and intent in this matter by arguing that the defendant had no

6

knowledge of the payments or that the payments were legitimate transfers as opposed to bribes. The proposed evidence rebuts this argument that the defendant had no knowledge of payments to Co-Conspirator 1 as it shows that that the defendant directed Spanish Businessperson 1 to speak with Co-Conspirator 1 to coordinate receipt of illicit funds. Further, the nature of the email is consistent with an illicit transaction. Instead of asking for payment for the defendant, Co-Conspirator 1 conceals the recipient's name and asks for payment from Spanish Businessperson 1 for the "friend." Second, the 404(b) evidence is virtually identical to the charged conduct. Both involve the defendant receiving unauthorized payment in connection with his official position and funds laundered by Co-Conspirator 1. Third, there is temporal proximity as the specific bribes identified in the indictment occurred from 2010 to 2015 (Odebrecht: 2010 – 2015; Co-Conspirator 2: 2015). In this case, the bribes from Spanish Businessperson 1 also occur in 2015.

Because the proposed evidence is not being offered to show the defendant's character, but rather to show the defendant's knowledge and intent to launder bribery proceeds as well as absence of mistake, it should be admitted. See McNair, 605 F.3d at 1204 (upholding admission of evidence of similar, uncharged bribes in bribery case because evidence was "relevant to show corrupt intent"); United States v. Brown, 655 F.3d 1239, 1248 (11th Cir. 2011) (evidence of defendant's involvement with similar, uncharged fraudulent scheme was admissible to show defendant's conduct was intentional and not due to mistake; other schemes were similar to conduct charged and occurred less than year earlier).

For the foregoing reasons, the United States respectfully requests that the Court permit the introduction of evidence involving the defendant and Spanish Businessperson 1.

Respectfully submitted,

| | |
|---|---|
| MARKENZY LAPOINTE<br>UNITED STATES ATTORNEY | GLENN S. LEON<br>CHIEF, FRAUD SECTION<br>Criminal Division<br>U.S. Department of Justice |
| By: /s/ Michael N. Berger<br>Michael N. Berger<br>Assistant United States Attorney<br>Court No. A5501557<br>99 Northeast 4th Street<br>Miami, Florida 33132<br>(305) 961-9445<br>(305) 536-4699 (fax)<br>Michael.Berger2@usdoj.gov | By: /s/ Jil Simon<br>Jil Simon<br>Court No. A5502756<br>Alexander Kramer<br>Fraud Section, Criminal Division<br>1400 New York Ave. NW<br>Washington, DC 20005<br>Tel: (202) 514-3257<br>Jil.Simon@usdoj.gov |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed with the Court's CM/ECF system on September 25, 2023.

          By:    /s/ Michael N. Berger
                 Assistant United States Attorney