UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20114-KMW

UNITED STATES OF AMERICA

vs.

CARLOS RAMON POLIT FAGGIONI
_____/

### DEFENDANT'S UNOPPOSED MOTION
### TO TAKE RULE 15 DEPOSITIONS

Pursuant to Rule 15(a)(1) of the Federal Rules of Criminal Procedure, Defendant Carlos Polit moves the Court to authorize pre-trial depositions to preserve testimony of several foreign witnesses outside the subpoena power of the United States, most of whom cannot travel to the United States due to immigration status and lack of required visas.[1] With leave of Court, the parties are seeking to depose these witnesses in Ecuador the week of January 22, 2024. The government does not oppose.

---

[1] Separately, Polit reserves the right to seek leave to present live testimony at trial through two-way closed-circuit television, for those witnesses who are unable to travel to the United States. The government indicates it will oppose this request.

*United States v. Polit*
Case No. 22-CR-20114-KMW

# FACTUAL BACKGROUND

Polit is charged with money laundering offenses relating to foreign bribery. ECF#1. The Indictment alleges that the specified unlawful activity involved "an offense against a foreign nation, specifically Ecuador, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official." ECF#1:4, 8, 9.

Notably, the bribery allegations in the Indictment all took place in Ecuador and relate to Polit's role as the former Comptroller General of Ecuador. ECF#1 at ¶1. The Indictment alleges that as Comptroller, Polit had the power to initiate investigations, impose fines, and prepare reports relating to the misuse of public funds. *Id.* at ¶2. The Indictment alleges that Polit solicited bribes in Ecuador in connection with his role as Comptroller, and laundered the funds through Florida banks and real estate.

The Indictment alleges two schemes. In the Odebrecht Scheme, the Indictment alleges that Polit solicited payments from Odebrecht to "prevent the imposition of large fines on Odebrecht . . . relating to Odebrecht's construction projects in Ecuador." ECF#1 at 4. In the Seguros Sucre Scheme, the Indictment alleges that Polit solicited a payment "to assist Co-Conspirator 3 in obtaining

*United States v. Polit*
Case No. 22-CR-20114-KMW

contracts from Seguros Sucre." ECF#1 at ¶6. In 2018, Polit was tried in Ecuador *in abstentia* for the very allegations pled in the Indictment regarding the Odebrecht Scheme. The trial involved, almost exclusively, testimony by Jose Conceicao Santos, Odebrecht's former Ecuadorian representative.

The government has indicated that it intends to call Conceicao Santos and Co-Conspirator 3 as witnesses against Polit at trial. Polit proposes to depose six foreign witnesses to rebut the anticipated testimony of Conceicao Santos, and one witness to rebut the anticipated testimony of Co-Conspirator 3.

**The Anticipated Testimony of Conceicao Santos:**

Homeland Security interviewed Conceicao Santos pursuant to a non-prosecution agreement between Conceicao Santos and the DOJ. Conceicao Santos alleged that he paid Polit in connection with several Odebrecht projects. According to Conceicao Santos, Odebrecht agreed to build the San Francisco hydroelectric project in Ecuador. Allegedly, Conceicao Santos learned that the Ecuadorean government "planned to impose substantial fines (potentially exceeding $100 million) on Odebrecht related to" the San Francisco project. Conceicao Santos claims that Polit solicited $6 million in cash "to resolve potential fines for the San

*United States v. Polit*
Case No. 22-CR-20114-KMW

Francisco project" and that from 2010 through 2011, Santos delivered the $6 million to Polit's apartment.

During his interview with Homeland Security, Conceicao Santos said that he paid Polit for two reasons: (1) so that Polit would alter unfavorable audit reports and eliminate corresponding fines (in Spanish, "Glosas") already imposed by the Comptroller's Office against Odebrecht for the San Francisco project; and (2) to keep Odebrecht in good standing with the government of Ecuador. According to Conceicao Santos, Polit "reported that he could re-analyze" the Glosas for the San Francisco project and "Carlos Polit issued an opinion for the removal of the administrative disallowances" against Odebrecht for the San Francisco project. Conceicao Santos said that in exchange for additional payments, Polit issued audit reports favorable to Odebrecht relating to other projects.

