UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20114-KMW

UNITED STATES OF AMERICA

vs.

CARLOS RAMON POLIT FAGGIONI,

      **Defendant.**

_____/

### UNITED STATES' NOTICE OF INTENT TO USE EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States of America, by and through undersigned counsel, hereby provides notice to the defendant of its intent to introduce evidence of additional crimes, wrongs or acts during its case-in-chief pursuant to Rule 404(b) of the Federal Rules of Evidence, and moves the Court to admit the proffered evidence. The government believes that the proposed evidence is intrinsic or inextricably intertwined, but files this 404(b) notice and motion in an abundance of caution.

The defendant is charged in a six-count indictment with conspiracy to commit money laundering (18 U.S.C. § 1956(h)), concealment money laundering (18 U.S.C. § 1956(a)), and engaging in monetary transactions in criminally derived property (18 U.S.C. § 1957). The indictment alleges that, from 2010 to 2017, the defendant, as Comptroller General of Ecuador, engaged in a scheme to enrich himself by receiving bribes and laundering the bribes into South Florida with the assistance of Co-Conspirator 1. The indictment alleges that defendant and Co-Conspirator 1 laundered bribes that the defendant received from: (a) an Odebrecht representative for the defendant's assistance in preventing the imposition of large fines on Odebrecht's projects and (b) an Ecuadorian businessperson ("Ecuadorian Businessperson 1") for defendant's assistance

in reobtaining contracts for Ecuadorian Businessperson 1 with Ecuador's state-owned insurance company, Seguros Sucre.

The government intends to introduce testimony from Juan Ribas Domenech ("Ribas") related to the charged money laundering and bribery scheme regarding Ecuadorian Businessperson 1 paying bribes to the defendant in return for his assistance in reobtaining contracts for Ecuadorian Businessperson 1 from Seguros Sucre. Ribas, the Chairman of Seguros Sucre during the relevant period, is expected to testify that after removing contracts from Ecuadorian Businessperson 1, he was the subject of multiple audits. Ribas is further expected to testify that he was informed that if he gave back the contracts to Ecuadorian Businessperson 1, the audits would go away, which is what happened after he re-issued the contracts to benefit Ecuadorian Businessperson 1.

The government also seeks to introduce evidence about a scheme by the defendant to receive bribes from the owners of an intermediary company, ("Intermediary Company"), for directing Ribas to provide re-insurance business to a London based reinsurance company that used Intermediary Company as its Ecuadorian intermediary. The payment of the bribe was to be collected by co-conspirator 1.

Ribas is expected to testify that in approximately 2016, he was instructed by the defendant to direct reinsurance business for a state insured contract to a London-based reinsurance company that used Intermediary Company as its Ecuadorian intermediary. Ribas will also testify that shortly thereafter, a representative from Intermediary Company introduced Ribas to co-conspirator 1 at a meeting in Miami, Florida. During this meeting, co-conspirator 1 informed Ribas that he was aware business had been directed to Intermediary Company and that he was helping his father collect commissions. Co-conspirator 1 instructed Ribas to inform him once Seguros Sucre paid the premiums on this reinsurance business so that he could deal with Intermediary Company.

Later, co-conspirator 1 called Ribas to meet with him at the Comptroller's office in Guayaquil, Ecuador. During this meeting, co-conspirator 1 asked Ribas to confirm whether Seguros Sucre paid the premiums on the Intermediary Company related reinsurance business.

The above exchange is consistent with the *modus operandi* of the defendant's bribery and money laundering operation. Specifically, the defendant negotiated directly with a businessperson to receive a bribe on a matter where the defendant had influence based on his official Ecuadorian government role. The defendant then arranged for Co-Conspirator 1 to launder the bribe proceeds from the bribe payer.

**Analysis**

***The Proposed Evidence Should Be Admitted as Intrinsic Evidence***

Evidence of uncharged conduct that is part of the same scheme and uses the same *modus operandi* as the charged offenses is admissible as intrinsic evidence outside the scope of Rule 404(b). United States v. U.S. Infrastructure, Inc., 576 F.3d 1195, 1210–11 (11th Cir.2009) (such evidence admissible if it "is linked in time and circumstances with the charged crime and concerns the context, motive or setup of the crime; or forms an integral part of the crime; or is necessary to complete the story of the crime"). Transactions "connected with the offenses charged have long been used to show a general pattern, the necessary criminal intent, or the guilty knowledge of the defendant." United States v. Muscatell, 42 F.3d 627, 631 (11th Cir. 1995).

The indictment charges that the defendant conspired with Co-Conspirator 1 to launder bribe proceeds received by the defendant in connection with his official position from 2010 to 2017. At trial, the government intends to introduce evidence that the defendant negotiated with an Odebrecht representative to receive millions of dollars in bribes so that the comptroller's office would remove or not impose fines on Odebrecht. The government intends to present evidence that

the defendant told the Odebrecht representative that Co-Conspirator 1 made the bribery funds disappear. Further, the government intends to introduce witnesses and evidence that Co-Conspirator 1 arranged for various foreign bank accounts to receive bribe proceeds from Odebrecht between 2013 and 2014 as part of the defendant's bribery scheme.

