UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20114-KMW

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

CARLOS RAMON POLIT FAGGIONI,

       Defendant.
_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO [ECF#123]
GOVERNMENT'S TRIAL BRIEF AND MEMORANDUM IN SUPPORT
OF GOVERNMENT'S OMNIBUS MOTION *IN LIMINE***

Defendant Carlos Ramon Polit Faggioni ("Polit") submits this response in opposition to the Government's Trial Brief and Memorandum in Support of Government's Omnibus Motion *in Limine* to admit Polit and his son John Polit's Ecuadorian convictions under Federal Rule of Evidence 609. ECF#123.

**INTRODUCTION**

In a six-count indictment, Polit is charged with one count of conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h), three counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and two counts of engaging in transactions in criminally derived property in violation of 18 U.S.C. § 1957. ECF#1. Each count requires proof of a financial transaction that involved the

1

proceeds of a specified unlawful activity. As the government states, the "specified unlawful activity" for each count is "an offense against a foreign nation, specifically Ecuador, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official." ECF#1 at 8.

In Ecuador, Polit was previously convicted of the "specified unlawful activity" that is an element of all six counts. In 2018, the Supreme Court of Justice in Ecuador found him guilty of *concusión*—which the government describes as "demand-side bribery" and extortion by a public official—in violation of Article 264 of the Ecuadorian Comprehensive Organic Penal Code, and in 2020, the Tribunal Penal de la Corte Nacional issued its decision affirming the conviction. *See* ECF#123 at 30.

Should Polit or his son John Polit—who has not been charged by the United States—exercise his constitutional right to testify in Polit's defense, the government has moved *in limine* to admit copies of their convictions, and the decisions affirming the convictions, as impeachment evidence under FRE 609(a)(2). ECF#123 at 29. The government also purports to introduce Polit's conviction even if he does not take the stand, but simply elicits testimony from any witness regarding Polit's reputation for truthfulness or honesty. *Id.* at 31 n.14.

# **LEGAL ARGUMENT**

Polit's Ecuadorian conviction is inadmissible under Fed. R. Evid. 609 because it is a conviction for the same offense, is far more prejudicial than probative, and because the Ecuadorian judicial process has been widely recognized by United States courts, the United States government and international observers to be corrupted, unreliable and politicized. Additionally, John Polit's conviction cannot be introduced under any circumstances because it was overturned on appeal by the Ecuadorian Supreme Court.

**A. Carlos Polit's Conviction is Inadmissible Under Rule 609 Because it is Not a Prior Crime.**

Rule 609(a) of the Federal Rules of Evidence permits an "attack upon the credibility of a witness by prior conviction only if the prior crime involved dishonesty or false statement." Fed. R. Evid. 609 (Advisory Committee Notes). This rule "expresses the idea that some individuals who are found to have been dishonest in other contexts are presumed to be more prone to perjury than others." *Walden v. Georgia-Pac. Corp., 126 F.3d 506*, 523 (3d Cir. 1997) (reviewing Rule 609's legislative history).

Far from being a prior conviction for a past crime showing Polit has been "dishonest in other contexts," the government seeks to impeach him with a conviction for the <u>same</u> "specified unlawful activity" that, by its own admission, is an element of all six offenses for which is on trial in this court.

3

In support of its motion, the government relies on *United States v. Rodarte* where the "defendant's prior Mexican conviction for a similar offense . . . was introduced in rebuttal." 596 F.2d 141, 146 (5th Cir. 1979). Unlike *Rodarte*, however, Polit's Ecuadorian conviction is not a prior conviction for a similar offense, but a conviction for the <u>exact same activity</u> for which he will stand trial in this case.

In fact, the government does not cite a single case where a defendant was impeached under Rule 609 with a conviction for the same conduct for which he will stand trial. Just the opposite, it is so commonly understood that the prior conviction must be a prior crime that courts use the two terms interchangeably. *See e.g.*, *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir. 1976) (when deciding whether to admit a prior conviction under Rule 609, "some of the factors which the judge should take into account in making his determination [include] . . . (1) The impeachment value of the *prior crime*.") (Emphasis added).

