**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CR-20114-KMW**


**UNITED STATES OF AMERICA**

**vs.**

**CARLOS RAMON POLIT FAGGIONI,**

**Defendant.**
_____/

**RESPONSE TO DEFENDANT'S MOTION**
**TO EXCLUDE PROPOSED 404(B) EVIDENCE**

The United States, by and through undersigned counsel, hereby files the following response to Defendant's Motion to Exclude Proposed 404(b) Evidence (DE 126).  For the foregoing reasons, in addition to the reasons in the United States' Notice of Intent to Use 404(b) Evidence (DE 108), the motion should be denied.  In short, the charged conspiracy (Count One) relates to defendant's scheme to enrich himself and his family by receiving bribes and laundering the bribes with the assistance of co-conspirator 1.  The proposed evidence is admissible as evidence intrinsic to the charged conspiracy or, in the alternative, as admissible 404(b) evidence because it is evidence of the defendant receiving bribes during the charged conspiracy and using the same *modus operandi* to launder those bribes through Co-Conspirator 1.  In addition, the proposed evidence goes directly to one of the anticipated defenses in this case: the defendant's knowledge and intent.

## RELEVANT FACTS

The defendant is charged by indictment with conspiracy to commit money laundering (Count 1), money laundering (Counts 2-4), and engaging in transactions in criminally derived property (Counts 5-6).  With respect to Count 1, the government intends to introduce evidence that

the defendant conspired with co-conspirators 2 (Odebrecht manager) and 3 (insurance executive) to receive bribes and have those bribes laundered by co-conspirator 1 (defendant's son).

The government seeks to introduce additional relevant evidence establishing the conspiracy between the defendant and co-conspirator 1. Specifically, the government seeks to introduce evidence that the defendant received bribe proceeds from another bribe payer—Spanish business executive ("Spanish businessperson 1")—and conspired with co-conspirator 1 to receive those proceeds in Spain during the same period as the charged conspiracy.[1] This evidence includes a series of email exchanges from 2015 and 2016 between Spanish businessperson 1 and the defendant and co-conspirator 1. Exhibit 11-1, 11-1A, 11-2, 11-2A, 11-3, and 11-3A.

Prior to the emails, in March 2015, Spanish businessperson 1's company, Albacora, had a dispute with the Ecuadorian tax authorities (the "SRI") in which the SRI sought to impose tens of millions of dollars in taxes against Albacora. See Exhibit 11-5 (press release from Ecuadorian Attorney General's office). The email exchanges indicate that the defendant agreed to assist Spanish businessperson 1 with Albacora's issues through the defendant's political influence. In addition, there are email exchanges in which co-conspirator 1 requests payment from Spanish businessperson 1 on behalf of the defendant.

Below is a summary of the relevant emails and documents:

### Exhibit 11-1A

- **March 18, 2015, email from co-conspirator 1 to Spanish businessperson 1 with subject line "Transfer for our friend"**: "Dear Inaqui, our friend[2] asked me to pass on the following information so that a transfer can be made. The transfer

---

[1] The government anticipates, at trial, that the defendant will argue that defendant and co-conspirator 1 did not knowingly conspire to launder criminal proceeds (see, e.g., DE 125, motion to exclude statement that co-conspirator 1 described folder as "defendant's investments").

[2] The government intends to present separate evidence that co-conspirator 1 used the term "friend" as code for the defendant.

needed is in the amount of 109,800 Euros.  The information will be as follows [bank wire details].  The balance of the securities will be [sent] to the same account but over the course of a few weeks, if it is not too much, as we still to agree on certain issues.  Once the transfer has been made, I will need a receipt, if it is not too much trouble, in order to present it to the company that receives the transfer."

- **March 29, 2015, email from Spanish businessperson 1 to an associate of Spanish businessperson 1 forwarding the above email**:  "C.P. called me an hour ago and said that in a few minutes his son jcp would be giving me a call.[3]  When I received the call, he told me that he sent me an email with some information.  I told him that I had not received any email, but later I retrieved it in the deleted ones, and you can see what it is about.

  We will discuss on how to deal with this issue. I took advantage of C.P.'s call to ask him to tell me what he thought of the copy of the written document that we gave him, and he told me that he thought it was good and very precise. I told him about the meeting we had with the person he himself had arranged to meet with us, indicating that the conclusion we drew is that this matter is a legal matter, and that the boss herself insinuated that in the end the one who will have to clarify and resolve it will be the Legal Department of the Presidency. I also told him about his friend A.M.'s possible intervention, and he told me that he would take care of the matter."[4]

- **March 31, 2015, email from Spanish businessperson 1 to co-conspirator 1**: "Dear jcp, please find attached the copy of the transfer that was ordered.  I would appreciate if you could confirm the receipt of this email."

