UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-CR-20114-KMW

**UNITED STATES OF AMERICA**

vs.

**CARLOS RAMON POLIT FAGGIONI**

       **Defendant.**
_____/

**RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE
HEARSAY STATEMENTS (RE: GOVERNMENT WITNESS FEDERICO GOMEZ)**

      The United States, by and through undersigned counsel, hereby files the following response to Defendant's Motion *In Limine* to Exclude Hearsay Statements (Re: Government Witness Federico Gomez). (DE 125). For the reasons explained below, the motion should be denied.

      As explained in the government's trial brief, the government intends to present evidence at trial that co-conspirator 1, the defendant's son, laundered Odebrecht bribe funds received by the defendant. The evidence will show that defendant and co-conspirator 1 caused Odebrecht bribe funds to be sent as "loans" to various companies. Co-conspirator 1 subsequently caused these "loans" to be repaid to a bank account of Venture Overseas, a company controlled by co-conspirator 1. Co-conspirator 1 used the funds from Venture Overseas to invest in various real estate projects, as well as to make additional loans. Co-conspirator 1 tasked one of his employees, Federico Gomez, with tracking the inflows and outflows of Venture Overseas, and tracking loan repayments to Venture Overseas. As part of his responsibilities, Gomez maintained records tracking the flow of funds for Venture Overseas using the accounting software called QuickBooks.

I.   **The Court Should Admit Co-Conspirator 1's Statement About His "Father's Investments"**

The defendant seeks to exclude a statement made by co-conspirator 1 to Federico Gomez about his "father's investments." This statement by co-conspirator 1 occurred in the following context. During the conspiracy, Federico Gomez found a series of folders in a cabinet in co-conspirator 1's office while with co-conspirator 1. The folders had various company names and amounts totaling several million dollars, including companies that had sent funds to or received funds from Venture Overseas. When Gomez asked co-conspirator 1 about these folders, co-conspirator 1 nervously responded that these were his "father's investments."

    A.   *The Statement Should Be Admitted as a Co-Conspirator Statement in Furtherance of the Conspiracy*

As explained in the government's trial brief, co-conspirator 1's statement should be admitted under the hearsay exception for co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E). *See* DE 123 at 11-16. The standard for admission of co-conspirator statements is that the government must prove by a preponderance of the evidence that (1) a conspiracy existed involving the defendant and declarant and (2) the statement was made during and in furtherance of the conspiracy. See United States v. Magluta, 418 F.3d 1166, 1177-78 (11th Cir. 2005); United States v. Kandhai, 629 Fed. App'x 850, 853 (11th Cir. Oct. 14, 2015). In making the determination, the district court may consider both the statement itself and "evidence independent of it." United States v. Hough, 803 F.3d 1181, 1193 (11th Cir. 2015). The court may admit the statements even if they came from an unindicted co-conspirator. See United States v. Wenxia Man, 891 F.3d 1253, 1272 (11th Cir. 2018).

The Eleventh Circuit applies a liberal standard in determining whether a statement is in furtherance of a conspiracy. United States v. Harris, 886 F.3d 1120, 1131 (11th Cir. 2018). A

statement by a co-conspirator is made "in furtherance of" a conspiracy if it was intended to promote the conspiracy's objectives. United States v. Holt, 777 F.3d 1234 (11th Cir. 2015). The statement "need not be necessary to the conspiracy, it must only further the conspiracy." Id.; United States v. Caraza, 843 F.2d 432 at 436 (11th Cir. 1988). A particular statement is in furtherance of the conspiracy, even though susceptible to alternative interpretations," so long as there is "some reasonable basis" for concluding that it was designed to further the conspiracy. United States v. Shoffner, 826 F.2d 619, 628 (2d Cir. 1987).

