UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
<u>Miami Division</u>

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CARLOS RAMON POLIT FAGGIONI,<br><br>                   Defendant. | Case No. 22-cr-20114-KMW |

**NONPARTY MCGUIREWOODS LLP'S
<u>MOTION TO QUASH OR MODIFY SUBPOENA</u>**

Pursuant to Federal Rule of Criminal Procedure 17, non-party McGuireWoods LLP ("McGuireWoods") hereby requests that the Court quash or modify the subpoena directed to the Custodian of Records of McGuireWoods that was issued on April 1 and served on April 4, 2024 by Defendant Carlos Polit Faggioni (the "Subpoena"). In an unreasonable and improper move only two business days before Defendant's trial, the Subpoena commands McGuireWoods's Custodian of Records to testify and produce documents related to the firm's representation of a key government witness in the Defendant's criminal trial beginning on Monday, April 8, 2024. As set forth below, the Subpoena should be quashed or modified as unreasonable and oppressive pursuant to Rule 17(c)(2), and based on deficient service under Rule 17(d).

**FACTUAL BACKGROUND**

Since 2016, Eric Snyder has represented Jose Conceicao Santos Filho ("Mr. Conceicao") in connection with investigations and criminal proceedings related to Odebrecht S.A. Declaration of Eric Snyder ("Snyder Decl.") ¶ 4. Mr. Snyder is currently a partner with the law firm McGuireWoods, working in the firm's office in New York City. Snyder Decl. ¶ 2. Mr. Snyder

joined McGuireWoods in June 2022. Snyder Decl. ¶ 3. Mr. Snyder began representing Mr. Conceicao prior to joining McGuireWoods while he was partner with Jones Day. Mr. Snyder continued to represent Mr. Conceicao after he joined McGuireWoods. Snyder Decl. ¶ 3.

Mr. Conceicao is expected to testify on behalf of the Government at the upcoming trial scheduled to begin April 8, 2024, as indicated by the Government's witness list, ECF No. 129.

On April 1, 2024, Counsel for Defendant contacted Mr. Snyder for the first time about the Subpoena, when Jackie Perczek with Black Srebnick, sent an email to Mr. Snyder, attaching a copy of the Subpoena and asking Mr. Snyder to accept service of it on behalf of McGuireWoods. In Ms. Perczek's email, which copied the Government's lawyers, she stated that "[t]he government has not produced to us a complete file of the agreements reached by its witnesses with other countries." Ms. Perczek said that she "expect[s] that those non privileged materials would be in [McGuireWoods's] possession," and she asked Mr. Snyder to produce copies of agreements between the Government's witnesses and foreign governments. Snyder Decl. ¶ 5.

My Snyder interpreted Ms. Percsek's email to be requesting a copy of Mr. Conceicao's leniency agreement with the Brazilian government ("Brazilian Agreement"). Snyder Decl. ¶ 6. The Brazilian Agreement is the only agreement between Mr. Conceicao and any foreign government of which Mr. Snyder is aware. *Id.* In an email response the same day, Mr. Snyder advised Ms. Perczek that he did not have a copy of the Brazilian Agreement, but he would try to get a copy. *Id.* Mr. Snyder was subsequently advised that the Brazilian Agreement was filed under seal in Brazil and that it could be obtained only by making a formal request for it under governing law. Snyder Decl. ¶ 7. Mr. Snyder then emailed the Government attorneys on April 3 to advise them of what he learned about the Brazilian Agreement, understanding that the Government would speak with counsel for Defendant about their request for the Brazilian Agreement. *Id.*

2

On April 3, in response to Ms. Perczek's request to "produce [McGuireWoods's] communications with the government that relate to the conduct of [Mr. Conceaicao] or the others listed in the subpoena," Mr. Snyder sent an email saying he would not accept service of a subpoena by email. Snyder Decl. ¶¶ 8-9.

On April 4, the Defendant attempted to serve the Subpoena on McGuireWoods by having a process server drop it at the feet of the Office Administrator of McGuireWoods's New York City office.[1] Snyder Decl. ¶ 10. A copy of the Subpoena and the witness fee check served with it are attached as Exhibit A. The Rule 17(c) Subpoena, addressed to "Custodian of Records McGuireWoods," commands the firm's Custodian of Records to appear to testify and produce documents to Courtroom No. 11-3 at the U.S. Courthouse in Miami at 9:00 a.m. on April 8, 2024. The Subpoena requires the production of the following hard copy and electronic documents:

1. All non-privileged documents reflecting the arrangement each individual has or had with the government of any country regarding any actual or potential exposure to prosecution for their conduct in relation to the Odebrecht investigation.

2. All correspondence (including texts and emails) with any representative of any country regarding the conduct of any of the individuals listed below in relation to the Odebrecht investigation. The individuals are: Jose Conceicao Santos Filho [the Subpoena then lists eleven other individuals].

