

no. 372030141   **2453**

**- 1 SET 2010**

**RESOLUCION No.**

**EL CONTRALOR GENERAL DEL ESTADO**

**CONSIDERANDO:**

I.   Que como resultado del estudio del informe del examen especial de ingeniería a las adendas celebradas entre HIDROPASTAZA S.A. y el Consorcio Odebrecht – Alstom-Va-Techt, dentro del contrato de Ingeniería de Detalle, Suministros y Construcción "EPC" para el proyecto de la Central Hidroeléctrica San Francisco, en el cantón Baños, provincia de Tungurahua, a cargo de la compañía HIDROPASTAZA S.A, que abarca el periodo comprendido entre el 1 de noviembre de 2003 y el 15 de septiembre de 2008, se estableció la glosa de *USD 4 700 000*, en contra del *Consorcio Odebrecht – Alstom-Va-Tech*, en la persona de su representante legal, por cuanto su representada no cumplió con las especificaciones técnicas establecidas en el anexo 1 del tomo 3 del segundo contrato modificatorio al contrato de concesión, relativas a los recubrimientos de túnel de conducción y chimenea de equilibrio, evidenciándose que los gastos adicionales realizados por el Consorcio Constructor para la implementación de nuevos y mejores tipos de sostenimientos halladas durante la excavación del túnel, como las supuestas pérdidas en la eficiencia de excavación fueron realizadas en base a un erróneo sustento técnico.

Mediante oficio OEC/PHSF/DP/0132/2006 de 10 de julio de 2006, el Director de Proyecto del Consorcio Constructor, solicita un segundo ajuste de precios del contrato EPC por los costos adicionales generados debido a las condiciones geológicas/geotécnicas halladas en las diferentes estructuras excavadas, tanto en la superficie como subterráneas que difieren adversamente de las condiciones contempladas en el anexo 1 al segundo contrato modificatorio del contrato de concesión; se señala además, que en el primer ajuste solicitado el 31 de marzo de 2006 mediante carta OEC/PHSF/DP/050/2006, la estructura del túnel de conducción entre los PK 9+830 y 0+090 no fue incluida en la referida solicitud ya que aun se encontraba en excavación.

Las condiciones encontradas durante la excavación de este túnel han sido sustancialmente diferentes a las previstas, especialmente en la implementación del sostenimiento tipo V que considera colocación de dovelas, obligando a rehabilitar la fábrica de premoldeados y comprar los suministros.



Por otro lado, se establece que esta situación también representa una pérdida en la eficiencia de excavación debido al procedimiento necesario para iniciar la colocación de las dovelas, mayor colocación de pernos de anclaje y de aplicación

Dirección de Responsabilidades. Teléfono: 398-7360
Oficina matriz: Av. Juan Montalvo e4-37 y Av. 6 de Diciembre. Quito-Ecuador



AO386-C
**GOVERNMENT EXHIBIT**

CASE NO.   22-cr-20114-KMW

EXHIBIT NO.   1-7

CRP-DOJ-0002392649

de hormigón lanzado, mencionando también que estos servicios son adicionales a los contemplados dentro del alcance a los adendums 6 y 7.

Los hechos anotados ocasionaron que se desfase la provisión de facturación descompensando la incidencia de los costos indirectos de la parte civil del contrato, razón por la cual el Consorcio Constructor propone realizar el segundo ajuste al precio del contrato.

En el numeral 1) de la carta en referencia, la Constructora presenta la documentación de soporte de los casos de variación geológica/geotécnica hallados durante la excavación del túnel de conducción, que han resultado en costos adicionales y estimar el sostenimiento a ser implementado del tramo del túnel de conducción que continúa siendo excavado con el método TBM entre los PK 0+995,34 a 3+065,51 (avance hasta el 30 de junio de 2006), sin que esto signifique mudar las condiciones geológicas/geotécnicas previstas en el diseño básico; en el numeral 2) solicita la aprobación de un ajuste al precio del contrato EPC por la suma de USD 5 448 523,85, al tenor de la cláusula 6.2 Eventos de Ajuste (b) numeral IX del contrato, geológicas/geotécnicas encontradas en el túnel de conducción que difieren adversamente de las condiciones contempladas en el anexo 1 al segundo contrato modificatorio del contrato de concesión y que han generado costos adicionales al constructor.

