



222 – doscientos veintidós

2454
- 1 SET 2010

CONTRALORÍA GENERAL DEL ESTADO

AO386-C
GOVERNMENT EXHIBIT
CASE NO. 22-cr-20114-KMW
EXHIBIT NO. 1-8B

**RESOLUCION No.**

**EL CONTRALOR GENERAL DEL ESTADO**

**CONSIDERANDO:**

I. Que como resultado del estudio del informe del examen especial de ingeniería a las adendas celebradas entre HIDROPASTAZA S.A. y el Consorcio Odebrecht – Alstom-Va-Techt, dentro del contrato de Ingeniería de Detalle, Suministros y Construcción "EPC" para el proyecto de la Central Hidroeléctrica San Francisco, en el cantón Baños, provincia de Tungurahua, a cargo de la compañía HIDROPASTAZA S.A, que abarca el periodo comprendido entre el 1 de noviembre de 2003 y el 15 de septiembre de 2008, se estableció la glosa de ***USD 4 000 000,*** en contra de los señores ingenieros: ***Germán Bolívar Anda Naranjo*** y ***Sadinoel de Freitas Júnior***, presidente y vicepresidente ejecutivo de Hidropastaza S.A, respectivamente, por cuanto sin dar cumplimiento a las especificaciones técnicas establecidas en el anexo 1 del tomo 3 del segundo contrato modificatorio y sin contar con el informe técnico de constatación física por parte del equipo de Fiscalización, dispusieron el pago mediante la firma del adendum N° 8, inobservando expresas disposiciones legales contenidas en el Reglamento de la Ley de Contratación Pública en su artículo 85; Reglamento de Determinación de Etapas del Proceso de Ejecución de Obras de Prestación, artículo 12, apartados b) y g); y, Contrato de Consultoría de Fiscalización, conforme se describe a continuación:

> El objeto de la suscripción del adendum Nº. 8 es reconocer al Consorcio Odebrecht – Alstom – Va Tech un ajuste económico por costos adicionales incurridos por éste, debido al Primer Ajuste de Precios, numeral 6.2 (b) numeral IX del Contrato EPC (con excepción del túnel de conducción entre los PK 0+090 a 9+830) conforme los términos de los anexos 1, 2 y 4 del adendum.

Para remunerar las obras y servicios objeto de este adendum, Hidropastaza S.A., en su calidad de Concesionaria del proyecto, decidió incrementar el monto del contrato EPC en un valor de USD 4 000 000; dicho monto fue cancelado por Hidropastaza conforme lo establece el contrato EPC.

Los eventuales costos adicionales a los establecidos, incurridos en el túnel de conducción a raíz de cambios geológicos – geotécnicos no previstos, fueron evaluados bajo el mismo criterio utilizado en la determinación del Primer Ajuste de Precios, numeral 6.2 Eventos de Ajuste (b) numeral IX del contrato.

Fueron parte de ese adendum los siguientes documentos:

> **"Anexo 1.- Solicitud de ajuste económico compensatorio OEC/PHSF/DP/050/2006 y remitida por el Consorcio ODEBRECHT-ALSTOM-VA-TECH a Hidropastaza S.A."**

CONTRALORÍA GENERAL DEL ESTADO ECUADOR
DIRECCIÓN NACIONAL DE RESPONSABILIDADES

223 - doscientos veinte y tres

Mediante oficio OEC/PHSF/DP/050/2006 de marzo 31 de 2006, el Director de Proyecto del Consorcio Constructor, solicita el ajuste de precios y plazo del contrato EPC debido a las condiciones geológicas/geotécnicas diferentes a las del anexo 1 al contrato de concesión halladas durante la construcción del Proyecto Hidroeléctrico San Francisco.

En el numeral 1) del referido documento la Constructora presenta la información de soporte de los casos de variación geológica/geotécnica hallados hasta esa fecha durante la construcción del proyecto y que han resultado en costos adicionales para el contratista, incidiendo en el equilibrio económico del contrato EPC; en el numeral 2) solicita a la Concesionaria la aprobación de un ajuste al precio del contrato EPC por la suma de USD 6 070 030,80, al tenor de la cláusula 6.2 Eventos de Ajuste (b) numeral IX del contrato, por concepto de costos generados por condiciones geológicas/geotécnicas halladas en las estructuras ya excavadas, tanto en superficie como subterráneas.

