DIRES-SR
2da. Resoluc. No.2599
2011-06-24
6825

Señor (a) (ita)
CONSORCIO NORBERTO ODEBRECHT
CONTRATISTA
CONSEJO NACIONAL DE ELECTRICIDAD (CONELEC)
CASILLERO JUDICIAL No. 3003 AB.HERNAN SANCHEZ VALDIVIEZO
QUITO     PICHINCHA

Oficina Matriz: Av. Juan Montalvo E4-37 y Av. 6 de Diciembre · Teléfono: (593-2) 290 0831 · Quito - Ecuador



AO386-C
**GOVERNMENT EXHIBIT**
CASE NO. 22-cr-20114-KMW
EXHIBIT NO. 1-9

CRP-DOJ-0002392675



**REPUBLICA DEL ECUADOR**
**CONTRALORIA GENERAL DEL ESTADO**
DIRECCION DE RESPONSABILIDADES
NOTIFICACION DE RESOLUCIONES

Quito, 2011-06-24

Señor (a) (ita)
CONSORCIO NORBERTO ODEBRECHT
CONTRATISTA
CONSEJO NACIONAL DE ELECTRICIDAD (CONELEC)
CASILLERO JUDICIAL No. 3003 AB.HERNAN SANCHEZ VALDIVIEZO
QUITO          PICHINCHA

De conformidad con lo dispuesto por el artículo 334 de la Ley Orgánica de Administración Financiera y Control y/o 55 de la Ley Orgánica de la Contraloría General del Estado, adjunto al presente le remito en 13 hojas un ejemplar de la Resolución No. 2599 de 2011-06-24 refronte a la Resolución No. 2447 de 2010-08-27, con la que se notificó oportunamente.

15:19

Atentamente,
DIOS PATRIA Y LIBERTAD
Por el Contralor General del Estado

María Patricia Alcoser C.
SECRETARIO DE RESPONSABILIDADES

01-JULIO-2011

RF/

CRP-DOJ-0002392676



RESOLUCION N° 2599

24 JUN. 2011

# EL CONTRALOR GENERAL DEL ESTADO

## CONSIDERANDO;

I. Que mediante Resolución 2447 de 27 de agosto de 2010, se confirmó la responsabilidad civil solidaria de 32 785 082,36 USD a base de las glosas previamente notificadas, como resultado del estudio del informe del examen especial de ingeniería practicado a las adendas celebradas entre HIDROPASTAZA S.A. y el CONSORCIO ODEBRECHT-ALSTOM-VA-TECH, dentro del contrato de Ingeniería de Detalle, Suministros y Construcción "EPC" para el proyecto de la Central Hidroeléctrica San Francisco, en el cantón Baños, provincia de Tungurahua, a cargo de la compañía HIDROPASTAZA S.A., que abarca el período comprendido entre el 1 de noviembre de 2003 y el 15 de septiembre de 2008, en contra del Consorcio Odebrecht-Alstom-Va-Tech en la persona de su representante legal por cuanto el Consorcio mediante Adendum 10 se benefició del monto motivo de la glosa, por diferencial cambiario entre la moneda del precio del contrato (dólares de Estados Unidos de América) y la moneda de pago parcial (real de Brasil), a pesar de que el contrato EPC en su cláusula 5, estipula que la moneda de pago del precio pactado entre las partes es el dólar de los Estados Unidos de América; de igual manera, el contrato de financiamiento también establece el pago en esa moneda, tal como se comenta a continuación:

**Contrato EPC de Ingeniería de Detalles, Suministros y Construcción:**

Precio del Contrato.- numeral 5.- "*Las obras y servicios objeto del Contrato, al tenor de los Documentos de la licitación del proyecto San Francisco llevada a cabo por INECEL, serán efectuados por un precio de DOSCIENTOS OCHENTA Y SEIS MILLONES OCHOCIENTOS CINCUENTA Y UN MIL CIENTO VEINTE Y NUEVE Dólares de los Estados Unidos de Norteamérica (USD 286 851 129.00) en adelante, el "Precio del Contrato", sujeto a los ajustes previstos en este documento. El precio del Contrato será pagado de acuerdo a lo definido en el numeral 14 de este documento.*"

**Contrato de Financiamiento del Banco Nacional de Desarrollo Económico y Social, BNDES:**

Numeral 2.3.- "*El crédito resultante de este financiamiento será puesto a disposición de la FINANCIADA y será desembolsado directamente a NORBERTO ODEBRECHT y al CONSULTOR BRASILEÑO, respectivamente, en el Brasil en moneda brasileña, a través de un banco mandatario (en adelante denominado "BANCO MANDATARIO2), de aquellos acreditados ante el FINANCIADOR, a ser indicado por NORBERTO ODEBRECHT y el CONSULTOR BRASILEÑO y confirmado por el FINANCIADOR*".

Numeral 2.4.- "*Los recursos desembolsados por el FINANCIADOR estarán disponibles para NORBERTO ODEBRECHT y el CONSULTOR BRASILEÑO, por parte del BANCO MANDATARIO y por cuenta y orden de la FINANCIADA, hasta el*



Dirección de Responsabilidades. Teléfono: 398 7360
Oficina matriz: Av. Juan Montalvo E4-37 y Av. 6 de Diciembre. Quito-Ecuador

CRP-DOJ-0002392677

día hábil siguiente a aquel en que fue efectuado el desembolso de los fondos por parte del FINANCIADOR."

