

*DIRES-SR*
*[Accountability Directorate-Accountability Secretary]*
2nd Resolut. No. 2599
2011-06-24
6825

[OFFICE OF THE STATE COMPTROLLER GENERAL]

Messrs.
CONSORCIO NORBERTO ODEBRECHT
CONTRACTOR
NATIONAL ELECTRICITY COUNCIL (CONELEC, per Spanish acronym)
JUDICIAL MAILBOX No. 3003 AB. HERNAN SANCHEZ VALDIVIEZO
QUITO                           PICHINCHA

[Stamp: Illegible]

Time: _____
[Illegible]     [*Signature*]     1524
[Illegible]

Main Office: Av. Juan Montalvo E4-37 and Av. 6 de diciembre. Telephone: (593-2) 290 0831 – Quito – Ecuador
[Illegible]

[Illegible]0154



GOVERNMENT EXHIBIT
CASE NO. 22-cr-20114-KMW
EXHIBIT NO. 1-9A

CRP-DOJ-0002392675_TR



REPUBLIC OF ECUADOR
OFFICE OF THE STATE COMPTROLLER GENERAL
ACCOUNTABILITY DIRECTORATE
NOTICE OF RESOLUTIONS

[OFFICE OF THE STATE COMPTROLLER GENERAL]

**Quito, 06-24-2011**

Messrs.
CONSORCIO NORBERTO ODEBRECHT

CONTRACTOR
NATIONAL ELECTRICITY COUNCIL (CONELEC)

JUDICIAL MAILBOX No. 3003 AB. HERNAN SANCHEZ VALDIVIEZO
QUITO                              PICHINCHA

In accordance with the stipulations of Article 334 of the Organic Law of Financial Administration and Oversight and/or [Article] 55 of the Organic Law of the Office of the State Comptroller General, I am forwarding as an attachment hereto, on **13 pages, a copy of Resolution No. 2599 of 06-24-2011** regarding Resolution No. 2447 dated 08-27-2010, whereby timely notice was given.

[Stamp: Illegible]

                        15:24
Sincerely, [*Signature*]
GOD, COUNTRY, AND LIBERTY
For the State Comptroller General



[*Signature*]
Maria Patricia Alcoser C.
ACCOUNTABILITY SECRETARY

OFFICE OF THE STATE COMPTROLLER GENERAL
ACCOUNTABILITY DIRECTORATE

RF/[*Signature*]              01 – JULY - 2011



[OFFICE OF THE STATE COMPTROLLER GENERAL]

[Stamp: Illegible]

RESOLUTION No. 2599

24 JUN. 2011

THE STATE COMPTROLLER GENERAL

WHEREAS;

I. In Resolution 2447 dated August 27, 2010, the company's joint and several civil liability in the amount of USD 32,785,082.36 USD was upheld based on previously reported penalties resulting from the analysis of the special engineering inspection conducted on the contract addendums entered into between HIDROPASTAZA S.A. and CONSORCIO ODEBRECHT-ALSTOM-VA-TECH, as part of the "EPC" Detail Engineering, Supplies and Construction Contract for the San Francisco Hydroelectric Power Plant project in the Baños canton, Tungurahua province, under the auspices of the HIDROPASTAZA, S.A. company, covering the period between November 1, 2003, and September 15, 2008, assessed against Consorcio Odebrecht-Alstom-Va-Tech through its legal representative, whereby the Consortium, in Addendum 10, benefitted from the amount subject to the penalty assessed as a result of the exchange rate differential between the contract price currency (United States of America dollars) and the partial payment currency (Brazilian reais), although Clause 5 of the EPC contract stipulates that the payment currency for the price agreed upon between the parties is the United States of America dollar; likewise, the financing contract also stipulates payment in that currency as detailed below:

**EPC Detail Engineering, Supplies and Construction Contract:**

Contract price. number 5. *"The works and services subject to the Contract, in accordance with the Bid Documents for the San Francisco Project conducted by INECEL [Ecuadorian Electrification Institute] shall be performed for a price of TWO HUNDRED EIGHTY-SIX MILLION EIGHT HUNDRED FIFTY-ONE THOUSAND ONE HUNDRED TWENTY-NINE United States of America Dollars (USD 286,851,129.00), hereinafter the "Contract Price," subject to the adjustments provided for in this document. The Contract Price shall be paid according to the stipulations in number 14 of this document."*

**Financing Contract from the National Economic and Social Development Bank (BNDES):**

Number 2.3. *"The loan resulting from this financing shall be made available to the BORROWER and shall be disbursed directly to NORBERTO ODEBRECHT and the BRAZILIAN CONSULTANT, respectively, in Brazil, in Brazilian currency, through a representative bank (hereinafter the "REPRESENTATIVE BANK2 [sic]) from among those accredited by the LENDER, which shall be indicated by NORBERTO ODEBRECHT and the BRAZILIAN CONSULTANT and confirmed by the LENDER."*

[Stamp: Illegible]

Number 2.4. *"The resources disbursed by the LENDER shall be available to NORBERTO ODEBRECHT and the BRAZILIAN CONSULTANT through the REPRESENTATIVE BANK and on account and by order of the BORROWER, until*

