

**U.S. Department of Justice**

Criminal Division

_____
*Washington, DC 20530*

March 10, 2022

Jacqueline M. Arango
Akerman LLP
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131
jacqueline.arango@akerman.com

      Re: Diego Patricio Sanchez Silva

Dear Counsel:

      This letter sets forth the Non-Prosecution Agreement (the "Agreement") between the United States Department of Justice, Criminal Division, Fraud Section and Money Laundering and Asset Recovery Section and the United States Attorney's Office for the Southern District of Florida (collectively, the "Government") and Diego Patricio Sanchez Silva ("Mr. Sanchez") (collectively "the Parties").

## Admission of Criminal Liability and Agreement Not to Prosecute

    1.    Mr. Sanchez agrees: (a) that he criminally violated, among other federal criminal statutes, 18 U.S.C. § 1956, as set forth more fully in Attachment A of this Agreement; (b) to commit no future federal, state, or local crimes whatsoever; and (c) to otherwise comply with all terms set forth in this Agreement. Mr. Sanchez agrees that the factual statements set forth in Attachment A to this Agreement are true and accurate.

    2.    Based on Mr. Sanchez's admissions and representations, as set forth in Paragraph 1 of this Agreement, as well as the other obligations Mr. Sanchez agrees to under this Agreement, the Government agrees not to prosecute Mr. Sanchez for his involvement in the conduct set forth in Attachment A to this Agreement

    3.    The Parties agree that the Government's promise not to prosecute Mr. Sanchez, as set forth in Paragraph 2 of this Agreement, does not extend to, or provide protection from prosecution for, any and all activities and conduct: (a) committed by Mr. Sanchez in the future; and (b) committed by Mr. Sanchez in the past that is not set forth in Attachment A to this Agreement.

AO386-C
**GOVERNMENT EXHIBIT**
CASE NO. 22-cr-20114-KMW
EXHIBIT NO. 10-3

CRP-DOJ-0003142567

## Cooperation

4. Mr. Sanchez agrees to: (a) truthfully and completely disclose all information with respect to his activities and the activities of others concerning all matters about which the Government inquires of him, which information may be used for any purpose; (b) cooperate fully with the Government and any other law enforcement agency or other criminal or civil Department, agency, or office in the United States or in a foreign jurisdiction designated by the Government, provided that such other Department, agency, or office agrees to be bound by this agreement; (c) attend all grand jury proceedings, hearings, trials, judicial proceedings, and meetings at which the Government may request his presence; (d) provide to the Government, and upon request, any document, record, or other tangible evidence relating to matters about which the Government or any designated Department, agency, or office inquires of him; (e) provide truthful and complete information and testimony when called upon by the Government, whether in interviews, before a grand jury, or at any trial or other court proceeding with respect to any matters about which the Government may request; (f) if requested by the Government, work in an undercover role to contact and negotiate with others suspected and believed to be involved in criminal misconduct, under the supervision of, and in compliance with, law enforcement officers and agents; and (g) bring to the Government's attention all crimes that he has committed under the laws of any jurisdiction, and all administrative, civil, or criminal proceedings, investigations, or prosecutions in which he has been or is a subject, target, party, or witness. Moreover, any assistance Mr. Sanchez may provide to federal criminal investigators shall be undertaken by Mr. Sanchez only pursuant to the specific instructions and under the specific control of the Government and designated federal criminal investigators.

5. Mr. Sanchez agrees that the Government and designated law enforcement representatives may meet with and debrief him outside the presence of counsel, unless Mr. Sanchez specifically requests counsel's presence at such briefings and meetings.

6. Mr. Sanchez and counsel for Mr. Sanchez agree not to reveal Mr. Sanchez's cooperation, or any information provided by Mr. Sanchez or the government in connection with Mr. Sanchez's cooperation, to any third party without the prior written consent of the Government.

## Forfeiture

7. Mr. Sanchez stipulates and agrees that the offenses set forth in Attachment A support the civil forfeiture of the funds he received through his violations of U.S. law under 18 U.S.C.§ 1956. The parties agree that Mr. Sanchez will forfeit $1,282,244 payable within 30 days of the signing of this Agreement. The Parties further agree that the United States may pursue additional funds to the extent such funds are forfeitable under U.S. law.

