NO. C.C.:

NIS NO.

745

PERIOD :2009



COMPTROLLER GENERAL OF THE STATE

PROJECT AND ENVIRONMENTAL AUDIT MANAGEMENT

DIAPA-D002-2009

COMPAÑIA HIDROPASTAZA S.A.


REPORT OF INDICATIONS OF CRIMINAL LIABILITY

TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT

CONSORTIUM -VA TECH, ARISING FROM THE CONSTRUCTION CONTRACT FOR THE SAN

FRANCISCO HYDROELECTRIC POWER PLANT, UNDER THE CHARGE OF HIDROPASTAZA S.A.


TYPE OF TEST: EEI

PERIOD FROM: 2003/11/01 UNTIL : 2008/09/15

Work Order

Date


[illegible stamp] [illegible stamp

18/09/2008


DOJ_ODB_2328651

CRP-DOJ-0002477114



DEFENSE TRIAL
EXHIBIT

8 A

22-CR-20114-KMW

REF. Report approved on 2009-04-09

*493*



Memorandum                DIAPA

To:      COMPTROLLER GENERAL OF THE STATE

From:    DIRECTOR OF PROJECT AND ENVIRONMENTAL AUDITING

Subject: Report with Indications of Criminal Liability

Date:  APR2009

Nis:

As part of the special engineering review of the addenda signed between HIDROPASTAZA and the Odebrecht - Va Tech Consortium, within the construction contract for the San Francisco Hydroelectric Power Plant, under the charge of the company Hidropastaza S.A. 10 addenda signed between HIDROPASTAZA and the Odebrecht - Va Tech Consortium were analyzed, of which, non-compliances have been determined in addenda numbers 6, 8 and 9.

The period of this review is from November 1, 2003 to September 15 2008

The examination was conducted in accordance with the Ecuadorian Government Auditing Standards issued by the Comptroller General of the State. These standards require that the examination be planned and executed to obtain reasonable assurance that the information and documentation examined does not contain material misstatements, as well as that the operations to which they correspond, have been executed in accordance with the legal and regulatory provisions in effect, and policies and other applicable standards.

As a result of the analysis, there are indications of criminal liability, and therefore, in compliance with articles 65 and 67 of the Organic Law of the Comptroller General of the State, the following report is issued  .

Sincerely yours,

*German E. Lynch López*

DOJ_ODB_2328652

CRP-DOJ-0002477115



 COMPTROLLER GENERAL OF THE STATE          Memorandum N° 01-REJP-SF

TO:     Director of Project and Environmental Auditing

FROM:       Atty. Ramiro Jácome Paredes

Date:       Quito, January 16, 2009

SUBJECT:    Report with indications of Criminal Liability

Attached hereto you will find the report with indications of criminal liability established within the special engineering examination of the addenda executed between HIDROPASTAZA and the CONSORTIUM ODEBRECHT -ALSTOM- VA TECH, as part of the construction contract for the SAN FRANCISCO hydroelectric power plant, under the charge of the Company HIDOPASTAZA S.A., where it has been concluded that there are indications of criminal liability

Therefore, I recommend that according to the provisions of articles 65 and 67 of the Organic Law of the Comptroller General of the State, and following the procedure indicated in Resolution 0010 CG of May 15, 2008, with the speed that the case deserves, the report of indications of criminal Liability be submitted to the Comptroller General of the State, so that once approved, it is forwarded to the Public Prosecutor's Office, with the accumulated evidence.

Ab. Ramiro Jácome Paredes.

DOJ_ODB_2328653

CRP-DOJ-0002477116

REPORT OF INDICATIONS OF CRIMINAL LIABILITY ESTABLISHED WITHIN THE SPECIAL ENGINEERING REVIEW ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE CONSORTIUM ODEBRECHT - ALSTOM - VA TECH, AS PART OF THE CONTRACT FOR CONSTRUCTION OF THE SAN FRANCISCO HYDROELECTRIC POWER PLANT, UNDER THE CHARGE OF HIDROPASTAZA S.A. AND THE NATIONAL ELECTRICITY COUNCIL (CONELEC)

1.    GENERAL INFORMATION

1.1    Reason for and Scope of the Special Review

The special engineering review of the addenda entered into between Hidropastaza and the consortium Odebrecht - Alstom - Va tech, as part of the construction contract for the San Francisco Hydroelectric Power Plant, under the charge of the company Hidropastaza S.A. and the Consejo Nacional de Electricidad (CONELEC), is carried out as a contingency of the Operational Control Plan for 2008 of the Directorate for Project and Environmental Auditing of the Comptroller General of the State, in accordance with the authorization of the Comptroller General, contained in memorandum N° 873-DIAPA of September 8, 2008, and work order N° 0032-DIAPA of September 18, 2008, with the scope contained in official letter N° 024449-DIAPA of September 26, 2008.

This special engineering review covers the period from November 1 , 2003 to September 15, 2008. References to dates earlier and later than those set forth in this scope are for informational purposes only.

1.2.    Background of the San Francisco Hydroelectric Project

By means of a contract signed on March 28, 2000, the National Council of Electricity, CONELEC, delegates, authorizes and grants in concession to Hidropastaza S.A., for a period of 30 years, the power generation of the San Francisco Hydroelectric Project, which includes the financing, construction, assembly, operation, maintenance and administration of a power generation plant of up to 230 MW of capacity, which will be located in the Canton of Baños, Province of Tungurahua. On October 4, 2002, August 19, 2004 and February 2,2006, amendment agreements were signed.

On March 29, 2000, Hidropastaza S.A. and the Odebrecht - Ansaldo consortium signed a contract for the execution of the detailed engineering of the basic project, supply and assembly of electrical, mechanical and hydromechanical equipment and civil construction of the San Francisco Hydroelectric Project, as a turnkey project. Between on October 10, 2002 and January 4, 2007 the parties entered into ten addenda to the contract.

On March 10, 2004, Hidropastaza S.A. and the Asociación Fumas - Integral signed a contract for consulting services regarding supervision of the San Francisco Project

1.3    San Francisco Project Construction Financing

On April 13, 2000, in the city of Rio de Janeiro, State of Rio de Janeiro, Brazil, the project financing agreement was signed under the following terms:

DOJ_ODB_2328654

CRP-DOJ-0002477117

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 2

Financier:        Agencia de Financiamiento Industrial, in its capacity as agent of the Economic and Social Development Bank (BNDES).

Financed by:        Compañía Hidropastaza S.A., represented by Eng. Rafael Sevilla Callejas.

Amount and Purpose: Sub-credit 1.- in the amount of up to USD 241,465,100.00, equivalent to 100% of the amount of the goods and services exported from Brazil by Odebrecht, corresponding to 80% of the total amount of the project; being USD 127,871,950.00 the amount of goods and USD 113,593,150.00 the amount of the services,

Sub-credit 2.- for an amount of up to USD 1,500,000.00 equivalent of up to 75% of the amount of the consulting services exported from Brazil by Fumas

1.4.    Detailed Engineering, Procurement and Construction (EPC) Contract for San Francisco Project

Main Contract

Hidropastaza S.A. and the Odebrecht - Ansaldo consortium signed a contract for the execution of the detailed engineering, procurement and construction (EPC) of the San Francisco Hydroelectric Project, under the following terms:

Project Owner:        Hidropastaza S.A., legally represented by its Chief Executive Officer, Rafael Sevilla Callejas.

Contractor:        Odebrecht - Ansaldo Consortium, represented by the attorney-in-fact of the construction company Norberto Odebrecht S.A., Mr. Luiz Antonio Mameri.

Date:        March 29, 2000

Purpose:        Detailed engineering of the basic project, supply and assembly of electrical, mechanical and hydromechanical equipment and civil construction of the San Francisco Hydroelectric Project, as a turnkey project

Scope:        Detailed engineering of the basic project, the supply, assembly, construction and testing, commissioning and start-up of the works. The works will be developed in accordance with: i) basic project, ii) project optimization, iii) changes or improvements agreed between the parties, iv) specifications included in the concession contract and v) Ecuadorian norms and standards or others applicable between the consortium and the concessionaire.

