Partial Translation (paragraph II from p. 3 and pp. 4-9) of Resolution No. 2448 of August 27, 2010

[Stamp on The Comptroller General of the State

Division of Liability on the right side on each page]

II.   That for this reason, on February 2, 2010, the Notices of Administrative Penalty 6825 to 6832 were issued against the Norberto Odebrecht-Alstom-Va Tech Consortium, officers and former officers of the Hidropastaza Company, having been legally notified in the form and dates shown below, The parties were informed of the basis of the observation and were granted a period of sixty days in accordance with the provisions of Article 53, paragraph 1, of the Organic Law of the Comptroller General of the State, in order for them to answer and present the pertinent evidence in their defense.

| Notice No. and Names | Notification | Dates |
|---|---|---|
| 6825<br>Norberto Odebrecht-Alstom - Va Tech Consortium. | Published on the "HOY" Newspaper | 02/17/2010 |
| 6826<br>Germán Bolivar Anda Naranjo | In person | 02/17/2010 |
| 6827<br>Sadinoel de Freitas Júnior | In person | 02/17/2010 |
| 6828<br>Luis Alfredo Mancero Gallegos | In person | 02/09/2010 |
| 6829<br>Jorge Emilio Guerrero Hernández | In person | 02/09/2010 |
| 6830<br>Alejandro Rodrigo Gómez Ponce | In person<br>In person | 02/11/2020<br>02/11/2010 |
| 6831<br>Hermann Saa Bernstein | In person | 02/17/2010 |
| 6832<br>José Conceição Santos Filho | In person | 02/10/2010 |

**DEFENSE TRIAL EXHIBIT**
**19**
22-CR-20114-KMW

The evidence submitted for this administrative trial contains technical aspects; for this reason, the Directorate for the Determination of Liability requested the technical criteria regarding the evidence, so that the Directorate of Project and Environmental Auditing can issue its opinion, therefore, this resolution is also supported by the criteria issued by the aforementioned Directorate through Memorandum 1118 DIAPA of August 10, 2010.

III  That within the legal term, the parties involved answered the Notice of Administrative Penalty by means of communications sent to the Office of the Comptroller General of the State, as detailed below:

| | Communication | Date | |
|---|---|---|---|
| a) | **Odebrecht – Alstom – Va Tech Consortium** | 04/22/2010 | 38987 |
| | | 08/05/2010 | 69453 |

Having learned of the civil liability, the legal representative of the Norberto Odebrecht Consortium in his communication textually states that "Clause Six, paragraph 6.2 b) of the Construction Contract allows price and term adjustments to the contract due to eventual adverse geological/geotechnical conditions, such as the stoppage of the excavation works in the Conduction Tunnel due to causes not attributable to the Construction Consortium. It indicates that the purpose of Addendum No. 6, signed on January 16, 2006, was to avoid affecting the acceleration agreed by the parties through Addendum No. 4, since it was in the interest of the Ecuadorian State to accelerate the commencement of the Project's commercial activity, also allowing Hidropastaza to obtain unforeseen additional revenues, generated during the acceleration period of the work. He expresses that Clause Three of Addendum No. 6 states textually that:

*"3.- PURPOSE OF THE SIXTH ADDENDUM TO THE EPC CONTRACT: In order to avoid jeopardizing the acceleration target established in Addendum No. 4 to the EPC Contract, in view of the stoppage of the works in the Headrace Tunnel, due to causes not attributable to the Consortium, which keep the Mole trapped at abscissa 4+959, the Concessionaire has decided to authorize the Construction Consortium to carry out all the actions within its reach in order release and repair the Mole, reconform the affected section and try to recover the delay in this activity. For this purpose, in accordance with the provisions of Clause Six, Paragraph 6.2 b) of the EPC Contract signed on March 29, 2000, <u>it is necessary to carry out a series of additional works and complementary services to those initially foreseen in the contract</u>, whose items and values are detailed in Exhibit 1 of Addendum No. 6 of the EPC Contract: and which, among others, include the following. i) Opening of new job sites, ii) Partial or total change in the methodology of execution of the works, iii) Re-mobilization of labor, equipment and supplies, iv) Development of the detail engineering for the reconformation of the Conduction Tunnel in the affected zone, v) Works to free and repair the Mole, which has been in place since November 9, 2005, vi) Reconformation of the affected section of the Tunnel, vii) Other services mentioned above."*

