Translation of Excerpt (Paragraphs II and III, Page 1, and Pages 2-4, of Resolution No. 2452 of September 1, 2010

II. That for this reason, on May 29, 2009 Notice of Administrative Penalty 5882 was issued against the Norberto Odebrecht Alstom-Va Tech Consortium, through its legal representative, having been legally notified through the newspaper "Hoy" on July 16, 2009, informing it of the basis of the observation and granting it a period of sixty days in accordance with Article 53, paragraph 1, of the Organic Law of the Office of the Comptroller General of the State, in order for it to answer and present the pertinent evidence in its defense.

III. That within the legal term, the **Norberto Odebrecht – Alstom – Va Tech Consortium,** gave its answer to the Notice of Administrative Penalty by means of communications 058091, 026260, 058091, S/N and 69453, sent to the Office of the Comptroller General of the State on July 21, November 21 and November 18, 2009; and August 5, 2010, (pages 21391 to 21394, and 21508 to 21518) and in which it textually refers to: "That the partial Notice of Administrative Penalty refers to additional expenses incurred by Hidroagoyán S.A., a company

DEFENSE TRIAL EXHIBIT

22

22-CR-20114-KMW

with which we have no contractual link with respect to the execution *of the construction process of the Power Plant, so this partial Notice of Administrative Penalty lacks legal basis, since there is no relationship of persons, links or legal ties between Hidroagoyán and the Construction Consortium with respect to the amount cited by CGE.*

*Regarding Hidropastaza S.A., it is unacceptable that a case should be based on simple spreadsheets prepared by the same company,*

*Additionally, it is the Consortium that, as explained in section II, is entitled to be reimbursed for the expenses it incurred in the repairs of the San Francisco Power Plant between June and October 2008.*

### Limits to Damages

*In addition to the multiple deficiencies we have pointed out in the calculations of alleged damages, we point out that the Comptroller's Office has not taken into account the limits to damages in Article 30 of the EPC Contract between the Consortium and Hidropastaza. Said contractual provision states:*

*The Consortium shall indemnify the Concessionaire, the Project's lenders and their respective affiliates, their employees and agents, against all losses, damages and repairs, fines and penalties under the Concession Contract (hereinafter collectively referred to as "losses") resulting exclusively and directly from (a) any damage or injury to property, including third party property, arising out of or in connection with the execution of the Works by the Consortium, its subcontractors, suppliers and agents, and (b) any claim or demand formulated by subcontractors or suppliers, with respect to the Works or Supplies that are not motivated by modifications, acts, omissions or non-performance or other causes of contractual or legal liabilities of the Concessionaire or for failure to make timely payments to the Consortium required under the contract.*

***In no event shall either Party be liable to the other or its respective parents, subsidiaries, affiliates, employees and/or agents, for consequential damages, including consequential damages, loss or diminution of income, loss of profits and the like.***

*In addition to the Consortium's liability limit set forth in Section 6.2.b of this Document,* **all other liability of the Consortium** *related to or arising out of the Contract* **shall be limited as follows**: *i)* **Liabilities for breach of the Consortium** *pursuant to Section 33 of this Document,* **limited to Five Million United States Dollars** *(US$ 5,000,000); ii)* **other contractual or extra-contractual liabilities** *of the Concessionaire and/or the Grantee,* **not covered by insurance, limited to Ten Million United States Dollars** *(US$ 10,000,000).*

*As can be seen, the second paragraph of Art. 30 prohibits both parties from claiming compensation for loss of profits. Therefore, Hidropastaza's claim for loss of profits is inadmissible.*

*In turn, the third paragraph of Art. 30 limits the categories of liability for which the Consortium may be sued and defines the maximum amount that Hidropaslaza may demand for each category:*

[Illegible numeric stamp]

- *The first limitation is defined by reference to Art. 6(2)(b) of the EPC Contract, where it addresses cost and/or schedule adjustment events that may occur during the execution of the Project. Pursuant to Art. 6(2)(b), in accordance with Art. 30, the Consortium is not responsible for additional costs generated by adjustment events.*

- *The second claim relates to "Damages for Failure of the Consortium to Comply with Clause 33" of the EPC Contract. In the event that all requirements are met, recoverable damages are limited to the sum of five million dollars (USD 5,000,000).*

- *The third limitation of Art. 30 establishes a limit of ten million dollars (USD 10,000,000) for other contractual or extra-contractual liabilities... not covered by insurance". According to this clause, Hidropastaza must first exhaust any claims it has against its insurers before taking recourse against the Consortium.*

