Translation of Excerpt (Paragraph II on p. 4, pp. 5-9, and paragraph IV of p. 10) of Resolution No. 2454 of September 1, 2010

DEFENSE TRIAL EXHIBIT

24

22-CR-20114-KMW

II. That for this reason, on February 2, 2010, the Notices of Administrative Penalties 6825 to 6829, 6832 and 6833 were issued against the Norberto Odebrecht-Alstom Va Tech Consortium and officers and former officers of the Hidropastaza Company, having been legally notified in the form and dates shown below, informing them of the basis of the observation and granting them a period of sixty days in accordance with the provisions of Article 53, paragraph 1, of the Organic Law of the Comptroller General of the State, in order for them to answer and present the relevant evidence in their defense.

| Notice of Administrative Penalty No. and Names | Notification | Dates |
|---|---|---|
| 6825<br>Norberto Odebrecht-Alstom - Va Tech Consortium | Published in "HOY" newspaper | 2010/02/17 |
| 6826<br>Germán Bolívar Anda Naranjo | Staff | 2010/02/17 |
| 6827<br>Sadinoel de Freitas Júnior | Staff | 2010/02/17 |
| 6828<br>Luis Alfredo Mancero Gallegos | Staff | 2010/02/09 |
| 6829<br>Jorge Emilio Guerrero Hernández | Staff | 2010/02/09 |
| 6832<br>José Conceição Santos Filho | Staff | 2010/02/10 |
| 6833<br>Asociación FURNAS-INTEGRAL | Staff | 2010/02/10 |

The evidence submitted for this administrative trial contains aspects of a technical nature, for which reason the Directorate of Liabilities requested the technical criteria with respect to the evidence, so that the Directorate of

4

Project Audits and the Environment may issue its opinion, and therefore, the present resolution is also based on the criteria issued by the aforementioned Directorate by means of memorandum 1118 DIAPA dated August 10, 2010.

III. That, within the legal term, the parties involved replied to the Notices of Administrative Penalty by means of communications filed with the Office of the Comptroller General of the State, as detailed below:

|  |  | Date | Communication |
|---|---|---|---|
| a) | 6825 Norberto Consortium Odebrecht - Alstom - Va Tech | 2010/04/22 2010/08/05 | 38987 69453 |

The Judicial Attorney of Constructora Norberto Odebrecht S.A., based on the observation in its communication states "That the right of the Consortium to request the execution of Addendum No. 8 arises from the fulfillment of three fundamental conditions: i) the contractual condition, agreed in Clause Six, Paragraph 6.2. "Adjustment Events", Paragraph (b) Number IX of the Construction Contract, which is Law for the parties; ii) the fact that it has been proven that there were indeed differences in the geological/geotechnical conditions contemplated in Exhibit 1, Volume 3 of the Second Modification to the Concession Contract, which was demonstrated by the Construction Consortium and endorsed by the Technical and Legal reports obtained by Hidropastaza; and iii) the fact that due to the variations in the geological/geotechnical conditions of several components of the Project, the economic-financial balance of the construction contract had to be maintained and therefore its commutative nature had to be maintained in order to safeguard the execution of the works.

Addendum No. 8 arises as a consequence of the claim presented to Hidropastaza by the Consortium in its OEC-PHSF-DP 050-2006 dated March 31, 2006, which is an integral part of Addendum No. 8, in which a calculation of the economic impacts suffered by the latter as a consequence of the geological-geotechnical variations found during the execution of the work with respect to the conditions originally foreseen in the Basic Design of the former INECEL and in the Exhibits of the Second Modification to the Concession Contract is presented.