**The Anticipated Testimony of Co-Conspirator 3:**

Co-Conspirator 3 (CC3) is the main government witness in connection with the Seguros Sucre alleged scheme. CC3 was an Ecuadorian re-insurance broker who alleges that he paid Polit $510,000 in exchange for Polit influencing Juan Ribas, then the Chairman of Seguros Sucre (the state-run insurance company), to reinstate CC3's contracts with Seguros Sucre. CC3 admits that Polit did not solicit any payment in

*United States v. Polit*
Case No. 22-CR-20114-KMW

exchange for his help. Instead, CC3 alleges that CC3 met with Witness 7, who demanded that CC3 pay Polit $500,000 for Polit's help, and pay Witness 7 $250,000.

Separately, CC3 alleges that Witness 1 is Polit's "right hand" and that CC3 received approximately $400,000 in cash from Polit and Witness 1 while in Witness 1's apartment.

### The Anticipated Testimony of Defense Foreign Witnesses:

Polit seeks to offer the testimony of seven foreign witnesses who reside in Ecuador and rebut the allegations made by Conceicao Santos and CC3.[2] The following table summarizes each of the foreign witnesses' personal knowledge and briefly summarizes some of their anticipated trial testimony:

---

[2] This Motion does not name the witnesses Polit seeks to depose to preserve the privacy and security of the witnesses until trial in this highly publicized case. The government is aware of the identity of the witnesses and agrees to the taking of their depositions. Upon the Court's request, Polit can file the identity of the witnesses under seal for the Court's review.

*United States v. Polit*
Case No. 22-CR-20114-KMW

| DEFENSE WITNESSES RE: ODEBRECHT SCHEME | SUMMARY OF TESTIMONY |
|---|---|
| Witness 1 | Witness 1 is anticipated to testify about the general authority Carlos Polit had as Comptroller. Witness 1 will testify that Polit had no authority to change or influence the outcome of the audit reports / Glosas. Witness 1 is anticipated to testify that "favorable" Glosas do not exist. Witness 1 is anticipated to testify that she never heard of Jose Conceicao Santos, never witnessed Polit meeting with or speaking to Conceicao Santos, and never saw or met Conceicao Santos. Witness 1 is also anticipated to testify as to Polit's character for truthfulness and being a law-abiding citizen.<br><br>Witness 1's testimony directly rebuts Conceicao Santos' claim that Conceicao Santos paid Polit in exchange for "favorable" Glosas for Odebrecht. Witness 1's testimony also rebuts Conceicao Santos' claim that Conceicao Santos paid Polit in exchange for Polit issuing an opinion favorable to Odebrecht that would result in the removal of Glosas already imposed, as Witness 1 will testify that as Comptroller, Polit did not have the power to influence the disposition of Glosas already imposed.<br><br>Witness 1 applied for a U.S. visa but it was denied. |
| Witness 2 | Witness 2 is anticipated to testify to the general responsibilities of being Comptroller and how she oversaw Polit's schedule and daily itinerary. Witness 2 is anticipated to testify that "favorable" Glosas do not exist. She is anticipated to testify that as far as she knows, Jose Conceicao Santos never visited the Comptroller's office, never called Polit's office line, and that to her knowledge, |

| | |
|---|---|
| | there were never any calendar or itinerary entries that reflected meetings between Polit and Conceicao Santos. Witness 2 is also anticipated to testify as to Polit's character for truthfulness and being a law-abiding citizen.<br><br>Witness 2 directly rebuts Conceicao Santos' claim that he bribed Polit for "favorable" Glosas.<br><br>Witness 2 does not have a U.S. visa. Witness 2 has applied for an appointment with the U.S. Consulate to obtain a visa but has been unable to confirm an appointment. |
| Witness 3 | Witness 3 is anticipated to testify that Polit never requested that she change any audit results or reports regarding Odebrecht or any other entities that were being audited by the Comptroller's office. She is also anticipated testify as to Polit's character for truthfulness and being a law-abiding citizen.<br><br>Witness 3 directly rebuts Conceicao Santos' claim that Polit was able to "issue opinions" to remove Glosas imposed against Odebrecht. Witness 3 rebuts Conceicao Santos' testimony that Glosas against Odebrecht or any other company were changed at the direction of Polit.<br><br>Witness 3 has a U.S. visa and is currently willing to travel to the United States to testify at the trial. |
| Witness 4 | Witness 4 is anticipated to testify that Polit never ordered an audit report to be changed or altered during his tenure at the Comptroller's office; he is anticipated to testify as to the procedure required to modify an audit report once it has been issued, and that such power is not under the purview of the Comptroller. Witness 4 also has personal |