Furthermore, at trial, the government intends to introduce evidence that the defendant solicited a bribe from Ecuadorian Businessperson 1 in exchange for defendant's assistance in reobtaining contracts for Ecuadorian Businessperson 1 from an Ecuadorian state-owned insurance company. Ecuadorian Businessperson 1 will testify that the defendant directed Ecuadorian Businessperson 1 to coordinate with Co-Conspirator 1 to make a bribe payment for the defendant of approximately $500,000. The government intends to introduce evidence that Ecuadorian Businessperson 1 subsequently paid the bribe to a bank account as directed by Co-Conspirator 1 in December 2015.

Just as with the Odebrecht representative and Ecuadorian Businessperson 1, the scheme with Intermediary Company and Ribas involves the same *modus operandi*. The defendant directed Ribas, the chairman of the same Ecuadorian state-owned insurance company involved in the bribery scheme involving Ecuadorian Businessman 1, to direct reinsurance business to a specific entity. Afterwards, co-conspirator 1 met with Ribas related to this business and informed him he was involved in helping with the defendant's commissions. Essentially, co-conspirator 1 wanted to know when Intermediary Company received payment on the contract the defendant directed be awarded for their benefit so that co-conspirator 1 could collect a bribe payment for the defendant. Further, this occurred during the course of the charged conspiracy involving the defendant and co-conspirator 1. Since this bribe scheme involves the same people and is part of the same charged criminal money laundering scheme, it should be admitted as intrinsic evidence. See United States

4

v. McNair, 605 F.3d 1152, 1203-04 (11th Cir. 2010) (in bribery case, upholding admission of other contemporaneous bribes in the same period as inextricably intertwined); United States v. Ford, 784 F.3d 1386, 1394 (11th Cir. 2015) (in fraudulent tax refund filing scheme, evidence of uncharged fraudulent tax returns that were filed as part of the scheme was "intrinsic evidence" and outside scope of Rule 404(b); see also Muscatell, 42 F.3d at 631 (in mortgage fraud scheme, upholding admission of evidence of prior mortgage fraud transactions that were part of the same series of transactions as intrinsic).   As in these cases, so too here.

***In the Alternative, the Proposed Evidence Should Be Admitted as 404(b) Evidence***

In the alternative, the evidence should be admitted under Federal Rule of Evidence 404(b). This rule provides that evidence of an uncharged "crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character."  Such evidence may be admissible for other purposes; such as, intent, knowledge, identity, proof of motive, opportunity, plan, or absence of mistake or accident.  A defendant who enters a not guilty plea makes his intent to commit the act which he is charged a material issue and imposes a substantial burden on the Government to prove intent, which may be done by qualifying Rule 404(b) evidence.  United States v. Zapata, 139 F.3d 1355, 1358 (11th Cir. 1998).

Relevant extrinsic evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.  Fed. R. Evid. 403.  The key factors in determining whether to admit 404(b) evidence are the following: (1) whether defendant was likely to contest the issue of intent, (2) the overall similarity of the charged and extrinsic offenses,

and (3) the temporal proximity between the charged and extrinsic evidence. United States v. Edouard, 485 F.3d 1324, 1345 (11th Cir. 2007).

Each of these factors in the case weighs in favor of admissibility. First, the defendant will almost certainly contest knowledge and intent in this matter by arguing that the defendant had no knowledge of the payments or that the payments were legitimate transfers as opposed to bribes. The proposed evidence rebuts this argument that the defendant and co-conspirator 1 were not acting in concert. The evidence shows that co-conspirator 1 was knowledgeable about contracts the defendant had influenced and was involved in obtaining commissions related to those contracts. Additionally, co-conspirator 1 used the office of the defendant to follow up with Ribas regarding this scheme. Second, the 404(b) evidence is virtually identical to the charged conduct. Both involve the defendant receiving unauthorized payment in connection with his official position that are laundered by Co-Conspirator 1. Third, there is temporal proximity as the specific bribes identified in the indictment occurred from 2010 to 2015 (Odebrecht: 2010 – 2015; Co-Conspirator 2: 2015) and the money laundering conspiracy occurred from 2010 to 2017. In this case, the bribe scheme related to Ribas and Intermediary Company occurred in 2016. Because the proposed evidence is not being offered to show the defendant's character, but rather to show the defendant's knowledge and intent to launder bribery proceeds as well as absence of mistake, it should be admitted. See Mcnair, 605 F.3d at 1204 (upholding admission of evidence of similar, uncharged bribes in bribery case because evidence was "relevant to show corrupt intent"); United States v. Brown, 655 F.3d 1239, 1248 (11th Cir. 2011) (evidence of defendant's involvement with similar, uncharged fraudulent scheme was admissible to show defendant's conduct was intentional and not due to mistake; other schemes were similar to conduct charged and occurred less than year earlier).

6

For the foregoing reasons, the United States respectfully requests that the Court permit the introduction of evidence involving the defendant and Ribas.

Respectfully submitted,

| MARKENZY LAPOINTE | GLENN S. LEON |
|---|---|
| UNITED STATES ATTORNEY | CHIEF, FRAUD SECTION |
| | Criminal Division |
| | U.S. Department of Justice |

By: s/ Michael N. Berger
Michael N. Berger
Assistant United States Attorney
Court No. A5501557
99 Northeast 4th Street
Miami, Florida 33132
(305) 961-9445
Michael.Berger2@usdoj.gov

By: s/ Alexander Kramer
Jil Simon
Trial Attorney
Alexander Kramer
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice
Court ID No. A5502240
1400 New York Ave. NW
Washington, DC 20005
Tel: (202) 768-1919
Email: Alexander.Kramer@usdoj.gov