Simply put, Polit's prior conviction is not a prior crime. It is the same alleged crime, involving the same alleged facts as here. Moreover, *Rodarte's* Mexican conviction was not introduced as impeachment evidence under Rule 609; it was evidence of an extrinsic offense that was introduced on rebuttal under Rule 404(b). *Id.* Polit's Ecuadorian conviction for the same conduct he is on trial for is inadmissible under Rule 609.

### B. Polit's Conviction is Inadmissible Because Evidence of the Same Offense is More Prejudicial than Probative.

Even if Polit's Ecuadorian conviction met the basic elements for admissibility under Rule 609, which it does not, it would still be inadmissible because the prejudicial effect of admitting his conviction for the same offense outweighs any probative value it may have.

A prior criminal conviction for a crime punishable by death or imprisonment of more than one year is inadmissible "in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1).

When balancing evidence of a criminal conviction under Rule 403, however, "admission of evidence of a similar offense often does little to impeach the credibility of a testifying defendant while undoubtedly prejudicing him. The jury, despite limiting instructions, can hardly avoid drawing the inference that the past conviction suggests some probability that defendant committed the similar offense for which he is currently charged." *United States v. Beahm*, 664 F.2d 414, 418–19 (4th Cir. 1981) (footnote omitted); *see also United States v. Sanders*, 964 F.2d 295, 297 (4th Cir. 1992) (defendant's prior convictions for assault and possession of contraband were extremely prejudicial, and inadmissible, when defendant was on trial for assault with a dangerous weapon and possession of contraband).

"The generally accepted view, therefore, is that evidence of similar offenses for impeachment purposes under Rule 609 should be admitted sparingly if at all." *Id.* at 419. If a conviction for a similar offense is too prejudicial to admit, Polit's conviction for the *same* offense is undoubtedly inadmissible.

There is little doubt that it would be reversible error for a trial judge to communicate to the jury her personal opinion that the defendant is guilty of the conduct (accepting bribes) alleged in the instant indictment. See Eleventh Circuit Pattern Jury Instruction in Criminal Cases B4 ("You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts."). It would likewise be error to permit three Ecuadorean judges to offer their expert opinions (based on their perceptions as spectators at the Ecuador trial) that Polit is guilty of that same conduct—precisely what the government seeks to do by offering the "prior" conviction.

### C. Polit's Conviction is Inadmissible Because the Ecuador Judiciary has Been Repeatedly Cited as Lacking Independence and Depriving Defendants of Due Process and other Constitutional Rights.

Foreign convictions are only equal to a domestic conviction if "the procedural protections necessary for fundamental fairness are observed by the foreign

jurisdiction." *Rodarte*, 596 F.2d at 146; *see also United States v. Wilson*, 556 F.2d 1177, 1178 (4th Cir. 1977).

When "the opponent has provided a specific basis for questioning the trustworthiness of the conviction, the proponent should be expected to demonstrate that the foreign legal system afforded the procedural protections necessary for fundamental fairness." *Starski v. Kirzhnev*, 2011 WL 923499, at *7 (D. Mass. Mar. 15, 2011).

In *Starski*, for instance, the trial judge was "unwilling to admit evidence of [a Russian] conviction under Rule 609(a)" after the defendant challenged the due process that was afforded him during the Russian proceeding because given "recent criticisms of the Russian criminal justice system, I cannot find . . . that any of the Russian convictions were fundamentally fair." *Id.* at *6.