## Exhibit 11-2A

- **January 8, 2016, email from Spanish businessperson 1 to the defendant**:  "My dear Carlos, I wanted to let you know that from January 27 to January 30, 2016, I will be in Panama at a Tunidos Conference.  Therefore, I would be grateful if in the following week you could arrange a meeting for me at the Carondelet."  The Carondelet is the Ecuadorean president's official residence, like the White House.

---

[3]     The defendant has the initials "CP" and co-conspirator 1 has the initials "JCP."

[4]     In the email, Spanish businessperson 1 recounts his telephone conversation with the defendant. This email should be admissible under the hearsay exception for statements of a party opponent and present sense impression.  See United States v. Ferber, 966 F. Supp. 90, 99 (D. Mass. 1997) (upholding admission of banker's email recounting defendant's inculpatory statement from telephone call as present sense impression); United States v. Figueroa, 2023 WL 8373566, at *5 (S.D.N.Y. Dec. 4, 2023) (upholding admission of emails sent by assistant describing contemporaneous or summarized phone calls).

- **January 11, 2016, email from Carlos Polit to Spanish businessperson 1**:  "Ok I will be looking forward to your arrival and I have already spoken to Pedro Solines so that he can talk to the Presi, he is the Public Administration Secretary."

## Exhibit 11-3A

- **April 8, 2016 email, from Spanish businessperson 1 to the defendant**:  "My dear friend . . . I take this opportunity to tell you than on April 27/28, I plan to travel to Guayaquil, and we will have the opportunity to get together. Also, I would like to inform you that unfortunately, despite the efforts we have made with the SRI [Ecuador's version of the Internal Revenue Service] mediated by the Office of Attorney General, we are presenting the arbitration.  It is doubly regrettable that we receive news that the SRI, through the Government is enforcing all of the judgments in the courts . . . and thus arrive with the judgments, before the arbitration pending. We are making this known to the Ministry of Economy of Spain, the Ambassador of Spain in Ecuador, etc.  What I am telling you is disheartening, regrettable, after putting forth so much effort, to have to reach this situation."

- **April 18, 2016 email,from the defendant to Spanish businessperson 1**: "I [] am sorry for what is happening regarding our problem and the arbitration . . . I would love to have you lawyer visit me on Wednesday or Thursday to review the issue with him."

The government also intends to introduce the following exhibit – a press release from the Attorney General's Office of Ecuador dated July 19, 2019.

## Exhibit 11-5A

- "Albacora Case:  The Office of the Attorney General Prevails in International Arbitration Concerning Income Tax Exemptions

  On March 2, 2015, the Spanish Company Albacora S.A. notified the Office of the Attorney General of Ecuador (PGE, in its Spanish initials) of an investment-related dispute involving the Ecuadorean Government:  the company claimed that the tax determinations made by the Ecuadorean Internal Revenue Service (SRI, in its Spanish initials) were impacting their investment, since they believed that the income tax exemption established in the Free Trade Zones law was in effect.

  For its part, Ecuador, in the legal defense mounted by the nation's office of the Attorney General, maintained that such an exemption was repealed by the Internal Tax System Law.

In 2016, an international arbitration on investment matters was commenced; it was administered by the Permanent Court of Arbitration.

After three years of litigation, today the Tribunal unanimously decided to reject all the claims put forward in the proposed request for arbitration and ordered the foreign company to pay two-third of the costs and expenses corresponding to the arbitral tribunal and the entity administering the case, as well as 50% of the legal costs incurred by Ecuador.

The Office of the Attorney General thus defended the interests and position of the Ecuadorean Government, securing a favorable award in a case where approximately 56 million dollars was at stake."

The defendant seeks to exclude this evidence stating that there is not a "single person with personal knowledge of the transaction" and that "there is *no* evidence that this was a bribery scheme." (DE 126.)

## Analysis

The above evidence should be admitted either as intrinsic evidence or Rule 404(b) evidence.