There is a "reasonable basis" for concluding that the statement furthered the conspiracy by ensuring Gomez's assistance in properly tracking funds paid to accounts of Venture Overseas controlled by co-conspirator 1 as well as to maintain trust with Federico Gomez. Courts have consistently upheld the admission of similar statements where a co-conspirator identified the role of another co-conspirator in the criminal operation where it served a purpose in the ongoing scheme. United States v. Holt, 777 F.3d 1234, 1267 (11th Cir. 2015) (upholding admission of co-conspirator statement describing defendant's involvement in narcotics trafficking as furthering the conspiracy because it served to maintain trust between co-conspirator and listener); United States v. Siegelman, 640 F.3d 1159, 1181 (11th Cir. 2011) (upholding admission of co-conspirator's statement describing defendant's successful bribe as furthering the conspiracy because it informed listener that bribery scheme had worked and co-conspirator potentially needed additional funds from listener); see also United States v. Gupta, 747 F.3d 111, 125-26 (2d Cir. 2014) (upholding admission of co-conspirator's statement to employee describing defendant's provision of inside information because it could have prompted employee to make stock trades on the information).

The defendant argues that this statement should be excluded and contends that it constitutes "idle chatter" or a declaratory narrative. Narrative declarations made without intent to assist the

3

object of the conspiracy do not satisfy the "in furtherance" requirement of the hearsay exception. United States v. Doerr, 886 F.2d 944, 951-52 (7th Cir. 1989); United States v. Foster, 711 F.2d 871, 880 (2d Cir. 1983) (same).

The two cases cited by the defendant illustrate the difference between statements that are or are not admissible in furtherance of the conspiracy. See United States v. Blakey, 960 F.2d 996 (11th Cir. 1992) and United States v. Miles, 290 F.3d 1341 (11th Cir. 2002). On the one hand, in Blakey, the Eleventh Circuit found that the district court improperly admitted a statement by a co-conspirator to a bank fraud investigator implicating the defendant in a bank fraud. The Court found that this statement, made to an investigator, was not admissible because it did not further any object of the conspiracy and constituted a mere narrative statement of past events. 960 F.2d at 998-99 ("[A]t the time the statement was made, the coconspirator had every incentive to point the finger at the defendant in order to shift the focus of the investigation away from himself."). By contrast, in Miles, the Eleventh Circuit found that the district court properly admitted a statement by a co-conspirator to another drug dealer that the defendant supplied narcotics. The Court found that this statement furthered the conspiracy because it could have induced the other drug dealer to participate in the conspiracy. 290 F.3d at 1352. Co-conspirator 1's statement to Gomez was not to an investigator and there is no evidence that he was attempting to "point the finger at the defendant." Blakey, 960 F.2d at 999. Rather, co-conspirator 1's statement to Gomez furthered a potential object of the conspiracy — like in Miles — by providing information so that Gomez could collect and track the bribery-funded loan repayments. Because the statement at issue, like in Miles, furthered a potential object of the conspiracy, the Court should admit co-conspirator 1's statement.

B.  *The Statement Should Be Admitted as an Excited Utterance*

The statement separately should be admitted under the hearsay exception for excited utterances. Under Federal Rule of Evidence 803(2), a court may admit out-of-court statements for the truth of the matter asserted when they "relat[e] to a startling event or condition made while the declarant was under the stress of the condition." For the statement to be admissible, the out-of- court statement must relate to the startling event and must be made while under the stress or excitement caused by the event. United States v. Belfast, 611 F.3d 786, 817-18 (11th Cir. 2010).

In this case, there was a startling event – Federico Gomez had discovered co-conspirator 1's folders involving records of millions of dollars of funds that co-conspirator 1 maintained for his father (then a senior government official in Ecuador). The response by co-conspirator 1 was made under stress – Federico Gomez described co-conspirator 1 as responding in a nervous manner. Consistent with the exception, this statement should be admitted. See United States v. Berkman, 433 Fed. App'x 859, 864-65 (11th Cir. July 12, 2011) (upholding admission of statement of fraud victim upon learning of loss of $100,000 from his account as excited utterance).