Subpoena at 3-4. In addition to Mr. Conceicao, the list of individuals included in the Subpoena largely overlaps with the Government's witness list.

As noted, the Subpoena purports to compel McGuireWoods's Custodian of Records to testify and produce documents in Miami less than two business days after it was delivered. Rhonda Todd, who is employed by McGuireWoods as the firm's Senior Records Manager, serves as the firm's Custodian of Records for the client file records that Defendant has requested in the

---

[1] The service package included a $40 check for the witness fee.

Subpoena. Ms. Todd is a Virginia resident; she works in the firm's headquarter office in Richmond, Virginia. The sole office McGuireWoods has in Florida is in Jacksonville; McGuireWoods has no office in the Southern District of Florida.

## ARGUMENT

As a threshold procedural matter, the Subpoena should be quashed because service was defective under Rule 17(d). Beyond that, the Subpoena should be quashed or modified because requiring McGuireWoods to comply with it would impose an unreasonable, oppressive and unjustified burden on McGuireWoods.

### I. The Subpoena was not properly served under Rule 17(d).

Rule 17(d) requires the server to "deliver a copy of the subpoena to the witness." The witness named in the subpoena, the Custodian of Records, was not served. Defendant attempted to serve the Subpoena by dropping it at the feet of the Office Administrator for the McGuireWoods office in New York City. Snyder Decl. ¶ 10. As noted above, the Senior Manager of McGuireWoods's Records Department, Rhonda Todd, serves as the Custodian of Records for McGuireWoods for the client file records requested in the Subpoena. Snyder Decl. ¶ 11. Ms. Todd is a Virginia resident and works in the firm's headquarter office in Richmond, Virginia. *Id.* She is located hundreds of miles from the McGuireWoods office in New York where the Subpoena was dropped off by a process server. Accordingly, Defendant did not serve the Subpoena to the named witness in accordance with Rule 17(d).

Service of the Subpoena was also defective because it did not include appropriate payment of the witness's costs required by Rule 17. Rule 17(d) requires the server also "must tender to the witness one day's witness-attendance fee and the legal mileage allowance." Service is defective if the issuing party fails to include the required witness and mileage fees when the subpoena is

served. *See, e.g.*, *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.)*, 713 F.2d 494, 496 (9th Cir. 1983) (affirming the district court's decision to invalidate a Fed. R. Civ. P. 45(c) subpoena – identical in relevant respects to Fed. R. Crim. P. 17(d) – for failure to "simultaneous[ly] tender[] witness fees and the reasonably estimated mileage allowed by law with service of a subpoena"); *United States v. Beckford,* 964 F. Supp. 1010, 1015 (E.D. Va. 1997) ("To effectuate proper service, however, the party must deliver with the subpoena the appropriate fee for one day's attendance at trial and the cost of allowable mileage.").[2]

As reflected in Exhibit C of the Snyder Declaration, the process server who delivered the Subpoena to McGuireWoods tendered only a $40 witness fee and no estimated mileage. Although McGuireWoods acknowledges that the amount at issue is not material, the circumstances before the Court here warrant holding Defendant to the requirements under Rule 17(d). A party that elects to wait until the last minute to serve a Subpoena that imposes patently unreasonable burdens on a nonparty should not be permitted to disregard the letter of the service requirements under Rule 17(d). Under the circumstances here, the Subpoena should therefore be quashed because service was defective.

**II.     The Subpoena should be quashed or modified because compliance would be unreasonable and oppressive.**

Upon a "motion made promptly," the Federal Rules of Criminal Procedure provide that the Court "may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). *See also United States v. Thompson*, 310 F.R.D. 542, 545 (S.D. Fla.

---

[2] *See also United States v. Venecia*, No. CRIM. 96-449-FR, 1997 WL 325328, at *3 (D. Or. May 16, 1997) ("The party must, however, include with the subpoena the appropriate fee for one day's attendance at trial and a reimbursement for mileage."); *United States v. Urlacher*, 136 F.R.D. 550, 553 (W.D.N.Y. 1991) ("Subdivision (a) does not contemplate prior involvement of a judicial officer and it presupposes, by virtue of Rule 17(d), that the subpoena will be served together with witness and mileage fees on the witness named if the subpoena is issued at the behest of the defendant.").

2015). ("When a Rule 17 subpoena is issued following an *ex parte* application, the appropriate method for challenging the subpoena is for the subpoenaed party to file a motion to quash or modify the subpoena."). Moreover, a defendant cannot issue a trial subpoena for purposes of discovery, harassment, or piercing validly held privileges. Rule 17(c) subpoenas are not intended to serve as "fishing expedition[s]," but rather a way to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698–700 (1974).