| CUADRO 2 - RECLAMO DEL CONSTRUCTOR – ADENDUM N° 9 | | |
|---|---|---|
| ITEMS | CONSORCIO ODEBRECHT | APROBADO POR CONSULTOR Ing. Guy H. Boordeaux |
| Túnel de conducción (TBM) (ABSC. 9+404,35 a 0+995,34) | 5 448 523,85 | 5 448 523,85 |
| Túnel de conducción D&B (9+830 a 9+404,35) | | - 326 901,68 |
| Túnel de conducción D&B (0+090 a 0+995,34) | | - 419 697,68 |
| TOTAL: | 5 448 523,85 | 4 701 924,49 |
| Valor por riesgo geológico del contrato | 0,00 | 0,00 |
| Valor por reconocer el reajuste N° 2 (USD) | 5 448 523,85 | 4 701 924,49 |

En el cuadro N° 2, constan las abscisas con los tramos que fueron afectados por el factor de ajuste de proporcionalidad y el monto total requerido por la empresa contratista así como los montos que a criterio del consultor deberían ser reconocidos por concepto de compensación, alcanzando la suma de USD 4 701 924,49.



En el mes de julio de 2006, Hidropastaza contrató a un consultor a fin de que realice el análisis técnico del reclamo presentado por el Consorcio Constructor, dicho informe contiene en su capítulo 3, el análisis técnico que describe los criterios adoptados del sistema de clasificación y clases de sostenimiento del macizo rocoso; presenta el análisis del reclamo relativo a cantidades, estructura del precio y evaluación de créditos y emite la conclusión y recomendación siguiente: *"En*

2

CRP-DOJ-0002392650

*función de los análisis y estudios realizados, la recomendación propuesta consiste en que Hidropastaza S.A., cierre con el Consorcio Constructor por concepto de la segunda solicitud de ajuste de precio del contrato EPC al tenor de la cláusula 6.2 b) IX, correspondiente al tramo del Túnel de Conducción entre el PK 0+090 al 9+830, la suma de USD 4 700 000 y una vez concluida la excavación del Túnel de Conducción y se pueda evaluar las consecuencias económicas totales de esta estructura por concepto de las condiciones geológicas/geotécnicas halladas durante la excavación, se revisen las consecuencias económicas de dichos efectos, acreditando o debitando a las partes según corresponda".*

El Asesor Jurídico de Hidropastaza S.A., sobre el tema realiza un análisis legal y contractual de la procedencia del segundo ajuste, debido a la variación de las condiciones geológicas/geotécnicas del Proyecto San Francisco (túnel de conducción), señalando lo siguiente: *"Cabe destacar que las condiciones geológicas/geotécnicas señaladas por el Consorcio Constructor, han sido determinadas y verificadas in situ a través de las condiciones reales entre los PK 9+404,35 al 3+065,51, mientras que se deberá verificar las condiciones geológicas/geotécnicas entre PK 0+090 al 9+830 una vez concluida la excavación del Túnel de Conducción, momento en el cual se deberá realizar una reliquidación del valor acordado contractualmente... Por lo antes expuesto, si se cumplen las condiciones establecidas en el Contrato de Concesión en el numeral 6.2 b), el pago es legal y contractualmente procedente...".*

La compañía Hidropastaza S.A., a través de su Presidente Ejecutivo, el 9 de julio de 2008, presenta al Juez Noveno de lo Civil de Baños una solicitud a fin de que ante el conocimiento de las fallas constructivas y otros defectos encontrados en el túnel de conducción de la Central Hidroeléctrica que obligaron a parar su operación, se realice una inspección judicial con el propósito de determinar el estado del túnel de conducción, identificar las causas de fallas constructivas y evaluar los costos y el tiempo que demoraría las reparaciones. Ante este pedido el Juez acepta el requerimiento planteado y procede a nombrar al Perito quien, durante los días 11 y 19 de julio de 2008, realiza la correspondiente inspección y constatación sobre el estado del proyecto en relación al túnel de conducción, presentando su informe el 25 de julio de 2008, en el cual se describe observaciones sobre:

- *"Tipos de protección del túnel.- Se presentan tramos que han sido protegidos o mejorados en su estabilidad y otros tramos que no han recibido ninguna protección.*



- *Protección con dovelas.- Existen 13 tramos con esta protección, es decir un 8% del total del túnel.*