El método de cálculo de los costos adicionales se basó en las consecuencias económicas ocasionadas por la implementación durante la construcción de los diferentes tipos de soporte en función de las necesidades que las condiciones geológicas/geotécnicas halladas lo requieran, para ello se usó un criterio de proporcionalidad por clase de sostenimiento, cuyos pesos porcentuales fueron determinados comparando diferentes parámetros, los mismos que se detallan en un grupo de tablas; los parámetros que se tomaron en consideración son: a) Peso de recursos; b) Carga típica por tipo de roca; c) Materiales de perforación; y, d) Sistema de sostenimiento

- **Anexo 2.- Informe Técnico Económico del Consultor Ingeniero Guy Bourdeaux**

En el mes de abril de 2006, Hidropastaza contrató a un Consultor a fin de que realice el análisis técnico al reclamo presentado por el Consorcio Constructor del Proyecto Hidroeléctrico San Francisco.

En el informe presentado por el Consultor, capítulo 3, "Análisis Técnico" inicia describiendo los criterios adoptados del sistema de clasificación del macizo rocoso, clases de sostenimiento del macizo rocoso y continúa con el análisis del reclamo en lo relativo a cantidades, estructura del precio, evaluación de exclusiones y evaluación de créditos. Se detalla también en el cuadro N° 1 los valores que a criterio del Consultor debían ser reconocidos por concepto de compensación, alcanzando el ajuste la suma de USD 4 220 376,92; finalizando con la conclusión y la recomendación que señala: "*que a fin de que los parámetros previstos en el contrato EPC se mantengan inalterados en el tiempo y no ocasionen perjuicio a las partes y dentro de este concepto, el mantenimiento de condiciones contractuales y el acuerdo económico al cual podrían arribar las partes es por la suma de USD 4 000 000,00*".

- **Anexo 3.- Informe Jurídico emitido por el doctor Iván Vallejo, asesor legal de Hidropastaza S.A**

Contiene el análisis legal y contractual de la procedencia del reclamo por la variación de las condiciones geológicas/geotécnicas del Proyecto Hidroeléctrico

ECUADOR CONTRALORÍA GENERAL DEL ESTADO 2
DIRECCIÓN NACIONAL DE RESPONSABILIDADES

San Francisco, realizado por el Asesor Jurídico externo de Hidropastaza. Este informe se refiere al marco legal, marco contractual, conclusiones y recomendaciones.

En el informe se indica: *"Cabe señalar que las condiciones geológicas geotécnicas señaladas por el Consorcio Constructor, han sido determinadas y verificadas in situ a través de las condiciones reales encontradas en las diferentes estructuras que hacen parte del Proyecto Hidroeléctrico.- Por lo antes expuesto, una vez que se cumplen las condiciones establecidas en el Contrato de Concesión en el numeral 6.2 b) el pago es legal y contractualmente procedente…"*

**Sobre la responsabilidad de la Fiscalización:**

Una vez que el Consorcio Odebrecht – Alstom-Va-Tech, constructor del proyecto, presentó el informe de los costos adicionales ocasionados por la variación geológica/geotécnica, Hidropastaza S.A., previo a la aprobación del ajuste económico y respectivo egreso, debió contar con el informe de Fiscalización que garantice la veracidad de dicho requerimiento; sin embargo, no existe evidencia que la Asociación FURNAS-INTEGRAL, fiscalizadora del Proyecto Hidroeléctrico San Francisco, haya emitido el respectivo informe técnico de constatación física que acredite y avale el reclamo presentado por la Constructora.