Conforme el procedimiento de pago establecido en el párrafo anterior, el Presidente y Vicepresidente Ejecutivos de Hidropastaza S.A., respaldados en facturas y planillas de avance de obras, autorizaron los desembolsos a favor de la Constructora Norberto Odebrecht, con cargo al financiamiento otorgado por el Banco Nacional de Desarrollo Económico y Social, BNDES, el mismo que mediante aviso de crédito procedió a transferir a la cuenta del Consorcio Constructor el valor en reales de Brasil, a la tasa de cotización vigente a la fecha de pago.

De igual forma, las obligaciones por las transferencias efectuadas por el Banco Nacional de Desarrollo Económico y Social, BNDES, a la cuenta del Consorcio Constructor, con cargo al contrato de financiamiento, son registradas por el Banco Central del Ecuador en dólares de los Estados Unidos de América.

A pesar de lo señalado anteriormente, la Junta General Universal Extraordinaria de Accionistas de Hidropastaza S.A., en sesión de 11 de diciembre de 2006, resuelve mediante Resolución 048-2006: "...Aprobar la forma de pago propuesta y recomendada por el Directorio de HIDROPASTAZA S.A., para cancelar las obligaciones contractuales del Proyecto San Francisco, por el diferencial cambiario incurrido por la conversión de la moneda."

Las facturas que emitió el Consorcio Constructor por concepto del Adendum N° 10 son las siguientes:

| FACTURA | FECHA EMISION | VALOR USD | IVA | TOTAL | 1% RETENCION | 70% IVA CONSORCIO | POR PAGAR AL CONSORCIO USD |
|---|---|---|---|---|---|---|---|
| 1947 | 04/01/2007 | 26.184.966,83 | 3.142.196,02 | 29.327.162,85 | 261.849,67 | 2.199.537,21 | 25.923.111,16 |
| 1948 | 10/01/2007 | 1.347.709,68 | 161.725,16 | 1.509.434,89 | 13.477,10 | 113.207,61 | 1.334.232,58 |
| 2007 | 29/01/2007 | 144.533,01 | 17.343,96 | 161.876,97 | 1.445,33 | 12.140,77 | 143.087,68 |
| 2081 | 21/02/2007 | 1.150.647,60 | 138.077,71 | 1.288.725,31 | 11.506,48 | 96.654,40 | 1.139.141,12 |
| 2181 | 10/04/2007 | 984.126,80 | 118.095,22 | 1.102.222,02 | 9.841,27 | 82.888,65 | 974.285,53 |
| 2197 | 24/04/2007 | 317.144,97 | 38.057,40 | 355.202,37 | 3.171,45 | 26.640,18 | 313.972,53 |
| 2234 | 17/05/2007 | 397.018,57 | 47.642,23 | 444.660,80 | 3.970,19 | 33.349,56 | 393.048,38 |
| | TOTAL USD | 30.526.147,46 | 3.663.137,70 | 34.189.285,16 | 305.261,47 | 2.564.196,39 | 30.220.885,98 |

Los certificados entregados al Consorcio constructor por concepto de la facturación arriba descrita son:

| NO CERTIFICADO | FACTURA ODEBRECHT | MONTO KW/H | TOTAL KW/H | TOTAL PAGADO USD |
|---|---|---|---|---|
| 1 | 1947 | 100.000.000,00 | | |
| 2 | 1947 | 100.000.000,00 | | |
| 3 | 1947 | 100.000.000,00 | | |
| 4 | 1947 | 100.000.000,00 | | |



2

CRP-DOJ-0002392678

| | | | | |
|---|---|---|---|---|
| 5 | 1947 | 100.000.000,00 | | |
| 6 | 1947 | 100.000.000,00 | | |
| 7 | 1947 | 20.000.000,00 | | |
| 8 | 1947 | 8.271.665,00 | 628.271.665,00 | 25.923.117,6 |
| 9 | 1948 | 20.000.000,00 | | |
| 10 | 1948 | 12.336.409,00 | 32.336.409,00 | 1.334.232,8 |
| 11 | 2007 | 3.467.867,00 | 3.467.867,00 | 143.087,8 |
| 12 | 2081 | 27.608.180,00 | 27.608.180,00 | 1.139.141,2 |
| 13 | 2181 | 23.612.746,00 | 23.612.746,00 | 974.285,3 |
| 14 | 2197 | 7.609.450,00 | 7.609.450,00 | 313.973,2 |
| 15 | 2234 | 9.525.905,00 | 9.525.905,00 | 393.048,8 |
| | | | | 30.220.885,8 |

Por concepto del 70% de IVA

| NO CERTIFICADO | IVA FACTURADO ODEBRECHT | MONTO KW/H | TOTAL KW/H | TOTAL PAGADO USD |
|---|---|---|---|---|
| 1 | IVA 1947 (70%) | 25.000.000,00 | | |
| 2 | IVA 1947 (70%) | 25.000.000,00 | | |
| 3 | IVA 1947 (70%) | 3.307.899,00 | 53.307.889,90 | 2.199.537 21 |
| 4 | IVA 1948 (70%) | 2.743.695,00 | 2.743.695,00 | 113.207 61 |
| 5 | IVA 2007 (70%) | 294.243,00 | 294.243,00 | 12.140 77 |
| 6 | IVA 2081 (70%) | 2.342.512,00 | 2.342.512,00 | 96.654 40 |
| 7 | IVA 2181 (70%) | 2.003.506,00 | 2.003.506,00 | 82.666 65 |
| 8 | IVA 2197 (70%) | 645.650,00 | 645.650,00 | 26.640 18 |
| 9 | IVA 2234 (70%) | 808.259,00 | 808.259,00 | 33.349 56 |
| | | | | 2.564.196 38 |

El procedimiento de desembolso de los valores autorizados por Hidropastaza S.A., a favor del Consorcio Constructor, estipulado en el numeral 2.3 del contrato de financiamiento, es un trámite particular entre el BNDES y Odebrecht, en el cual no influye decisión alguna de Hidropastaza S.A.; en consecuencia, la suscripción del adendum 10 para reconocer un diferencial cambiario entre dólares de Estados Unidos de América y reales del Brasil no es precedente ya que en el contrato EPC se estipula que la moneda de pago es el dólar de los Estados Unidos de América.