**Accountability Directorate. Telephone 398 7360**
**Main Office: Main Office: Av. Juan Montalvo E4-37 y Av. 6 de Diciembre. Quito-Ecuador**

CRP-DOJ-0002392677_TR

*next business day after the day in which the disbursement of funds was made by the LENDER."*

Pursuant to the payment procedure set forth in the paragraph above, the Executive President and Vice President of Hidropastaza S.A., backed by invoices and project progress worksheets, authorized the disbursements to Constructora Norberto Odebrecht from the loan granted by the National Economic and Social Development Bank (BNDES) which, through a credit notice, proceeded to transfer the amount to the Construction Consortium in Brazilian reais at the going rate of exchange on the date of payment.

In the same fashion, the obligations for the transfers made by the National Economic and Social Development Bank (BNDES) to the Construction Consortium's account, charged to the financing contract, are recorded by the Central Bank of Ecuador in United States of America dollars.

Despite what is indicated above, the General Universal Extraordinary Meeting of Shareholders of Hidropastaza, S.A., in a session held on December 11, 2006, decreed through Resolution 048-2006: *"…To approve the form of payment proposed and recommended by the Board of Directors of HIDROPASTAZA S.A. to pay the contractual obligations of the San Francisco Project, due to the exchange rate differential incurred through the currency conversion."*

The invoices issued by the Construction Consortium pursuant to Addendum No. 10 are as follows:

| INV. | DATE ISSUED | AMOUNT IN USD | VAT | TOTAL | 1% WITH-HOLDING | 70% VAT CONSOR-TIUM | PAYABLE TO THE CONSORTIUM IN USD |
|---|---|---|---|---|---|---|---|
| 1947 | 01/04/2007 | 26,184,966.83 | 3,142,966.83 | 29,327,162.85 | 261,849.67 | 2,199,537.21 | 25,923,11[ILL].16 |
| 1948 | 01/10/2007 | 1,347,709.68 | 161,725.16 | 1,509,434.89 | 13,477.10 | 113,207.61 | 1,334.23[ILL].58 |
| 2007 | 01/29/2007 | 144,533.01 | 17,343.96 | 161,876.97 | 1,445.33 | 12,140.77 | 143,08[ILL].68 |
| 2081 | 92/21/2007 [sic] | 1,150,647.60 | 138,077.71 | 1,288,725.31 | 11,506.48 | 96,654.40 | 1,139,14[ILL].12 |
| 2181 | 04/10/2007 | 984,126.80 | 118,095.22 | 1,102,222.02 | 9,841.27 | 82,888.65 | 974,28[ILL].53 |
| 2197 | 04/24/2007 | 317,144.97 | 38,057.40 | 355,202.37 | 3,171.45 | 26,640.18 | 313,97[ILL].53 |
| 2234 | 05/17/2007 | 397,018.57 | 47,646.23 | 444,660.80 | 3,970.19 | 33,349.56 | 393,04[ILL].38 |
| | TOTAL USD | 30,526,147.46 | 3,663,137.70 | 34,189,285.16 | 305,261.47 | 2,564,196.39 | 30,220,88[ILL].98 |

The certificates delivered to the Construction Consortium for the above-described invoices are:

[Stamp: Illegible]

| CERTIFICATE NO. | ODEBRECHT INVOICE | AMOUNT KW/H | TOTAL KW/H | TOTAL PAID IN USD |
|---|---|---|---|---|
| 1 | 1947 | 100,000,000.00 | | |
| 2 | 1947 | 100,000,000.00 | | |
| 3 | 1947 | 100,000,000.00 | | |
| 4 | 1947 | 100,000,000.00 | | |

2

[Stamp: Illegible]

|   |      |                |                |                    |
|---|------|----------------|----------------|--------------------|
| 5 | 1947 | 100,000,000.00 |                |                    |
| 6 | 1947 | 100,000,000.00 |                |                    |
| 7 | 1947 |  20,000,000.00 |                |                    |
| 8 | 1947 |   8,271,665.00 | 628,271,665.00 | 25,923,117.[ILL]6  |
| 9 | 1948 |  20,000,000.00 |                |                    |
| 10| 1948 |  12,336,409.00 |  32,336,409.00 |  1,334,232.[ILL]8  |
| 11| 2007 |   3,467,867.00 |   3,467,867.00 |    143,087.[ILL]8  |
| 12| 2081 |  27,608,180.00 |  27,608,180.00 |  1,139,141.[ILL]2  |
| 13| 2181 |  23,612,746.00 |  23,612,746.00 |    974,285.[ILL]3  |
| 14| 2197 |   7,609,450.00 |   7,609,450.00 |    313,973.[ILL]2  |
| 15| 2234 |   9,525,905.00 |   9,525,905.00 |    393,048.[ILL]8  |
|   |      |                |                | **30,220,885.[ILL]8** |