## Tolling of the Statute of Limitations

8. Mr. Sanchez agrees that should Mr. Sanchez violate any of the conditions of this Agreement, Mr. Sanchez shall thereafter be subject to prosecution in the United States for any

federal criminal violation. Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against Mr. Sanchez, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution. By this agreement, Mr. Sanchez waives all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed. By this Agreement, Mr. Sanchez also waives his right to make a claim premised upon any constitutional, statutory, or other claim concerning pre-indictment delay or right to a speedy trial. Mr. Sanchez agrees that these waivers are knowing and voluntary.

### Public Statements

9. Mr. Sanchez and the Government agree that the Government may, in its sole discretion, make this Agreement or any and all facts, promises, and representations contained in this Agreement public. Mr. Sanchez agrees that he will not disclose the existence of this Agreement without the prior written consent of the Government.

10. Mr. Sanchez agrees he will not make nor cause anyone else to make any public statement—or statement in any legal proceeding—contradicting the facts set forth in Attachment A.

### Violation of the Agreement

11. The Parties agree that it is within the sole discretion of the Government to determine whether Mr. Sanchez has violated, in whole or in part, any term of this Agreement. Mr. Sanchez agrees not to raise with any court any claim or defense that he did not violate, in whole or in part, a term of this Agreement.

12. The Parties agree that if the Government determines that Mr. Sanchez has not been truthful, or that any term of this Agreement has been violated, in whole or in part, by Mr. Sanchez, the Government is free from its obligations under this Agreement and may properly initiate a prosecution against Mr. Sanchez for any conduct, including the conduct set forth in Attachment A to this Agreement. Mr. Sanchez agrees that, in the event the Government determines in its sole discretion that Mr. Sanchez violated, in whole or in part, a term of this Agreement, Mr. Sanchez will not assert and will be barred from asserting any claim or defense that he is entitled to protection from prosecution by virtue of this Agreement.

13. Mr. Sanchez agrees that, effective as of the date he signs this Agreement—and notwithstanding any other subsequent event, including but not limited to the Government's determination that Mr. Sanchez has violated, in whole or in part, a term of this Agreement, Attachment A and all statements made by Mr. Sanchez to the Government or other designated Department, agency or office, and any testimony given by Mr. Sanchez before a grand jury or other tribunal, whether prior to or subsequent to the signing of this Agreement, and any evidence obtained pursuant to leads from such statements or testimony shall be admissible against Mr. Sanchez in any criminal case the Government brings against Mr. Sanchez as: (a) substantive evidence offered by the Government in its case-in-chief and rebuttal case; (b)

CRP-DOJ-0003142569

impeachment evidence offered by the Government on cross-examination; and (c) evidence offered by the Government at any sentencing hearing or other hearing. In addition, Mr. Sanchez agrees not to assert any claim under the United States Constitution, any statute, the Federal Rules of Evidence (including Rule 410 of the Federal Rules of Evidence), the Federal Rules of Criminal Procedure (including Rule 11 of the Federal Rules of Criminal Procedure), or the United States Sentencing Guidelines (including USSG §1B1.1(a)) that the statements contained in Attachment A, the testimony and statements made by Mr. Sanchez in the circumstances described earlier in this paragraph, or any evidence obtained pursuant to leads from such statements or testimony should be suppressed or are otherwise inadmissible as evidence against Mr. Sanchez (in any form) in any criminal case the Government brings against Mr. Sanchez.

14. Mr. Sanchez further agrees to waive any objection to venue in the event of any such prosecution and specifically agrees not to contest venue, without limitation, in the Southern District of Florida.

15. Mr. Sanchez agrees not to retaliate, attempt to retaliate, or direct others to retaliate against any person because of that person's cooperation with the government's investigation of this matter. Mr. Sanchez also agrees not to take legal action against any individual because that individual provided documents or information to the government.

## Binding Nature of the Agreement

16. Mr. Sanchez represents that he understands that this Agreement binds only the Government and does not bind any other federal, state, or local prosecuting authority other than the Government, nor does it bind any foreign authority. The Government will, however, bring the cooperation of Mr. Sanchez to the attention of other prosecuting offices both in the United States and foreign jurisdictions if requested by Mr. Sanchez. If the Government receives a request from any local, state, federal or foreign law enforcement office or prosecutor's office for access to statements made by Mr. Sanchez, the Government may furnish such information, but will do so only on the condition that the requesting office honor the provisions of this Agreement.