Immediately after the signing of the contract, the consortium will develop a technical study (Optimization Study) in order to determine the possibility of optimizing the basic project object of the bidding carried out by INECEL. Based on the conclusions of the study, the prices and deadlines of the works affected by the optimization will be revised.

DOJ_ODB_2328655

CRP-DOJ-0002477118

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 3

Contract amount: USD 286,851,129.00, excluding VAT.
Form of Payment:
a) 30% of the contract amount as an advance payment, against delivery of the corresponding guarantee
b) Payment of the balance will be made by means of a disbursement order issued against the loan(s) obtained
Warranties:
Performance: USD 15,000,000.00 to guarantee the obligations acquired in the contract. 50% will be maintained until the provisional reception of the first unit and the remaining 50% until the total delivery of the works object of the contract
1.5. Addenda to the EPC Contract

| No. | Date of Celebration | Purpose / Scope |
|---|---|---|
| 1 | Oct 10, 2002 | 1 Replace Exhibit 2, "Billing Breakdown", with a new Exhibit 2 that contemplates:a) The elimination of the contractual amounts related to works of the Rio Verde catchment and, b) The inclusion of new works and services under the denomination of " Complementary Civil and Hydroelectromechanical Works and/or Services " for exactly the same contractual amount of the amounts eliminated from the works of the Rio Verde catchment, thus maintaining unaltered the amount of the EPC contract for the amount of USD 286,851.129,00. 2.- Update the Work Execution Schedule (Exhibit 1) and the Estimate of Execution (Exhibit 4) according to the above mentioned adjustments The new Exhibits Nos. 1, 2 and 4 respectively: "Schedule of Execution of Works"; "Invoicing Breakdown"; and "Valued Execution Schedule", will replace for all legal and contractual purposes those existing in the detailed engineering, procurement and construction (EPC) contract for the construction of the San Francisco Hydroelectric Project |
| 2 | Nov 21, 2003 | Formalize the assignment made by Odebrecht - Ansaldo (Assignor Consortium) to Odebrecht - Alstom Brasil Ltda. (Assignee Consortium) as contractor of the detailed engineering of the basic project, supply and assembly of electrical, mechanical and hydro-mechanical equipment and civil construction of the San Francisco Hydroelectric Project  After the signature date, the "Assignor Consortium" assigns to the "Assignee Consortium, all its rights and obligations under the EPC contract signed on March29 , 2000. |
| 3 | May 26, 2004 | Modify the second paragraph of clause 14.2 of the EPC contract, regarding that on the last day of each month, the consortium or the Odebrecht company shall submit to Hidropastaza, a measurement of the work effectively executed until the 25th of each month and that the invoice may be issued by the consortium and the Brazilian exporter of the financing contract |
| 4 | Sep 20, 2004 | Acceleration of the pace of the works so that substantial completion of the works is brought forward with a target of seven months over the final deadline of the contract; modify the updated basic design resulting from its optimization and from the elimination of the Rio Verde catchment; adapt the basic design to the acceleration schedule Amount of the addendum: USD 13,629,235.54 |
| 5 | Aug 5, 2005 | Grant the consortium Norberto Odebrecht S.A. and Alstom - Va Tech, financial compensation for the inflationary adjustment events foreseen in the sixth clause of the contract Amount of the addendum: USD 15,726,560.17 |
| 6 | Jan 16, 2006 | Authorize the Construction Consortium to carry out all actions within its reach aimed at freeing the mole, reconform the affected section and try to recover the delay in this activity; to remunerate the works and services object of this addendum, the concessionaire has decided to provisionally increase the amount of the EPC contract by USD 12,000,000.00, the same that will be justified and adjusted |

*tres of*

DOJ_ODB_2328656
CRP-DOJ-0002477119

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 4

| | | |
|---|---|---|
| | | according to the real economic needs resulting from this addendum; the parties agree that the consequences on terms of the execution of the additional, complementary works and services required for the fulfillment of the object of this addendum will not affect the acceleration terms |
| 7 | 2-May-2006 | Grant the Odebrecht - Alstom - Va Tech consortium, a monetary adjustment derived from additional costs incurred by the consortium due to TBM release works and other related financial compensation for changes in the geological-geotechnical conditions found in the headrace tunnel and/or its consequences on the surface<br><br>Route redesign, execution of the same and works incurred in the 230 KV Interconnection line and compensation for its implementation<br><br>Amount of the addendum: USD 4,000,000.00 |
| 8 | 5-May-2006 | Grant the Odebrecht S.A. and Alstom-Va Tech consortium, a monetary adjustment derived from additional costs incurred by the consortium due to the first adjustment of price-number 6.2 b) IX of the EPC contract, with the exception of the headrace tunnel between PK 0+090 to 9+830, according to the terms of Exhibits 1, 2 and 4 of this instrument<br><br>The eventual costs additional to those established herein, incurred in the headrace tunnel resulting from other unforeseen geological-geotechnical changes, will be evaluated under the same criteria used in the determination of the first adjustment of price-number 6.2 b) IX of the EPC contract<br><br>Amount of the addendum: USD 4,000,000.00 |
| 9 | 27-Jul-2006 | Grant the Odebrecht - Alstom - Va Tech consortium, a monetary adjustment derived from additional costs incurred by the consortium due to the second adjustment of price-number 6.2 b) IX of the EPC contract for the conditions found and estimated in the headrace tunnel corresponding to the section between PK 0+090 to 9+830, according to the terms of Exhibits 1 and 2 of this instrument<br><br>It should be noted that the types of support estimated for the section of the headrace tunnel still being excavated by the TBM method, i.e., between KP 3+065.51 and 0+995.34, do not replace and/or change the geological-geotechnical conditions foreseen in the basic design<br><br>The eventual costs additional to those established herein, incurred in the headrace tunnel resulting from other unforeseen geological-geotechnical changes, will be evaluated under the same criteria used in the determination of the second adjustment of price-number 6.2 b) IX of the EPC contract<br><br>Once the excavation of the headrace tunnel has been completed, total economic consequences of the tunnel section PK 0+090 to 9+830 will be evaluated and will recalculate the economic consequences of these effects, crediting or debiting the parties as appropriate<br><br>Addendum amount: USD 4,700,000.00 |
| 10 | 4-Jan-2007 | Recognition by Hidropastaza S.A. of the reimbursement due to the consortium constructor as established in clause 14.4 of the EPC contract, in the amount of USD 26,184.966,82 already incurred up to October 31, 2006 and of the projected balance of USD 3,040.488.50 that must be recalculated using the same method applied by the financial consultant for the determination of the exchange differential already incurred, in order to compensate the readjustment originated by the exchange differential between the currency of the contract price (Dollar of the United States of America) and the currency of its partial payment (Brazilian Real).The recognition of this reimbursement will be made through conversion to future energy certificates.<br><br>Amount of the addendum: USD 29,225.455,32 |

DOJ_ODB_2328657
CRP-DOJ-0002477120

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 5

## 1.6.    Consultancy Services Contract for the Project Audit

On March 10, 2004, Hidropastaza S.A. and Asociación Fumas - Integral, subscribed the consulting services contract for the supervision of the San Francisco Project, in the following terms

Main Contract

| | |
|---|---|
| Contractor: | Hidropastaza S.A. legally represented by its CEO, engineer Germán Bolívar Anda Naranjo |
| Contractor: | Asociación Fumas - Integral, represented by the engineers Newton Goulart Graca and Eduardo Abdón Villarreal, as legal representatives |
| Scope: | The scope of the consultant's work will cover exclusively the control and supervision of the EPC contract (Engineering, Procurement and Construction) |
| Validity and Deadlines: | This contract shall become effective as of its execution but its terms, which total 48 months according to the physical schedule, shall commence on the date on which all and each of the following requirements have been met. The consultant has delivered the guarantees foreseen in clause fourteen; the contractor has paid the advance payment to the consultant; and, the contractor has given the order to proceed for the Commencement of the works |
| Contract Amount: | USD 2,028,655.00, as a fixed global price without the right to readjustment of prices |
| Personal: | The functions of the foreign and national personnel will be in accordance with the structural and personnel organization chart, corresponding to the organization required for the consultancy and a functional organization chart of the personnel according to the terms of the proposal awarded |
| Control: | The Client may, when it deems convenient, verify the means, presence and activities of the Consultant, at any place where the actions inherent to the contract are carried out |
| Coordination: | The consultant shall designate and maintain a coordinator for the development of its activities according to the programming of the services |
| Penalties: | In case the consultant incurs delay in the fulfillment of any of its contractual obligations, it will be penalized with a fine for each day of delay equivalent to one ten-thousandth (1/10,000) of the total amount of the contract |
| Warranties: | Guarantee Fund: The contractor shall retain 5% of the amount of each payroll<br>Performance of the Contract: The consultant will deliver a guarantee for an amount equivalent to 5% of the amount of the contract |

*gH cinco*

DOJ_ODB_2328658

CRP-DOJ-0002477121

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.