Likewise, it states that *"In this way, Hidropastaza authorized the Consortium to carry out all the necessary actions within its reach to release the [Illegible] that was trapped with the purpose of not losing the investments already authorized and made by Hidropastaza to accelerate the commencement of operations of the Project established in Addendum No. 4. The legitimate covenant of Addendum No. 6 is conceptually broken down into three elements: (i) release and reparation of the Mole, (ii) reconformation of the affected section, and (iii) recovery of the delay.*

The affirmation made by the Comptroller's Office, transcribed in paragraph 6, item a) as follows, "by means of addendum N° 6, received from the company Hidropastaza S.A., payment of USD 13,826,723.96, for the purpose of accelerating the recovery of the Mole is incorrect, since the text that appears in that Paragraph is clear that neither the payment nor Addendum No. 6 had the purpose of **"*accelerating the recovery of the Mole*"**, but to compensate the Consortium for the additional works and complementary services, additional to those initially foreseen in the agreement and that are described in the Third Section of said Addendum No. 6. Under the terms and conditions of the agreement, some of the works and services specifically characterized as a loss were covered by the insurance and others were not, since it was determined that they did not correspond to a claim.

It is evident that the insured assets did not include the **"additional works and complementary services additional to those initially foreseen in the contract"** referred to in the purpose of Addendum No. 6, since these were defined after the loss, did not exist and were not originally foreseen in the contract or in the policy that covered it and were agreed between Hidropastaza and the Construction Consortium to comply with the acceleration objective established in Addendum No. 4, therefore they could not be and were not covered by insurance.

Therefore, the insured property at the date of the loss did not include or contemplate the additional works that were executed to ensure compliance with the acceleration objective established in *Addendum No. 4, that is to say:*

- *Pilot Tunnel Excavation for TBM Release*
- *Access Road to Window 1 from Agoyán*
- *Access road to Window 1 from the Baños - Puyo road.*
- *Entrance Portal to Window 1*
- *Excavation of Window 1 (Entry Tunnel)*
- *Window 1 Plug*

The insurance does not cover the execution of additional works because the opening of new job sites such as the access to Window 1 and the others indicated above were not part of the original project and because their construction was not part of the original project and because their construction was intended to enable a job site (not originally contemplated in the contracted works nor covered by the insurance at the time of the loss) at the Headrace Tunnel so as not to jeopardize the objective of accelerating the opening or freeing the construction team, an important and necessary activity but which is not part of the insured goods. That is to say, these works were either not contemplated in the original scope of the contracted works and consequently were not covered by the policy or they were executed to fulfill an objective of interest to the concessionaire and the national government, such as the project's accelerated commencement of operations, which is a different aspect from the insurance itself.

*This situation is very relevant, because in addition to everything already indicated in the preceding paragraphs, the following aspects must be considered, which are analyzed in detail and documented in this answer, such as: (i) the Construction All Risks Insurance Policy was initially procured by the Consortium and subsequently transferred to and assumed by Hidropastaza; (ii) Hidropastaza assumed the All Risks Insurance Policy while Constructora Norberto Odebrecht S. A. assumed the Civil Liability Insurance against Third Parties policy and contracted and paid for the insurance of the Tunnel Boring Machine (TBM); (iii) the loss occurred involved damages to the civil works, damages to third parties and damages to the TBM; (iv) the settlement of the loss necessarily excluded works and services not covered by insurance; and (v) Hidropastaza received the payment corresponding to its All-Risks coverage.*