Although the Hidropastaza Company has not received notice of this amount, the same through official letter No. 0436-HPEP-2010 of July 9, 2010, states that:

*"...On the other hand, Hidropastaza's and Hidroagoyán's expenses correspond to amounts paid on the initiative of the two companies for the supervision and oversight of the works contracted by the Consortium between June and October 2008, which constitute extra-contractual technical actions which have been assumed by Hidropastaza and therefore, excluded from the indemnities contained in the Settlement Agreement, being considered as liquidated.".*

IV. After analyzing both the special engineering examination report and the background memorandum registered in the file under number 0029-2009, as well as the aforementioned communications, it is concluded that:

The amount of the Notice of Administrative Penalty of *USD 1,048,179.40* corresponds to the additional expenses that the company Hidroagoyón S.A., operator of the San Francisco Power Plant, incurred during the stoppage from June 6 to October 15, 2008, which had to be assumed by the Construction Consortium for hiring personnel, purchasing supplies and providing various services which, according to the "Detail of expenses not specified in the contract for the provision of services" prepared by the Plant Manager of the Agoyán Power Plant, amount to USD 163,934.24.

To the aforementioned amount is added USD 884,245.16, for the hiring of professionals from different national and foreign companies, personnel to supervise the executed works and security, for which Hidropastaza S.A. incurred in transportation costs, equipment rental and purchase of materials, during the stoppages of the generation units of the San Francisco Power Plant, with the purpose of inspecting the works of the headrace tunnel and the Power Plant in general.

The concessionaire HIDROPASTAZA, in the official letter sent with the respective releases, in relation to the amounts related to the notices of administrative penalty, refers that the technical and contractual efforts have been assumed by HIDROPASTAZA and therefore excluded from the compensations contained in the Settlement Agreement, being considered as liquidated.

The Comptroller General of the State verifies, through a new control action, compliance with the obligations assumed by the parties in the agreement entered on July 8, 2010.

For the foregoing; and,

In exercise of the powers conferred by law,

### RESOLVES:

**DISMISSAL** of the liability established by Notice of Administrative Penalty 5882 of May 29, 2009, for USD 1,048,179.40, determined against **Norberto Odebrecht- Alstom - Va Tech Consortium,** through its legal representative.

Let notice be issued,

For the Comptroller General of the State

[Signature]

Eduardo Muñoz Vega
DEPUTY COMPTROLLER GENERAL OF THE STATE, IN CHARGE


COMPTROLLER GENERAL OF THE STATE. THIS IS A TRUE AND CORRECT COPY.
I CERTIFY.


[Signature]
SECRETARY OF LIABILITIES

[Stamp on The Comptroller General of the State

Division of Liability]

## AFFIDAVIT

I, **Juan F. Alban-Naranjo**, under penalties of perjury, declare:

1. My name is **Juan F. Alban-Naranjo**, I am over the age of eighteen (18) years, and I am competent to make this affidavit. The statements contained herein are true and correct.

2. I am certified as a Spanish<>English interpreter by the state court systems in Florida and California.

3. I am an experienced bilingual translator who is fluent in both the English and Spanish languages.

4. Pursuant to Florida Statute § 90.606, I translated the item below from Spanish to English to the best of my knowledge, ability and belief and the translations are in fact true and accurate.

   See Exhibit "A" attached hereto

5. I have no affinity or consanguinity with the participants of the translated document.

Pursuant to Florida Statute § 92.525(2), under penalties of perjury, I declare that I have read the foregoing Affidavit and that the facts stated in it are true.

_/s/ Juan F. Albán-Naranjo_
Juan F. Albán-Naranjo

April 1, 2024
DATE

STATE OF ___Texas___

COUNTY OF ___Collin___

Sworn to (or affirmed) and subscribed before me on April 1, 2024, by Juan F. Alban-Naranjo.

_/s/ Sue L Nix_
NOTARY PUBLIC, or other person authorized
to administer an oath

Sue L Nix
Printed, typed or stamped commissioned name
of Notary Public

**Sue L Nix**
ID NUMBER
132369934
COMMISSION EXPIRES
February 21, 2028

o   Personally known
XX  Produced identification      Electronically signed and notarized online using the Proof platform.
    Type of identification produced: Florida Driver's License A-415-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

Exhibit "A"

1-1, Resolution No. 2446, August 26, 2010

1-2, Resolution No. 2448, August 27, 2010

1-3, Resolution No. 2449, September 1, 2010

1-4, Resolution No. 2450, September 1, 2010

1-6, Resolution No. 2452, September 1, 2010

1-7, Resolution No. 2453, September 1, 2010

1-8, Resolution No. 2454, September 1, 2010