Thus, Addendum No. 8 covers and quantifies the additional work, longer presence, non-productivity, idleness and additional costs incurred by the Consortium in the construction of the following structures of the San Francisco Hydroelectric Project:

- Intermediate Discharge Tunnel Portal
- Line Exit Gantry
- Intermediate Discharge Tunnel
- Headrace Tunnel - D&B Portion PK 0+000 to 0+090
- Tunnel Pressure Pipeline and Bifurcator
- Main Access Tunnel
- Drainage Tunnel
- Escape Tunnel

Access Tunnel No. 3
Restitution Tunnel
Suction Tunnel
Upper Surge Tank Tunnel
Interconnection Tunnel
Access Gallery Tunnel to the Interconnection Chamber
Restitution Tunnel's Floodgate Chamber

The claim presented by the Consortium in Addendum No. 8 amounted to USD $9,070,030.80, from which was deducted the value of USD 3,000,000, which the Consortium was obliged to assume at its own cost for the geological-geotechnical variations that it might encounter during the execution of the work, as provided for in Section 6.2 b) IX of the Construction Contract, resulting in an effective amount claimed of USD $6,070,030.80.

Based on the Technical and Legal Reports obtained by Hidropastaza and which are an integral part of Addendum No. 8, the final amount agreed upon for the indemnification of this claim was USD 4,000,000, which is the amount of Addendum No. 8.

Since the expert appointed by the Ninth Civil Judge of Baños (appointed without the knowledge or participation of the Construction Consortium or the Audit Office) and the Comptroller's team did not make any observations on the works included in Addendum No. 8, which include the Intermediate Discharge Tunnel Portal, the Line Exit Gantry, the Intermediate Discharge Tunnel, the Headrace Tunnel - Portion D&B PK 0+000 to PK 0+090, Tunnel Pressure Pipeline and Bifurcator of the Principal Access Tunnel, the Drainage Tunnel, the Escape Tunnel of Access Tunnel No. 3, the Restitution Tunnel, the Suction Tunnel, the Interconnection Tunnel, the Interconnection Chamber Access Gallery Tunnel and the Restitution Tunnel's Floodgate Chamber, works that are mostly visible and that have not presented any type of damage, how is it that you formulate a Notice of Administrative Penalty because such works have supposedly been executed without complying with the technical specifications?

Furthermore, given that the alleged flaws in the Headrace Tunnel between KP's 0+310 to 11+099 and in the Upper Balancing Chimney have been analyzed by the Comptroller General of the State in its Report DIAPA-0039-2008, how is it that you base this Notice of Administrative Penalty 6825 on another special engineering examination in which other liabilities have been determined, thus duplicating the sanctions imposed?

In general, technical specifications are the documents that define the standards, requirements and procedures to be used and applied in the preparation of studies, construction tasks, manufacture and installation of equipment, etc., which should not be confused with quantities of work.

At the end of the execution of the works corresponding to Addendum No. 8, subject of Notice of Administrative Penalty 6825, the Asociación Fumas-Integral had already submitted to Hidropastaza's engineering department more than eighteen (18) monthly progress reports: i) evaluating compliance with the Consortium's work programs and schedules;

6

(ii) certifying the accuracy of the payment schedules; (iii) approving the quality program, following up and verifying compliance with it, among other aspects, all in accordance with Clause Twelve of the Auditing Contract.

During the term of the Construction Contract, the auditors issued more than thirty monthly progress reports verifying and ratifying, as it did, compliance with the Technical Specifications of the contract. The alleged specific defects identified by the expert appointed by the Ninth Civil Judge of Baños and the Comptroller's Office team may be due to different causes, but it cannot be affirmed, as the Comptroller's Office claims, that such cause is simply and plainly the absolute non-compliance with all the technical specifications of the entire work, since this demonstrates the absolute absence of analysis by the Comptroller General of the State regarding the non-compliances that the Consortium is alleged to have committed. To the mere affirmations of the expert appointed outside of any process without the knowledge or participation of the Consortium, we oppose the work records and the reports of the Audit, which demonstrate technically and in a specific, abundant and documented manner the compliance with the technical specifications.

Consequently, the execution of all construction works, including those covered by Addendum No. 8, were monitored exhaustively and in detail during the entire period of execution of the works by the audit, not only to verify the progress of the work, but especially to verify the technological support and quality control of the work of each of the project's components.