|  | knowledge of the negotiations that led to Odebrecht's return to Ecuador, and is anticipated to testify that it was the Procurer General's Office, not the Comptroller's office, that had the power to override Glosas already imposed against Odebrecht relating to the San Francisco Project, which allowed for Odebrecht's return to Ecuador. Witness 4 is anticipated to also testify as to Polit's character for truthfulness and being a law-abiding citizen.<br><br>Witness 4 directly rebuts Conceicao Santos' claim that Polit was able to "issue opinions" to remove Glosas imposed against Odebrecht. Witness 4 rebuts Conceicao Santos' testimony that Glosas against Odebrecht were changed at the direction of Polit, or that Polit influenced the disposition of Glosas relating to the San Francisco Project.<br><br>Witness 4 does not have a U.S. visa but has an appointment with the U.S. Consulate to apply for a visa in January 2024. If Witness 4 receives his visa before the trial commences, he is currently willing to travel to the United States to testify at the trial. |
|---|---|
| Witness 5 | Witness 5 is anticipated to testify from personal knowledge that she never witnessed Polit attempt to influence the findings of any audits that she oversaw or was involved in. Witness 5 is also anticipated to testify about the power that the Comptroller holds in Ecuador, which does not include the power to change, alter, or influence audit reports, Glosas, or other official recommendations that the Comptroller's office issues after conducting a study or audit of public works projects. She is anticipated to testify regarding the technical and legal differences of the various reports that the |

|  | Comptroller's office issues, some of which can lead to Glosas with civil, administrative, or criminal penalties. She is anticipated to testify that the concept of a "favorable" Glosa does not exist. Witness 5 is also anticipated to testify as to Polit's character for truthfulness and being a law-abiding citizen.<br><br>Witness 5 rebuts Conceicao Santos' claim that he paid Polit for "favorable" Glosas. Witness 5 also rebuts Conceicao Santos' allegations about Polit influencing or changing Glosas imposed on Odebrecht during his tenure at the Comptroller's office.<br><br>Witness 5 does not have a U.S. visa. Witness 5 also has heart complications that bar her from traveling abroad if she did obtain a visa in time for trial. |
|---|---|
| Witness 6 | Witness 6 will testify that John Polit (Polit's son and alleged co-conspirator per the Indictment) owes a debt of more than $12.5 million to the El Juri family for the funds John Polit invested on behalf of Jorge El Juri. Witness 6 will testify that he never spoke with Carlos Polit about any loans until 2021, and that Carlos Polit never did any business with the El Juris. Witness 6 will testify that John Polit invested money given by El Juri into several real estate properties.<br><br>Witness 6 has a U.S. visa and is currently willing to travel to the United States to testify at the trial. |

.
.
.

*United States v. Polit*
Case No. 22-CR-20114-KMW

| DEFENSE WITNESS RE: SEGUROS SUCRE SCHEME | SUMMARY OF TESTIMONY |
|---|---|
| Witness 7 | CC3 alleges that Witness 7 solicited a bribe on behalf of Polit. Witness 7 is anticipated to testify that he never solicited any bribe from CC3, for himself or for Polit. Witness 7 is anticipated to testify that Witness 7 never spoke with CC3 about Polit assisting CC3 to regain reinsurance contracts from Seguros Sucre. Witness 7 is also anticipated to testify that he never received $250,000 (or any money at all) from CC3.<br><br>Witness 7's testimony rebuts CC3's entire bribery allegation.<br><br>Witness 7 has a U.S. visa but is unwilling to travel to the United States due to health concerns. |

Each of these witnesses directly rebut Conceicao Santos and CC3 and undermine the government's theory of prosecution.

## MEMORANDUM OF LAW

A natural consequence of prosecuting conduct that happened exclusively overseas is that most of the evidence—specifically the relevant witnesses who have personal knowledge of what transpired—is located overseas. Most of the defense witnesses who can provide testimony about Polit's role as Comptroller of Ecuador and refute the allegations against him, including Witnesses 1 through 7, are



Ecuadorian nationals who reside in Ecuador. Most of the defense witnesses are either unable—because of lack of required visas—or unwilling to travel to the United States to present testimony. Accordingly, Polit seeks to preserve their testimony through depositions pursuant to Rule 15(a)(1) of the Federal Rules of Criminal Procedure.

Rule 15(a)(1) authorizes the deposition of a prospective trial witness to preserve testimony for trial in "exceptional circumstances and in the interests of justice." Fed. R. Crim. P. 15(a)(1). "Such circumstances exist when (1) the witness is unavailable to testify at trial, (2) their testimony is material, and (3) countervailing factors do not 'render taking the deposition[s] unjust to the nonmoving party.'" *Khan v. United States*, 928 F.3d 1264, 1269 (11th Cir. 2019) (citation omitted). "[O]rdinarily, exceptional circumstances exist within the meaning of Rule 15(a) when the prospective deponent is unavailable for trial and the absence of his or her testimony would result in an injustice." *United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993).