The corruption of the Ecuadorian judiciary has been widely recognized by United States courts. For example, in *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 609–17 (S.D.N.Y. 2014), *aff'd,* 833 F.3d 74 (2d Cir. 2016), the United States Federal Court for the Southern District of New York issued a written opinion stating the following:

> Vladimiro Álvarez Grau testified credibly at trial regarding Ecuador's political, governmental, and legal situation in recent years, the undue influence of the executive branch over the judiciary, and his conclusion that the Ecuadorian judiciary 'does not operate impartially, with integrity and fairness in the application of the law and the administration of justice.' . . . The State Department's Human Rights

7

> Reports indicate also that Ecuadorian judges sometimes decide cases based on substantial outside pressures, especially in cases of interest to the government. The Ecuadorian decisions therefore are not entitled to recognition here . . . In sum, this Court finds that Ecuador, at no time relevant to this case, provided impartial tribunals or procedures compatible with due process of law.

International observers have noted that Ecuador's judiciary lacks judicial independence with "corruption, inefficiency, and political influence hav[ing] plagued the Ecuadorian judiciary for many years."[1] In 2018, Human Rights Watch published an article stating that:

> Evidence indicates that high-level officials of former President Rafael Correa's administration and the Council of the Judiciary have interfered in the resolution of cases that touched on government interests, as well as in the appointment and removal of judges… Human Rights Watch conducted research in Ecuador in November 2017 to assess levels of judicial independence in the country, as follow-up to a 2014 report documenting how judicial independence had been seriously undermined during [former president of the Judiciary Council] Gustavo Jalk's tenure, who remains in office . . . Ecuador's Organic Code of the Judicial Function allows the Judiciary Council to suspend or remove justice officials, including judges, for acting with "criminal intent, evident negligence or inexcusable error." Between 2013 and August 2017, 145 judges were suspended or removed for committing "inexcusable errors," according to the council. These laws that allow the removal of judges for legal errors, expose them to political pressure and undermine judicial independence.[2]

---

[1] Human Rights Watch, *World Report 2012: Rights Trends In World Report 2012: Ecuador (2012)*, https://www.hrw.org/world-report/2012/country-chapters/ecuador.

[2] Human Rights Watch, *Ecuador: Political Interference in the Judiciary,* https://www.hrw.org/news/2018/04/20/ecuador-political-interference-judiciary

In a separate article, *Human Rights Watch* also stated in 2018 that, even after President Correa left office, the judiciary was still highly susceptible to political interference:

> The legal framework that allowed for political interference in the judiciary under President Correa remains in place. Ecuador's Organic Code on Judicial Function allows the Judiciary Council to suspend or remove justice officials, including judges, for acting with "criminal intent, evident negligence or inexcusable error". Between 2013 and August 2017, 145 judges were suspended or removed for committing "inexcusable errors", according to the council. This broad rule allows for the removal of judges for legal errors, and exposes them to political pressure and undermines judicial independence.

*Report on Ecuador's Events of 2018.*[3]

In 2014, the United States Department of State stated that the greatest "human rights abuses" plaguing Ecuador were: "lack of independence in the judicial sector; restrictions on freedom of speech, press, and association; and corruption."[4] The United States government complained of Ecuador's "[l]engthy and complicated judicial procedures; corruption and poor training of police, prosecutors, public defenders and judges; and general inefficiency."[5] Although the Ecuadorian "constitution provides for an independent judiciary, outside pressure and corruption

---

[3] https://www.hrw.org/world-report/2018/country-chapters/ecuador#:~:text=Ecuador%20still%20faces%20serious%20human,access%20to%20reproductive%20health%20care

[4] Ecuador 2014 Human Rights Report, Country Reports on Human Rights Practices for 2014, UNITED STATES DEPARTMENT OF STATE, BUREAU OF DEMOCRACY, HUMAN RIGHTS AND LABOR (2014), https://www.state.gov/documents/organization/236898.pdf (last visited Sept. 27, 2018).

impair[] the judiciary process."[6] This is because "[j]udges reached decisions based on media influence," "political and economic pressures where the government expressed interest," and jurist's receipt of "bribes for favorable decisions and faster resolution of legal cases."[7] In fact, the U.S. Department of State recognized numerous "credible reports that the outcome of many trials appeared already predetermined."[8]