### *The Proposed Evidence Is Admissible as Intrinsic Evidence*

The evidence is admissible because it is linked in time with and part of the same *modus operandi* as the charged offenses. Evidence of uncharged conduct that is part of the same scheme and uses the same *modus operandi* as the charged offenses is admissible as intrinsic evidence outside the scope of Rule 404(b). United States v. U.S. Infrastructure, Inc., 576 F.3d 1195, 1210 (11th Cir. 2009) (such evidence is admissible if it "is linked in time and circumstances with the charged crime and concerns the context, motive or setup of the crime; or forms an integral part of the crime; or is necessary to complete the story of the crime"). "Other transactions connected with the offenses charged have long been used to show a general pattern, the necessary criminal intent,

5

or the guilty knowledge of the defendant." <u>United States v. Muscatell</u>, 42 F.3d 627, 631 (11th Cir. 1995).

The indictment charges that the defendant conspired to launder bribe proceeds received in connection with his official position from 2010 to 2017.   At trial, the government intends to introduce evidence that the defendant conspired with co-conspirator 2 (Odebrecht manager) to receive millions of dollars in bribes so that the comptroller's office would remove or not impose fines on Odebrecht projects in Ecuador.  The government intends to present evidence that the defendant told co-conspirator 2 that co-conspirator 1 made the bribery funds disappear.  Further, the government intends to introduce witnesses and evidence that co-conspirator 1 arranged for various foreign bank accounts to receive bribe proceeds from Odebrecht between 2013 and 2014 as part of the defendant's bribery scheme and that co-conspirator 1 subsequently caused these bribe proceeds to be sent to accounts in South Florida and elsewhere.  Indeed, co-conspirator 1 caused some of the bribe proceeds from the Odebrecht scheme to be directed to the exact same bank account as in the Spanish businessperson 1 scheme.  <u>Cf.</u> Ex. 7-2A (directing Odebrecht-related funds to be payable to account in Spain at Unicaja Banco) with Ex. 11-1A (directing Spanish businessperson 1 to be payable to same account in Spain at Unicaja Banco with same reference line).

Furthermore, at trial, the government intends to introduce evidence that the defendant solicited a bribe from co-conspirator 3 (insurance executive) in exchange for defendant's assistance in reobtaining contracts for co-conspirator 3 from an Ecuadorian state-owned insurance company.  Co-conspirator 3 will testify that the defendant directed co-conspirator 3 to coordinate with co-conspirator 1 to make a bribe payment for the defendant of approximately $500,000.  The government intends to introduce evidence that co-conspirator 3 subsequently paid the bribe to a

bank account as directed by co-conspirator 1 in December 2015.  Co-conspirator 3 will also testify that co-conspirator 1 often referred to the defendant as "the friend" to avoid using the defendant's name.

Just as with co-conspirators 2 and 3, the defendant's scheme with Spanish businessperson 1 involves the same *modus operandi*.  In short, the defendant negotiated a bribe from a businessperson in exchange for the defendant's use of his government influence to assist in obtaining a benefit for the businessperson and then directed co-conspirator 1 to coordinate receipt of the bribe proceeds.  In coordinating payment of the bribe, co-conspirator 1 referred to the defendant as "our friend."  See Ex. 11-1A.  Moreover, the bribes and laundering occurred during the same time as the charged conspiracy involving defendant and co-conspirator 1.  Since the bribes paid by Spanish businessperson 1 for the defendant through co-conspirator 1 are part of the same criminal laundering scheme, they should be admitted as intrinsic evidence.  See United States v. McNair, 605 F.3d 1152, 1203-04 (11th Cir. 2010) (in bribery case, upholding admission of other contemporaneous bribes in the same period as inextricably intertwined); United States v. Ford, 784 F.3d 1386, 1394 (11th Cir. 2015) (in fraudulent tax refund filing scheme, evidence of uncharged fraudulent tax returns that were filed as part of the scheme was "intrinsic evidence" and outside scope of Rule 404(b)); see also Muscatell, 42 F.3d at 631 (in mortgage fraud scheme, upholding admission of evidence of prior mortgage fraud transactions that were part of the same series of transactions as intrinsic).  As in these cases, so too here.

Defendant's contention that the evidence should be excluded because there is no direct witness testimony is without merit.  It is well settled that the government may prove a conspiracy through circumstantial evidence or inferences from the defendant's conduct.  See United States v. Moran, 778 F.3d 942, 960 (11th Cir. 2015) ("Because the crime of conspiracy is predominantly

mental in composition, the government may prove these elements by circumstantial evidence."). "Indeed, because the crime of conspiracy is predominantly mental in composition, it is frequently necessary to resort to circumstantial evidence to prove its elements." <u>United States v. Hano</u>, 922 F.3d 1272, 1294 (11th Cir. 2019). Here, the emails of the defendant and co-conspirator 1 with Spanish businessperson 1 are relevant circumstantial evidence that the defendant and co-conspirator 1 knowingly conspired to launder bribe proceeds; as such, the emails should be admitted.[5] <u>United States v. Exavier</u>, 783 F. App'x 849, 856-57 (11th Cir. 2019) (upholding conspiracy conviction based solely on circumstantial evidence, including email communications between defendant and co-conspirator).