II.   **The Court Should Admit Co-Conspirator 1's Statement About Defendant Wanting Co-Conspirator 1's Siblings to Be Involved in Co-Conspirator 1's Business**

The government intends to introduce at trial various text message communications from co-conspirator 1 to Federico Gomez. The exchanges show that co-conspirator 1 discussed co-conspirator 1's business with Gomez. The defendant seeks to exclude one of those text message exchanges at Exhibit 8-1A (translated at 8-1B). In this communication, co-conspirator 1 wrote that the defendant is "pressuring [co-conspirator 1] to sell him a part of everything so that my brothers can be part of it . . . that is why my sister went today." Co-conspirator 1 further wrote that his brother "Charles goes [to the business] and I feel he audits me."

Federico Gomez will testify at trial that the defendant and Charles Polit would visit co-conspirator 1's office and meet with co-conspirator 1. Federico Gomez will further testify that co-conspirator 1 did not provide Gomez with online access to the Venture Overseas accounts for preparing the accounting records. Instead, Federico Gomez only received the Venture Overseas account statements in physical copy from co-conspirator 1 and sometimes from Charles Polit.

The text message exchanges from co-conspirator 1 about the role of defendant's children in co-conspirator 1's business furthered the conspiracy because they may affect future dealings between Federico Gomez and co-conspirator 1 and co-conspirator 1's siblings. Specifically, these statements encouraged Federico Gomez to cooperate with co-conspirator 1's siblings in providing and receiving information about co-conspirator 1's business and activities. Siegelman, 640 F.3d at 1181 (statement that "could have been intended to affect future dealings . . . is in furtherance of a conspiracy"); United States v. Caraza, 843 F.2d 432, 436 (11th Cir. 1988) (same). As such, the text message exchange at Exhibit 8-1A (translated at 8-1B) should be admitted.

### III. The Admission of Co-Conspirator's Statements Does Not Violate the Sixth Amendment

The defendant argues that admitting the statements made by John Polit would violate the Sixth Amendment's Confrontation Clause. The Confrontation Clause states that a criminal defendant "shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. A. The Supreme Court has held that this provision guarantees a defendant the right to confront witnesses for both in-court testimony and "testimonial" out-of-court statements. Crawford v. Washington, 541 U.S. 36, 50-51 (2004). The Eleventh Circuit has explained that "testimonial" statements mean "statements made under circumstances which would lead the declarant to believe that the statement would be available for use at a later trial." United States v. Underwood, 446

F.3d 1340, 1345 (11th Cir. 2006). The Defendant's own filing acknowledges that the Eleventh Circuit views co-conspirator statements made in furtherance of a conspiracy to be non-testimonial and not implicating the Sixth Amendment. *See* DE 125 at 5; Underwood, 446 at 1347.

The statements identified by co-conspirator 1 in the Motion are not "testimonial." These statements were not made in a situation indicating use at a later trial. Instead, they were made by co-conspirator 1 to a trusted associate Federico Gomez, in person and via text message, during the conspiracy. Such statements do not implicate the confrontation clause. Underwood, 446 at 1345 (statements made by co-conspirator to accomplice do not implicate Confrontation clause) ; United States v. Makarenkov, 401 Fed. App'x 442, 444-45 (11th Cir. Oct. 26, 2010) (same); *see also* Crawford, 541 U.S.C. at 55) (indicating that "most of the hearsay exceptions covered statements that by their nature were not testimonial – for example, business records or statements in furtherance of the conspiracy.").

## CONCLUSION

For the foregoing reason, the United States respectfully requests that the motion be denied.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   s/Michael N. Berger
     Michael N. Berger
     Assistant United States Attorney
     Court No. A5501557
     99 Northeast 4th Street
     Miami, Florida 33132
     (305) 961-9445
     Michael.Berger2@usdoj.gov

     GLENN LEON
     CHIEF, FRAUD SECTION
     Criminal Division

        U.S. Department of Justice

By: /s/ Jil Simon
    Jil Simon
    Trial Attorney
    Alexander Kramer
    Assistant Chief
    Criminal Division, Fraud Section
    U.S. Department of Justice
    Court ID No. A5502756
    1400 New York Ave. NW
    Washington, DC 20005
    Tel: (202) 514-3257
    Email: Jill.Simon@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed with the Court's CM/ECF system on March 22, 2024.

By: s/Michael N. Berger
Michael N. Berger
Assistant United States Attorney