On Thursday, April 4, Defendant delivered the Subpoena to McGuireWoods that purported to require the firm's Records Custodian in Virginia to appear in Miami at 9 a.m. on Monday, April 8, giving the firm one business day to search for, identify, and produce documents from its client files and to prepare its representative to testify with respect to documents related to the firm's representation of a current client. Imposing a burden on a nonparty law firm to produce client file records related to a current client with virtually no notice is unquestionably unreasonable and oppressive, and it should not be permitted by the Court. McGuireWoods should not have to bear the burden and costs of responding to Defendant's last minute harassing fishing expedition.

    **A.**    **Defendant can obtain the documents sought in the Subpoena from the Government or other nonparty witnesses.**

But it is not merely a question of McGuireWoods not having sufficient time to respond to the Subpoena. Here, Defendant's counsel waited until past the 11th hour to attempt to serve on McGuireWoods the Subpoena seeking production of client file records. A party seeking documents or testimony pursuant to Rule 17(c) must show the documents "are not otherwise procurable reasonably in advance of trial by exercise of due diligence." *Nixon*, 418 U.S. at 699–700 (citing *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)). The Subpoena is also unreasonable and oppressive because Defendant should not be permitted to interfere with McGuireWoods's

6

attorney-client relationship with its client when the Defendant can and should have obtained the requested documents directly from the Government or others, rather than a late-in-the-game gambit seeking to require the Government's witness's law firm to produce documents.

With respect to the first document request in the Subpoena, McGuireWoods does not have in its possession a copy of any agreement (or other "arrangement") that Mr. Conceicao or Other Individuals (as defined in the Subpoena) has with a foreign government. Snyder Decl. ¶¶ 15-16. The Government has already disclosed to the Defendant Mr. Conceicao's Non-Prosecution Agreement (CRP-DOJ-0003142547) and included the Agreement in the Government's March 18 Exhibit List. *See* ECF No. 130; *see also United States v. Warden*, 545 F.2d 32, 36 (7th Cir. 1976) (affirming the district court quashing a defendant's subpoena when the documents in question "were already in his possession").

With respect to the second document request, Mr. Snyder's declaration shows that McGuireWoods did not communicate with any foreign government representatives concerning Mr. Conceicao or the Odebrecht investigation, and McGuireWoods does not have in its files any correspondence with any foreign government officials related to Mr. Conceicao or any of the other individuals identified in the Subpoena. Snyder Decl. ¶ 17. The only correspondence Mr. Snyder has had concerning Mr. Conceicao or the Odebrecht investigation with representatives of any country were Mr. Synder's communications with lawyers for the U.S. Department of Justice. Defendant can obtain and, upon information and belief, has obtained from the Government's lawyers all correspondence between McGuireWoods and the Department of Justice.

**B.      The Subpoena is an improper attempt to interfere with the attorney-client relationship.**

Compelling documents and testimony from a law firm that presently represents a key opposing witness should be a last resort, and there are many reasons the Court should not entertain

7

Defendant's last minute attempt to do so here. First, there is an elevated risk of a breach of client confidentiality or attorney-client privilege. But even if counsel can elude these traps, there is an inevitable stain on the attorney-client relationship when counsel becomes a witness in the case alongside his client. *See In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 999 (11th Cir. 1992) (explaining the underlying purpose of the attorney-client privilege is to "promot[e] full candor between client and attorney regarding matters of representation").

Counsel's involvement as a witness in this matter is unnecessary. *See Admiral Ins. Co. v. Zurich Am. Ins. Co. of Illinois*, No. 14-60079-CIV, 2014 WL 11706440, at *2 (S.D. Fla. July 24, 2014) (finding opposing counsel were "not considered necessary witnesses if there are other sources available that can demonstrate the matters at issue"). Defendant has not shown that the documents subpoenaed would provide relevant and admissible evidence at trial. And to the extent the Subpoena does request relevant and admissible evidence, that evidence has already been produced or could more readily be obtained by another entity – that is, the Department of Justice – without the involvement of counsel. *See Brookings v. State*, 495 So. 2d 135, 140 (Fla. 1986) (citing with approval a case in which "questioning witness extensively about her plea bargain obviates any reason to inquire into discussions with her attorney") (citing *Chicola v. State*, 253 Ga. 773 (1985)).

Moreover, the practice of compelling the testimony of attorneys against clients (which is logically extended to testimony of attorneys hypothetically impeaching their clients) is something courts "do not applaud." *United States v. Cochran*, 546 F.2d 27, 29 n.5 (5th Cir. 1977) (calling the "mere appearance" of counsel testifying against a client "distasteful and should only be used in rare instances," even when the subject is a "matter of public record").