- *Protección con hormigón lanzado.- Ha sido reforzado con fibras de acero y fibras sintéticas, pero solamente en los tramos en los que la compañía determinó que era necesario. Durante la inspección se calculó que el total protegido es menor al 50% del tramo perforado con el topo.*

3

CRP-DOJ-0002392651

- *Protección con pernos de anclaje.- A lo largo de todo el túnel se observó pernos de anclaje siguiendo un cierto orden con el fin de dar mayor consistencia al macizo rocoso. La solera también está regularmente sujeta al piso con restos de pernos de anclaje; sin embargo, es preocupante la gran cantidad de cabezas de pernos caidos de diferente longitud, también se observó que se están extrayendo sistemáticamente los pernos de la solera del túnel".*

En el informe DIAPA-0039-2008 del "*examen especial de ingeniería a los daños provocados al sistema de enfriamiento y en los filtros de agua y evaluación de los daños que ocasionaron la paralización de la Central Hidroeléctrica San Francisco*", comentario N° 1: Daños en el Túnel de Conducción y Chimenea de Equilibrio, se señala como afectaciones al proyecto las siguientes:

Túnel de conducción y chimenea de equilibrio superior:

*"No presenta inestabilidades que puedan ocasionar su colapso; sin embargo, los desperfectos pueden comprometer la estabilidad de los bloques, piedras, placas o la alteración de esquistos expuestos.*

*El macizo rocoso del túnel de conducción excavado es de buena calidad, excepto en tramos donde hay debilidades geológicas, zonas de alteración o concentraciones mayores de rocas con mucha mica, en las que se ha colocado un número reducido de pernos de anclaje.*

*No se ha lavado adecuadamente la superficie rocosa sobre la cual se depositaron los residuos del hormigón lanzado, esto es, de acuerdo a las especificaciones técnicas, encontrándose capas de hormigón de espesores de 2 a 4 cm, y rebabas en las laterales inferiores del túnel que se desprenden fácilmente.*

*El hormigón de la solera del túnel de conducción entre la trampa 2 y la chimenea de equilibrio superior presenta huellas de desgaste con erosión de varios centímetros en algunos sitios.*

*En los tramos excavados con TBM como con voladura convencional, se advierte una significativa carencia de soportes (pernos y hormigón lanzado) en tramos donde se presentan fallas geológicas, zonas de cizallamiento, reducción de la resistencia del macizo rocoso y zonas propicias a la formación de cuñas rocosas inestables.*



*Se producen grandes acumulaciones de sedimento en lugares donde no existe agua, siendo indispensable la implementación de medidas y dispositivos que hagan posible el lavado de los sedimentos de la chimenea de equilibrio con el menor tiempo de paralización de la Central San Francisco.*

4

CRP-DOJ-0002392652

Existen filtraciones de agua subterránea a través de fallas geológicas comunicadas con el exterior del macizo rocoso, lo cual es peligroso para la estabilidad de la chimenea de equilibrio y del talud superior de la carretera Baños-Puyo".

- Pernos de anclaje:

"El número de pernos de anclaje instalados en zonas descubiertas de hormigón lanzado y que tienen fracturas geológicas, es bajo para el soporte de bloques y cuñas, más aun por ser una obra que tiene el carácter de permanente y además de estar sometida a presiones hidráulicas continuas. Los pernos no tienen la protección que corresponde, como antioxidantes y placas de sostenimiento, lo cual no garantiza su trabajo como soporte permanente.

Los pernos de anclaje debían ser colocados simétricamente en los lugares que se requería; sin embargo, se encuentran colocados en forma aleatoria y en número insuficiente para sostener la masa rocosa fallada, a pesar que en los archivos de Hidropastaza se encuentran pruebas de la resina empleada en la colocación de pernos".

- Dovelas:

"En las dovelas instaladas en zonas donde se presume que las características geomecánicas del macizo se consideran muy malas, la inyección en el trasdós ha sido realizada con material granular sin cementante, que ha sido parcial o totalmente removido por flujos internos de alta presión y/o durante el vaciado del túnel. Existen drenes con chorros o flujos de agua significativos, en los cuales, no se han instalado válvulas check que impida la salida del agua cuando el túnel trabaja bajo presión".

- Drenes:

"Las mangueras y tubos instalados como drenes de ingresos de agua al túnel no disponen de filtros y válvulas tipo check".