El contrato de Consultoría de Fiscalización entre Hidropastaza S.A. y la Asociación FURNAS-INTEGRAL tuvo vigencia a partir del 10 de marzo de 2004 hasta el 10 de julio de 2007, de cuyas cláusulas se desprenden las obligaciones como equipo de Fiscalización. Las cláusulas en referencia señalan:

*"TRES PUNTO UNO.- El presente instrumento tiene por objeto contratar los servicios de la CONSULTORA para la Consultoría al CONTRATANTE respecto a los trabajos de fiscalización del Proyecto San Francisco, de conformidad a lo estipulado en las bases de la invitación correspondiente y en la Propuesta Técnica Económica Adjudicada.*

*TRES PUNTO DOS.- La CONSULTORA ejecutará en forma obligatoria todos los servicios necesarios, los mismos que se especifican en los Términos de Referencia de las Bases de Invitación y en la Propuesta Técnica Económica Adjudicada. En todo caso, el alcance de los trabajos de la CONSULTORA cubrirá exclusivamente el control y supervisión del Contrato EPC (Ingeniería, Suministro y Construcción), consagrado en la oferta adjudicada.-*

*CLAUSULA CUARTA – RESPONSABILIDADES DE LA CONSULTORA – CUATRO PUNTO UNO.- De conformidad con las Bases para la Invitación correspondiente, la CONSULTORA asume la responsabilidad total y solidaria de sus actos y el fiel cumplimiento de este Contrato tanto en el aspecto técnico como en los aspectos administrativos y legales."*

Responden solidariamente el **Consorcio Odebrecht – Alston – Va Tech**, en la persona de su representante legal, por no haber cumplido con las especificaciones técnicas establecidas en el anexo 1 del tomo 3 del segundo contrato modificatorio al contrato de concesión, por lo que no justifica el pago de ***USD 4 000 000***, acordados en el adendum N° 8; y los señores: ingenieros, ***Luis Alfredo Mancero Gallegos***,

CONTRALORÍA GENERAL DEL ESTADO ECUADOR
DIRECCIÓN NACIONAL DE RESPONSABILIDADES

- 225 -
docadenta
presente y único

presidente del Directorio de Hidropastaza S. A.; ***Jorge Emilio Guerrero Hernández*** y ***José Conceicao Santos Filho***, miembros del Directorio de Hidropastaza S.A., por cuanto mediante Resolución 022-2006 constante en Acta 70 de la sesión de Directorio realizada el 19 de abril de 2006, recomendaron a la Junta General de Accionistas de Hidropastaza, la aprobación en base a la recomendación realizada por el Consultor sobre el reconocimiento del ajuste económico solicitado por el Consorcio Constructor sin requerir y basarse en el informe técnico de constatación física de la Fiscalización, que acredite el ajuste económico por costos adicionales incurridos debido a la variación geológica/geotécnica; y, la ***Asociación FURNAS-INTEGRAL,*** en la persona de su representante legal en calidad de fiscalizadora del Proyecto Hidroeléctrico San Francisco, por cuanto inobservó expresas disposiciones legales contenidas en el Reglamento de la Ley de Contratación Pública en su artículo 85; Reglamento de Determinación de Etapas del Proceso de Ejecución de Obras de Prestación, artículo 12, apartados b) y g); y, Contrato de Consultoría de Fiscalización.

**II.** Que por este motivo, el 2 de febrero de 2010, se establecieron las glosas 6825 a 6829 y 6832 en contra del Consorcio Norberto Odebrecht-Alstom-Va Tech funcionarios y ex funcionarios de la Compañía Hidropastaza., habiéndoseles notificado legalmente en la forma y fechas que constan a continuación, dándoles a conocer el fundamento de la observación y concediéndoles el plazo de sesenta días de conformidad con lo dispuesto en el artículo 53, numeral 1, de la Ley Orgánica de la Contraloría General del Estado, a fin de que contesten y presenten las pruebas de descargo pertinentes.