Responden solidariamente los señores ingenieros: Germán Bolívar Anda Naranjo, presidente ejecutivo; Sadinoel de Freitas Junior, vicepresidente ejecutivo; Hermann Saa Berstein y Alejandro Rodrigo Gómez Ponce, miembros Junta de Accionistas de Hidropastaza, por cuanto aprobaron la forma de pago propuesta y recomendada por el directorio de Hidropastaza, mediante Resolución 048-2006 de 11 de diciembre de 2006, sin considerar las obligaciones contractuales que constan en los contratos EPC y en el de Financiamiento del Banco Nacional de Desarrollo Económico y Social, BNDES;



3

CRP-DOJ-0002392679

II. Que en conocimiento de la Resolución en referencia y ante las solicitudes interpuestas por los responsables solidarios que a continuación se detalla, el 03 de diciembre de 2010 se dicta la providencia concediendo el recurso de revisión de la misma, decisión con la que se notifica a los interesados en esa fecha con los oficios 20021-DIRESJSR a 20025-DIRESJSR, al mismo tiempo que se dispone un nuevo estudio de sus antecedentes:

| NOMBRE Y CARGO | FECHA NOTIFICACION RESOL 2247 | SOLICITUD RECURSO REVISION Nº | SOLICITUD RECURSO REVISION FECHA | CONTROL COMUNICACIÓN Nº | CONTROL COMUNICACIÓN FECHA | HOJA EXP. |
|---|---|---|---|---|---|---|
| Consorcio Noberto Odebrecht-Alstom-Va Tech | 2010-09-01 | s/n | 2010-10-27 | 94532 | 2010-10-27 | 2113 |
| Germán Bolívar Anda Naranjo Presidente Ejecutivo | 2010-09-13 | s/n | 2010-10-25 | 93812 | 2010-10-25 | 2161 |
| Sadinoel de Freitas Junior Vicepresidente | 2010-09-01 | s/n | 2010-09-21 | 82497 | 2010-09-21 | 2128 |
| Rodrigo Alejandro Gómez Ponce Miembro Junta de Accionistas HIDROPASTAZA | 2010-09-01 | s/n | 2010-09-21 | 82496 | 2010-09-21 | 2132 |
| Hermann Saa Berstein Miembro Junta de Accionistas HIDROPASTAZA | 2010-09-01 | s/n | 2010-10-29 2010-10-29 | 43823 43856 | 2010-10-29 2010-10-29 | 2175 2170 |

III. Que los recurrentes, a los oficios antes descritos adjuntan documentos como pruebas de descargo de la responsabilidad que se les imputa, los mismos que serán materia del análisis correspondiente;

IV. Que estudiados una vez más el informe de examen especial de ingeniería y memorando de antecedentes para el establecimiento de responsabilidades, registrados en archivo con el número 872-2009 y analizadas las alegaciones y documentos presentados en la instancia anterior, así como las exposiciones y prueba instrumental que presentan en esta oportunidad, se llega a lo siguiente:

PRIMERO.- La predeterminación de la responsabilidad civil culposa solidaria tiene su origen en el informe del examen especial de ingeniería, practicado a las adendas celebradas entre HIDROPASTAZA S.A. y el Consorcio Odebrecht-Alstom-Va-Tech y radica en el hecho de que el Consorcio, mediante Adendum 10 se benefició de 32 785 082,36 USD, "... por diferencial cambiario entre la moneda del precio del contrato (dólares de Estados Unidos de América) y la moneda de pago parcial 'real del Brasil), a pesar de que el contrato EPC en su cláusula 5, estipula que la moneda de pago del precio pactado entre las partes es el dólar de Estados Unidos de América; de igual manera, el contrato de financiamiento también establece el pago en esa moneda..." ; en cuanto al presidente ejecutivo, vicepresidente ejecutivo y miembros de la Junta de Accionistas de Hidropastaza se les responsabiliza "... por cuanto en el ejercicio de sus funciones y en sus respectivos períodos de actuación, aprobaron la forma de pago propuesta y recomendada por el directorio de Hidropastaza, mediante Resolución 048-2006 de 11 de diciembre de 2006 sin considerar las obligaciones contractuales que constan en los contratos EPC y en el de Financiamiento del Banco Nacional de Desarrollo Económico y Social, BNDES.".



4

**SEGUNDO.-** En la Resolución recurrida se expone la fundamentación en los siguientes términos:

- Se enuncia el contenido de la cláusula 5 sobre el "Precio del Contrato" EPC celebrado entre Hidropastaza y el Consorcio Constructor, como también lo pertinente del Contrato de Financiamiento suscrito entre Hidropastaza y el Banco Nacional de Desarrollo Económico y Social, BNDES, así mismo se hace referencia a la sesión de la Junta General Universal Extraordinaria de Accionistas de Hidropastaza de 11 de diciembre de 2006, en la que se aprueba el pago por el diferencial cambiario por la conversión entre dólares de Estados Unidos de América y los reales del Brasil, también se menciona la facturación emitida por el Consorcio Constructor y los pagos efectuados, hs. 1 y 2 de la Resolución.