For the 70% VAT

| CERTIFICATE NO | VAT INVOICED ODEBRECHT | AMOUNT KW/H   | TOTAL KW/H    | TOTAL PAID IN USD |
|----------------|------------------------|---------------|---------------|-------------------|
| 1              | VAT 1947 (70%)         | 25,000,000.00 |               |                   |
| 2              | VAT 1947 (70%)         | 25,000,000.00 |               |                   |
| 3              | VAT 1947 (70%)         |  3,307,899.00 | 53,307,889.90 | 2,199,537.21      |
| 4              | VAT 1948 (70%)         |  2,743,695.00 |  2,743,695.00 |   113,207.61      |
| 5              | VAT 2007 (70%)         |    294,243.00 |    294,243.00 |    12,140.77      |
| 6              | VAT 2081 (70%)         |  2,342,512.00 |  2,342,512.00 |    96,654.40      |
| 7              | VAT 2181 (70%)         |  2,003,506.00 |  2,003,506.00 |    82,666.65      |
| 8              | VAT 2197 (70%)         |    645,650.00 |    645,650.00 |    26,640.18      |
| 9              | VAT 2234 (70%)         |    808,259.00 |    808,259.00 |    33,349.56      |
|                |                        |               |               | **2,564,196.38**  |

The procedure of disbursement of the amounts authorized by Hidropastaza S.A. payable to the Construction Consortium, stipulated in number 2.3 of the financing contract, is a private transaction between BNDES and Odebrecht, in which no decision by Hidropastaza S.A. has any bearing; consequently, the signing of Addendum 10 to recognize an exchange rate differential between United States of America dollars and Brazilian reais is not precedent [sic] given that the EPC contract stipulates that the payment currency is the United States of America dollar.

Liable jointly and severally are engineers: Germán Bolívar Anda Naranjo, Executive President; Sadinoel de Freitas Junior, Executive Vice President; Hermann Saa Berstein and Alejandro Rodrigo Gómez Ponce, members of the Board of Shareholders of Hidropastaza, because they approved the form of payment proposed and recommended by the Hidropastaza Board of Directors through Resolution 048-2006 dated December 11, 2006, without taking into consideration the contractual obligations stipulated in the EPC and National Economic and Social Development Bank, BNDES, contracts;

[Stamp: Illegible]

3

**II.** Having examined the above-referenced Resolution and based on the requests made by those jointly and severally liable, who are listed below, on December 9, 2010, a decision was issued granting an appeal of said Resolution, a decision of which notice was served on the interested parties on that same date by official letters 20021-DIRESJSR through 20025-DIRESJSR, while at the same time ordering a new examination of the background:

| NAME AND TITLE | DATE RES. 2247 NOTIFIED | APPEAL REQUEST No. | APPEAL REQUEST DATE | COMMUNICATION CONTROL No. | COMMUNICATION CONTROL DATE | FILE PAGES |
|---|---|---|---|---|---|---|
| Consorcio Norberto Odebrecht-Alstom-Va Tech | 09-01-2010 | n/n | 10-27-2010 | 94532 | 10-27-2010 | 2113[ILL] |
| Germán Bolívar Anda Naranjo Executive President | 09-13-2010 | n/n | 10-25-2010 | 93812 | 10-25-2010 | 2161[ILL] |
| Sadinoel de Freitas Junior Vice President | 09-01-2010 | n/n | 09-21-2010 | 82497 | 09-21-2010 | 2128[ILL] |
| Rodrigo Alejandro Gómez Ponce Member of the Board of Shareholders of HIDROPASTAZA | 09-01-2010 | n/n | 09-21-2010 | 82496 | 09-21-2010 | 2132[ILL] |
| Hermann Saa Berstein Member of the Board of Shareholders of HIDROPASTAZA | 09-01-2010 | n/n | 10-29-2010 10-29-2010 | 43823 43856 | 10-29-2010 10-29-2010 | 2175[ILL] 2170[ILL] |

**III.** The appellants attached to the above-listed official letters documents as evidence exonerating them of the liability attributed to them, which documents will be subject of the corresponding review;

**IV.** After revisiting the special engineering inspection and the background memorandum assessing liability, recorded in the files as number 872-2009, and reviewing the allegations and documents previously submitted to the court, as well as the statements and material evidence submitted at the time, the following conclusion is reached:

ONE. The predetermination of the culpable joint and several civil liability finds its origin in the report on the special engineering inspection conducted on the addendums entered into between HIDROPASTAZA S.A. and Consorcio Odebrecht-Alstom-VA-Tech, and is based on the fact that in Addendum 10, the Consortium benefitted from USD 32,785,082.36 *"… from the exchange rate differential between the contract price currency (United States of America dollars) and the partial payment currency (Brazilian reais), although Clause 5 of the EPC contract stipulates that the payment currency for the price agreed upon between the parties is the United States of America dollar; likewise, the financing contract also stipulates payment in that currency…"*; while the Executive President, Executive Vice President, and members of the Board of Shareholders of Hidropastaza *"… are held liable because they approved the form of payment proposed and recommended by the Hidropastaza Board of Directors through Resolution 048-2006 from December 11, 2006, without taking into consideration the contractual obligations stipulated in the EPC and National Economic and Social Development Bank (BNDES) contracts."*

[Stamp: Illegible]

4

[Stamp: Illegible]

TWO. The Resolution being appealed sets forth the bases in the following terms:

- It sets forth the contents of Clause 5 regarding the "Price of the EPC Contract" entered into between Hidropastaza and the Construction Consortium, as well the pertinent portions of the Financing Contract signed between Hidropastaza and the National Economic and Social Development Bank (BNDES), as well as making reference to the session of the General Universal Extraordinary Meeting of Shareholders of Hidropastaza held December 11, 2006, which approved payment for the exchange rate differential between United States of America dollars and Brazilian reais, and also mentions the invoices issued by the Construction Consortium and the payments made, pp. 1 and 2 of the Resolution.