## Complete Agreement

17. The Parties agree that this Agreement sets forth all the promises, agreements, and conditions, in their entirety, between Mr. Sanchez and the Government. The Parties agree that no promises, agreements, or conditions have been made other than those expressly set forth in this Agreement. The Parties agree that this Agreement supersedes all prior understandings, agreements, and/or conditions, if any, between the Parties, whether written or oral, including the proffer letter relating documents signed on December 10, 2019.

CRP-DOJ-0003142570

18. No amendments or modifications to this Agreement shall be valid unless they are in writing and signed by the Government, Mr. Sanchez, and counsel for Mr. Sanchez.

Sincerely,

JOSEPH S. BEEMSTERBOER
ACTING CHIEF
DEPARTMENT OF JUSTICE
CRIMINAL DIVISION
FRAUD SECTION

_____     3/10/22
By: Alexander Kramer                Date
    Jil Simon
    Trial Attorneys

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

_____     3/10/22
By: Michael Berger                  Date
Assistant United States Attorney

AGREED AND CONSENTED TO:

_____     03/10/2022
Diego Patricio Sanchez Silva        Date

APPROVED:

_____     3/10/2022
Jacqueline M. Arango                Date
Attorney for
Diego Patricio Sanchez Silva

5

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this Agreement, reviewed them with my client, and fully discussed the provisions of the Agreement with my client. I acknowledge that these pages accurately and completely set forth the entire Agreement between the Parties.

DATED: 3/10/2022

BY: _____
Jacqueline M. Arango, Esq.

## ATTACHMENT A

Beginning in or around 2012, Diego Patricio Sanchez Silva ("Sanchez") formed a personal friendship with Carlos Ramon Polit Faggioni ("Polit"), who was the Comptroller General of Ecuador from in or around 2007 to 2017. Beginning in or around 2012, Polit asked Sanchez to launder large sums of cash on Polit's behalf. After Polit provided Sanchez with the cash, Sanchez wire transferred hundreds of thousands of dollars to accounts owned and/or controlled by Polit's son, John Polit, in the United States, pursuant to Polit's direction. Sanchez understood that the cash he was laundering for Polit represented the proceeds of criminal activity.

In addition to the foregoing, Sanchez also paid a bribe to Polit and another Ecuadorean official in exchange for using their influence as government officials in Ecuador to help Sanchez's company, Global Reinsurance Broker, Inc. ("Global Reinsurance"), obtain or retain business with Seguros Sucre S.A. ("Seguros Sucre"), the state-owned and state-controlled insurance company in Ecuador. Prior to 2013, Sanchez's company had an annually renewable contract with Seguros Sucre to broker insurance for certain portions of the Ecuadorean government. In 2013, the new director of insurance at Seguros Sucre — Juan Ribas Domenich ("Ribas") — canceled the contract with Global Reinsurance. Sanchez subsequently requested help from Polit in order to reobtain the contract with Seguros Sucre. Polit met with Sanchez and another Ecuadorean official, Pedro Solines, wherein they agreed to help Sanchez.

In or around May or June 2015, based on pressure from Polit, Seguros Sucre entered into reinsurance contracts with Sanchez's company totaling approximately $40.3 million USD. Global Reinsurance earned a commission of approximately $2.5 million from these contracts. In exchange for Polit and Solines assisting Sanchez re-obtain the reinsurance contracts with Seguros Sucre, Solines told Sanchez he had to pay a $750,000 bribe — $500,000 to Polit and $250,000 to Solines. In approximately late 2015, Polit told Sanchez to communicate with his son, John Polit, to obtain the details for wiring the payment.

On or about December 2, 2015, Sanchez wired $510,000 from his Global Reinsurance bank account in South Florida to a bank account in the name of American Land Investments and Development LLC in South Florida as a bribe payment to Polit.

At the direction of Polit's son, John Polit, Sanchez instructed his assistant to send a draft "model invoice" to paper over and conceal the $510,000 payment, falsely describing it as payment for "technical analysis and support" when no such services had been provided.

The preceding statement is a summary and does not include all the facts known to Sanchez or the Government concerning criminal activity in which Sanchez and others engaged.