E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT

Page No. 6

Good Use of the Advance: The consultant will provide a guarantee for the amount of the advance payment .

Addendum

Date:                          January 17, 2005

Purpose:                  The purpose of this instrument is to amend the contents of the following clauses of the consulting contract for the supervision of the San Francisco Hydroelectric Project

Clause Five, Term and Deadlines: The term of this contract begins on March 10, 2004, date as of which the contractual term of 40 months begins.

Clause Seven, Contract Amount: The global price, fixed and not readjustable, corresponding to the totality of the services of consultancy is USD 2,550.000.00, corresponding to: a) Services rendered in the period between November 19, 2003 and March 9, 2004, USD 140,067.70; and, b) Services rendered between March 10 2004 and June 30, 2007, USD 2,409,932.30

Clause Eight: The amounts to be paid to the consulting association are as follows: Advance payment: up to 23.87% of the amount stipulated in the seventh clause, part in reais of Brazil and part in U.S. dollars, according to the proportionality of the financing, and monthly payments of work progress

2.   INDICATIONS OF CRIMINAL LIABILITY IN ADDENDUM NO. 6 TO EPC CONTRACT

2.1.   ADDENDUM NO. 6

2.1.1.   Background

Among the main clauses of Addendum No. 6 to the EPC contract, entered into between Hidropastaza S.A. and the Odebrecht - Alstom - Va Tech consortium, are the following :

Intervening parties: In the city of Ambato, on January 10, 2006, appear, on the one hand, Hidropastaza S.A., Concessionaire of the San Francisco Hydroelectric Project (hereinafter the "Concessionaire"), duly represented by its Chief Executive Officer, Mr. Germán Bolívar Anda Naranjo, and on the other, Consorcio ODEBRECHT - ALSTOM - VA TECH (hereinafter the "Construction Consortium"), formed by Constructora Norberto Odebrecht S.A., ALSTOM BRASIL LTDA. and VATECH HYDRO BRASIL LTDA. all of them represented in this act by the attorneys-in-fact of the Leading Company as Agent of the Consortium, engineers Eduardo José Mortani Barbosa and Emyr Diniz Costa Junior, hereinafter referred to individually and collectively as the "Party" and the "Parties", respectively, who hereby sign Addendum No. 6 to the detailed engineering, procurement and construction (EPC), said contract entered into on March 28, 2000, for the

DOJ_ODB_2328659

CRP-DOJ-0002477122

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 7

construction of the San Francisco Hydroelectric Project (hereinafter the Project), in the canton of Baños, Province of Tungurahua, Ecuador.

Object of Addendum No. 6 to the EPC Contract, which stipulates the following: "In order to try not to harm the acceleration objective established in Addendum N° 4 to the EPC Contract, in view of the stoppage of the works in the headrace tunnel, due to causes not attributable to the Consortium, the same ones that have kept the mole trapped since November 9, 2005 at abscissa 4+459, Concessionaire has decided to authorize the Construction Consortium to carry out all the actions within its reach to free and repair the mole, reconform the affected section and try to recover the delay in this activity. For this purpose, in accordance with the provisions of Clause Six, Paragraph 6.2 b) of the EPC Contract signed on March 29, 2000, it is established that it is necessary to carry out a series of complementary works and services that are included in Exhibit 1 of this addendum No. 6 of the EPC Contract and that among other works includes the following: i) Opening of new job sites; ii) Total or partial change in methodology of execution of the works; iii) Re-mobilization of labor, equipment and inputs; iv) Development of detailed engineering for the reconstruction of the headrace tunnel in the affected area; v) Works to free and repair the mole that has been immobile since November 9, 2005; vi) Reconformation of the affected tunnel section; vii) Other related services"

New EPC Contract Price and Method of Payment: "In order to remunerate the works and services object of this addendum, the Concessionaire has decided to provisionally increase the amount of the EPC Contract in an estimated amount of USD 12,000.000.00 (twelve million United States dollars) which will be justified and adjusted according to the real economic needs resulting from this addendum, with the purpose of recognizing and paying to ODEBRECHT- ALSTOM-VA TECH Consortium monetary compensation for the additional complementary works and services effectively performed to allow the conclusion of the San Francisco Hydroelectric Project Headrace tunnel and with this, mainly to globally remedy the problem verified on site. The increase of contractual amounts effectively characterized within the scope of the established item, will be measured and paid to the Construction Consortium in accordance with the item "Works and Complementary Services" included in Exhibit Nº 2 of the EPC Contract....

Separately, the Concessionaire reserves the right to appeal to the insurance company seeking to receive the corresponding economic compensation resulting from this loss"

Extension of the Duration of the Excavation Activity of the Headrace tunnel: "The parties agree that the term consequences resulting from the execution of the works and additional complementary services required for the fulfillment of the object of the present addendum may not affect the terms of the acceleration that the Construction Consortium would obtain in the case that the above-mentioned stoppage had not occurred. Said consequences shall be established based on the actual delay in the start-up of the San Francisco Power Plant caused exclusively by said stoppage, that is to say, considering the actual generating capacity of each and every part of the work of the San Francisco Power Plant..."

2.1.2   Justifications of Labor and Equipment Measurements for the Period June to September 2006

Hidropastaza S.A., delivered to the Comptroller's Office team the partial table of the summary called "Justifications for the Calculation of Labor and Equipment According to

*of siete*

DOJ_ODB_2328660

CRP-DOJ-0002477123

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 8

Addendum No. 6 to the EPC Contract" for the period between June and September 2006, whose information does not reflect the totality of the works.

### 2.1.3. All Risks Construction Warranty

On June 11, 2004, by means of Policy No. 0000093, in force between February 1, 2004 and February 1, 2009, the insurance company Sul América C.A. and the construction company Norberto Odebrecht S.A., subscribed the "All Construction Risks Insurance Contract " for the amount of USD 306,744,000.01.

In the general conditions of this insurance contract, in clause 2, referring to "Additional Coverage", the following is stipulated:

"By express acceptance and express agreement of the limits of indemnity thus as well as the payment of the corresponding additional premium, this Policy may be extended to cover the risks hereinafter indicated: Coverage "C": Damage directly caused by cyclone, hurricane, storm, wind, flood, overflow and rise of water level, mudslide, subsidence or earthquake landslide, landslide and landslide or rockfall"

### 2.1.4. Amounts Recognized by the Insurer for the Claim

The study of the information provided by Hidropastaza to the Comptrollership team, evidences that the company Sul América C.A. has not made any payment in favor of Odebrecht S.A. for the claim, instead it was made by the broker of a reinsurance company whose name is not identified in the documentation for the amount of USD 5,184.799.29, amount that the Construction Consortium delivered to Hidropastaza S.A. by means of six payments between May 11 and November 25 of 2007, plus an additional amount of USD 338,568.74, totaling USD 5,523,368.03.

Hidropastaza S.A. paid USD 13,826.723,96 to the consortium constructor in connection with Addendum No. 6. However, there is no documentation indicating the reasons why Sul América C.A. or the reinsurer have not paid Odebrecht, and the latter to Hidropastaza S.A., the balance of USD 8,641.924,67, which covers the total amount invested, since the recovery works of the TBM and complementary works have been executed as consequence of the loss.

During the examination, Hidropastaza S.A., the Odebrecht - Alstom - Va Tech consortium and Asociación Fumas - Integral were asked for technical and financial documentation to support the works executed for the recovery of the TBM and complementary works, without having received any response to this request.