*As already detailed in this document, the Consortium claimed payment from the Insurer on behalf of Hidropastaza, which, after deducting the deductibles contemplated in the Policy, applying the coverage limits established in the Policy and the legal limits, paid the compensation for the loss suffered, as already described in detail in this document. It is of vital importance to emphasize again that any All-Risk insurance is covered only for damage caused by fully identified and insured causes, but under no circumstances does an insurance policy cover unforeseen additional works, additional works or complementary services for installations that will later be for the benefit of the insured.*

*In the referenced Notice of Administrative Penalty and in the text transcribed in paragraph 6, subparagraphs a) and b), of the previous text, it is expressed that Hidropastaza received a payment of USD 5,523,368.03 (Five Million Five Hundred Twenty-Three Thousand Three Hundred Sixty-Eight Thousand Three Hundred Sixty-Eight and 03/100 United States Dollars) from the reinsurers, which is correct; but the reasons why Compañia de Seguros Sul América C.A., or the reinsurer have not paid Constructora Norberto Odebrecht S.A. and the latter paid Hidropastaza the balance of USD 8,303,355.93; which, according to the Comptroller's Office, covers the total amount invested, is that, as already mentioned and clarified in detail, insurance is subject to limits, deductibles, adjustments and covers only the insured property and the loss itself, but not the investments related to the construction of other unforeseen facilities such as the Pilot Tunnel, Window 1 and all its related works, the release of the TBM and other works paid for under the contract itself, which were either excluded from the insurance or were built to ensure compliance with the purpose of the acceleration provided for in Addendum No. 4.*

*Therefore, it is incorrect to state as you claim, that "the complementary works have been executed as a consequence of the loss", since the complementary works of Window 1 could have not been executed if Hidropastaza so decided, but this would have affected the fulfillment of the acceleration objective for the benefit of Hidropastaza established in Addendum No. 4. Acceleration is not an insured asset; it is simply an objective of Hidropastaza that does not have to be compensated by the Insurer.*

*The application of deductibles, exclusions, limits and sub-limits of coverage and other essential aspects contained in the Particular Conditions of Policy 00093 have not been analyzed at all by the Comptroller's Office, which has limited itself to quote, out of context, a clause of the General Conditions which is only a standardized document.*

*Nor has the Comptroller's Office reviewed the claim presented or the indemnity finally paid, nor has it established any direct link between the Consortium's actions in relation to the claim and these aspects, limiting itself to imposing a Notice of Administrative Penalty based on the simplest mathematical calculation available. Without these elements, the Comptroller's Office cannot hold the Consortium or Hidropastaza's administrators responsible for indemnities not recognized by the insurance, since the lack of acceptance of part or all of a claim does not necessarily mean a damage for which the Consortium or the administrators must respond, even more so when there are specific claim instances for such cases, which were not raised by Hidropastaza's administrators between November 2007 when the final payment was made and October 2008, without any observation made or issuance of a Notice of Administrative Penalty by the Comptroller's Office.*

*At this point, it is worth mentioning that: i) through Official Letter No. 08254-DIAPA dated May 5, 2009, the Comptroller's Office sent the Construction Consortium a copy of the Draft Special Engineering Examination Report to the Addenda, ii) by means of Official Letter No. 19704-DIAPA dated October 9, 2009, the Office of the Comptroller Genera sent to the Consortium a certified copy of the DIAPA-0020-2008 report regarding the same subject, and iii**) neither the Draft nor the DIAPA-0020-2009 Report contains any observation or comment regarding the necessity, suitability, relevance, validity, legality or legitimacy of Addenda No. 6**. It is therefore logical that the recommendation of the Board of Directors to sign Addendum No. 6 was valid, necessary, legitimate, legal, and consistent with compliance with the contractual stipulations, programs, costs, and terms of the contract.*