From the above-transcribed texts it has been reliably demonstrated that there was no obligation of Hidropastaza to have a prior report from the Audit Office as a mandatory requirement for the signature of any agreement with the Consortium. Paragraph n) mentioned above does NOT represent such a requirement, since the Audit accompanied and discussed with the Consortium the execution of the additional support and construction tasks as they were being executed in the field, as can be seen from the work records and from the more than thirty monthly reports of the Audit and the multiple approvals of each and every one of the measurement and payment schedules of the Project, If you consider that the facts were not so, it is your legal obligation to prove it with documentation and not on the basis of mere affirmations of unilaterally appointed experts or on the basis of simple statements without documentary support such as those presented in your Notice of Administrative Penalty.

Regardless of all of the above and to demonstrate beyond any doubt that the assertions of the Comptroller General's Office are unfounded, attached hereto please find the ASFLSR0 13.2005 Rev.0 report dated December 15, 2005, prior to the subscription of Addendum No. 8, through which the Audit Office analyzed and confirmed the variations proposed by the Consortium and recognized through said Addendum.

Ultimately, if the Technical Specifications were complied with, as evidenced by the monthly audit reports and the work records and

7

as evidenced by the fact that there were no specific observations of the expert or the Comptroller's team cited by you in the Draft and in the DIAPA- 0020-2009 Report to the works subject of Addendum No. 8. if the Codification of the Public Contracting Law is not applicable, nor is the Regulation of Determination of Stages for the Consultancy Contract subscribed between Hidropastaza and Asociación Fumas-Integral, which does not stipulate any obligation of Hidropastaza to have previous reports from the Comptroller's Office for the approval, implementation and payment of Addendum No. 8, how is it that you impose a Notice of Administrative Penalty for this Addendum?

Hidropastaza acted as it could not be otherwise, as a private law company, and the contracting processes were executed under its own rules, so it is, to say the least, unreasonable and illegitimate to issue a Notice of Administrative Penalty for not having demanded what in law was not required to be demanded. In the development of the Construction Contract, the participation of the Audit Office was required at all times and within its own obligations, but in this case, such participation was not required according to the rule contained in Section 7.1 of the Construction Contract, which states "...the price of the Contract shall be adjusted by agreement between the parties for the eventual effects of the adjustments to the Contract". Therefore, the compensatory payment established by mutual agreement between the Parties in the case contemplated in Addendum No. 8, which is USD 2,070,030.80 less than that claimed by the Consortium, is fully justified.

With official letter No. 0436.HPEP.2010 of July 9, 2010, the General Manager of Hidropastaza S.A., expresses:

"8.1.4 Addenda Nos. 8 and 9

Report DIAPA-0020-2009 states that the payment of USD 8,700,000 for Addenda Nos. 8 and 9 is not justified based on the scope and content of the "Special engineering examination of the damages caused to the cooling system and the water filters and evaluation of the damages that caused the shutdown of the San Francisco Hydroelectric Power Plant", which resulted in report DIAPA-0039-2008.

The DIAPA-0039-2008 and DIAPA-0020-2009 reviews conclude that the Construction Consortium did not comply with the technical specifications related to the lining of the Headrace Tunnel and surge tank, concluding that the additional investments made by the Construction Consortium in the scope of Addenda Nos. 8 and 9 did not have the expected results.

Well, starting from the principle that the Office of the Comptroller General of the State has not questioned the validity or legality of such addenda and their effects, it is worth noting that during the interruption of the operation activities from June to October 2008, the Construction Consortium, with the supervision and inspection of Hidropastaza, carried out a series of complementary works to the structures of the hydraulic circuit, that is, the Headrace Tunnel and the Upper Surge Tank, as part of its obligations during the guarantee period of the contracted works. This situation is corroborated by the fact that the values initially imputed to the Consortium by the Office of the Comptroller General of the State in its Communication of Provisional Results for the execution of repairs at the

8

Works (US$ 18 million for 2008 and US$ 18 million for 2009) were excluded from the Final Report DIAPA-0039-2008, since in effect, such repairs were assumed by the Consortium.