**A. The Witnesses are Unavailable to Testify at Polit's Trial.**

A witness is unavailable under Rule 15(a)(1) when a "substantial likelihood exists that the proposed deponent will not testify [physically] at trial." *Id.* at 1553.

*United States v. Polit*
Case No. 22-CR-20114-KMW

"A 'substantial likelihood of unavailability' exists when the proposed deponent is beyond the subpoena powers of the United States and has indicated his unwillingness to testify at trial." *United States v. Cordoba*, No. 12-20157-CR, 2012 WL 3597416, at *4 (S.D. Fla. Aug. 20, 2012) (quoting *United States v. Ramos*, 45 F.3d 1519, 1522–23 (11th Cir. 1995)). And even when a potential witness *is* willing to testify, he may nonetheless be unavailable since "he cannot be subpoenaed upon changing his mind." *Id.* This showing can be satisfied "simply through in-court representations by counsel" or affidavits from the witnesses. *United States v. Salamey*, No. 8:19-CR-298-VMC-SPF, 2022 WL 35992, at *2 (M.D. Fla. Jan. 4, 2022) (citing *Drogoul*, 1 F.3d at 1553).

All of the defense foreign witnesses are Ecuadorian nationals who reside in Ecuador and are, thus, outside the subpoena power of the United States:

**Witness 1:** Witness 1 resides in Ecuador. Witness 1 does not have a U.S. visa. Witness 1 applied for a U.S. visa and her application was recently denied.

**Witness 2:** Witness 2 resides in Ecuador. Witness 2 does not have a U.S. visa but has sought an appointment with the U.S. Consulate; she has been unable to schedule a confirmed date to apply for a visa.

**Witness 3:** Witness 3 has a U.S. visa but resides in Ecuador.

BlackSrebnick
CIVIL | CRIMINAL

www.royblack.com | 201 S. Biscayne Boulevard Suite 1300 Miami, FL 33131 | *p* 305.371.6421

**Witness 4:** Witness 4 resides in Ecuador. Witness 4 does not have a U.S. visa but has a scheduled appointment with the U.S. Consulate to apply for a visa in January 2024.

**Witness 5:** Witness 5 resides in Ecuador. Witness 5 does not have a U.S. visa. She is unwilling to travel outside of Ecuador due to her heart health and potential health risks that accompany long distance travel.

**Witness 6:** Witness 6 has a U.S. visa but resides in Ecuador.

**Witness 7:** Witness 7 resides in Ecuador. Witness 7 has a U.S. visa but is unwilling to travel to the U.S. because of serious health concerns. Witness 7 is also Mayor of a city in Ecuador and his responsibilities as Mayor prevent him from travelling to the U.S. for several days.

All foreign witnesses are unavailable under Rule 15(a)(1).

### B. The Testimony of the Witnesses is Material to Polit's Defense.

Polit does not have to establish that each potential deponent is "a major witness" for his defense, simply that their testimony is "material" to his defense. *United States v. Tovar-Montoya*, 2015 WL 12978154, at *2 (M.D. Fla. Apr. 2, 2015). Materiality of the testimony is established "by proffering 'what the testimony will be.'" *Id.* (quoting *Ramos*, 45 F.3d at 1523-24). Each of the foreign witnesses sought to be deposed are not only material, but necessary to Polit's defense.[3]

---

[3] *See supra* table summarizing witness testimony.



*United States v. Polit*
Case No. 22-CR-20114-KMW

The government will elicit testimony from Conceicao Santos, who contends that he paid Polit bribes to issue "favorable" Glosas. Witness 1, Witness 2, and Witness 5 are anticipated to testify from personal knowledge based on their roles and work assignments that "favorable" Glosas do not exist. Conceicao Santos alleges that Polit had the power to "re-analyze" Glosas issued by the Comptroller's office and could issue "an opinion for the removal of the administrative" Glosas imposed against Odebrecht. Witness 1, Witness 3, and Witness 4 are anticipated to testify about the procedure of "removing" Glosas and that Polit was unable to influence the outcome of that process—Polit could not simply "issue an opinion" for the removal of Glosas already published. All three witnesses are anticipated to testify that Conceicao Santos' alleged reasons for paying Polit were not feasible in light of Polit's role at the Comptroller's office.