The U.S. Department of State is not alone in its recognition of Ecuador's corruption. In December 2015, U.S. Senator Patrick Leahy stated on the floor of the Senate that, "Ecuador is a country where judicial independence is seriously compromised." That fact "has been well documented by the Department of State, the United Nations, and human rights organizations."[9]

Critically, instead of being tried by a jury, Polit was tried *in absentia* by three members of Ecuador's politicized judiciary, none of whom can confidently be considered un-biased factfinders. Rather, according to the U.S. Department of State, U.S. Federal Courts and international watchdogs, many judges who sit in judgment

---

[6] *See id,* at 10.

[7] *See id.*

[8] *See id.*

[9] *See* Statement of Senator Patrick Leahy On Lourdes Tiban, U.S. SENATOR PATRICK LEAHY OF VERMONT (2015), https://www.leahy.senate.gov/press/statement-of-senator-patrick-leahy-on-lourdes-tiban (last visited Aug 27, 2018).

in Ecuadorian criminal cases are under political pressure to resolve cases in manners that satisfy the executive branch of Ecuador's government, and are susceptible to many outside influences.

Considering that Carlos Polit was a high-ranking government official, and his case was the subject of intense media coverage in Ecuador, it is easy to infer that his case may have been decided by biased, non-independent individuals who feared reprisal from the executive branch if they did not convict him. This stands in stark contrast to the United States' criminal justice system, in which an impartial jury of peers, who are not subject to governmental pressure or influence, determine the culpability of criminal defendants.

Simply put, the Ecuadorian criminal justice system is at best, unreliable, and at worst, corrupt and controlled by Ecuador's executive branch, and Carlos Polit's Ecuador conviction (of the same alleged acts based on the same alleged facts) should be prohibited from being introduced into evidence in this trial under any circumstances.

For all these reasons, the Court should exclude the government's request to admit Polit's, and his son's convictions in Ecuador under Rule 609.

Respectfully submitted,

**COFFEY BURLINGTON, P.L.**
*Permanent Counsel for Carlos Polit*
2601 South Bayshore Drive, Penthouse
Miami, Florida 33133
Tel.   (305) 858-2900

By:  */s/ Fernando Tamayo*
Fernando Tamayo, Fla. Bar No. 28530
Kendall Coffey, Fla. Bar No. 259861
ftamayo@coffeyburlington.com
kcoffey@coffeyburlington.com
lmaltz@coffeyburlington.com
service@coffeyburlington.com

-and-

**BLACK SREBNICK**
*Trial Counsel for Carlos Polit*
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Tel. (305) 371-6421

*/s/ Howard Srebnick*
HOWARD SREBNICK, ESQ.
Florida Bar No. 919063
E-mail: HSrebnick@RoyBlack.com

*/s/ Jackie Perczek*
JACKIE PERCZEK, ESQ.
Florida Bar No. 0042201
JPerczek@RoyBlack.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on March 22, 2024, on all counsel or parties of record on the Service List below.

| Service List ||
|---|---|
| Alexander Kramer, Trial Attorney<br>Jill Simon, Trial Attorney<br>Lindita V. Ciko Torza, Trial Attorney<br>Criminal Division, Fraud Section<br>Lorinda Laryea<br>Acting Chief, Fraud Section<br>Criminal Division<br>U.S. Department of Justice<br>1400 New York Avenue, N.W.<br>Washington, D.C. 20005<br>Tel:  202-262-7086<br>Tel:  202-786-1919<br>jill.simon@usdoj.gov<br>alexander.kramer@usdoj.gov<br>lindita.ciko.torza@usdoj.gov | Michael N. Berger, Esq.<br>Assistant United States Attorney<br>99 NE 4 Street<br>Miami, Florida 33132-2111<br>Tel:  305-961-9445<br>Michael.berger2@usdoj.gov |

                      */s/ Fernando Tamayo*
                      Fernando Tamayo