### *The Proposed Evidence Is Also Admissible as 404(b) Evidence*

In the alternative, the evidence is admissible under Federal Rule of Evidence 404(b). This rule provides that evidence of an uncharged "crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." However, such evidence may be admissible for other purposes; such as, intent, knowledge, identity, proof of motive, opportunity, plan, or absence of mistake or accident. "A defendant who enters a not guilty plea makes his intent to commit the act which he is charged a material issue and imposes a substantial burden on the Government to prove intent, which may be done by qualifying Rule 404(b) evidence. <u>See</u> <u>United States v. Zapata</u>, 139 F.3d 1355, 1358 (11th Cir. 1998).

---

[5]     In late 2022, Spanish businessperson 1 passed away. Nonetheless, the emails are admissible under either the co-conspirator exception or statements of the defendant. Read together in context, these emails are relevant and admissible because they tend to show that the defendant and co-conspirator 1 engaged in a scheme to launder bribery proceeds from Spanish businessperson 1. For that reason, these emails should be admitted.

Relevant extrinsic evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.  Fed. R. Evid. 403.  The key factors in determining whether to admit 404(b) evidence are the following: (1) whether defendant is likely to contest the issue of intent, (2) the overall similarity of the charged and extrinsic offenses, and (3) the temporal proximity between the charged and extrinsic evidence.  See United States v. Edouard, 485 F.3d 1324, 1345 (11th Cir. 2007).

Each of these factors in the case weighs in favor of admissibility. First, the defendant will almost certainly contest knowledge and intent in this matter by arguing that the defendant had no knowledge of the payments or that the payments were legitimate transfers as opposed to bribes. The proposed evidence rebuts this argument that the defendant had no knowledge of payments to co-conspirator 1 as it shows that that the defendant directed Spanish Businessperson 1 to speak with co-conspirator 1 to coordinate receipt of funds.   Further, the nature of the email is consistent with an illicit transaction.  Instead of asking for payment for the defendant using his name — Carlos Polit — co-conspirator 1 concealed the recipient's name and asked for payment from Spanish Businessperson 1 for "our friend."   Second, the proposed evidence is virtually identical to the charged conduct.  Both involve the defendant receiving unauthorized payment in connection with his official government position and funds laundered by co-conspirator 1.  Third, there is temporal proximity as the specific bribes identified in the indictment occurred from 2010 to 2015 (Odebrecht: 2010 – 2015; co-conspirator 2: 2015).   In this case, the bribes from Spanish Businessperson 1 also occur in 2015.

Because the proposed evidence is not being offered to show the defendant's character, but rather to show the defendant's knowledge and intent to launder bribery proceeds as well as absence

of mistake, it should be admitted.  See McNair, 605 F.3d at 1204 (upholding admission of evidence of similar, uncharged bribes in bribery case because evidence was "relevant to show corrupt intent"). Finally, the mere fact that the evidence consists of circumstantial evidence, rather than direct testimony, does not alter its admissibility.  United States v. Tutiven, 40 F.3d 1, 2 (1st Cir. 1994) (noting that there is no bar on circumstantial evidence introduction under Rule 404(b)).

For the foregoing reasons, the United States respectfully requests that the Court permit the introduction of the proposed evidence involving the defendant, co-conspirator 1, and Spanish businessperson 1.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF, FRAUD SECTION
Criminal Division
U.S. Department of Justice

By: /s/ Michael N. Berger
Michael N. Berger
Assistant United States Attorney
Court No. A5501557
99 Northeast 4th Street
Miami, Florida 33132
(305) 961-9445
(305) 536-4699 (fax)
Michael.Berger2@usdoj.gov

By: /s/ Jil Simon
Jil Simon
Court No. A5502756
Alexander Kramer
Fraud Section, Criminal Division
1400 New York Ave. NW
Washington, DC 20005
Tel: (202) 514-3257
Jil.Simon@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed with the Court's CM/ECF system on March 22, 2024.


By:    /s/ Michael N. Berger
          Assistant United States Attorney