The Court must balance Defendant's desire for a more convenient and faster method of obtaining the documents and testimony, with the need to preserve the attorney-client relationship. With trial beginning next week, the Court should not reward Defendant's delay. At the latest, Defendant knew or should have known on March 18, when the Government filed its exhibit list, that a Non-Prosecution Agreement existed. Yet, Defendant did not issue the Subpoena until April 1, and it was not (deficiently) served until April 4. To allow enforcement of the Subpoena now would reward Defendant's dilatory tactics while also placing a wedge between a key witness and his counsel on the eve of trial. The Court should not permit that.

### III. Alternatively, the Court should modify the Subpoena to relieve its unreasonable and oppressive effect on McGuireWoods.

Should the Court decline to quash the Subpoena in its entirety, McGuireWoods respectfully requests the Court to enter an Order modifying the Subpoena to ensure compliance is not unreasonable nor oppressive, and to make clear that McGuireWoods is not required to produce any documents protected from disclosure under the attorney-client privilege or work product doctrines.

With respect to timing, McGuireWoods respectfully requests the Court to provide a reasonable time for the production of responsive, nonprivileged documents. Additionally, there is also no purpose served by compelling the McGuireWoods Custodian of Records to testify at trial in Miami. McGuireWoods instead proposes (and asks the Court to order, if it elects, to modify the Subpoena rather than quash it) that the firm's Custodian of Records be permitted to submit an affidavit of authenticity with respect to any responsive, non-privileged documents that McGuireWoods produces in response to the Subpoena.

Finally, McGuireWoods objects to the Subpoena to the extent it seeks or calls for the production of any documents or information that are: (i) subject to the attorney-client privilege

9

arising from McGuireWoods's or Mr. Snyder's attorney-client relationship with Mr. Conceicao or any other firm client, or (ii) protected from discovery under the work product doctrine.

Accordingly, if not quashed, the Subpoena should be modified to ensure McGuireWoods is under no obligation to produce documents subject to attorney-client privilege or work product protection.

Of the two Requests included in the subpoena, only Request One is self-limiting to non-privileged documents. To the extent either Request seeks material subject to one or more privileges and protections, including attorney-client privilege or work product, it must be modified. Mr. Conceicao is a current client of McGuireWoods. Mr. Snyder is representing him with respect to his potential testimony during the impending trial. Snyder Decl. ¶ 4. "As a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The Court cannot permit Defendant to interfere with the attorney-client privilege or work product protection in a way that would almost certainly chill the nature of the attorney-client relationship.

⁂

For these reasons, the Court should quash or modify the Subpoena. Further, given the unique posture of this motion to quash,³ we ask that the Court permit McGuireWoods the opportunity to reply to any of Defendant's arguments in opposition to this motion.

---

³ The subpoenaing party, not the movant, bears the burden to demonstrate the subpoenaed information is specific, relevant, and admissible, so as to withstand a challenge that the subpoena is unreasonable and oppressive. *Nixon*, 418 U.S. at 700 (explaining that the prosecutor issuing the subpoena, "in order to carry his burden, must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."). "The Court enunciated the burden a party must bear to gain access to materials under rule 17 in [*Nixon*]." *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992). When, as

10

Dated: April 6, 2024	Respectfully submitted,

                                                             By:   */s/ Daniel L. Rashbaum*
Daniel L. Rashbaum, Esq.
Florida Bar No. 75084
drashbaum@mnrlawfirm.com
Bryan A. Almeida, Esq.
Florida Bar No. 1005558
balmeida@mnrlawfirm.com
**Marcus Neiman Rashbaum & Pineiro LLP**
2 South Biscayne Blvd, Suite 2530
Miami, FL 33131
(305) 400-4261

*Counsel for McGuireWoods LLP*

---

here, the subpoenaed nonparty first moves to quash, it does not have the benefit of knowing the defendant's arguments in support relevance and admissibility.

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on April 6, 2024.  I also certify that the foregoing document is being served this day via email to:

| | |
|---|---|
| JACKIE PERCZEK, ESQ.<br>Black Srebnick<br>201 South Biscayne Blvd., Suite 1300<br>Miami, Florida 33131<br>Email:jperczek@royblack.com;<br>mbrito@royblack.com<br>Telephone: (305) 371-6421<br>Mobile: (305) 710-9242<br>Fax: (305) 703-4934 | Michael N. Berger<br>Assistant United States Attorney<br>Court No. A5501557<br>99 Northeast 4th Street<br>Miami, Florida 33132<br>(305) 961-9445<br>Michael.Berger2@usdoj.gov<br><br>Jil Simon<br>Trial Attorney<br>Alexander Kramer<br>Assistant Chief<br>Criminal Division, Fraud Section<br>U.S. Department of Justice<br>Court ID No. A5502756<br>1400 New York Ave. NW<br>Washington, DC 20005<br>Tel: (202) 514-3257<br>Email: Jil.Simon@usdoj.gov |

*/s/ Daniel L. Rashbaum*
Daniel L. Rashbaum, Esq.

*Counsel for McGuireWoods LLP*