**Sobre la Fiscalización:**

En los términos de referencia del contrato de fiscalización se establece que corresponde a la Fiscalización lo siguiente:

"Letra d) del numeral 2.- Aprobar el programa de calidad a ser empleado por la Constructora y efectuar el seguimiento, verificando el cumplimiento del mismo a través de medidas sistemáticas de "spot checks", con la frecuencia y objeto descritos en el Manual de Garantía de Calidad.



5

CRP-DOJ-0002392653

*Letra f).- Señala que la fiscalización deberá presentar periódicamente informes que contengan entre otros aspectos: "Análisis del estado del proyecto en ejecución, atendiendo a los aspectos económicos, financieros y de avance de obra. Informes de los resultados de la verificación del control de calidad llevado a cabo por el Contratista".*

En el numeral 3 *"Fiscalización de las obras"*, establece que durante la ejecución de la obra, el equipo de fiscalización representará a Hidropastaza ante el Contratista, a través de la presencia constante en los lugares de trabajo, manteniendo un equipo técnico multidisciplinario para que entre otros aspectos realice: "...inspección y seguimiento técnico a los montajes electromecánicos; emisión de informes técnicos relativos a la calidad de la ejecución; inspecciones en terreno de las obras en general y en particular de obras que exijan cuidados especiales...".

Para comprobar los servicios ejecutados, aprobará el documento denominado *"Procedimiento de calidad"*, revisará los informes de control de calidad producidos por la constructora y "La Fiscalización repetirá algunos controles en sitios de mayor importancia (spot check), de acuerdo con la frecuencia establecida en el Manual de Calidad".

Lo expuesto en el comentario transcrito fue verificado en la inspección técnica realizada por el equipo de control, con motivo del examen especial de ingeniería practicado a los daños provocados al sistema de enfriamiento y en los filtros de agua y evaluación de los daños que ocasionaron la paralización de la Central Hidroeléctrica San Francisco, lo que demuestra que el Consorcio Constructor de la obra no cumplió las especificaciones técnicas relativas a los recubrimientos del túnel de conducción y chimenea de equilibrio, hechos que señalan que las supuestas inversiones adicionales realizadas por el Consorcio Constructor para la implementación de nuevos y mejores tipos de sostenimientos en función de las condiciones geológicas/geotécnicas halladas durante la excavación del túnel, como las supuestas pérdidas en la eficiencia de excavación debido al procedimiento necesario para iniciar la colocación de las dovelas, mayor colocación de pernos de anclaje y de aplicación de hormigón lanzado, carecen de sustento técnico.

Responden solidariamente los señores: ingenieros **Germán Bolívar Anda Naranjo,** presidente ejecutivo de Hidropastaza S.A, **José Conceicao Santos Filho,** ingeniero **Hermann Saa Berstein, Luis Alfredo Mancero Gallegos**; y, **Jorge Emilio Guerrero Hernández,** miembros del Directorio de Hidropastaza S.A., por cuanto en sus respectivos períodos de actuación, a fin de contar con informes de fiscalización que hubieran permitido el conocimiento veraz y oportuno del incumplimiento de las especificaciones técnicas en el Contrato de Construcción de la Central Hidroeléctrica San Francisco, no exigieron al Representante Legal de la Asociación FURNAS-INTEGRAL, fiscalizadora del Proyecto Hidroeléctrico San Francisco, cumplir lo previsto en expresas disposiciones legales contenidas en el Reglamento de la Ley de Contratación Pública en su artículo 85; Reglamento de



CRP-DOJ-0002392654

Determinación de Etapas del Proceso de Ejecución de Obras de Prestación, artículo 12, apartados b) y g); y, Contrato de Consultoría de Fiscalización.

II.   Que por este motivo, el 2 de febrero de 2010, se establecieron las glosas 6825, 6826, 6828, 6829, 6831 y 6832 en contra del Consorcio Norberto Odebrecht-Alstom-Va Tech, funcionarios y ex funcionarios de la Compañía Hidropastaza S.A., habiéndoseles notificado legalmente en la forma y fechas que constan a continuación, dándoles a conocer el fundamento de la observación y concediéndoles el plazo de sesenta días de conformidad con lo dispuesto en el artículo 53, numeral 1, de la Ley Orgánica de la Contraloría General del Estado, a fin de que contesten y presenten las pruebas de descargo pertinentes.