| No. de Glosa y Nombres | Notificación | Fechas |
|---|---|---|
| 6825 ***Consorcio Norberto Odebrecht – Alstom – Va Tech.*** | Publicado Diario"HOY" | 2010/02/17 |
| 6826 ***Germán Bolívar Anda Naranjo*** | Personal | 2010/02/17 |
| 6827 ***Sadinoel de Freitas Júnior*** | Personal | 2010/02/17 |
| 6828 ***Luis Alfredo Mancero Gallegos*** | Personal | 2010/02/09 |
| 6829 ***Jorge Emilio Guerrero Hernández*** | Personal | 2010/02/09 |
| 6832 ***José Conceicao Santos Filho*** | Personal | 2010/02/10 |
| 6833 ***Asociación FURNAS-INTEGRAL*** | Personal | 2010/02/10 |

Las pruebas remitidas para el presente juzgamiento administrativo contienen aspectos de carácter técnico, razón por la cual la Dirección de Responsabilidades, solicitó el criterio técnico respecto de las pruebas, a fin de que la Dirección de

CONTRALORÍA GENERAL DEL ESTADO ECUADOR

DIRECCIÓN NACIONAL DE RESPONSABILIDADES

Auditoría de Proyectos y Ambiental, emita su opinión, por lo tanto, la presente resolución se respalda también en los criterios emitidos por la mencionada Dirección mediante memorando 1118 DIAPA de 10 de agosto de 2010.

III. Que dentro del plazo legal, los administrados dan contestación a las glosas mediante comunicaciones ingresadas a la Contraloría General del Estado, según detalle que consta a continuación:

| | | Fecha | Comunicación |
|---|---|---|---|
| a) | 6825 | | |
| | ***Consorcio Norberto Odebrecht – Alstom – Va Tech*** | 2010/04/22 | 38987 |
| | | 2010/08/05 | 69453 |

El Procurador Judicial de la Constructora Norberto Odebrecht S.A., en base a la observación en su comunicación señala "Que el derecho del Consorcio a solicitar la celebración de la Adenda No. 8 nace de haberse cumplido tres condiciones fundamentales: i) la contractual, pactada en la Cláusula Sexta, Numeral 6.2. "Eventos de Ajuste", Apartado (b) Numeral IX del Contrato de Construcción, que es Ley para las partes; ii) el haberse probado que efectivamente se produjeron diferencias en las condiciones geológico/geotécnicas contempladas en el Anexo 1, Tomo 3 del segundo Contrato Modificatorio al Contrato de Concesión, que fue demostrado por el Consorcio Constructor y avalado por los informes Técnico y Jurídico obtenidos por Hidropastaza; y iii) el hecho de que por las variaciones en las condiciones geológico/geotécnicas de diversos componentes del Proyecto debía mantenerse el equilibrio económico financiero del contrato de construcción y por tanto su carácter de conmutativo para precautelar la ejecución de las obras.

La Adenda No. 8 surge como consecuencia del reclamo presentado a Hidropastaza por el Consorcio en su Oficio No. OEC-PHSF-DP-050-2006 de 31 de marzo de 2006 y que hace parte integrante de la Adenda No. 8, en el cual se presenta un cálculo de los impactos económicos sufridos por este último como consecuencia de las variaciones geológico-geotécnicas encontradas durante la ejecución de la obra con respecto a las condiciones originalmente previstas en el Diseño Básico del ex-INECEL y en los anexos del Segundo Contrato Modificatorio al Contrato de Concesión.

Es así que la Adenda No. 8 abarca y cuantifica los trabajos adicionales, mayor permanencia, improductividad, ociosidad y costos adicionales incurridos por el Consorcio en la construcción de las siguientes estructuras del Proyecto Hidroeléctrico San Francisco:

- Portal Túnel de Descarga Intermedia
- Pórtico de Salida de Líneas
- Túnel de Descarga Intermedia
- Túnel de Conducción - Porción D&B PK 0+000 a 0+090
- Túnel Tubería de Presión y Bifurcador
- Túnel de Acceso Principal
- Túnel de Drenaje
- Túnel de Escape

- 227 -
doscientos veinte y siete

- Túnel de Acceso No. 3
- Túnel de Restitución
- Túnel de Succión
- Túnel Chimenea de Equilibrio Superior
- Túnel de Interconexión
- Túnel Galería de Acceso a la Cámara de Interconexión
- Cámara de Compuertas del Túnel de Restitución

El reclamo planteado por el Consorcio en la Adenda No. 8 ascendió a USD 9 070 030,80, cifra a la cual se le descontó el valor de USD 3 000 000, que el Consorcio estaba obligado a asumir a su costo por las variaciones geológico-geotécnicas que encontrase durante la ejecución de la obra, según lo previsto en el Numeral 6.2 b) IX del Contrato de Construcción, resultando en un monto efectivo reclamado de USD 6 070 030,80.