  A base de estos presupuestos se establece que: "*El procedimiento de desembolso de los valores autorizados por Hidropastaza S.A., a favor del Consorcio Constructor, estipulado en el numeral 2.3 del contrato de financiamiento, es un trámite particular entre el BNDES y Odebrecht, en el cual no influye decisión alguna de Hidropastaza S.A.; en consecuencia, la suscripción del Adendum N° 10 para reconocer un diferencial cambiario entre dólares de Estados Unidos de América y reales del Brasil no es procedente ya que en el contrato EPC se estipula que la moneda de pago es el dólar de los Estados Unidos de América.*".

- Así mismo, se hace un resumen de las alegaciones de los responsables solidarios en contestación a las glosas, en particular refiriéndose a las estipulaciones del Contrato de Financiamiento, en donde se dice lo siguiente:

  "*...Como resultado de lo anterior y de los documentos que se anexan al presente, queda demostrado que ni la Constructora Norberto Odebrecht S.A. ni el Consorcio hacen parte del Decreto Ejecutivo N° 258-A mediante el cual se otorgó una garantía soberana respecto del crédito otorgado por el BNDES para la construcción del Proyecto Hidroeléctrico San Francisco.- En consecuencia, el Estado ecuatoriano e Hidropastaza asumieron la obligación de cumplir con las condiciones del Contrato de Financiamiento y por tanto, aunque el Contrato de Construcción fue en dólares y los pagos de Hidropastaza en el Ecuador fueron en dólares, el Consorcio recibió Reales Brasileños.*".

- Con los argumentos expuestos en los párrafos precedentes, se concluye confirmando la responsabilidad civil solidaria, en razón de que el procedimiento de desembolso de los valores autorizados por Hidropastaza S.A., a favor del Consorcio Constructor, estipulado en el numeral 2.3 del contrato de financiamiento, es un trámite particular entre BNDES y Odebrecht, en el cual no debió influir decisión alguna de Hidropastaza S.A.; en consecuencia, la suscripción del Adendum N° 10 para reconocer un diferencial cambiario entre dólares de los Estados Unidos de América y reales del Brasil no es procedente ya que en el contrato EPC se estipula que la moneda de pago es el dólar de los Estados Unidos de América.

**TERCERO.-** Habiéndose dado a conocer de la Resolución 2447 de 27 de agosto de 2010, los administrados remiten sus comunicaciones y documentos que consideran descargo de la responsabilidad descrita en los párrafos precedentes, de cuyo análisis, así como del informe de examen especial, memorando de antecedentes y documentos presentados en la instancia anterior, se llega a lo siguiente:



5

- En oficio 09929 de 11 de enero del 2000, hs.15.816, el Procurador General del Estado emitió su informe favorable para la contratación del crédito externo para el financiamiento del Proyecto Hidroeléctrico San Francisco, conforme lo prescribía el artículo 124 de la Ley Orgánica de Administración Financiera y Control.

- El Presidente Constitucional de la República del Ecuador, el 29 de marzo del 2000 expidió el Decreto Ejecutivo 258-A, publicado en el Suplemento del Registro Oficial 50 de 4 de abril de 2000, mediante el cual se autorizó al Ministerio de Finanzas y Crédito Público para que en nombre y Representación de la República del Ecuador, suscriba con el Banco Central del Ecuador un Convenio de Agencia Fiscal a través del cual se garantice el pago del servicio de la deuda del crédito que concederá el Banco de Desenvolvimiento Económico y Social de la República Federativa de Brasil, BNDES, al Consorcio Hidropastaza, por un monto de 242 965 100 USD, destinados a financiar la construcción del Proyecto Hidroeléctrico San Francisco, así como la capitalización de intereses durante el período de gracia, hs. 13.426.

- El Contrato de Financiamiento fue suscrito el 13 de abril de 2000 en Río de Janeiro, Brasil, entre el FINAME, Agencia Especial de Financiamiento Industrial y agente mandatario del Banco Nacional de Desarrollo Económico y Social BNDES del Brasil e Hidropastaza S.A., por un valor de 242 965 100 USD (1 500 000 00 USD, corresponde al subcrédito 2), hs. 14.819.

  De la revisión a dicho Contrato, se desprende que la Constructora Norberto Odebrecht S.A., no tiene ninguna participación directa en el mismo, no interviene, ni suscribe, excepto como exportador de los bienes y servicios financiados por el crédito, el mismo que tiene la particularidad de ajustarse a la modalidad "buyers credit" que implica que el organismo o estado que otorga el crédito, exige que los bienes a ser adquiridos con éste, tengan un determinado origen o sean adquiridos en determinadas condiciones, en este caso, el Contrato de Financiamiento estipula que el 80% del crédito será destinado a la adquisición en el Brasil de bienes y servicios de origen brasileño, es decir que el exportador de los bienes y servicios, o sea, el Consorcio no tiene opción de comprar tales insumos en otros países y está obligado a hacerlo en el Brasil, observando las condiciones del crédito y la disponibilidad de bienes en ese país.

- Según el artículo 14 de la Constitución de 1998, vigente a esa fecha, no permitía que los contratos que fueren celebrados en territorio ecuatoriano, se sujeten a otras jurisdicciones, pero como el Contrato de Financiamiento para el Proyecto San Francisco fue celebrado en Brasil y las Leyes que se aplican son las de Brasil, por lo tanto, se estipula que los pagos al exportador se realicen en el Brasil en reales, lo que es evidente que esto es un hecho ajeno al Consorcio Constructor, puesto que obedece al cumplimiento de la legislación brasileña y de la jurisdicción donde se firmó dicho Contrato de Financiamiento y conforme a ello, el Gobierno de la República del Ecuador expidió la garantía soberana respecto del mismo.