  Based on these assumptions, it was established that: *"The procedure of disbursement of the amounts authorized by Hidropastaza S.A. payable to the Construction Consortium, stipulated in number 2.3 of the financing contract, is an individual transaction between the BNDES and Odebrecht, in which no decision by Hidropastaza S.A. has influence; consequently, the signing of Addendum No. 10 to recognize an exchange rate differential between United States of America dollars and Brazilian reais is not admissible given that the EPC contract stipulates that the payment currency is the United States of America dollar."*

- Likewise, it summarizes the allegations made by those held jointly and severally liable in response to the penalties, particularly in reference to the stipulations of the Financing Contract, stating as follows:

  *"…As a result of the above and of the documents attached hereto, it has been demonstrated that neither Constructora Norberto Odebrecht S.A. nor the Consortium are part of Executive Decree No. 258-A whereby a State guarantee was granted regarding the loan granted by the BNDES for the construction of the San Francisco Hydroelectric Project. Consequently, the Ecuadorian State and Hidropastaza assumed the obligation to comply with the conditions of the Financing Contract and, therefore, although the Construction Contract was made in dollars and the payments by Hidropastaza in Ecuador were made in dollars, the Consortium received Brazilian reais."*

- Based on the arguments expressed in the preceding paragraphs, we conclude by upholding the joint and several civil liability by reason of the fact that the procedure of disbursement of the amounts authorized by Hidropastaza S.A. payable to the Construction Consortium, stipulated in number 2.3 of the financing contract, is a private transaction between the BNDES and Odebrecht, in which no decision by Hidropastaza S.A. should have any bearing; consequently, the signing of Addendum 10 to recognize an exchange rate differential between United States of America dollars and Brazilian reais is not admissible given that the EPC contract stipulates that the payment currency is the United States of America dollar.

[Stamp: Illegible]

THREE. Notice of Resolution 2447 dated August 27, 2010, having been given, those notified submitted their communications and documents that they believed exonerated them from the liability described in the foregoing paragraphs, the review of which, as well as of the special inspection report, the background memorandum, and the documents previously submitted to the court, led to the following conclusion:

CRP-DOJ-0002392681_TR

- In official letter 09929 dated January 11, 2000, p. 15,816, the Solicitor General of the State issued a favorable report on contracting an external loan to finance the San Francisco Hydroelectric Project, in accordance with the stipulations of Article 124 of the Framework Law of Financial Administration and Oversight.

- On March 29, 2000, the Constitutional President of the Republic of Ecuador issued Executive Decree 258-A, published in the Supplement to Official Gazette 50 of April 4, 2000, through which the Ministry of Finance and Public Credit was authorized, on behalf of and as representative of the Republic of Ecuador, to sign a Tax Agency Agreement with the Central Bank of Ecuador guaranteeing the payment for servicing the debt on the loan that the Economic and Social Development Bank of the Federative Republic of Brazil (BNDES) would grant to the Hidropastaza Consortium in the amount of USD 242,965,100, intended for the financing of the construction of the San Francisco Hydroelectric Project, as well as the capitalization of interests during the grace period, p. 13,426.

- The Financing Contract was signed on April 13, 2000, in Rio de Janeiro, Brazil, between the FINAME, the Special Industrial Financing Agency, and the authorized representative of the National Bank of Economic and Social Development (BNDES) of Brazil, and Hidropastaza S.A., for an amount of USD 242,965,100 (USD 1,500,000.00, corresponding to secondary loan 2), p. 14,819.

    A review of that Contract shows that Constructora Norberto Odebrecht S.A. is not directly involved therein, does not participate therein or sign it, except as the exporter of the goods and services financed through the loan, which has the feature of falling under the category of a "buyers [sic] credit," which implies that the organization or state that grants the loan demands that the goods to be acquired with it have a specific origin or be acquired under specific conditions, in this case, the Financing Contract stipulates that 80% of the loan shall be directed at acquiring goods and services of Brazilian origin in Brazil, i.e., that the exporter of the goods and services, in other words, the Consortium, has no option to buy said supplies in other countries and is obligated to do it in Brazil in compliance with the conditions of the loan and the availability of the goods in that country.