### 2.1.5. Comment: The investments made under Addendum No. 6 are partially recognized by the insurance company.

On October 17, 2008, Hidropastaza's Accounting Unit submitted to the Comptroller's Office team, the General Ledger, which details the investments made based on this addendum, in the period between March and October 2006, whose summary is as follows:

*of ocho*

DOJ_ODB_2328661

CRP-DOJ-0002477124

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.

E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT

Page No. 9

| Labor | USD | 3,259.843,01 |
|---|---|---|
| 2.- Materials | | 1,449.511,88 |
| 3.- Services | | 3,744.059,09 |
| 4.- Equipment | | 478.066,51 |
| 5.- General expenses | | 2,144.204,75 |
| 6.- Window 1 | | 2,751.038,72 |
| Total | USD | 13,826.723,96 |

From the analysis of the above table, it can be seen that, for the works and services performed based on Addendum No. 6 of the EPC Contract, Hidropastaza S.A. has paid to the Odebrecht - Alstom - Va Tech consortium the sum of USD 13,826,723.96, representing 115.22%, with respect to the USD 12,000,000.00, initially agreed upon in the addendum

2.1.6.   Conclusion

Despite the fac that Addendum N° 6 stipulates that the concessionaire reserves the right to resort to the insurance company in order to receive the corresponding economic compensation resulting from this loss, up to the cut-off date of the present review, Hidropastaza S.A. has not claimed from the insurance company Sul América C.A. the USD 8,641,924.67 corresponding to the difference of the amounts paid in connection with this addendum, producing an economic damage to the concessionaire for the indicated amount.

2.1.7.   Indications of Criminal Liability

The deputy Legal Director of the Comptroller's Office, by memorandum N° 649 DJDJ of December 23, 2008, issues the legal opinion requested by the Director of Projects and Environmental Auditing on "whether or not to process indications of Liability criminal" in addenda 5, 6, 8, 8, 9 and 10 of the special engineering examination to the addenda entered into between Hidropastaza and the Odebrecht - Alstom - Va Tech consortium, as part of the construction contract for the San Francisco Hydroelectric Power Plant, under the charge of the company Hidropastaza S.A., stating:

From the conclusion and facts previously exposed by the audit, it is determined the existence of indications of criminal Liability for the commission of the crime typified and sanctioned in article 257 of the Penal Code, when the directors of the company HIDROPASTAZA S.A., in charge of the public electric energy service, arbitrarily disbursed public funds by paying in an irregular manner and without any justification, the amount of USD 13,826.723,96, to the Odebrecht - Alstom - Va Tech consortium, arising from addendum 6, as a provisional payment of monetary compensation to remedy the problem verified in the work, despite the existence of the All-Risks Insurance Policy No. 000093 dated June 11, 2004, in force between February 1, 2004 until February 1, 2009, subscribed between the Insurance Company SUL AMERICA C.A, and NORBERTO ODEBRECHT S.A. Construction Company, a policy that has not been collected, to the detriment of HIDROPASTAZA S.A.".

2.2.      PERSONS INVOLVED IN THE ADMINISTRATIVE PROCESS

Name: Germán Bolívar Anda Naranjo

Citizenship Card: 1703131688

Title: Chief Executive Officer, Hidropastaza, S.A.

Address: Av. Pasteur 1381 y Calderón Ambato

DOJ_ODB_2328662

CRP-DOJ-0002477125

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.

E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT

Page No. 10

| | |
|---|---|
| Name: | Eng. Luis Alfredo Mancero Gallegos |
| Citizenship Card: | 0600602502 |
| | Novena Transversal y P Calderón Conjunto Alicante house 38 San Rafael Valle |
| Address: | de los Chillos |
| Position: | Chief Executive Officer of Hidropastaza S.A. |
| Phone: | 2866200 |

| | |
|---|---|
| Name: | Eng. Hernán Saá Bernstein |
| Citizenship Card: | 1800643007 |
| Address: | Reina Claudia 0105 and Rodrigo Pachano Ambato Av. |
| Position: | Chief Executive Officer of Hidoagoyan [sic] S.A. |
| Telephone numbers: | 099827773 |

| | |
|---|---|
| Name: | Eng. Sadinoel de Freitas Junior |
| Citizenship Card: | 1891706541 |
| Address: | 1942 Av. Doce de Octubre y Av. Cordero |
| Position: | Executive Vice-President of Hidropastaza S.A. |

| | |
|---|---|
| Name: | Vicente Alarcón Chacón |
| Citizenship Card: | 0600803480 |
| Address: | Antonio Román 712 y Fray Agustín León Quito |
| Position: | Solidarity Fund Manager |
| Phone | 2246028 |

| | |
|---|---|
| Name: | Alejandro Gómez Ponce |
| Citizenship Card: | 1704909389 |
| Address: | Urb. Florencia House No. 60 Cumbaya |
| | Av. Víctor Andrés Belaunde 280-Int.502 San Isidro Lima |
| | Peru |
| Position: | Representative of Odebrecht Construction Company |

| | |
|---|---|
| Name: | José Conceicao Santos Filho |
| Passport No: | CL 251846 Brazil |
| Address: | Calle Hidalgo de Pinto No. 631 y Mariano Echeverría, Dep. 2, Segundo Piso |
| Position: | General Manager Hidropastaza |
| Phone: | 022251146 |

3. INDICATIONS OF CRIMINAL LIABILITY IN ADDENDA NOS. 8 AND 9 TO THE EPC CONTRACT

3.1 . ADDENDUMN°8

3.1.1. Subject of Addendum 8

Grant the Odebrecht - Alstom - Va Tech consortium a monetary adjustment for additional costs incurred by it due to the First Price Adjustment -Section 6.2 (b)

*of diez*

DOJ_ODB_2328663
CRP-DOJ-0002477126

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 11

Paragraph IX of the EPC contract (with the exception of the headrace tunnel between KP 0+090 to 9+830) according to the terms of Exhibits 1, 2 and 4 of the addendum.

The eventual costs additional to those established, incurred in the headrace tunnel due to other unforeseen geological-geotechnical changes, will be evaluated under the same criteria used in the determination of the First Price Adjustment -Section 6.2 Adjustment Events (b) Paragraph IX of the contract.

3.1.2. New Price

In order to remunerate the works and services object of this addendum, Hidropastaza S.A., in its capacity as concessionaire of the project, has decided to increase the amount of the EPC contract in an estimated amount of USD 4,000,000.00.The amount of this adjustment will be paid by Hidropastaza as established in the EPC contract.

3.1.3.

The following documents are part of this addendum and are listed in order of priority

- Exhibit N° 1.- Request for monetary adjustment OEC/PHSF/DP/050/2006 and sent by the ODEBRECHT-ALSTOM-VA TECH Consortium to Hidropastaza S.A.

  Exhibit No. 2.- Technical Economic Report of Consultant Eng. Guy Bourdeaux

  Exhibit No. 3.- Legal Report issued by Dr. Iván Vallejo, Legal Advisor of Hidropastaza S.A.

  Exhibit N° 4.- Official Letter HP-0685-2006 and letter OEC/PHSF/DP/079/2006"

3.1.4. Summary of Contents of Exhibit No. 1

By means of official letter OEC/PHSF/DP/050/2006 dated March 31, 2006, the Project Manager of the Construction Consortium, requests the price and term adjustment of the EPC contract due the geological/geotechnical conditions different from those of Exhibit 1 of the concession contract found during the construction of the San Francisco Hydroelectric Project

In paragraph 1) of the referred document the construction company presents the documentation of support of the cases of geological/geotechnical variation found up to that date during the construction of the project and that have resulted in additional costs for the contractor, affecting the economic balance of the EPC contract; in paragraph 2), it requests from the concessionaire the approval of an adjustment to the price of the EPC contract for the amount of USD 6,070.030.80, according to clause 6.2, Adjustment Events (b) paragraph IX of the contract, for costs generated by geological/geotechnical conditions found in the structures already excavated, both on the surface and underground.