*In conclusion, if Addendum No. 6 was necessary, pertinent, valid, legitimate and legal; if it has never been questioned or discussed by the Comptroller General of the State; if it was necessary to file an insurance claim for the loss suffered and such claim was duly filed and administered; if the coverage does not automatically extend to unforeseen additional works nor does it include the recovery of the TBM; if the deductibles, exclusions, limits and sub-limits of coverage have not been analyzed, what is the basis for the Notice of Administrative Penalty that has been imposed on the Consortium?"*

*On the other hand, by means of official letter No. 0436.HPEP.2010 of July 9, 2010, the General Manager of Hidropastaza S.A., in this regard textually states that:*

*"The procurement of the Construction All-Risk Insurance Policy was a responsibility imposed by the Ecuadorian Government on Hidropastaza by means of Decree 258-A. Thus, the insurance was procured by Constructora Norberto Odebrecht S.A. on behalf of and by delegation of Hidropastaza, to comply with such obligation.*

*Thus, by means of Resolutions Nos. 031 and 032-2005 contained in the Minutes of Hidropastaza's Board of Directors' Meeting No. 49 of February 19, 2005, the procurement of the insurance coverage and the payment of the corresponding premiums was approved, so that Hidropastaza became the main insured under the All-Risks Construction policy.*

*On the other hand, once the loss of the tunnel boring machine (TBM) occurred, the Construction Consortium informed Hidropastaza about it and the Parties remained informed and pending of the event and its claim until November 5, 2007, date on which the final payment of the indemnity was made by the insurers of the Construction All Risks Policy.*

*Considering that Addendum No. 4 contemplated the acceleration of the pace of the works to achieve the early entry into operation of the Project, Addendum No. 6 was executed to carry out all the activities and works necessary to release the TBM, overcome the loss and maintain the acceleration objective. Some of these activities and works were covered under the construction all-risks construction insurance policy, and others are not (e.g., access roads, Window 1, TBM trapping, etc.) which constitute additional, new and non-insurable works, as they are subsequent to the TBM incident. Since the insurance claim was initiated, developed and concluded in its entirety, the Settlement Agreement does not contemplate additional actions before the insurers to recover any value related to Addendum No. 6, since such difference could not be covered by the insurance policy three years after the claim process was concluded, which, on the other hand, necessarily contemplated limits of coverage, exclusions, adjustments and deductibles, as shown.*

*It is important to consider that the amount not covered by insurance and paid by Hidropastaza to the Construction Consortium within the scope of Addendum No. 6, is justified by the additional or new works and activities not covered by insurance and by the application of limits, sub-limits, deductibles and adjustments of the Construction All Risks policy.*

|  | Date | Notice |
|---|---|---|
| b) 6826 Germán Bolívar Anda Naranjo | 04/14/2010 | 361368 |
| 6827 Sadinoel de Freitas Junior | 04/07/2010 | 034083 |
| 6828 Luis Alfredo Mancero Gallegos | 04/08/2010 | 034966 |
| 6829 Jorge Emilio Guerrero Hernández | 04/08/2010 | 034961 |
| 6830 Alejandro Rodrigo Gómez Ponce | 04/07/2010 | 034085 |
| 6831 Hermann Saa Berstein | 04/16/2010 | 037402 |
| 6832 José Conceição Santos Filho | 04/07/2010 | 034092 |

*Having knowledge of the civil liability, the jointly and severally liable directors, in their communications, make a detailed analysis of the actions that as Hidropastaza S.A. directors, they carried out regarding the procedure, validation, confirmation, reimbursement and verification for the authorization of the All Risk Insurance contracting, in order to comply with the provisions of Executive Decree No. 258-A, to make viable the attainment of the credit for the work to be carried out. In concluding their argument, they state that there is a limit in the payment on the part of the Insurer, since, due to its worldwide nature or whatever it may have been procured for any reason, it is not possible to recover one hundred percent of the amounts claimed,*