Therefore, it is Hidropastaza's opinion that it is not reasonable for the contractor to make the necessary repairs to the work at its own cost and that additionally it must return the amounts paid, since it would be charging a double compensation for the same fact.

| | Date | Communication |
|---|---|---|
| b) 6826<br>Germán Bolívar Anda Naranjo | 2010/04/14 | 361368 |
| G827<br>Sadinoel de Freitas Júnior | 2010/04/07 | 034083 |
| 6828<br>Luis Alfredo Mancero Gallegos | 2010/04/08 | 34966 |
| 6829<br>Jorge Emilio Guerrero Hernández | 2010/04/08 | 34961 |
| 6832<br>José Conceição Santos Filho | 2010/04/07 | 34092 |
| 6833<br>FURNAS-INTEGRAL Association | 2010/04/05 | 33199 |

In their communication, the joint and several interested parties, in their capacity as members of the Board of Directors, coincide in indicating that they did not approve or authorize the execution of Addendum No. 8, since it was not statutorily incumbent upon them to require the auditors to submit the reports that, regardless of who had the contractual obligation to request such reports, these have been submitted by the auditors with sufficient detail on compliance with the technical specifications and that for the payment of this addendum, the Administration had the auditors' report.

IV. That after analyzing both the special engineering examination report, as well as the background memorandum registered in the file under number 872-2009, it is concluded that:

Addendum No. 8 arises after compliance with three fundamental conditions: i) the contractual one, agreed to in Clause Six, Paragraph 6.2. (b) Section IX of the Construction Contract; ii) having proven that there were indeed differences in the geological/geotechnical conditions contemplated in Exhibit 1, Volume 3 of the Second Modification to the Concession Contract; and iii) the fact that due to variations in the geological/geotechnical conditions of various components of the Project, the economic and financial equilibrium of the construction contract had to be maintained.

9

Hidropastaza and the Construction Consortium, on July 8, 2010 have signed an Agreement in which, among other matters, the Consortium has committed to grant a guarantee for the civil works, considering that clause 1.2.1. states: "...authorized representatives of the Consortium and HPEP, inspect in detail and jointly the Headrace Tunnel and the Upper Surge Tank in order for the Consortium to define the scope of the complementary works and a schedule for the immediate execution of the different stages of the works to be carried out, in accordance with the technical specifications of the Construction Contract..."

.

## AFFIDAVIT

I, **Juan F. Alban-Naranjo**, under penalties of perjury, declare:

1. My name is **Juan F. Alban-Naranjo**, I am over the age of eighteen (18) years, and I am competent to make this affidavit. The statements contained herein are true and correct.

2. I am certified as a Spanish<>English interpreter by the state court systems in Florida and California.

3. I am an experienced bilingual translator who is fluent in both the English and Spanish languages.

4. Pursuant to Florida Statute § 90.606, I translated the item below from Spanish to English to the best of my knowledge, ability and belief and the translations are in fact true and accurate.

    See Exhibit "A" attached hereto

5. I have no affinity or consanguinity with the participants of the translated document.

Pursuant to Florida Statute § 92.525(2), under penalties of perjury, I declare that I have read the foregoing Affidavit and that the facts stated in it are true.

_____       April 1, 2024
Juan F. Albán-Naranjo      DATE

STATE OF __Texas__

COUNTY OF __Collin__

Sworn to (or affirmed) and subscribed before me on April 1, 2024, by Juan F. Alban-Naranjo.

_____      Sue L Nix
NOTARY PUBLIC, or other person authorized      Printed, typed or stamped commissioned name
to administer an oath      of Notary Public

Sue L Nix
ID NUMBER
132369934
COMMISSION EXPIRES
February 21, 2028

o    Personally known
XX Produced identification     Electronically signed and notarized online using the Proof platform.
     Type of identification produced: Florida Driver's License A-415-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

Exhibit "A"

1-1, Resolution No. 2446, August 26, 2010

1-2, Resolution No. 2448, August 27, 2010

1-3, Resolution No. 2449, September 1, 2010

1-4, Resolution No. 2450, September 1, 2010

1-6, Resolution No. 2452, September 1, 2010

1-7, Resolution No. 2453, September 1, 2010

1-8, Resolution No. 2454, September 1, 2010