Moreover, Witness 3, Witness 4, and Witness 5 are anticipated to testify that Polit never asked them to change any Glosas imposed on Odebrecht or any other company. Witness 4 is anticipated to testify that it was the Procurer General's Office, not the Comptroller's office, that had the power to override Glosas against Odebrecht relating to the San Francisco Project. And Witness 2 is anticipated to testify that as far as she knows, Conceicao Santos never visited the Comptroller's

office, never called Polit's office line, and that there were no calendar entries that reflected meetings between Polit and Conceicao Santos. Witness 1, Witness 2, Witness 3, Witness 4, and Witness 5 are all anticipated to testify as to Polit's good character for truthfulness and being a law-abiding citizen. *See* Pattern Crim. Jury Instr. 11th Cir. (2020) ("Evidence of a defendant's character traits may create a reasonable doubt.").

As to the Seguros Sucre alleged scheme, the government's main witness, CC3, claims that Witness 7 solicited a bribe from him on Polit's behalf to re-obtain CC3's re-insurance contracts with Seguros Sucre. But Witness 7 denies ever soliciting a bribe on Polit's behalf, denies receiving a bribe from CC3, and denies ever having a conversation with CC3 about obtaining his insurance contracts with Seguros Sucre.

Lastly, the Indictment alleges a money laundering scheme involving multiple real estate purchases in South Florida. The government's theory is that the properties were purchased with the proceeds of the Odebrecht and Seguros Sucre Schemes. Witness 6, however, will testify that Polit's son, John Polit, owes more than $12.5 million to the El Juri Group, a wealthy family in Ecuador not accused of any wrongdoing in this case, and that a portion of the $12.5 million was used to purchase

some of the real estate that the government contends was purchased with the proceeds of alleged bribes to Polit.

The testimony of these defense witnesses is material to Polit's defense, and their deposition should be permitted.

### C. There are no Countervailing Factors that Render Taking Depositions Unjust to the Government.

The government is not opposing Polit's motion, so this factor is met. In any event, "[w]hen a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve the testimony . . . absent significant countervailing factors which would render the taking of the deposition unjust." *Drogoul*, 1 F.3d at 1552. In *Ramos*, the Eleventh Circuit rejected the government's argument that the following countervailing factors rendered the requested Rule 15 deposition of witness Yepez unjust:

> Yepez's testimony was suspect because he cannot be sanctioned for perjury; because the defense had neither taken nor scheduled the deposition when the magistrate vacated the order five days before trial, it was unclear the deposition could actually be taken; deposing a suspected drug dealer at a place and time arranged by an undisclosed third party in Medellin, Colombia, posed a serious threat to the prosecutor's safety; because the defense never detailed what Yepez's testimony would be, the testimony may have been irrelevant, cumulative, or inadmissible.

*Id.* at 1523. The Eleventh Circuit found "that none of these factors, whether taken singly or together, render[ed] taking the deposition unjust." *Id.*

Likewise, in Polit's case, there are no countervailing factors to preclude taking the deposition of Witnesses 1-7. The fact that the witnesses live in Ecuador and cannot be immediately sanctioned for perjury does not render the depositions unjust. *Ramos*, 45 F.3d at 1523-24.

## CONCLUSION

According, for all these reasons, Polit respectfully requests leave of Court to take Rule 15 depositions of Witnesses 1 through 7 in Ecuador.

## CERTIFICATE OF CONFERRAL

Undersigned conferred with the government, who does not oppose the Rule 15 depositions of Witnesses 1-7. With leave of Court, the parties are seeking to depose these witnesses in Ecuador the week of January 22, 2024.

Respectfully submitted,

**BLACK SREBNICK**
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Tel. (305) 371-6421

*/s/ Howard Srebnick*
HOWARD SREBNICK, ESQ.

**BlackSrebnick**
CIVIL | CRIMINAL

*United States v. Polit*  
Case No. 22-CR-20114-KMW

        Florida Bar No. 919063  
        E-mail: HSrebnick@RoyBlack.com

*/s/ Jackie Perczek*  
JACKIE PERCZEK, ESQ.  
Florida Bar No. 0042201  
JPerczek@RoyBlack.com

**COFFEY BURLINGTON, P.L.**  
*Permanent Counsel for Carlos Polit*  
2601 South Bayshore Drive, Penthouse  
Miami, Florida 33133  
Tel: 305-858-2900

*/s/ Fernando Tamayo*  
Fernando Tamayo, Fla. Bar No. 28530  
ftamayo@coffeyburlington.com  
lmaltz@coffeyburlington.com  
service@coffeyburlington.com