| No. de Glosa y Nombres | Notificación | Fechas |
|---|---|---|
| 6825<br>**Consorcio Norberto Odebrecht – Alstom – Va Tech** | Publicado Diario"HOY" | 2010/02/17 |
| 6826<br>**Germán Bolívar Anda Naranjo** | Personal | 2010/02/27 |
| 6828<br>**Luis Alfredo Mancero Gallegos** | Personal | 2010/02/09 |
| 6829<br>**Jorge Emilio Guerrero Hernández** | Personal | 2010/02/09 |
| 6831<br>**Julio Hermann Saa Berstein** | Personal | 2010/02/17 |
| 6832<br>**José Conceicao Santos Filho** | Personal | 2010/02/10 |

Las pruebas remitidas para el presente juzgamiento administrativo contienen aspectos de carácter técnico, razón por la cual la Dirección de Responsabilidades, solicitó el criterio técnico respecto de las pruebas, a fin de que la Dirección de Auditoría de Proyectos y Ambiental, emita su opinión, por lo tanto, la presente resolución se respalda también en los criterios emitidos por la mencionada Dirección mediante memorando 1118 DIAPA de 10 de agosto de 2010.



III.   Que dentro del plazo legal, los administrados dan contestación a las glosas mediante comunicaciones ingresadas a la Contraloría General del Estado, según detalle que consta a continuación:

7

IV. Que analizados tanto el informe de examen especial de ingeniería así como el memorando de antecedentes registrados en archivo con el número 872-2009, se concluye que:

El addendum 9, abarca y cuantifica los trabajos adicionales, mayor permanencia, improductividad, ociosidad y costos adicionales incurridos por el Consorcio en la construcción del túnel de conducción entre los PK 9+830 a 0+090.

Según señala el Representante de HIDROPASTAZA, durante la interrupción de las actividades entre los meses de junio a octubre del 2008, con la supervisión e inspección de HIDROPASTAZA S.A., el Consorcio Constructor, a su costo y responsabilidad, realizó una serie de obras complementarias a las estructuras del circuito hidráulico, esto es, en el túnel de conducción y la chimenea superior de equilibrio, como parte de sus obligaciones contractuales durante el período de garantía.

Por lo expuesto, al haber realizado el Consorcio Constructor trabajos dentro del período de doce meses de garantía de las obras, no existen observaciones relacionadas con la construcción del túnel de conducción y de la chimenea de equilibrio superior, pues las intervenciones realizadas en estas estructuras, independientemente de su causa, fueron asumidas y ejecutadas por el Consorcio Constructor.

Hidropastaza y el Consorcio Constructor, el 8 de julio de 2010 han suscrito un Convenio en el que, entre otros asuntos, el Consorcio se ha comprometido a otorgar una garantía por las obras civiles, considerando que en la cláusula 1.2.1. se establece: "...representantes autorizados del Consorcio y de HPEP, inspeccionen detalladamente y de forma conjunta el túnel de conducción y la chimenea de equilibrio superior con el fin de que el Consorcio defina el alcance de los trabajos complementarios y un cronograma para la ejecución inmediata de las distintas etapas de los trabajos que deberán realizarse, de conformidad con las especificaciones técnicas del Contrato de Construcción..."

La Contraloría General del Estado verificará, a través de una nueva acción de control, el cumplimiento de las obligaciones asumidas por las partes en el convenio celebrado el 8 de julio de 2010.

En ejercicio de las facultades que le confiere la ley,

## RESUELVE:

DESVANECER la responsabilidad civil solidaria establecida mediante glosas 6825, 6826, 6828, 6829, 6831 y 6832, por el valor de **USD 4 700 000** de 2 de febrero de 2010, en contra de los señores **Consorcio Odebrecht – Alston – Va Tech,** en la persona de su representante legal, ingenieros, **Germán Bolívar Anda Naranjo,** presidente ejecutivo de Hidropastaza S.A, **José Conceicao Santos Filho,** ingeniero **Hermann Saa Berstein,**

10

CRP-DOJ-0002392658

*Luis Alfredo Mancero Gallegos*; y, *Jorge Emilio Guerrero Hernández*,  miembros del Directorio de Hidropastaza S.A..

Notifíquese,

Por el Contralor General del Estado

Dr. Eduardo Muñoz Vega
SUBCONTRALOR GENERAL DEL ESTADO, encargado

CONTRALORIA GENERAL DEL ESTADO. ES FIEL COPIA. LO CERTIFICO.

SECRETARIA DE RESPONSABILIDADES



11

CRP-DOJ-0002392659