En base a los Informes Técnico y Jurídico obtenidos por Hidropastaza y que hacen parte integrante de la Adenda No. 8, la suma final acordada para el resarcimiento de este reclamo fue de USD 4 000 000, que es el monto de la Adenda No. 8.

Siendo que el perito designado por el Juez Noveno de lo Civil de Baños (designado sin el conocimiento o participación del Consorcio Constructor ni la Fiscalización) y el equipo de Contraloría no realizaron ninguna observación a las obras materia de la Adenda No. 8 que comprenden el Portal Túnel de Descarga Intermedia, el Pórtico de Salida de Líneas, el Túnel de Descarga Intermedia, el Túnel de Conducción - Porción D&B PK 0+000 a 0+090, el Túnel Tubería de Presión y Bifurcador, del Túnel de Acceso Principal, el Túnel de Drenaje, el Túnel de Escape, del Túnel de Acceso No. 3, el Túnel de Restitución, el Túnel de Succión, el Túnel de Interconexión, el Túnel Galería de Acceso a la Cámara de Interconexión y la Cámara de Compuertas del Túnel de Restitución, obras que por demás se encuentran en su gran mayoría a la vista y que no han presentado ningún tipo de desperfecto, ¿cómo es que usted formula una glosa porque tales obras supuestamente han sido ejecutadas sin cumplir con las especificaciones técnicas?

Siendo además que los supuestos desperfectos en el Túnel de Conducción entre los PK's 0+310 a 11+099 y en la Chimenea de Equilibrio Superior han sido materia del análisis de la Contraloría General del Estado en su Informe DIAPA-0039-2008, ¿cómo es que usted fundamenta esta Glosa 6825 en otro examen especial de ingeniería en el cual se han determinado otras responsabilidades, duplicando así las sanciones impuestas?

En forma general, se entiende por especificaciones técnicas a los documentos en los cuales se definen las normas, exigencias y procedimientos a ser empleados y aplicados en la elaboración de estudios, tareas de construcción, fabricación e instalación de equipos, etc., lo que no se debe ser confundido con cantidades de obra.

Al término de la ejecución de las obras correspondientes a la Adenda No. 8, materia de la Glosa 6825, la Asociación Furnas-Integral ya había remitido al departamento de ingeniería de Hidropastaza más de dieciocho (18) informes mensuales de avance: i) evaluando el cumplimiento de los programas de trabajo y cronogramas

CONTRALORÍA GENERAL DEL ESTADO ECUADOR
DIRECCIÓN NACIONAL DE RESPONSABILIDADES

- 228 - doscientos veinte y ocho

del Consorcio; ii) certificando la exactitud de las planillas de pago; iii) aprobando el programa de calidad haciendo su seguimiento y verificando su cumplimiento, entre otros aspectos, todo ello de conformidad con la Cláusula Décima Segunda del Contrato de Fiscalización.

Durante la vigencia del Contrato de Construcción, la fiscalización llegó a emitir más de treinta informes mensuales de avance verificando y ratificando, como así lo hizo, el cumplimiento de las Especificaciones Técnicas del contrato. Los supuestos defectos puntuales identificados por el perito designado por el Juez Noveno de lo Civil de Baños y el equipo de Contraloría pueden obedecer a distintas causas, pero no puede afirmarse, como afirma la Contraloría, que tal causa sea simple y llanamente el incumplimiento absoluto de todas las especificaciones técnicas de toda la obra, pues con ello se demuestra la ausencia absoluta de análisis por parte de la Contraloría General del Estado al respecto de los incumplimientos que se pretende imputar al Consorcio. A las meras afirmaciones del perito designado fuera de todo proceso sin el conocimiento o participación del Consorcio, oponemos los registros de obra y los informes de la Fiscalización, que demuestran técnicamente y de forma específica, abundante y documentada el cumplimiento de las especificaciones técnicas.