- El Contrato de Financiamiento contempla textualmente en la cláusula segunda, numeral 2.3, lo siguiente: "...*El crédito resultante de este financiamiento será puesto a disposición de la FINANCIADA y será desembolsado directamente a NORBERTO ODEBRECHT y al CONSULTOR BRASILEÑO, respectivamente, en*

6

CRP-DOJ-0002392682

el Brasil, en moneda Brasileña, a través de un banco mandatario (en adelante denominado "BANCO MANDATARIO"), de aquellos acreditados ante el FINANCIADOR, a ser indicado por NORBERTO ODEBRECHT y el CONSULTOR BRASILEÑO y confirmado por el FINANCIADOR.", hs. 15.817 a 15.836.

De lo transcrito en el párrafo anterior se evidencia que el Contrato de Financiamiento estableció la forma de pago en moneda brasileña, es más, en la Cláusula Vigésima Primera, numeral 21.1 estipula que el Contrato de Financiamiento y las obligaciones que resultan de él se subordinan y se rigen por la Legislación Brasileña, por lo mismo, en la aplicación y ámbito de dicho contrato se deben aplicar las Leyes Brasileñas.

-- Así mismo, como resultado de lo anterior y del análisis a los documentos que constan del expediente administrativo se demuestra que:

El Contrato de Financiamiento fue suscrito entre Hidropastaza S.A. y el Banco Nacional de Desarrollo Económico y Social, BNDES.

Las condiciones del Contrato de Financiamiento fueron, por lo tanto, pactadas entre Hidropastaza y el BNDES.

El Contrato de Financiamiento fue suscrito en el Brasil.

Ni la Constructora Norberto Odebrecht S.A. ni el Consorcio Constructor intervienen en la formulación o suscripción del citado contrato.

En virtud del Contrato de Financiamiento, el Consorcio Constructor y/o la Constructora Norberto Odebrecht S.A. están obligados a adquirir bienes y servicios en el Brasil.

Los desembolsos a favor del Consorcio Constructor y/o la Constructora Norberto Odebrecht S.A. en el Brasil se efectuaron en reales brasileños, tal como reza del propio Contrato de Financiamiento; en consecuencia, el Estado ecuatoriano e Hidropastaza asumieron la obligación de cumplir con las condiciones del Contrato de Financiamiento y por tanto, aunque el Contrato de Construcción "EPC" fue en dólares y los pagos de Hidropastaza en el Ecuador fueron en dólares, el Consorcio recibió reales brasileños; es por eso que este acto o hecho, no es un trámite particular entre el BNDES y Odebrecht.

CUARTO.- En cuanto a la objeción del alcance de la Adenda N° 10, en el Contrato de Ingeniería de Detalle, Suministros y Construcción "EPC", en la cláusula 14, numeral 14.4, se establece que: "... *Todos y cada uno de los pagos serán efectuados por la Concesionaria emitiendo una Orden de Desembolso contra el Préstamo o Préstamos obtenidos por la Concesionaria, hasta el límite que estos permitan para cada pago y en las monedas estipuladas en el mismo. Cualquier eventual saldo o contrapartida local será siempre pagado al Consorcio en Dólares de los Estados Unidos de América, en el Ecuador, proveniente del Aporte de Capital (Equity) de la Concesionaria. La Concesionaria reembolsará también al Consorcio eventuales costos financieros en la moneda en que fueron incurridos, reconociendo también posibles diferenciales cambiarios originados por atrasos y/o reajustes incurridos en la conversión de las monedas de pago para equilibrar su utilización.*", hs. 13.532.



7

Como se puede apreciar, el alcance de la Adenda N° 10 se encontraba completamente prevista en el Contrato Original suscrito entre las partes contratantes y como el contrato es LEY PARA LAS PARTES, artículo 1561 del Código Civil, no cabe que se reconozcan solo ciertos derechos y obligaciones de las partes en el referido Contrato de Construcción "EPC" y desconocer otros, como es el derecho a ser compensado por diferenciales cambiarios.

QUINTO.- En cuanto a que la suscripción de la Adenda N° 10 para reconocer un diferencial cambiario entre dólares y reales, no era procedente en razón de que, en el contrato EPC se convino que la moneda de pago es el dólar de los Estados Unidos de América; al respecto procede lo siguiente:

Mediante comunicación OEC/PHSF/DP/206/2006 de 27 de octubre de 2006 (anexo 4), el Consorcio Constructor hace conocer a Hidropastaza S.A. la existencia de un desequilibrio económico en el contrato por cuenta de las pérdidas ocurridas como consecuencia del diferencial cambiario ocurrido en la ejecución del contrato, por lo que solicita su reconocimiento en base a lo dispuesto en la Cláusula 14.4 del Contrato de Ingeniería de Detalle, Suministro y Construcción, EPC, anexo 42, comunicación 034083 de 6 de abril de 2010.

Como resultado de lo indicado en el párrafo precedente, el Directorio de Hidropastaza S.A., en sesión de 30 de octubre de 2006, mediante resolución 040-2006 constante en el Acta 80, anexo 5, resuelve disponer a la Administración que contrate consultorías especializadas en lo jurídico y económico, para que realicen los análisis sobre la procedencia legal de ajuste; y, para que analice, verifique y establezca los valores a los que tendría derecho el Consorcio por efectos de este diferencial cambiario, respectivamente.