- In accordance with Article 14 of the 1998 Constitution, in force on that date, it was forbidden for contracts signed in Ecuadorian territory to be subject to other jurisdictions but, since the Financing Contract for the San Francisco Project was signed in Brazil and the applicable Laws are those of Brazil, therefore, it was stipulated that the payments to the exporter be made in reais in Brazil. It is evident that this is a fact outside of the control of the Construction Consortium because it is subject to compliance with the legislation of Brazil and of the jurisdiction where said Financing Contract was signed and, pursuant to that, the Government of the Republic of Ecuador issued the sovereign guarantee thereof.

- Clause Two, number 2.3, of the Financing Contract stipulates, verbatim, the following: *"… The loan resulting from this financing shall be made available to the BORROWER and shall be disbursed directly to NORBERTO ODEBRECHT and the BRAZILIAN CONSULTANT, respectively, in*

[Stamp: Illegible]

6

[Stamp: Illegible]

*Brazil, in Brazilian currency, through a representative bank (hereinafter the "REPRESENTATIVE BANK") from among those accredited by the LENDER, which shall be indicated by NORBERTO ODEBRECHT and the BRAZILIAN CONSULTANT and confirmed by the LENDER,"* pp. 15,817 through 15,836.

Based on the transcription in the preceding paragraph, it is evident that the Financing Contract established the form of payment in Brazilian currency; further, Clause Twenty-One, number 21.1 stipulates that the Financing Contract and the obligations resulting from it shall be subordinate to and governed by Brazilian Legislation. For this same reason, Brazilian Law shall be applied to the enforcement and scope of this contract.

- Likewise, as a result of the above and of the review of the documents found in the administrative file, it is shown that:

The Financing Contract was signed between Hidropastaza S.A. and the National Economic and Social Development Bank (BNDES).

The conditions of the Financing Contract were, therefore, agreed upon between Hidropastaza and the BNDES.

The Financing Contract was signed in Brazil.

Neither Constructora Norberto Odebrecht S.A. nor the Construction Consortium participated in the drafting or signing of the aforementioned contract.

Pursuant to the Financing Contract, the Construction Consortium and/or Constructora Norberto Odebrecht S.A. are obligated to acquire goods and services in Brazil.

The disbursements made to the Construction Consortium and/or Constructora Norberto Odebrecht S.A. in Brazil were made in Brazilian reais, as stipulated in the Financing Contract itself; consequently, the Ecuadorian State and Hidropastaza assumed the obligation to comply with the conditions of the Financing Contract and, thus, although the "EPC" Construction Contract was made in dollars and the payments by Hidropastaza in Ecuador were made in dollars, the Consortium received Brazilian reais. It is for this reason that this act or deed is not a private transaction between the BNDES and Odebrecht.

FOUR. Regarding the objection to the scope of Addendum No. 10, Clause 14, number 14.4 of the Detail Engineering, Supplies and Construction "EPC" Contract establishes that: *"... Each and every one of the payments shall be made by the Concession Entity by issuing a Disbursement Order against the Loan or Loans obtained by the Concession Entity, up to the limit allowed by such loans for each payment and in the currencies stipulated therein. Any future balance or local compensation shall always be paid to the Consortium in United States of America dollars, in Ecuador, from the Capital Contribution (Equity) of the Concession Entity. The Concession Entity shall also reimburse the Consortium for any potential financial costs in the currency in which they were incurred,* **also recognizing potential exchange rate differentials originating from delays and/or adjustments incurred for the conversion of the payment currencies to balance their utilization,"** p. 13,532.

[Stamp: Illegible]

CRP-DOJ-0002392683_TR

As can be seen, the scope of Addendum No. 10 was fully foreseen in the Original Contract signed between the contracting parties and since the contract constitutes the LAW FOR THE PARTIES, pursuant to Article 1561 of the Civil Code, it is not acceptable to acknowledge only certain rights and obligations between the parties in the aforementioned "EPC" Construction Contract and to disregard others, such as the right to be compensated for exchange rate differentials.

FIVE. Regarding the signing of Addendum No. 10 to recognize an exchange rate differential between dollars and reais, it was not admissible by reason of the fact that, in the EPC Contract, it was agreed that the currency of payment is the United States of America dollar; in this regard, the following is applicable:

In letter OEC/PHSF/DP/206/2006 dated October 27, 2006 (Attachment 4), the Construction Consortium made Hidropastaza S.A. aware of the existence of an economic imbalance in the contract on account of the losses sustained as a consequence of the exchange rate differential during the execution of the contract, for which reason it requested recognition thereof based on the stipulations of Clause 14.4 of the EPC Detail Engineering, Supplies and Construction Contract, Attachment 42, letter 034083 dated April 6, 2010.

As a result of what is indicated in the above paragraph, the Board of Directors of Hidropastaza S.A., in a session held on October 30, 2006, in Resolution 040-2006 in Minutes 80, Attachment 5, resolved to order Management to hire consultants specialized in legal and economic matters to conduct analyses regarding the legal validity of the adjustment and to analyze, verify, and establish the amounts to which the Consortium would be entitled for the effects of said exchange rate differential, respectively.