The method of calculating the additional costs is based on the economic consequences caused by the implementation during construction of the different types of support according to the needs that the geological/geotechnical conditions found require it, for this a criterion of proportionality by class of support was used, whose percentage weights were found by comparing different parameters, which are detailed in a group of tables; the parameters that were taken into consideration are:

*of once .*

DOJ_ODB_2328664

CRP-DOJ-0002477127

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 12

a) Weight of Resources: Indicates the weight (%) of each resource necessary to execute a service, as is the case with subterranean excavation, which involves:

1. Labor

2. Material:

2.1    Detonation material

2.2    Drilling material

2.3    Supporting material

2.4    Miscellaneous materials

3.  General Expenses

4.  Equipment:

4.1   Mobile equipment

4.2    Fixed equipment

b) Typical Load per Rock Type: Indicates the basic parameters for the design of the blasting to be used for each type of rock according to its characteristics, from the reference parameter for the calculation is taken, the load density expressed in Kg/m$^3$, i..e. the amount of explosive used to detonate a certain volume of rock.

c) Drilling Materials: Indicates the weight (%) of the most significant drilling materials to their useful life per linear meter of drilling, such as: drill bits, sank (couplings), and rods.

d) Support System: Indicates the quantities of support (anchor bolts, shotcrete, trusses) used for each type of rock. Considering that the need for anchor bolts is present in all types of support, this will be the parameter used as reference, expressed in kilograms per linear meter.

3.1.5    Summary of Contents of Exhibit No. 2

In April 2006, Hidropastaza hired a consultant to carry out the technical analysis of the claim presented by the Construction Consortium of the San Francisco Hydroelectric Project.

The report presented by the consultant, chapter 3: Technical Analysis, begins by describing the criteria adopted from the rock mass classification system; classes of rock mass support; and, continues with the analysis of the claim in quantities, price structure, evaluation of exclusions and evaluation of credits; ending with the issuance of the conclusion and recommendation

Table No. 1 contains the amounts that, in the consultant's opinion, should be recognized for compensation, reaching the adjustment of USD 4,220,376.92.

DOJ_ODB_2328665

CRP-DOJ-0002477128

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 13

| TABLE No. 1: BUILDER,S CLAIM ADDENDUM No. 8 | | | |
|---|---|---|---|
| ITEMS | | CLAIM ODEBRECHT CONSORTIUM | APPROVED BY CONSULTANT ENG. GUY H. R. BOORDEAUX |
| 1 a) | PORTAL INTERMEDIATE UNLOADING TUNNEL UNLOADING TUNNEL | 1,001.447,14 | 1,001.447,14 |
| b) | SPECIAL SUPPORT APPLICATION | 46.137,11 | 46.137,11 |
| c) | IDLENESS OF EXCAVATION EQUIPMENT | 78.921,70 | 78.921,70 |
| | SUBTOTAL | 1,126.505,95 | 1,126.505,95 |
| 2 | EXIT PORTAL | 168.081,11 | 0,00 |
| | SUBTOTAL | 168.081,11 | 0,00 |
| 3 | TUNNEL BY TYPE OF SUPPORT | | |
| | INTERMEDIATE DISCHARGE TUNNEL | 468.189,61 | 468.189,61 |
| b) | HEADRACE TUNNEL (0+000 to 0+090) | 107.924,21 | 107.924,21 |
| c) | PRESSURE PIPE TUNNEL AND BIFURCATOR | 192.416,63 | 192.416,63 |
| d) | MAIN ACCESS TUNNEL | 1,337.051,84 | 1,337.051,84 |
| | DRAINAGE TUNNEL | 93.161,35 | 93.161,35 |
| f) | ESCAPE TUNNEL | 4.023,41 | 4.023,41 |
| | TUNNEL ACCESS No. 3 | 97.371,53 | 97.371,53 |
| h) | RETURN TUNNEL | 616.188,82 | 616.188,82 |
| i) | SUCTION TUNNEL | 105.645,98 | 105.645,98 |
| | UPPER BALANCING CHIMNEY | 2,985.143,60 | 2,985.143,60 |
| k) | INTERCONNECTION TUNNEL | 97.964,25 | 97.964,25 |
| l) | TUNNEL GALLERY ACCESS CHAMBERS | 4.619,58 | 4.619,58 |
| m) | HEADRACE TUNNEL (9+830 TO 11+099), HEADRACE TUNNEL (9+830 TO 11+099), TUNNEL | 0,00 | -1,159.904,85 |
| | SUBTOTAL | 6,109.700,81 | 4,949.795,96 |
| 4 | INFILTRATION IN THE ACCESS TUNNEL | | |
| a) | INTERIM SOLUTION AGAINST THE FLOW OF | 21.693,30 | 21.693,30 |
| b) | IMPLEMENTATION OF FINAL SOLUTION | 1,063.412,49 | 741.744,57 |
| c) | SUPPLEMENTARY WORK (COVER) | 200.000,00 | 0,00 |
| | SUBTOTAL | 1,285.105,79 | 763.437,87 |
| 5 | GATE CHAMBER (RESTITUTION TUNNEL) | 380.637,14 | 380.637,14 |
| | SUBTOTAL | 380.637,14 | 380.637,14 |
| | TOTAL: | 9,070.030.80 | 7,220.376.92 |
| | GEOLOGICAL RISK AMOUNT OF THE CONTRACT | -3,000.000,00 | -3,000.000,00 |
| | AMOUNT OF THE ADJUSTMENT TO BE RECOGNIZED (USD) | 6,070,030.80 | 4,220,376.92 |

The recommendation states that in order for the parameters foreseen in the EPC contract to remain unchanged over time and to not cause damage to the parties and within this concept, the maintenance of contractual conditions and the monetary agreement which could be reached by the parties is for the amount of USD 4,000,000.00.

3.1.6  Summary of Contents of Exhibit No. 3

Exhibit N[6]3, contains the legal and contractual analysis of the merits of the claim for the variation of the geological/geotechnical conditions of the San Francisco Hydroelectric Project, carried out by Hidropastaza's external legal counsel. This report  refers to the legal framework, contractual framework, conclusions and recommendations..

The report states: "It should be noted that the geological-geotechnical conditions indicated by the Construction Consortium have been determined and verified in situ through the actual conditions found in the different structures that comprise the Hydroelectric Project

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 14

Therefore, once the conditions established in the Concession Contract in paragraph 6.2 b) are fulfilled, the payment is legally and contractually appropriate..."

3.2  ADDENDUM NO. 9

3.2.1.  Subject of Addendum 9

Grant the Odebrecht - Alstom - Va Tech consortium a monetary adjustment derived from additional costs incurred by it due to the second Price Adjustment – Section 6.2 (b) paragraph IX of the EPC Contract for the conditions found and estimated in the headrace tunnel corresponding to the section between PK 0+090 to 9+830, according to the terms of Exhibits 1 and 2 of the addendum.

3.2.2  New EPC Contract Price and Form of Payment

In order to remunerate the works and services object of this addendum, Hidropastaza has decided to increase the amount of the EPC contract in an estimated amount of USD 4700,000.00. The amount of this adjustment will be recognized in the following form of payment:

1)  The amount agreed for the second Price Adjustment -Paragraph 6.2 (b) IX of the EPC contract, i.e. USD 4,700,000.00, will be invoiced in four equal installments, each for USD 1,175.000,000.00, and paid as follows: i) The first installment with the signature of the addendum; ii) The second installment 30 calendar days after the signature; iii) The third installment 60 calendar days after the signature; and, iv) The fourth installment, 90 calendar days after the signature. Each of these installments must be paid by Hidropastaza as established in the EPC contract.

2)  In case the excavation of the headrace tunnel is concluded before the occurrence of items ii, iii, and iv of paragraph 1) above, a recalculation of the economic consequences due to the geological/geotechnical conditions found will be made, crediting or debiting in this act to the parties as appropriate in the terms as established in the EPC contract.

3.2.3.  Summary of Contents of Exhibit No. 1

By letter OEC/PHSF/DP/0132/2006 dated July 10, 2006, the Project Manager of the Construction Consortium requests a second price adjustment of the EPC contract due to the additional costs generated by the geological/geotechnical conditions found in the different excavated structures, both on the surface and underground, that differ adversely from the conditions contemplated in Exhibit 1 to the second contract modifying the concession contract. Further, it notes that in the first adjustment requested on March 31, 2006 by letter OEC/PHSF/DP/050/2006, the structure of the headrace tunnel between PK 9+830 and 0+090 was not included in the referred request as it was still being excavated. The conditions encountered during the excavation of this tunnel have been substantially different from those foreseen, especially in the implementation of the Type V support that considers placement of segments, forcing the rehabilitation of the precast factory and the purchase of supplies.