*due to the fact that there are exclusions to the coverages indicated in the conditions established in endorsement 101, among them, alterations in the construction methods, removal of material that has been excavated or due to excavation greater that the design profile, stoppage or damage to the dewatering system, abandonment or recovery of tunnel drilling machines, etc., limits which, according to the interested parties, are determined by the adjusters appointed for this purpose by the readjusters, who verify and determine the amounts of the damages, as well as which of these are effectively covered by the policy and in what percentage, since there are amounts that are not covered. He also points out that there are a series of additional works to comply with the acceleration objective established in Addendum No. 4, which were not covered by the aforementioned insurance policy and therefore could not be and were not covered by it. In conclusion, they indicate that Hidropastaza through its administrators and the Construction Consortium carried out the actions tending to recover the maximum possible value of the indemnification of the occurred loss.*

IV.   After analyzing both the engineering examination report and the Background Memorandum registered in file number 0872-2009, it is concluded that,

1. Addendum No. 6 is based on Clause 6.2 b) of the construction contract for the San Francisco Hydroelectric Project, which allows for price and location adjustments to the contract in the event of adverse geological/geotechnical conditions.

2. On November 9, 2005, the excavation works of the conduction tunnel were stopped due to an accident caused by geological conditions, therefore not attributable to the Construction Consortium.

3. Considering the loss occurred and the existence of the "All Risk Insurance Contract", whose main insured is HIDROPASTAZA S.A., through the Construction Consortium, the corresponding claim was made for an amount of USD 19,182,840.19, which after the evaluations and adjustments made by the representatives of the reinsurance companies, the amount of USD 5,223,386.03 was recognized, amount that was transferred by the Consortium to HIDROPASTAZA S.A.

4. In order to free and repair the mole, a series of works and additional works have been carried out by the contractor consortium to overcome the loss in the shortest possible time, such as: Excavation of pilot tunnel for mole release, access roads to window 1; entrance portal to window 1; excavation of entrance tunnel window; plugging of window 1.

In view of the foregoing, the incident caused by the entrapment of the Mole by situations related to geological conditions, it determined the need to carry out additional works, in addition to those established in the contract, to recover the mole and provide continuity to the works.

The policy taken out by Hidropastaza S.A. for its benefit, generated a recognized coverage of USD 5,223,386.03 from the insurance company for the accident occurred.

## **AFFIDAVIT**

I, **Juan F. Alban-Naranjo**, under penalties of perjury, declare:

1. My name is **Juan F. Alban-Naranjo**, I am over the age of eighteen (18) years, and I am competent to make this affidavit. The statements contained herein are true and correct.

2. I am certified as a Spanish<>English interpreter by the state court systems in Florida and California.

3. I am an experienced bilingual translator who is fluent in both the English and Spanish languages.

4. Pursuant to Florida Statute § 90.606, I translated the item below from Spanish to English to the best of my knowledge, ability and belief and the translations are in fact true and accurate.

    See Exhibit "A" attached hereto

5. I have no affinity or consanguinity with the participants of the translated document.

Pursuant to Florida Statute § 92.525(2), under penalties of perjury, I declare that I have read the foregoing Affidavit and that the facts stated in it are true.

_____  April 1, 2024
Juan F. Albán-Naranjo                              DATE

STATE OF ____Texas____

COUNTY OF ____Collin____

Sworn to (or affirmed) and subscribed before me on April 1, 2024, by Juan F. Alban-Naranjo.

_____       Sue L Nix
NOTARY PUBLIC, or other person authorized      Printed, typed or stamped commissioned name
to administer an oath                                             of Notary Public

Sue L Nix
ID NUMBER
132369934
COMMISSION EXPIRES
February 21, 2028

o   Personally known
XX  Produced identification       Electronically signed and notarized online using the Proof platform.
    Type of identification produced: Florida Driver's License A-415-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

Exhibit "A"

1-1, Resolution No. 2446, August 26, 2010

1-2, Resolution No. 2448, August 27, 2010

1-3, Resolution No. 2449, September 1, 2010

1-4, Resolution No. 2450, September 1, 2010

1-6, Resolution No. 2452, September 1, 2010

1-7, Resolution No. 2453, September 1, 2010

1-8, Resolution No. 2454, September 1, 2010