En consecuencia, la ejecución de todos los trabajos de construcción, incluyendo aquellos materia de la Adenda No. 8 fueron acompañados exhaustivamente y en detalle durante todo el periodo de ejecución de las obras por la fiscalización, no solamente para verificar los avances de obra, sino especialmente, para verificar el acompañamiento tecnológico y el control de la calidad de los trabajos de cada uno de los componentes del proyecto.

De los textos arriba transcritos se ha demostrado fehacientemente que no existía una obligación de Hidropastaza de contar con un informe previo de la Fiscalización como requisito obligatorio para la firma de cualquier acuerdo con el Consorcio. El Literal n) arriba citado **NO** representa tal requerimiento, pues la Fiscalización acompañó y discutió con el Consorcio la ejecución de las tareas de sostenimiento y construcción adicionales conforme iban siendo ejecutadas en campo, conforme se desprende de los registros de obra y de los más de treinta informes mensuales de la Fiscalización y de las múltiples aprobaciones de todas y cada una de las planillas de medición y pago del Proyecto. Si usted considera que los hechos no fueron así, es su obligación legal demostrarlo documentadamente y no en base a meras afirmaciones de peritos designados de manera unilateral o en base a simples enunciados sin soporte documental como los que se presentan en su Glosa.

**Independientemente de todo lo antedicho y para demostrar fuera de toda duda que las aseveraciones de la Contraloría General del Estado carecen de sustento, adjunto al presente sírvase encontrar el informe ASFI.SF.013.2005 Rev.0 del 15 de diciembre de 2005, en forma previa a la suscripción de la Adenda No. 8, a través del cual la Fiscalización analizó y confirmó las variaciones propuestas por el Consorcio y reconocidas a través de dicha Adenda.**

En definitiva, si las Especificaciones Técnicas fueron cumplidas, como lo demuestran los informes mensuales de la Fiscalización y los registros de obra y

CONTRALORÍA GENERAL DEL ESTADO ECUADOR
DIRECCIÓN NACIONAL DE RESPONSABILIDADES

229 descuento neto y queda

como lo demuestra el hecho que no existieron observaciones específicas del perito o del equipo de Contraloría citados por usted en el Borrador y en el Informe DIAPA-0020-2009 a las obras materia del Adendum No. 8, si la Codificación de la Ley de Contratación Pública no es aplicable, como tampoco lo es el Reglamento de Determinación de Etapas para el Contrato de Consultoría suscrito entre Hidropastaza y la Asociación Furnas-Integral, el mismo que no estipula ninguna obligación de Hidropastaza de contar con informes previos de la Fiscalización para la aprobación, implementación y pago de la Adenda No. 8, ¿cómo es que usted impone una glosa por esta Adenda?

Hidropastaza actuó como no podía ser de otra manera, como compañía de derecho privado, y los procesos de contratación se ejecutaron al amparo de sus propias normas, por lo que resulta, por decir lo menos, irrazonable e ilegítimo emitir una glosa por no haber exigido lo que en derecho no era requerido exigir. En el desarrollo del Contrato de Construcción se exigió la participación de la Fiscalización en cada momento y dentro de sus propias obligaciones, mas en el caso que nos ocupa, tal participación no era requerida según la norma contenida en el Numeral 7.1 del Contrato de Construcción que dice "...el precio del Contrato será ajustado por acuerdo entre las partes por los eventuales efectos de los ajustes al Contrato". Por tanto está plenamente justificado el pago compensatorio establecido de común acuerdo entre las Partes en el caso contemplado en la Adenda No. 8, que es inferior en USD 2 070 030,80 a lo reclamado por el Consorcio.