SEXTO.- Presentados los informes de las consultorías, tanto en lo jurídico como en lo económico y financiero, en los que consta que el reembolso por el diferencial cambiario es jurídicamente procedente; y, que a su opinión (en lo económico y financiero), el Consorcio tiene el derecho a pago por ajuste del diferencial cambiario en el Contrato EPC y que corresponde a un diferencial cambiario a ser reconocido por Hidropastaza S.A.

En sesión del Directorio N° 81 celebrada el 29 de noviembre de 2006 y con base a los resultados de los informes anteriormente indicados, colocados a disposición por Hidropastaza S.A. como consta de la resolución N° 043-2006 los miembros de éste conocen el contenido de los informes elaborados por los consultores contratados para tal efecto y resuelven acogerlos y recomendar a la Junta de Accionistas su aprobación.

Mediante oficio PEHA 2538.2006 de 1 de diciembre de 2006, el Presidente Ejecutivo de Hidroagoyán, solicita al Gerente del Fondo de Solidaridad (único accionista de Hidroagoyán), la autorización para la aprobación de la Adenda N° 10 en la Junta de Accionistas de Hidropastaza S.A., y suscribir los instrumentos necesarios para perfeccionar el acuerdo de forma de pago, anexo 9, hs.21728.



Con memorando GAJFS-2006-387 de 4 de diciembre de 2006, el Fondo de Solidaridad se pronuncia favorablemente para que la Junta de Accionistas apruebe

8

la recomendación efectuada por el Directorio de Hidropastaza S. A., anexo 12 hs. 21632.

En la sesión de 07 de diciembre de 2006, la Junta de Accionistas de Hidroagoyán, luego de analizar toda la documentación de respaldo, resuelve autorizar al representante legal de ésta, para que en representación del accionista mayoritario comparezca a la sesión de la Junta General de Accionistas de HIDROPASTAZA S.A. y apruebe la forma de pago propuesta y recomendada por el Directorio de Hidropastaza y disponga que estos pagos se efectúen hasta por el monto que según el informe económico es lo que se adeuda en función del diferencial cambiario incurrido por la conversión de la moneda, por último, en la Junta de Accionistas de Hidropastaza S.A. autorizará a su Presidente Ejecutivo para que emita y suscriba los instrumentos contractuales necesarios para perfeccionar este acuerdo de forma de pago, así como también emitir las instrucciones al Fideicomiso Mercantil San Francisco 1, en las mejores condiciones para Hidropastaza S.A., hs. 21632 y 21727, anexos: 11 y 13.

El 11 de diciembre de 2006, en la sesión 49, mediante Resolución 048-2006, la Junta General Universal Extraordinaria de Accionistas de Hidropastaza S.A. (Gerente General del Fondo de Solidaridad y Presidente de la Junta de Hidroagoyán S.A.), resuelve: aprobar la forma de pago propuesta y recomendada por el Directorio de Hidropastaza S.A. para cancelar las obligaciones contractuales del Proyecto San Francisco por el diferencial cambiario incurrido por la conversión de la moneda; disponer que los pagos se efectúen en función del informe económico que establece la deuda real en base del diferencial cambiario cortado al 31 de octubre de 2006 que es de 26 184 966,82 USD y el ajuste proyectado a partir de 1 de noviembre de 2006 que asciende a 3 040 488,50 USD; y, autorizar a su Presidente Ejecutivo a emitir y suscribir los instrumentos contractuales necesarios para perfeccionar este acuerdo de forma de pago, así como también emitir las instrucciones al Fideicomiso Mercantil San Francisco 1, en las mejores condiciones para Hidropastaza S.A., anexos: 11, 13 y 14, hs. 21632, 21727 y 21298.

SÉPTIMO.- Como se puede observar, los implicados en la responsabilidad, entre otros aspectos hacen mención a la Resolución 048-2006 de 11 de diciembre de 2006, adoptada por la Junta de Accionistas, la que señala: *"El Representante de HIDROAGOYÁN en la Junta de accionistas de HIDROPASTAZA, dispondrá que estos pagos se efectúen hasta por la cantidad de USD S/26'184.966,82, ... que realmente se adeuda en función del diferencial cambiario cortado al 31 de Octubre del 2006. El ajuste proyectado a partir del 1 de noviembre de 2006, que asciende a USD $ 3'040.488,50, deberá ser cubierto por la Empresa según el mismo procedimiento determinado en el numeral anterior, una vez que se apruebe que el diferencial cambiario está debidamente sustentado..."*

La responsabilidad civil constante en el memorando de antecedentes se fundamenta en 15 certificados de las facturas emitidas por el consorcio constructor por concepto del Adendum 10 que corresponden a 30 220 885,98 USD, más 9 certificados por concepto del IVA, correspondiente a 2 564 196,38 USD, lo cual suma **32 785 082,36 USD**, valor determinado vía glosa.

OCTAVO.- Objeto del Adendum 10 suscrito el 4 de enero de 2007:

*"Reconocimiento por parte de Hidropastaza S.A. del reembolso debido al Consorcio Constructor según lo establece la Cláusula 14.4 del Contrato EPC cuyo monto*



9

asciende a USD 26 184 966,82 (Veinte y seis millones ciento ochenta y cuatro mil novecientos sesenta y seis con 82/100 dólares de los Estados Unidos de América) ya incurridos hasta el 31 de octubre del 2006 y del saldo proyectado de USD 3 040 488,50 (Tres millones cuarenta mil cuatrocientos ochenta y ocho con 50/100 dólares de Estados Unidos de América) que debe ser recalculado utilizándose el mismo método aplicado por el Consultor Económico para la determinación del diferencial cambiario ya incurridos, con el objeto de resarcirle el reajuste originado por el diferencial cambiario entre la moneda del Precio del Contrato (Dólares de los Estados Unidos de América) y la moneda de pago parcial (Real del Brasil) el reconocimiento de este reembolso será realizado mediante conversión a Certificados de Energía Futura."