SIX. The consultants' reports were submitted, regarding legal, and economic and financial matters, stating that reimbursement for the exchange rate differential is legally valid and that, in their opinion (regarding economic and legal matters), the Consortium is entitled to be paid an adjustment for the exchange rate differential in the EPC Contract and that it is appropriate for an exchange rate differential to be recognized by Hidropastaza S.A.

In the Board of Directors session No. 81 held on November 29, 2006, and based on the results of the previously indicated reports, made available by Hidropastaza S.A. as indicated in Resolution No. 043-2006, its members were made aware of the contents of the reports prepared by the consultants hired to that end, and resolved to accept them and to recommend to the Board of Shareholders that they be approved.

Through official letter PEHA 2538.2006 dated December 1, 2006, Hidroagoyán's Executive President asked the Solidarity Fund Manager (the sole Hidroagoyán shareholder) for authorization to approve Addendum No. 10 at the Hidropastaza S.A. Shareholders' Meeting, and to sign the necessary instruments to finalize the form of payment agreement, Attachment 9, p. 21728.

[Stamp: Illegible]   In memorandum GAJFS-2006-387 dated December 4, 2006, the Solidarity Fund rendered a favorable decision for the Board of Shareholders to approve

CRP-DOJ-0002392684_TR

[Stamp: Illegible]

the recommendation made by the Board of Directors of Hidropastaza S.A., Attachment 12 p. 21632.

In the session held on December 7, 2006, after analyzing all the supporting documentation, the Hidroagoyán Board of Shareholders resolved to authorize its legal representative, as representative of the majority shareholder, to attend the HIDROPASTAZA S.A. General Shareholders' Meeting and approve the form of payment proposed and recommended by the Hidropastaza Board of Directors, and to order that such payments be made for up to the amount that, according to the economic reports, is what is owed for the exchange rate differential as a result of the currency exchange. Finally, the Hidropastaza S.A. Board of Shareholders shall authorize its Executive President to issue and sign the necessary contractual instruments to finalize this form of payment agreement, as well as to issue instructions to the Fideicomiso Mercantil San Francisco 1, under the best conditions for Hidropastaza S.A., pp. 21632 and 21727, Attachments: 11 and 13.

On December 11, 2006, in Session 49, by Resolution 048-2006, the General Universal Extraordinary Meeting of Shareholders of Hidropastaza, S.A. (General Management of the Solidarity Fund and President of the Board of Hidroagoyán S.A.) resolved: to approve the form of payment proposed and recommended by the Board of Directors of Hidropastaza S.A. to pay the contractual obligations of the San Francisco Project, due to the exchange rate differential incurred through the currency conversion; to order that the payments be made based on the economic report that sets forth the actual debt based on the exchange rate differential as of October 31, 2006, which is USD 26,184,966.82, and the adjustment projected as of November 1, 2006, which amounts to USD 3,040,488.50, and to authorize its Executive President to issue and sign the necessary contractual instruments to finalize this form of payment agreement as well as to issue instructions to the Fideicomiso Mercantil San Francisco 1, under the best conditions for Hidropastaza S.A., Attachments 11, 13, and 14, pp. 21632, 21727, and 21298.

SEVEN. As can be observed, those held liable mention, among other things, Resolution 048-2006 dated December 11, 2006, adopted by the Board of Shareholders, which stipulates: *"HIDROAGOYÁN's Representative on the Board of Shareholders of HIDROPASTAZA, shall order that these payments be made for up the amount of USD $26,184,966.82, … that is actually owed for the exchange rate differential as of October 31, 2006.* **The projected adjustment as of November 1, 2006, which amounts to USD $3,040,488.50, must be covered by the Company according to the same procedure established in the item above, once approval is received that the exchange rate differential is duly substantiated…"*

The civil liability claimed in the background memorandum is based on 15 certificates of the invoices issued by the Construction Consortium based on Addendum 10, which amount to USD 30,220,885.98, plus 9 certificates for VAT, amounting to USD 2,564,196.38, which total **USD 32,785,082.36**, the amount established in the penalty assessed.

EIGHT. Subject of Addendum 10 signed on <u>January 4, 2007</u>:

*"Recognition by Hidropastaza S.A. of the reimbursement owed to the Construction Consortium as established in Clause 14.4 of the EPC Contract, the amount of which*

[Stamp: Illegible]

9

totals USD 26,184,966.82 (Twenty-six million one hundred eighty-four thousand nine hundred sixty-six and 82/100 United States of America dollars) already incurred as of October 31, 2006, and the **projected balance of USD 3,040,488.50 (Three million forty thousand four hundred eighty-eight and 50/100 United States of America dollars) that must be recalculated using the same method applied by the Economic Consultant to determine the exchange rate differential already incurred,** for the purpose of reimbursing to it the readjustment originated by the exchange rate differential between the Contract Price currency (United States of America dollars) and the partial payment currency (Brazilian reais). Recognition of this reimbursement shall be done through a conversion to Future Energy Certificates."