Separately, it is established that this situation also represents a loss in the excavation efficiency due to the procedure necessary to start the placement of the segments, greater placement of anchor bolts and application of shotcrete,

DOJ_ODB_2328667

CRP-DOJ-0002477130

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 15

also mentioning that these services are additional to those contemplated in the scope of addenda 6 and 7.

The aforementioned facts have caused a delay in the provision of invoicing, unbalancing the incidence of the indirect costs of the civil part of the contract, reason for which it proposes to make the second adjustment to the contract price.

In paragraph 1) of the referenced letter, the construction company presents the documentation of support of the cases of geological/geotechnical variation found during the excavation of the headrace tunnel, which have resulted in additional costs, and estimate the support to be implemented for the section of the headrace tunnel that continues to be excavated with the TBM method between KP 0+995.34 to 3+065.51 (progress up to June30 2006), without changing the geological/geotechnical conditions foreseen in the basic design in paragraph 2), it requests the approval of an adjustment to the EPC contract price in the amount of USD 5,448.523.85, according to clause 6.2 Adjustment Events (b) paragraph IX of the contract, due to adjustment events of cost generated by geological/geotechnical conditions found in the headrace tunnel that differ adversely from the conditions contemplated in Exhibit 1 to second contract modifying the concession contract and that have generated additional costs to the constructor

Table No. 2 shows the abscissae with the sections that were affected by the proportionality adjustment factor and the total amount required by the contractor.

| TABLE No. 2: BUILDER,S CLAIM ADDENDUM No. 9 | | |
|---|---|---|
| ITEMS | ODEBRECHT CONSORTIUM | APPROVED BY CONSULTANT ENG. GUY BOORDEAUX |
| HEADRACE TUNNEL (TBM) (ABSC. 9+404.35 TO 0+995.34) | 5,448.523,85 | 5,448.523,85 |
| D&B HEADRACE TUNNEL (9+830 to 9+404.35) | | -326.901,68 |
| D&B HEADRACE TUNNEL (0+090 TO 0+995.34) | | -419.697,68 |
| TOTAL: | 5,448.523,85 | 4,701.924,49 |
| GEOLOGICAL RISK AMOUNT OF THE CONTRACT | 0,00 | 0,00 |
| AMOUNT TO BE RECOGNIZED OF ADJUSTMENT No. 2 (USD) | 5,448.523,85 | 4701.924,49 |

3.2.4.  Summary of Contents Exhibit No. 2

In July 2006, Hidropastaza hired a consultant to carry out a technical analysis of the claim presented by the Construction Consortium.

The report presented by the consultant, chapter 3: Technical Analysis, describes the criteria adopted from the classification system of the rock mass, classes of support of the rock mass; presents the analysis of the claim related to: quantities, structure of the price and evaluation of credits; and, issues the conclusion and recommendation

Table N° 2 contains the amounts that the consultant considers should be recognized as compensation, amounting to USD 4701,924.49.

*of guince.*

DOJ_ODB_2328668

CRP-DOJ-0002477131

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 16

In turn, the recommendation states that: "Based on the analysis and studies performed, the proposed recommendation consists of Hidropastaza S.A. closing with the Construction Consortium for the concept of the Second Price Adjustment Request of the EPC Contract in accordance with Clause 6.2 b) IX, corresponding to the section of headrace tunnel between PK 0+090 to 9+830, the amount of USD 4,700.000.00 and once the excavation of the Headrace tunnel is concluded, and total economic consequences of this structure due to geological/geotechnical conditions found during the excavation can be evaluated, the economic consequences of said effects shall be recalculated, crediting or debiting the Parties as appropriate"

3.2.5   Summary of Contents of Exhibit No. 3

Exhibit N° 3, documents the legal and contractual analysis by Hidropastaza's Legal Advisor, of the appropriateness of the second adjustment due to the variation of the geological/geotechnical conditions of the San Francisco Hydroelectric Project (headrace tunnel), the report contains the legal framework, contractual framework, conclusions and recommendations.

It further notes that: It should be noted that the geological/geotechnical conditions indicated by the Construction Consortium, have been determined and verified in situ through the actual conditions between PK 9+404.35 to 3+065.51, with the geological/geotechnical conditions between PK 0+090 to 9+830 to be verified once the excavation of the Headrace tunnel is concluded, a re-statement of the contractually agreed amount shall be made.

Therefore, if the conditions established in the Concession Contract in paragraph 6.2 b)are fulfilled, the payment is legally and contractually appropriate..."

  It is important to point out that in spite of the recommendations issued by both the contracted consultant  and Hidropastaza's Legal Counsel, that, once the excavation of the headrace tunnel is completed and total economic consequences of this structure due to the geological/geotechnical conditions found during the excavation can be evaluated, consequences should be recalculated, this calculation was not made by the Construction Consortium nor by Hidropastaza S.A.

The company Hidropastaza S.A, through its Executive President, on July 9, 2008, presented to the Ninth Civil Judge of Baños a request so that, given the construction failures and other defects found in the headrace tunnel of the hydroelectric power plant that forced its operations to stop, it conduct a judicial inspection in order to determine the state of the headrace tunnel, identify the causes of construction failures and evaluate the costs and time it would take for the repairs. In view of this request, the Judge accepts the request and proceeds to appoint the Expert who, during July 11 and 19, 2008, carries out the corresponding inspection and verification of the state of the project

On July 25, 2008, the Surveyor presents the report of the evaluation carried out and in relation to the headrace tunnel, among other things, he points out

Types of Tunnel Protection: In the tunnel there are sections that have been protected or improved in their stability by various technical methods commonly employed in this type of works and other sections that have not received any protection or only one of them. Thus we have:

  DOJ_ODB_2328669

CRP-DOJ-0002477132

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 17

Protection with voussoirs: There are 13 sections with this protection, totaling 900 m. of length, i.e. 8% of the total tunnel has this protection

Protection with shotcrete: Shotcrete - reinforced with steel fibers and synthetic fibers - has been used in the section drilled by the "mole" (8,500 m. between abscissae 1+060 to 9+560) but only in the sections where the company determined that this type of protection was necessary. During the inspection carried out, the sections with shotcrete were not counted but it is estimated that the total protected is less than 50% of the section drilled with the mole.

Protection with anchor bolts: Anchor bolts are systematically placed in the gables and in the keystone or roof following a certain order in order to give greater consistency to the rock mass. The sill is also regularly fastened to the floor with anchor bolt remnants. However, it is concerning that there are large amounts of fallen bolt heads of different lengths throughout the length of the tunnel, which were in the process of being picked up by ODEBRECHT, who were cleaning the tunnel during the visit: also it was observed that bolts are being systematically extracted from the tunnel floor.

3.2.6. Comment: The coverings placed in the headrace tunnel present construction problems and do not comply with technical specifications.

In Report DIAPA-0039-2008 of the "Special Engineering Examination of the damages caused to the cooling system and water filters and evaluation of the damages that caused the shutdown of the San Francisco Hydroelectric Power Plant", comment N° 1: Damages in the Headrace tunnel and Surge Stack, it is pointed out:

"Based on the comments and conclusions contained in the aforementioned reports and on the data obtained during the technical inspections carried out by the Comptroller's team on July 23 and 24 and August 20, 2008, it is possible to identify the following as project impacts:

*a) Headrace tunnel and upper surge stack*

The headrace tunnel in general does not present instabilities that could cause its collapse; however the identified flaws could compromise the local stability of blocks, stones, slabs or the alteration of exposed shales.

The rock mass of the excavated headrace tunnel is of good quality, except in sections where there are geological weaknesses, alteration zones or higher concentrations of rocks with a lot of mica, which are located approximately in the abscissae 0+920,2+535, 4+010, 4+120, 4+310 to 4+490, 5+200, 5+500, 7+200, 7+450, 8+290 where a reduced number of anchor bolts have been placed.