Con oficio No. 0436.HPEP.2010 de 9 de julio de 2010, el Gerente General de Hidropastaza S.A., expresa:

"8.1.4 Adendas Nos. 8 y 9

El Informe DIAPA-0020-2009 se establece que el pago de USD 8 700.000, por las Adendas Nos. 8 y 9 no se encuentra justificado en base al alcance y contenido del "Examen especial de ingeniería a los daños provocados al sistema de enfriamiento y en los filtros de agua y evaluación de los daños que ocasionaron la paralización de la Central Hidroeléctrica San Francisco", que resultó en el informe DIAPA-0039-2008.

Los exámenes DIAPA-0039-2008 y DIAPA-0020-2009 concluyen afirmando que el Consorcio Constructor no cumplió las especificaciones técnicas relativas a los recubrimientos del túnel de conducción y chimenea de equilibrio, concluyendo que las inversiones adicionales realizadas por el consorcio constructor en el ámbito de las Adendas Nos. 8 y 9 no tuvieron los resultados esperados.

Pues bien, partiendo del principio que la Contraloría General del Estado no ha cuestionado la validez o legalidad de tales adendas y sí sus efectos, vale anotar que durante la interrupción de las actividades de operación entre los meses de junio a octubre de 2008, el Consorcio Constructor, con la supervisión e inspección de Hidropastaza, realizó una serie de obras complementarias a las estructuras del circuito hidráulico, esto es, el túnel de conducción y la chimenea superior de equilibrio, como parte de sus obligaciones durante el período de garantía de las obras contratadas. Este situación resulta corroborada por el hecho que los valores inicialmente imputados al Consorcio por la Contraloría General del Estado en su Comunicación de Resultados Provisionales para la ejecución de reparaciones en las

CONTRALORÍA GENERAL DEL ESTADO ECUADOR

DIRECCIÓN NACIONAL DE RESPONSABILIDADES

CRP-DOJ-0003143369

- 230 -
doscientos treinta

obras (US$ 18 millones para el año 2008 y US$ 18 millones para el año 2009) fueron excluidos del Informe Final DIAPA-0039-2008, pues en efecto, tales reparaciones fueron asumidas por el Consorcio.

Por tanto, es la opinión de Hidropastaza que no es dable que el contratista realice las reparaciones necesarias a la obra a su costo y que adicionalmente deba devolver los valores cancelados, pues se estaría cobrando un doble resarcimiento por el mismo hecho.

| b) | | Fecha | Comunicación |
|---|---|---|---|
| | 6826 *Germán Bolívar Anda Naranjo* | 2010/04/14 | 361368 |
| | 6827 *Sadinoel de Freitas Júnior* | 2010/04/07 | 034083 |
| | 6828 *Luis Alfredo Mancero Gallegos* | 2010/04/08 | 34966 |
| | 6829 *Jorge Emilio Guerrero Hernández* | 2010/04/08 | 34961 |
| | 6832 *José Conceicao Santos Filho* | 2010/04/07 | 34092 |
| | 6833 *Asociación FURNAS-INTEGRAL* | 2010/04/05 | 33199 |

Los interesados solidarios en calidad de miembros del directorio, en su comunicación coinciden en indicar que no aprobaron ni autorizaron la suscripción del Addendum N° 8, ya que estatutariamente no les correspondía exigir a la fiscalización la presentación de los informes que, independientemente de quien tenía la obligación contractual de solicitar dichos informes, éstos han sido presentados por la fiscalización con el suficiente detalle sobre el cumplimiento de las especificaciones técnicas y que para la liquidación de este addendum, la Administración contó con el informe de la fiscalización.

**IV.** Que analizados tanto el informe de examen especial de ingeniería así como el memorando de antecedentes registrados en archivo con el número 872-2009, se concluye que:

El adendum Nº 8, nace luego de haberse cumplido tres condiciones fundamentales: i) la contractual, pactada en la Cláusula Sexta, Numeral 6.2. (b) Numeral IX del Contrato de Construcción; ii) el haberse probado que efectivamente se produjeron diferencias en las condiciones geológico/geotécnicas contempladas en el Anexo 1, Tomo 3 del segundo Contrato Modificatorio al Contrato de Concesión; y iii) el hecho de que por las variaciones en las condiciones geológico/geotécnicas de diversos componentes del Proyecto debía mantenerse el equilibrio económico financiero del contrato de construcción.