NOVENO.- La "Estructuración de la forma de pago del reembolso" del Adendum 10, entre otros aspectos señala:

"La forma de pago debida queda representada en Certificados de Energía Futura expresados en kw/h y calculados por la división de montos debido por el valor de USD 0,041261 KWh (Precio Base), fraccionados convenientemente por acuerdo entre las Partes, que el Consorcio Constructor declara haber recibido a satisfacción, siendo el valor incurrido hasta la fecha equivalente a 634 617 843,00 kwh, y que en base a este Precio Base Hidropastaza S.A. emitirá certificados adicionales a medida que se haya recalculado los diferenciales cambiarios de cada desembolso a ser realizados a partir de 1 de noviembre del 2006".

DÉCIMO.- El <u>16 de mayo de 2007</u>, el Presidente Ejecutivo de Hidropastaza S.A y el representante del Consorcio Constructor, suscriben el acta de liquidación de la Adenda N° 10 al contrato EPC, que contiene:

"TERCERO.- FACTURAS EMITIDAS POR CONCEPTO DEL ADENDUM N°. 10
Las facturas que ha emitido el Consorcio Constructor por concepto del Adendum N° 10 son:

| FACTURA | FECHA EMISION | VALOR USD | IVA | TOTAL | 1% RETENCION | 70% IVA CONSORCIO | POR PAGAR AL CONSORCIO USD |
|---|---|---|---|---|---|---|---|
| 1947 | 04/01/2007 | 26.184.966,83 | 3.142.196,02 | 29.327.162,85 | 261.849,67 | 2.199.537,21 | 25.923.317,16 |
| 1948 | 10/01/2007 | 1.347.709,68 | 161.725,16 | 1.509.434,89 | 13.477,10 | 113.207,61 | 1.334.232,58 |
| 2007 | 29/01/2007 | 144.533,01 | 17.343,96 | 161.876,97 | 1.445,33 | 12.140,77 | 143.087,68 |
| 2081 | 21/02/2007 | 1.150.647,60 | 138.077,71 | 1.288.725,31 | 11.506,48 | 96.654,40 | 1.139.241,12 |
| 2181 | 10/04/2007 | 984.126,80 | 118.095,22 | 1.102.222,02 | 9.841,27 | 82.886,65 | 974.385,53 |
| 2197 | 24/04/2007 | 317.144,97 | 38.057,40 | 355.202,37 | 3.171,45 | 26.640,28 | 313.373,52 |
| 2234 | 17/05/2007 | 397.018,57 | 47.642,23 | 444.660,80 | 3.970,19 | 33.349,56 | 393.048,28 |
| | TOTAL USD | 30.526.147,46 | 3.663.137,70 | 34.189.285,16 | 305.261,47 | 2.564.196,39 | 30.220.185,98 |



CUARTO.- PAGOS EFECTUADOS EN CERTIFICADOS DE ENERGÍA:

Los certificados entregados al Consorcio Constructor por concepto de la facturación arriba descrita son:

CRP-DOJ-0002392686

| NO CERTIFICADO | FACTURA ODEBRECHT | MONTO KW/H | TOTAL KW/H | TOTAL PAGADO USD |
|---|---|---|---|---|
| 1 | 1947 | 100.000.000,00 | | |
| 2 | 1947 | 100.000.000,00 | | |
| 3 | 1947 | 100.000.000,00 | | |
| 4 | 1947 | 100.000.000,00 | | |
| 5 | 1947 | 100.000.000,00 | | |
| 6 | 1947 | 100.000.000,00 | | |
| 7 | 1947 | 20.000.000,00 | | |
| 8 | 1947 | 8.271.665,00 | 628.271.665,00 | 25.923.117,16 |
| 9 | 1948 | 20.000.000,00 | | |
| 10 | 1948 | 12,336.409,00 | 32.336.409,00 | 1.334.232,58 |
| 11 | 2007 | 3.467.867,00 | 3.467.867,00 | 143.087,68 |
| 12 | 2081 | 27.608.180,00 | 27.608.180,00 | 1.139.141,12 |
| 13 | 2181 | 23.612.746,00 | 23.612.746,00 | 974.285,53 |
| 14 | 2197 | 7.609.450,00 | 7.609.450,00 | 313.973,53 |
| 15 | 2234 | 9.525.905,00 | 9.525.905,00 | 393.043,38 |
| | | | | 30.220.885,98 |

Por concepto del 70% de IVA:

| N°. CERTIFICADO | IVA FACTURADO ODEBRECHT | MONTO KW/H | TOTAL KW/H | TOTAL PAGADO USD |
|---|---|---|---|---|
| 1 | IVA 1947 (70%) | 25.000.000,00 | | |
| 2 | 1947 (70%) | 25.000.000,00 | | |
| 3 | IVA 1947 (70%) | 3.307.899,00 | 53.307.889,90 | 2.199.537,21 |
| 4 | IVA 1948 (70%) | 2.743.695,00 | 2.743.695,00 | 113.207,61 |
| 5 | IVA 2007 (70%) | 294.243,00 | 294.243,00 | 12.140,77 |
| 6 | IVA 2081 (70%) | 2.342.512,00 | 2.342.512,00 | 96.654,40 |
| 7 | IVA 2181 (70%) | 2.003.506,00 | 2.003.506,00 | 82.666,65 |
| 8 | IVA 2197 (70%) | 645.650,00 | 645.650,00 | 26.640,18 |
| 9 | IVA 2234 (70%) | 808.259,00 | 808.259,00 | 33.349,56 |
| | | | | 2.564.196,38 |

La Resolución 048-2006 de 11 de diciembre de 2006 y el objeto de la Adenda 10 establecen un valor de 26 184 966,82 USD ya incurridos hasta el 31 de octubre de 2006 y a partir del 1 de noviembre de 2006 una proyección estimada de 3 040 488,50 USD.