NINE. The "Structuring of the form of payment for the reimbursement" of Addendum 10 indicated, among other things:

"The form of payment owed is represented as Future Energy Certificates expressed in kw/h and calculated by dividing the amounts owed by the amount of USD 0.041261 Kwh (Base Price), accordingly divided by agreement between the Parties, which the Construction Consortium states it received to its satisfaction, the amount incurred up to date being equivalent to 634,617,843.00 kwh, **and for which, based on this Base Price, Hidropastaza S.A. shall issue additional certificates as the exchange rate differentials are recalculated for each disbursement to be made as of November 1, 2006.**"

TEN. On May 16, 2007, the Executive President of Hidropastaza S.A. and the representative of the Construction Consortium signed the settlement document for Addendum No. 10 to the EPC Contract, which contains:

"THREE. INVOICES ISSUED BASED ON ADDENDUM No. 10
The invoices issued by the Construction Consortium base on Addendum No. 10 are:

| INV. | DATE ISSUED | AMOUNT IN USD | VAT | TOTAL | 1% WITH-HOLDING | 70% VAT CONSOR-TIUM | PAYABLE TO THE CONSORTIUM IN USD |
|---|---|---|---|---|---|---|---|
| 1947 | 01/04/2007 | 26,184,966.83 | 3,142,966.83 | 29,327,162.85 | 261,849.67 | 2,199,537.[ILL]1 | 25,923,[ILL]17.16 |
| 1948 | 01/10/2007 | 1,347,709.68 | 161,725.16 | 1,509,434.89 | 13,477.10 | 113,207.[ILL]1 | 1,334,[ILL]32.58 |
| 2007 | 01/29/2007 | 144,533.01 | 17,343.96 | 161,876.97 | 1,445.33 | 12,140.[ILL]7 | 143,[ILL]87.68 |
| 2081 | 92/21/2007 [sic] | 1,150,647.60 | 138,077.71 | 1,288,725.31 | 11,506.48 | 96,654.[ILL]0 | 1,139,[ILL]41.12 |
| 2181 | 04/10/2007 | 984,126.80 | 118,095.22 | 1,102,222.02 | 9,841.27 | 82,888.[ILL]5 | 974,[ILL]85.53 |
| 2197 | 04/24/2007 | 317,144.97 | 38,057.40 | 355,202.37 | 3,171.45 | 26,640.[ILL]8 | 313,[ILL]73.53 |
| 2234 | 05/17/2007 | 397,018.57 | 47,646.23 | 444,660.80 | 3,970.19 | 33,349.[ILL]6 | 393,[ILL]48.38 |
|  | TOTAL USD | 30,526,147.46 | 3,663,137.70 | 34,189,285.16 | 305,261.47 | 2,564,196.[ILL]9 | 30,220,[ILL]85.98 |

FOUR. PAYMENTS MADE IN ENERGY CERTIFICATES:

[Stamp: Illegible]

The certificates delivered to the Construction Consortium for the above-described invoices are:

[Stamp: Illegible]

| CERTIFICATE NO. | ODEBRECHT INVOICE | AMOUNT KW/H | TOTAL KW/H | TOTAL PAID IN USD |
|---|---|---|---|---|
| 1 | 1947 | 100,000,000.00 | | |
| 2 | 1947 | 100,000,000.00 | | |
| 3 | 1947 | 100,000,000.00 | | |
| 4 | 1947 | 100,000,000.00 | | |
| 5 | 1947 | 100,000,000.00 | | |
| 6 | 1947 | 100,000,000.00 | | |
| 7 | 1947 | 20,000,000.00 | | |
| 8 | 1947 | 8,271,665.00 | 628,271,665.00 | 25,923,117.16 |
| 9 | 1948 | 20,000,000.00 | | |
| 10 | 1948 | 12,336,409.00 | 32,336,409.00 | 1,334,232.58 |
| 11 | 2007 | 3,467,867.00 | 3,467,867.00 | 143,087.68 |
| 12 | 2081 | 27,608,180.00 | 27,608,180.00 | 1,139,141.12 |
| 13 | 2181 | 23,612,746.00 | 23,612,746.00 | 974,285.53 |
| 14 | 2197 | 7,609,450.00 | 7,609,450.00 | 313,973.53 |
| 15 | 2234 | 9,525,905.00 | 9,525,905.00 | 393,048.38 |
| | | | | **30,220,885.98** |

For the 70% VAT

| CERTIFICATE NO | VAT INVOICED ODEBRECHT | AMOUNT KW/H | TOTAL KW/H | TOTAL PAID IN USD |
|---|---|---|---|---|
| 1 | VAT 1947 (70%) | 25,000,000.00 | | |
| 2 | 1947 (70%) | 25,000,000.00 | | |
| 3 | VAT 1947 (70%) | 3,307,899.00 | 53,307,889.90 | 2,199,537.21 |
| 4 | VAT 1948 (70%) | 2,743,695.00 | 2,743,695.00 | 113,207.61 |
| 5 | VAT 2007 (70%) | 294,243.00 | 294,243.00 | 12,140.77 |
| 6 | VAT 2081 (70%) | 2,342,512.00 | 2,342,512.00 | 96,654.40 |
| 7 | VAT 2181 (70%) | 2,003,506.00 | 2,003,506.00 | 82,666.65 |
| 8 | VAT 2197 (70%) | 645,650.00 | 645,650.00 | 26,640.18 |
| 9 | VAT 2234 (70%) | 808,259.00 | 808,259.00 | 33,349.56 |
| | | | | **2,564,196.38** |

Resolution 048-2006 dated December 11, 2006, and the purpose of Addendum 10, set an amount of USD 26,184,966.82 already incurred as of October 31, 2006, and as of November 1, 2006, an estimated projection of USD 3,040,488.50.