During the construction of the work, the rocky surface on which the shotcrete residues were deposited was not adequately washed, i.e., the technical specifications, the covering layer should have been placed between 8 and 4 o'clock; however, there are layers of concrete of thicknesses of 2 to 4 cm. and burrs on the lower sides of the tunnel that easily detached

*[signature]*

DOJ_ODB_2328670

CRP-DOJ-0002477133

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.

E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT

Page No. 18

The concrete of the floor of the headrace tunnel between trap 2 and the upper surge stack shows signs of wear with erosion of several centimeters in some places.

Both in the sections excavated with TBM and conventional blasting, significant lack of supports (bolts and shotcrete) is noticed in sections where there are geological faults (10), shear zones, reduction of the resistance of the rock massif  and areas conducive to the formation of unstable rock wedges.

There are large accumulations of sediment in places where there is no water flow (windows 1 and 4 and inclined section of the stack tunnel). The implementation of measures and devices that make possible the washing of the sediments from the surge stack with the shortest time of shutdown of the San Francisco Power Plant is considered indispensable.

There is groundwater seepage in the central third of the vertical section of the surge stack, through geological fault zones connected to the exterior of the rock massif, which is considered dangerous for the stability of the surge stack and the upper slope of the Baños - Puyo road.

b) Anchor bolts

The number of anchor bolts installed in uncovered areas of shotcrete  and that have geological fractures is low for the support of blocks and wedges, especially since the work is permanent and is subjected to continuous hydraulic pressures. Additionally, the bolts do not have the corresponding protection, such as antioxidants and support plates.

The bolts currently installed without any corrosion protection, due to their installation system using resin and rod anchorage, thread, nut and plate, do not guarantee their work as a permanent support.

c) Voussoirs:

In the segments installed in areas where it is presumed that the geomechanical characteristics of the massif are considered very bad, the injection in the backdrop has been made with granular material without cementing agent, which has been partially or totally removed by internal high pressure flows and/or during tunnel emptying. There are drains with significant water jets or flows, in which check valves. have not been installed to prevent water from flowing out when the tunnel is working under pressure.

d) Drains:

The hoses and pipes installed as water inlet drains to the tunnel are not equipped with filters and check valves.

In section 3, "Scope of the Works" of the EPC contract, it states "3.1 The scope of the works... for the WORKS shall include the Detailed Engineering of the Basic Project, the supply, assembly, construction and testing, commissioning placing into operation of the WORKS. The Works shall be developed in accordance with: (i) the Basic Project, (ii) the optimization to the Project defined in section 3.2, (iii) the changes or improvements agreed between the Parties pursuant to section 8 of this Contract, if

*dieciocho*

DOJ_ODB_2328671

CRP-DOJ-0002477134

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 19

Any, iv) the Specifications included in the Concession Contract and (v) the Ecuadorian norms and standards or others applicable, agreed between the Consortium and the Concessionaire".

In Exhibit 1, "Updated Basic Design", of the second amendment to the concession contract; paragraph 3, "Updated Standards and Technical Specifications", among other aspects, it is stated: "The Updated Technical Specifications for the construction of the Power Plant are found in the following volumes of this Exhibit 1:

Volume 2 General Specifications

Volume 3 Civil Works Specifications

Volume 4 Mechanical Specifications and Hydromechanical Equipment

Volume 5 Electrical Equipment Specifications

Item 4, "Updated Basic Design Drawings" states that Volume 6 contains the updated basic design drawings and corresponding list.

In Volume 3 of the civil works specifications, paragraph 4.12, "Estimate of support", there is a summary of the types of support specified for the headrace tunnel, which are as follows

| Percentage Tunnel Support Classification according to Appendix 6 of the INECEL Final Report | | Percentage of Length | | | |
|---|---|---|---|---|---|
| ZONE | TUNNEL | Class 1 | Class 2 | Class 3 | Class 4 |
| HEADRACE TUNNEL | HEADRACE TUNNEL (Conventional Method) Pk 0+000 - Pk 0+090 | 60,00 | 20,00 | 20,00 | |
| | HEADRACE TUNNEL (TBM Topo Method) Pk 0+090-Pk 9+830 | 45,60 | 28,10 | 24,10 | 2,20 |
| | HEADRACE TUNNEL (Conventional Method) Pk 9+830-Pk 11+099 | 50,00 | 20,00 | 30,00 | |
| CONSTRUCTION WINDOWS | WINDOW N° 4 (Conventional method) | 70,00 | 20,00 | 8,00 | 2,00 |
| UPPER SURGE STACK | BALANCING CHIMNEY SUPERIOR | 70,00 | 20,00 | 8,00 | 2,00 |

In Volume 6, there is a drawing No. SFR-DS8PCE-TC43-02 containing the design of the types of supports and linings to be used in the excavation of the headrace tunnel, being these the following for the section Pk 0+090 to Pk 9+830 excavated with the mole (TBM), which is similar to the one excavated with the conventional method

DOJ_ODB_2328672

CRP-DOJ-0002477135

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 20



As can be seen the anchor bolts were to be placed symmetrically in the places required, at the discretion of the builder's geologist, as in the 10 zones identified in the technical inspections; however, the bolts are placed randomly and in insufficient number to support the faulted rock mass, despite the fact that in Hidropastaza's files there is evidence of the resin used in the placement of bolts

On May 10, 2007, Delivery and Acceptance Certificate No. 1 was signed, corresponding to Generating Unit No. 2 and Additional Works, and on June 25, 2007, Delivery and Acceptance Certificate No. 2 of Generating Unit No. 1 and of the Power Plant As A Whole was signed. In the first Act, paragraph 1.2, "Release of Structures", the following is stated:

In order to implement a final quality verification prior to Reception of the Works, the Parties agreed on a procedure for the release of the different structures that make up the Project. A detail of the structures released is found in Exhibit No. 1 of this document, which contains copies of the verification documents.

1.2.1   .Headrace tunnel - The Construction Consortium after the verification carried out together with delegates of the Concessionaire and the Auditors, sent to these on November 24, 2006 by letter OEC/PHSF/GING/01267/2006 the following signed documents: SFR-EO8CNO-TC80-001, SFR-EO8CNO-TC80-002, SFR-EO8CNO-TC80-003 and SFR-EO8CNO-TC80-004 ....

1.2.4   Upper Surge Stack - The Construction Consortium after the verification carried out jointly with delegates of the Concessionaire and the Auditors, sent to them on November 24, 2006 by letter OEC/PHSF/GING/01267/2006 the following signed documents:SFR-EO8CNO-CS80- 001 and SFR-EO8CNO-CS80-002..."

The Terms of Reference of the audit contract establishes that it corresponds to the audit:

Subparagraph 2, paragraph d), "Approve the quality program to be used by the Builder and follow up, verifying compliance with it through

DOJ_ODB_2328673
CRP-DOJ-0002477136

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 21

systematic spot check measurements with the frequency and purpose described in the Quality Assurance Manual ".

Paragraph f) states that the audit should periodically submit reports that contain, among other aspects: "Analysis of the status of the project in execution, taking into account the economic, financial and work progress aspects.

Reports of the results of the quality control verification carried out by Contractor"

Section 3, "Inspection of the works", establishes that during the execution of the work, the inspection team will represent Hidropastaza before the Contractor, through the constant presence at the work sites, maintaining a multidisciplinary technical team to carry out, among other aspects: "inspection and technical follow-up to the electromechanical assemblies; issuance of technical reports regarding the quality of the execution; field inspections of works in general and in particular of works that require special care.."

To check the executed services, it will approve the document called "Quality Procedure", it will review the quality control reports produced by the construction company, and "The Audit will repeat some controls in sites of major importance (spot check), according to the frequency established in the Quality Manual"

The transcribed comment was verified in the technical inspection carried out by the Comptrollership team and shows that the Construction Consortium for the project did not comply with the technical specifications related to the linings of the headrace tunnel and surge stack, facts that demonstrate that the alleged additional investments made by the Construction Consortium for the implementation of new and better types of supports according to the geological/geotechnical conditions found during the excavation of the tunnel, such as the alleged losses in excavation efficiency due to the procedure required to start the excavation.

placement of the segments, the increased placement of anchor bolts and the application of shotcrete, are technically unsupported

3.2.7. Conclusion

From the facts detailed in the commentary, it is clear that the Construction Consortium did not comply with the technical specifications established in Exhibit 1 of volume 3 of the second contract modifying the concession contract; while the audit did not carry out a timely and adequate follow-up in the construction process of the project.