- 231 -
doscientos treinta y uno

El objeto del Adendum 8, abarca y cuantifica los trabajos adicionales, mayor permanencia, improductividad, ociosidad y costos adicionales incurridos por el Consorcio en la construcción de las siguientes estructuras del Proyecto Hidroeléctrico San Francisco:

- Portal Túnel de Descarga Intermedia
- Pórtico de Salida de Líneas
- Túnel de Descarga Intermedia
- Túnel de Conducción - Porción D&B PK 0+000 a 0+090
- Túnel Tubería de Presión y Bifurcador
- Túnel de Acceso Principal
- Túnel de Drenaje
- Túnel de Escape
- Túnel de Acceso No. 3
- Túnel de Restitución
- Túnel de Succión
- Túnel Chimenea de Equilibrio Superior
- Túnel de Interconexión
- Túnel Galería de Acceso a la Cámara de Interconexión
- Cámara de Compuertas del Túnel de Restitución.

El Representante de HIDROPASTAZA, señala que durante la interrupción de las actividades entre los meses de junio a octubre del 2008, con la supervisión e inspección de HIDROPASTAZA S.A., el Consorcio Constructor, a su costo y responsabilidad, realizó una serie de obras complementarias a las estructuras del circuito hidráulico, esto es en el túnel de conducción y chimenea superior de equilibrio, como parte de sus obligaciones durante el período de garantía.

Hidropastaza y el Consorcio Constructor, el 8 de julio de 2010 han suscrito un Convenio en el que, entre otros asuntos, el Consorcio se ha comprometido a otorgar una garantía por las obras civiles, considerando que en la cláusula 1.2.1. se establece: "...representantes autorizados del Consorcio y de HPEP, inspeccionen detalladamente y de forma conjunta el túnel de conducción y la chimenea de equilibrio superior con el fin de que el Consorcio defina el alcance de los trabajos complementarios y un cronograma para la ejecución inmediata de las distintas etapas de los trabajos que deberán realizarse, de conformidad con las especificaciones técnicas del Contrato de Construcción..."

La Contraloría General del Estado verificará, a través de una nueva acción de control, el cumplimiento de las obligaciones asumidas por las partes en el convenio celebrado el 8 de julio de 2010.

Por lo expuesto,

En ejercicio de las facultades que le confiere la ley,

**RESUELVE:**

**DESVANECER** la responsabilidad civil solidaria establecida mediante glosas 6825 a 6829, 6832 y 6833 de 2 de febrero de 2010, por el valor de ***USD 4 000 000*** en contra de los señores ingenieros ***Germán Bolívar Anda Naranjo*** y ***Sadinoel de***

CONTRALORÍA GENERAL DEL ESTADO
DIRECCIÓN NACIONAL DE RESPONSABILIDADES

- 221 -
doscientos veinte y uno

***Freitas Júnior***, presidente y vicepresidente ejecutivo de Hidropastaza S.A, respectivamente, **Consorcio Odebrecht – Alston – Va Tech**, en la persona de su representante legal, ingenieros, ***Luis Alfredo Mancero Gallegos,*** presidente del Directorio de Hidropastaza S. A.; ***Jorge Emilio Guerrero Hernández, José Conceicao Santos Filho***, miembros del Directorio de Hidropastaza S.A., y Asociación FURNAS-INTEGRAL, en la persona de su representante legal.

Notifíquese,

Por el Contralor General del Estado

Dr. Eduardo Muñoz Vega
**SUBCONTRALOR GENERAL DEL ESTADO, encargado**

PCF/GVN/DGC
G. 6825 a 6829, 6832 y 6833
Inf. 872-2009
NIS: 7909-2009
2010/08/31