En función de la Resolución 048-2006 antes referida y de la propia Adenda 10, el Acta de liquidación de este Adendum suscrito el 26 de mayo de 2007, "...establece los valores de paridad cambiaria real – dólar, debidamente sustentados y efectivamente incurridos hasta el 31 de octubre de 2006, que corresponden a los 26 184 966,82 USD y los valores posteriores de conformidad con la tabla



11

CRP-DOJ-0002392687

*precedente, que suman 4 341 180,63 USD, da un valor de 30 526 147,45 USD, menos el 1 % de retención de 305 261,47 USD; totaliza un valor de 30 220 885,98 USD; si a este monto se le suma los valores de los 9 certificados por concepto del 70% del IVA, correspondientes a 2 564 196,38 USD, se obtiene el valor final de 32 785 082,36 USD, equivalente al monto de la observación".*

El último valor citado, corresponde al reconocimiento del diferencial cambiario aplicable a los valores cancelados al Consorcio Constructor en Reales, en el Brasil, basados en la Cláusula Primera, numeral 1.4, apartado b) del Contrato de Financiamiento del Banco Nacional de Desarrollo Económico y Social, BNDS y en el numeral 14.4, de la Cláusula 14 del Contrato de Construcción.

DÉCIMO PRIMERO.- De los ordinales precedentes, resultado del estudio y análisis al informe de examen especial de ingeniería, así como de los documentos y exposiciones presentados por los interesados, se desprende que para la suscripción del Adendum 10, han sido consideradas todas las disposiciones contractuales previstas en los contratos de Construcción y Financiamiento y los pagos se realizaron bajo el mismo por concepto del reclamo del Consorcio Constructor a raíz del diferencial cambiario entre el Dólar de los Estados Unidos de América (moneda del precio del contrato "EPC") y el Real Brasileño (moneda de transacción), decisión enmarcada en la legalidad, ya que el número 14.4 de la Cláusula 14 del Contrato EPC, contempla expresamente, como ya se dijo, el reconocimiento de posibles diferenciales cambiarios originados por atrasos y/o reajustes incurridos en la conversión de las monedas de pago, además que contaron con expertos consultores legales y económicos contratados para este fin.

DÉCIMO SEGUNDO.- La Contraloría General del Estado, organismo técnico de control, de ninguna manera pone en tela de duda la honorabilidad de las personas; tanto más que, la Ley Orgánica de la Contraloría General del Estado, en su artículo 38, presume la legalidad de las operaciones y actividades de los servidores sujetos a esta Ley, a menos que se declare en contrario como consecuencia de la auditoría gubernamental; por lo mismo, ni en la glosa, ni en la Resolución recurrida, se manifiesta o se insinúa, como así equivocadamente lo interpretan los profesionales patrocinadores y/o administrados, al decir que la Contraloría afirma que se han realizado "trámites particulares" entre el BNDES y el Consorcio Constructor o la Constructora Norberto Odebrecht S.A. (con respecto al diferencial cambiario), lo que claramente se dice es que: *"... El procedimiento de desembolso de los valores autorizados por Hidropastaza S.A., a favor del Consorcio Constructor, estipulado en el numeral 2.3 del contrato de financiamiento, es un trámite particular entre el BNDES y Odebrecht, en el cual no influye decisión alguna de Hidropastaza S.A.;..."*, o sea, es un trámite que correspondía hacerlo o realizarlo entre el Banco y la Constructora Odebrecht, sin que intervenga Hidropastaza.

Por las razones expuestas; y,

En ejercicio de las facultades que le confiere la Ley,

**RESUELVE:**

1. **DESVANECER** la responsabilidad civil solidaria por **32 785 082,36 USD** que fue confirmada mediante Resolución 2447 de 27 de agosto de 2010, expedida en contra del **Consorcio Odebrecht- Alstom - Va -Tech** en la persona de su representante legal, e ingenieros: **Germán Bolívar Anda Naranjo**, presidente ejecutivo; Saúl noel

12

de Freitas Junior, vicepresidente ejecutivo; Hermann Saa Berstein y Alejandro Rodrigo Gómez Ponce, miembros de la Junta de Accionistas de Hidropastaza S.A.

II. REMITIR copia certificada de la presente Resolución al señor Director de Patrocinio, Recaudación y Coactivas, a fin de que se sirva disponer se deje sin efecto el título de crédito solidario por 32 785 082,36 USD, emitido en contra del Consorcio Odebrecht-Alstom-Va-Tech en la persona de su representante legal e ingenieros Germán Bolívar Anda Naranjo, presidente ejecutivo; Sadinoel de Freitas Junior, vicepresidente ejecutivo; Hermann Saa Berstein; y, Alejandro Rodrigo Gómez Ponce, miembros de la Junta de Accionistas de Hidropastaza S. A.

**NOTIFIQUESE:**

Por el Contralor General del Estado,

Dr. Raúl Vicente Morales
Subcontralor General del Estado, encargado

CONTRALORIA GENERAL DEL ESTADO.- ES FIEL COPIA LO CERTIFICO

SECRETARIA DE RESPONSABILIDADES

CRP-DOJ-0002392689