By virtue of the aforementioned Resolution 048-2006 and of Addendum 10 itself, the Settlement Record for this Addendum, signed on May 26, 2007, *"…establishes the real – dollar exchange parity values, duly documented and effectively incurred as of October 31, 2006, as USD 26,184,966.82, and the subsequent values pursuant to the previous table,*

[Stamp: Illegible]

CRP-DOJ-0002392687_TR

*which total USD 4,341,180.63, resulting in the amount of USD 30,526,147.45, less the 1% withholding of USD 305,261.47, for a total amount of USD 30,220,885.98. If one adds to this the amounts of the 9 certificates for the 70% IVA, which are for USD 2,564,196.38, the final amount of **USD 32,785,082.36** is obtained, which is equivalent to the amount indicated."*

The last amount mentioned corresponds to the recognition of the exchange rate differential applicable to the amounts paid to the Construction Consortium in reais in Brazil, based on Clause One, number 1.4, item b) of the Financing Contract from the National Economic and Social Development Bank (BNDS) [sic], and listed in number 14.4 of Clause 14 of the Construction Contract.

ELEVEN. Based on the preceding numbers, which are the result of the study and analysis of the report on the special engineering inspection, as well as of the documents and statements submitted by the interested parties, it is shown that in order to sign Addendum 10, all the contractual stipulations provided for in the Construction and Financing contracts were taken into account, and the payments were made under it based on the claim made by the Construction Consortium based on the exchange rate differential between the United States of America dollar (the price currency for the "EPC" Contract) and the Brazilian real (transaction currency). This decision was legal, because number 14.4 of Clause 14 of the EPC Contract expressly provides, as already said, the recognition of potential exchange rate differentials stemming from delays and/or readjustments made in the conversion of the payment currencies, in addition to the fact that legal and economic consultants were hired to this end.

TWELVE. The Office of the State Comptroller General, a technical oversight agency, does not in any way cast any doubt on the honor of individuals; furthermore, Article 38 of the Organic Law of the Office of the State Comptroller General presumes the legality of the operations and activities of public servants subject to this law, unless a finding is made to the contrary as a consequence of a government audit. For this same reason, nothing in the assessed penalty or in the Resolution under appeal argues or insinuates—as wrongly interpreted by the professional sponsors and/or administrators—that the Office of the Comptroller asserts that "private transactions" were conducted between the BNDES and the Construction Consortium or Constructora Norberto Odebrecht S.A. (regarding the exchange rate differential). What is clearly being stated is: *"… The procedure of disbursing the amounts authorized by Hidropastaza S.A. to the Construction Consortium, as stipulated in number 2.3 of the Financing Contract, **is a private transaction between the BNDES and Odebrecht** in which no decision of Hidropastaza S.A. has any bearing…"*; in other words, it is a transaction that had to be done or made between the Bank and Constructora Odebrecht without Hidropastaza's intervention.

For the reasons stated, and,

In exercise of the powers granted by law,

**RESOLVES:**

I. To **DISMISS** the joint and several civil liability for **USD 32,785,082.36** that was upheld by Resolution 2447 dated August 27, 2010, assessed against **Consorcio Odebrecht-Alstom-VA-Tech** through its legal representative, and engineers: **Germán Bolívar Anda Naranjo**, Executive President; **Sadinoel**

[Stamp: Illegible]

[Stamp: Illegible]

CRP-DOJ-0002392688_TR

**de Freitas Junior**, Executive Vice President; **Hermann Saa Berstein** and **Alejandro Rodrigo Gómez Ponce**, members of the Board of Shareholders of Hidropastaza S.A.

II. **SEND** a certified copy of this Resolution to the Director of Sponsorship, Revenue and Collateral so that he may order the annulment of the joint and several credit lien for USD 32,785,082.36 placed against Consorcio Odebrecht-Alstom-Va-Tech through its legal representative and engineers Germán Bolívar Anda Naranjo, Executive President; Sadinoel de Freitas Junior, Executive Vice President; Hermann Saa Berstein; and Alejandro Rodrigo Gómez Ponce, members of the Board of Shareholders of Hidropastaza S.A.

**NOTICE IS ORDERED GIVEN:**

For the State Comptroller General,

[*Signature*]

Dr. Raul Vicente Morales
Deputy State Comptroller General, Acting

OFFICE OF THE STATE COMPTROLLER GENERAL. A TRUE COPY. I ATTEST

[*Signature*]

ACCOUNTABILITY SECRETARY



OFFICE OF THE COMPTROLLER GENERAL OF THE STATE

ACCOUNTABILITY DIRECTORATE

13