Therefore, it is concluded that the payment of the USD 8,700,000.00, agreed upon in addenda 8 and 9 is not justified.

3.2.8. Indications of Criminal Liability

The Deputy Legal Director for the Comptroller's Office, in Memorandum N° 649 DJDJ dated December23, 2008, in which he issues the legal opinion requested by the Director of Project and Environmental Auditing on "whether or not to process indications of criminal liability..." in addenda 5, 6, 8,and 10 of the special engineering review to the addenda entered into between Hidropastaza and the consortium Odebrecht - Alstom - Va Tech, states:

"From the conclusion and facts previously exposed by audit, it is determined the essence of indications of criminal Liability for the commission of the crime typified and

*verísimo.*

DOJ_ODB_2328674

CRP-DOJ-0002477137

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 22

sanctioned in article 257 of the Penal Code, due to the fact that the directors of the company HIDROPASTAZA S.A, responsible for the public electric energy service, arbitrarily disbursed public funds by paying without justification and without reviewing the compliance with the technical specifications established in Exhibit 1 of volume 3 of the second modification to the concession contract, the sum of USD 8,700.000,00, based on addenda 8 and 9, thus benefiting the Odebrecht - Alstom - Va Tech consortium, to the detriment of HIDROPASTAZA S.A.".

3.3. PERSONS INVOLVED IN THE ADMINISTRATIVE PROCESS:

| | |
|---|---|
| Name: | Germán Bolívar Anda Naranjo |
| Citizenship Card: | 1703131688 |
| Position: | Chief Executive Officer of Hidropastaza S.A. |
| Address: | Pasteur Avenue 1381 and Abdón Calderón Ambato. |

| | |
|---|---|
| Name: | Gustavo Teixeira Belitardo |
| Passport No. | CV772728 |
| Address: | Juan Tanca Marengo Av. Edificio Nobís, Sixth floor Guayaquil |
| Position; | Attorney-in-fact of the Mandatory Leading Company of the Consortium Constructor, formed by Construtora Norberto Odebrecht S.A., Alstom Brasil Ltda. and Va Tech Hydro Brasil Ltda. |
| Telephone numbers: | 095003615 |

| | |
|---|---|
| Name: | Emir Diniz Costa Júnior, |
| Citizenship Card: | CM 459075 Brazil |
| Position: | Commercial Manager of the Construction Consortium formed by Construtora Norberto Odebrecht S.A., Alstom Brasil Ltda. and Va Tech Hydro Brasil Ltda. |
| Address: | Unknown |

| | |
|---|---|
| Name: | Luis Alfredo Mancero Gallegos |
| Citizenship Card: | 0600602502 |
| Address: | Novena Transversal y P Calderón Conjunto Alicante house 38 San Rafael Valle de los Chillos Executive President of Hidropastaza S.A |
| Position: | 2866200 |
| Phone: | |

| | |
|---|---|
| Name: | Eng. Hernán Saá Bersnestein |
| Citizenship Card: | 1800643007 |
| Address: | Reina Claudia 0105 y Av. Rodrigo Pachano Ambato Chief Executive Officer of Hidoagoyan [sic] S.A. |
| Position: | 093827773 |
| Telephone numbers: | |

| | |
|---|---|
| Name: | Eng. Jorge Emilio Guerrero Hernández |
| Citizenship Card: | 0903394120 |
| Address: | Wimper N30-45 and Coruña Quito |
| Position: | Member of the Board of Directors of Hidropastaza S.A. |
| Phone: | 234507 - Fax. 234209 |

DOJ_ODB_2328675
CRP-DOJ-0002477138

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 23

[h/w: 469]



| | |
|---|---|
| Name: | Eng. Sadinoel de Freitas Junior |
| Citizenship Card: | 1720269958 |
| Address: | Av. A N° 196 y F El Condado Quito |
| Position: | Executive Vice President, Hidropastaza S.A |
| Phone: | 099779704 |

| | |
|---|---|
| Name: | Eng. Vicente Alarcón Chacón |
| Citizenship Card: | 0600803480 |
| Address: | Antonio Román 712 y Fray Agustín León Quito Solidarity Fund Manager |
| Position: | 2246028 |
| Phone | |

| | |
|---|---|
| Name: | Alejandro Gómez Ponce |
| Citizenship Card: | 1704909389 |
| Address: | Florencia Urb. House N° 60 Cumbayá |
| | Víctor Andrés Belaunde Av. 28O-lnt.5O2 San Isidro Lima |
| | Peru |
| Position: | Representative of Constructora Odebrech [sic]. |
| Phone: | 0988851311 |

| | |
|---|---|
| Name: | Guy Bourdeaux |
| Position: | International consultant hired by Hidropastaza S.A. |
| | to carry out the technical and economic analysis of the request for price adjustment of the Construction Consortium |
| Citizenship Card: | Unknown |
| Address: | Caixa postal 17038-CEP-02399970 Sao Paulo Brazil |

| | |
|---|---|
| Name: | Dr. Iván Oswaldo Vallejo Aguirre |
| Position: | Legal Advisor of Hidropastaza S.A., who issued the legal report concluding that the adjustment requested by the consortium constructor is legally and contractually appropriate |
| Citizenship Card: | 1802094530 |
| Address: | |
| | Pasaje OE - 3ªand Francisco Dalmau, Residential Complex Las Lomas |
| Phone: | 3463584 Cell 099225042 |

Name: José Conceicao Santos Filho

Position: Hidropastaza CEO

Passport No: CL 251846

Address: 631 Hidalgo de Pinto St. and Mariano Echeverría Dep 2, Segundo Piso.

Telephone: 022251146

DOJ_ODB_2328676
CRP-DOJ-0002477139

REPORT OF INDICATIONS OF CRIMINAL LIABILITY.
E.E.I. TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT - ALSTOM VA TECH CONSORTIUM, AS PART OF THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT
Page No. 24

| | |
|---|---|
| Names: | Newton Goulart Craça - Eduardo Abdón Villareal |
| Position: | Legal Representatives of Asociación Fumas-Integral, Contractor of the "Consultancy Service for the Supervision of the San Francisco Hydroelectric Project |
| Taxpayer ID No.: | 1791923316001 |
| Address: | Av. 9 de Octubre 457 y Roca, Quito |
| Term of office: | March 2004 to June 2007 |

Germán E. Lynch López

PROJECT AND ENVIRONMENTAL AUDIT MANAGER

DOJ_ODB_2328677

CRP-DOJ-0002477140



Code: 22752

Date: March 18, 2024

I, Carmen Hiers, president and owner of TransForma Translation Services, a member in good standing of the American Translators Association, corporate membership #251050, hereby certify that a professional translator/proofreader of Spanish into English, to the best of their knowledge, ability and belief, has fully and accurately translated/edited/proofread the document(s) below from Spanish into English. Said translator/proofreader verifies the accuracy of the document(s) below. This certificate of accuracy is being issued at the request of our client, to be used as they deem appropriate.

*Source file(s):*

REPORT OF INDICATIONS OF CRIMINAL LIABILITY
TO THE ADDENDA ENTERED INTO BETWEEN HIDROPASTAZA AND THE ODEBRECHT CONSORTIUM -VA TECH, ARISING FROM THE CONSTRUCTION CONTRACT FOR THE SAN FRANCISCO HYDROELECTRIC POWER PLANT, UNDER THE CHARGE OF HIDROPASTAZA S.A.
DOJ_ODB_2328651/77
CRP-DOJ-0002477114/40

_____
Carmen Hiers

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was acknowledged before me by means of ( ✓ ) physical presence or ( ) online notarization this 18th day of March, 2024 by Carmen Hiers.

JUAN MANUEL AVILA
Notary Public - State of Florida
Commission # HH 374389
My Comm. Expires Mar 15, 2027
Bonded through National Notary Assn.

_____
Notary Public, State of Florida

Personally known _____ OR   Produced Identification _____

Type of identification produced: _____

_____

9100 S. Dadeland Blvd., Ste. 1500
Miami FL 33156  (305) 722-3827
www.transformaonline.com