**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CR-20114-KMW**

UNITED STATES OF AMERICA,

vs.

CARLOS RAMON POLIT FAGGIONI

_____/

**DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL**

Defendant respectfully moves, pursuant to Fed. R. Crim. P. 29(c), for a judgment acquittal as to Counts 1 through 6 of the Indictment and renews his motions for judgment of acquittal made at trial. The government's evidence was insufficient to meet the requisite legal tests for liability under 18 U.S.C. §§ 1956 and 1957.

**INTRODUCTION AND PROCEDURAL BACKGROUND**

Rule 29(c) of the Federal Rules of Criminal Procedure governs post-verdict motions for acquittal. *See* Fed. R. Crim. P. 29(c)(3) (post-verdict Rule 29 acquittal grounds may be raised even absent a Rule 29 motion at trial). Consideration of a Rule 29(c) motion focuses on whether substantial evidence proves each element of the charged offense. *See Jackson v. Virginia*, 443 U.S. 307, 317 (1979). A guilty verdict cannot stand on an uncertain foundation. *United States v. Kelly*, 888 F.2d

732, 740 (11th Cir. 1989). This principle is especially true in cases involving a special criminal intent regarding concealment. *See*, *e.g.*, *United States v. Whiteside*, 285 F.3d 1345, 1351 (11th Cir. 2002) (reversing health care false statement conviction where regulations and administrative authority did not "clearly answer" the dispositive elemental question regarding reporting of information).

Each substantive charge in Polit's prosecution (Counts 2–5) required the government to prove two sets of criminal conduct: First, the government had to prove that a bribery offense occurred that violated one of two Ecuadorian laws relating to official corruption, that the Ecuadorian law conformed to the concept of bribery of a public official as set forth in § 1956(c)(7)(B)(iv), and that commission of the offense produced proceeds. Second, the government had to prove that the proceeds of the qualifying foreign offense of bribery satisfied § 1956(c)(7)'s definition of "specified unlawful activity," and that the other statutory elements of § 1956(a)(1)(A) (i.e., that the defendant, knowing that the funds were proceeds of "*some unlawful activity*," conducted a qualifying "*financial* transaction" (emphasis added), the design and purpose of which was to conceal the ownership, source, or other identifying features of the funds) or § 1957 (i.e., that the defendant, acting with regard to funds he knew were "*criminally derived proceeds,*" conducted a qualifying "*monetary* transaction" (emphasis added) of more than $10,000).

The Count 1 conspiracy charge pertained both to these substantive charges as objects of the offense and added an allegation, Count 1(b), of an offense under § 1956(a)(2)(A) requiring proof that funds were sent internationally to "*promote*" the "*carrying on*" (emphasis added) of a qualifying Ecuadorian bribery offense (i.e., not just to facilitate the *execution* of such offense, but to *promote* the *further commission of offenses*).

The multiple defects in each of the prosecution theories and evidence, addressed below, were the following: (1) no proof that the underlying foreign conduct violated the requisite Ecuadorian and U.S. laws or that the conspiracy, as charged, existed; (2) as to the five substantive charges, no proof that the funds at issue were proceeds of a qualifying bribery offense rather than a non-qualifying offense, such as a gratuity offense, where evidence of a mere possible correlation to official-act bribery is insufficient; (3) no evidence at all that the Defendant *conducted the charged financial and monetary transactions*, where instead, John Polit conducted them in a manner Defendant was not shown to even know, much less understand, and the government's reliance on the aiding and abetting theory of vicarious liability failed because the mens rea elements for an aiding and abetting offense were lacking (and the government abandoned the sole theory on which it could potentially have proceeded—the *Pinkerton* theory of reasonable

foreseeability); (4) the government's *promotion* laundering theory was legally untenable, in that the execution of the offense itself is distinct from conduct that promotes further crimes; (5) the government's foreign-offense proceeds theories do not support the convictions, where the interest-payment proceeds premise of Count 4 is unsupported by the law and relevant jury instructions, and the government's overall reliance on the limited foreign-offense exception to § 1956(c)(7)'s domestic-offense definition of "specified unlawful activity" is inapplicable to "monetary transaction" and "criminally derived proceeds" elements of § 1957 and to generic "financial transaction" offenses, given the indictment's failure to charge the necessary components of the narrow subset of § 1956(a)(1) cases in which foreign-offense proceeds may serve as money laundering predicates.

I. **THE GOVERNMENT FAILED TO PROVE QUALIFYING ECUADORIAN BRIBERY OFFENSES OR THE CHARGED CONSPIRACY BETWEEN DEFENDANT AND AN ODEBRECHT REPRESENTATIVE OR OTHERS ALLEGED TO HAVE PAID BRIBES.**

Count 1 charges that Defendant conspired with Jose Santos, Diego Sanchez, and John Polit to violate U.S. money laundering laws. But the government failed to prove that any agreement Defendant had with Odebrecht, its representative Santos, or Diego Sanchez constituted a money laundering conspiracy of any kind. Evidence offered by Santos and Sanchez showed no agreement between them (or between

Odebrecht and Sanchez) to do anything, *e.g.*, monetary or financial transactions within the United States. As charged, the conspiracy charge failed.

To the extent the government proceeded on a hub-and-spoke theory to assert the Count 1 conspiracy charge, the evidence failed to satisfy the government's burden to show the single conspiracy charged, much less as to the various objects alleged. While the evidence need not be overwhelming to support a conspiracy conviction, it must still be "substantial." *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998); *see id.* at 1431–33 (insufficient evidence on conspiracy count where evidence of agreement related to ambiguous communications between defendant and alleged conspirator regarding "things" conspirator left at defendant's apartment); *United States v. Willner*, 795 F.3d 1297, 1309 (11th Cir. 2015) (evidence of health care fraud conspiracy insufficient where defendant knew only "in general" about practices later determined to be improper).

Ultimately, even if there were any tenuous (and impeached) evidence linking wholly separate *payments* of funds based on the defendant's prominent status, that evidence was not shown to fall within the specific overarching conspiracy alleged in Count 1 and therefore, judgment of acquittal should be granted. The variable transactional ambiguities further compel a finding of insufficient evidence regarding the overarching conspiracy count. Proof of multiple disconnected agreements and

transactions is not proof of the single conspiracy charged. *United States v. Cole*, 755 F.2d 748, 764 (11th Cir. 1985) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)).

The evidence as to each charged conspiratorial object is plainly inadequate. First, as the indictment stated, the government's theory of conspiracy was the defendant's alleged comment that his son, John Polit, could make cash disappear. DE 1 at 5, ¶ 6.  But none of the cash transactions—all of which occurred in Ecuador—were charged as violating money laundering statutes. And the cash, according to the government, never disappeared at all, but was instead conveyed to other parties *in Ecuador*. The conspiracy charge cannot rest on knowledge of Ecuadorian cash transactions (for multiple reasons, including those discussed below in section V, *infra*).  Most importantly, even if those cash transactions violated some unspecified Ecuadorian law, they did not violate U.S. laws. *See United States v. Lopez Vanegas*, 493 F.3d 1305, 1313 (11th Cir. 2007); *United States v. Fernandez*, 797 F.2d 943, 948-49 (11th Cir. 1986) (agreement to criminal activity requires more than mere vague language); *Ingram v. United States*, 360 U.S. 672, 678-80 (1959) (defendant's knowledge of one aspect of illegal activity does not equate to criminal knowledge of additional crimes not made known to him).

II.     **THE GOVERNMENT FAILED TO SOURCE THE PROCEEDS ALLEGED IN SUBSTANTIVE COUNTS TO OFFICIAL-ACT BRIBERY OFFENSES.**

The government failed to show that an official act, within the scope of Defendant's actual official discretionary authority, was linked to individual payments alleged in the substantive counts. In particular, the government's efforts to link an alleged "bribe" payment by Sanchez to a quid-pro-quo for official acts by Polit—as required under U.S. law—failed because according to Sanchez, the alleged payment was for Polit to lobby Juan Ribas, the Director of Seguros Sucre, which was not an official act by Polit nor tied to Polit's official duty or the failure to exercise such duty. As to Count 2, the key fact that went unproven was whether the gratuity given by Diego Sanchez qualified as a bribe. *See McDonnell v. United States*, 579 U.S. 550, 576 (2016); *see also Snyder v. United States*, 144 S. Ct. 536 (2023) (granting certiorari to review application of federal bribery statute to payments without any quid pro quo agreement). As a result, the transaction charged in Count 2 pertaining to Sanchez cannot stand.

As to Counts 3-6, testimony by government witness Jose Santos left unexplained the basis for attributing the funds to a qualifying bribery offense. Witness Santos could not link the funds to bribery regarding an official act, nor does speculation suffice as a substitute where a definitive correlation between the asserted

foreign offense and its U.S. parallel are required. The charges in Counts 3–6 therefore fail.

There was no match, no coincidence of essential elements, as between the variable Ecuadorian bribery offenses and U.S. bribery law. "[A]ny reasonable doubt about the application of a penal law must be resolved in favor of liberty ... Lenity works to enforce the fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws." *Wooden v United States*, 142 S. Ct. 1063, 1081–82 (2022) (Gorsuch, J., concurring in the judgment). Pursuant to the rule of lenity, it is axiomatic that "the tie must go to the defendant." *United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion; concluding that two statutory readings were plausible, and therefore adopting the "more defendant-friendly" one).

## III. THE GOVERNMENT FAILED TO PROVE DEFENDANT CONDUCTED ANY RELEVANT TRANSACTION WHERE THE GOVERNMENT ATTRIBUTED TRANSACTIONAL CONDUCT IN EACH SUBSTANTIVE COUNT TO JOHN POLIT.

Defendant did not conduct any of the charged transactions, and indeed did not have direct involvement in or actual awareness of the manner and means of movement of funds derived from alleged payments made by Santos/Sanchez. The government attributed the conducting of the transactions—the actus reus of each substantive offense—to John Polit. Toward that end, the government relied on, and

sought a jury instruction regarding, the vicarious liability theory of aiding and abetting. DE 184:30.

The term "aid and abet" is defined as "[t]o facilitate the commission of a crime, or to promote its accomplishment." *Black's Law Dictionary* (11th ed. 2019). "As at common law, a person is liable under [18 U.S.C.] § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014). "[T]he intent must go to the specific and entire crime charged—so here, to the full scope" of the charged crime. *Id*. at 76; *see id.* at 77 ("We have previously found that intent requirement satisfied when a person actively participates in a criminal venture with *full knowledge of the circumstances constituting the charged offense*") (emphasis added). The government must prove that the defendant "knew the *heightened stakes* when he decided to stay in the game." *Id*. at 80 (emphasis added); *id*. at 82 (remanding for consideration of error where jury instruction "failed to convey that Rosemond had to have advance knowledge, of the kind we have described, that a confederate would" commit the additional charged criminal act, beyond the core crime the two were engaged in); *United States v. Davis*, 754 F.3d 1205, 1222 (11th Cir.), *opinion reinstated*, 785 F.3d 498, 500 (11th Cir. 2015) (en banc) (defendant must have the "requisite 'advance knowledge'

described in *Rosemond"*); *accord Steiner v. United States*, 940 F.3d 1282, 1290 (11th Cir. 2019).

Significantly, no *Pinkerton* instruction was requested or given to the jury, so vicarious liability "can only be sustained under an aiding and abetting theory." *United States v. Camargo-Vergara*, 57 F.3d 993, 1001 (11th Cir. 1995); *United States v. Perez*, 922 F.2d 782, 785 n. 4 (11th Cir. 1991) (because the court failed to give a *Pinkerton* instruction, Perez's liability for the substantive offense must rest upon on aiding and abetting theory); *accord United States v. Monaco*, 702 F.2d 860, 881 (11th Cir. 1983); *United States v. Raffone*, 693 F.2d 1343, 1346 (11th Cir. 1982). The government's decision not to seek a *Pinkerton* instruction cannot be revisited after trial. Thus, the government is now precluded from relying on a *Pinkerton* theory. *See United States v. Brown*, 983 F.2d 201, 202 (11th Cir. 1993) (applying "well-recognized presumption that a jury follows its instructions").

The government failed to satisfy key elements of the aiding and abetting theory. The government failed to show that Defendant had any knowledge of the manner, means, or attributes of any transfer that John Polit decided to make or request as charged in the indictment. Defendant did not know whether John would conduct financial transactions in the United States or would tend to make funds received in the secondary transactions at issue in any way concealed, much less

would design the secondary transactions as concealment transactions, as opposed to accessing the funds through persons or entities identified with Defendant in open and obvious transactions. The secondary transactions at issue were notably open and obvious. Thus, even if Defendant had been aware of any of the objective factors of the payments from borrowers to John Polit, Defendant would not have become aware that they were "designed" to conceal anything. The *Rosemond* advance knowledge requirement forecloses the government's aiding and abetting theory regarding substantive offenses charged in the indictment.

**IV.  THE GOVERNMENT'S PRESENTATION ON THE ELEMENTS OF CONCEALMENT DESIGN AND PROMOTION OF THE CARRYING ON OF UNDERLYING CRIMES FAILED TO SATISFY STATUTORY REQUIREMENTS WHERE THE TRANSFERS REVEALED (RATHER THAN CONCEALED) LINKS TO THE FUNDS, AND WHERE THE PROMOTION PROVISION DOES NOT, CONTRARY TO THE GOVERNMENT'S INTERPRETATION, TREAT ANY OF A SERIES OF BRIBES (THE UNDERLYING SPECIFIED UNLAWFUL ACTIVITY) AS A LAUNDERING OFFENSE.**

Promotion theory. The indictment, as explained in paragraph 10 of the manner-and-means section of Count 1, alleged that the payment of a bribe to Defendant constituted the offense of transferring money with the intent to promote the carrying on of bribery. DE 1 at 6, ¶ 10 (alleging: "By causing these [bribe payments to be made], Odebrecht, CARLOS RAMON POLIT FAGGIONI, and others promoted the unlawful scheme to bribe CARLOS RAMON POLIT

FAGGIONI to influence official actions of the Ecuadorean comptroller's office"). But the government offered no support for the theory that a bribe payment can be prosecuted under the money laundering statute as a payment made to facilitate such bribe payment. To the extent the government sought at trial to suggest a distinct foreign crime, consisting of a *scheme* to bribe, the jury instructions requested by the government did not contemplate such a separate scheme offense, nor does it meet the terms of the statute or any evidence offered regarding the status of Ecuadorian law.

The Supreme Court's decisions in *United States* v. *Santos*, 553 U.S. 507, 515–16 (2008) (plurality decision recognizing that money laundering statutes are not intended to create duplicate punishment for underlying crime; citing "merger" problem to be avoided by statutory interpretation), and *Abuelhawa v. United States*, 556 U.S. 816, 823-24 (2009) (holding that a buyer using a telephone to make a misdemeanor drug purchase does not "facilitate" felony drug distribution because the term "facilitate" is limited to someone other than a principal or necessary actor), help to explain why the money laundering statute is not intended to simply double the punishment for underlying criminal conduct.

There is no in-for-a-penny-in-for-a-pound theory of bribe payments that converts the payment of a bribe into a promotion of further bribe payments. For the

concept of promotional money laundering, the key element of the statute is that the transaction at issue must be separate from the res gestae of the offense so as to promote or facilitate the *future commission* of the relevant criminal activity.

The dictionary definition of "carrying on" is to move forward into the future. Treating the completion of a bribe offense as facilitating the next bribe offense simply misreads the elements of the bribery statutes, which deal with the transmission of something of value. To say that transmitting something of value facilitates the transmission of something of value is both circular and redundant. The government's promotional theory conflates the making of a bribe payment or the transmission of a bribe payment with a subsequent laundering event that never occurred. The Eleventh Circuit's decision in *United States v. Ramirez*, 724 F. App'x 704, 713 (11th Cir. 2018), provides working explanations of the forward-looking aspect of the promotion theory of money laundering. In *Ramirez*, the court explained that to promote a qualifying proceeds-producing offense, the transferred funds must be intended to be "used to support further activities." *Id*. (citing *United States v. Azmat*, 805 F.3d 1018, 1037–38 (11th Cir. 2015)). Unlike *Ramirez* and *Azmuth*, the government in this case diverted from the statutory prohibition. *See Ramirez*, 724 F. App'x at 713 (funds provided for the purpose of paying salaries and expenses of the participants in the *underlying* crime so as to enable them to participate in *further*

such crimes meet forward-looking promotional test). The evidence at trial was that the transmission of an alleged bribe, which executed and consummated the offense commission itself, was undertaken for one reason only, to pay the bribe and commit the underlying offense, not to facilitate (nor did it facilitate) any other crimes. *See United States v. Calderon*, 169 F.3d 718, 721 (11th Cir. 1999) ("Although the Government argued that concealment and avoidance of transaction reporting requirements facilitate narcotics trafficking, the Government must prove more than that to obtain a Section 1956(a)(1)(A)(i) promotion conviction. Otherwise, no purpose would be served by the separate Section 1956(a)(1) subsections").

*United States v. Christo*, 129 F.3d 578, 579-80 (11th Cir. 1997), explains the difference in money laundering between commission of the offense, transfers, and post commission of the offense transfers. There is no difference in this context for promotion because even though the funds need not be proceeds, there must be a function, a design in the transfer that relates to helping carry forward the next bribe, rather than merely the commission of the criminal activity itself.

Chronologically, a bribe is not "proceeds" that facilitate the bribe. And as the Eleventh Circuit explained in reversing the money laundering conviction in *Christo*, proceeds of an offense do not exist until the offense is completed. "The main issue in a money laundering charge, therefore, is determining when the predicate crime

becomes a 'completed offense' after which money laundering can occur") (citing *United States v. Kennedy*, 64 F.3d 1465, 1477-78 (10th Cir.1995)). Payment of a bribe, no matter how conveyed, cannot be promotional money laundering as to the bribe payment.

    <u>Concealment theory</u>. Under *Regalado Cuellar v. United States*, 553 U.S. 550, 557, 566 (2008) ("There is a difference between concealing something to transport it [to a co-conspirator], and transporting something [to a co-conspirator] to conceal it"), it is clear that transactions, even transactions bearing carefully-planned aspects of concealment (such as conveying currency in a paper bag while wearing a disguise), fails to meet the standard for a transaction *designed* to conceal where it is conducted for the purpose and function of transferring funds to the intended recipient without detection. In other words, where the offender merely seeks to transfer money without being detected in the act of the transfer, that intended concealment is not the statutory concealment design covered under § 1956. Those transfers, however, were the most Defendant could have understood were occurring. And, from the evidence at trial, there was actually nothing evident to the defendant that would have informed him even of superficial (non-statutory) concealment aspects of the secondary transactions. *See Regalado Cuellar*, 553 U.S. at 563 ("We agree with petitioner that merely hiding funds during transportation is not sufficient to violate the statute, *even*

*if substantial efforts have been expended to conceal the money*. Our conclusion turns on the text of § 1956(a)(2)(B)(i), and particularly on the term 'design.' In this context, *'design' means purpose or plan*; i.e., the intended aim of the transportation") (emphasis added).

To avoid this evidentiary gap, the government placed particular importance on testimony that cash bribes were contemplated, and that *John Polit* had some special capacity for undertaking cash transactions. But the transactions charged in the indictment were ***not*** cash transactions, nor did the government allege that the cash transactions met the statutory elements for a money laundering offense. In fact, the cash transactions occurred in foreign countries and as such had no nexus to the United States.

Attributing the concealment design of the charged transactions to Defendant ultimately rests on speculation. The evidence was insufficient on concealment counts.

## V.   PROCEEDS DEFINITIONS.

Interest payments theory. As to Count 4, interest earned on criminal proceeds does not itself constitute proceeds of a foreign crime. Nor did the jury instructions so provide. Thus, a defendant who buys a car with criminal proceeds and then uses it in his Uber business does not obtain specified unlawful activity proceeds by

earning money driving the tainted car. Nor did the government seek an instruction that would permit reliance on the theory that any consequential gains arising from the commission of an offense constitute proceeds of the offense itself, where the closest they came was to seek instruction on indirect proceeds. But consequential additional gains are distinct from the indirect receipt of criminal proceeds.

Under Eleventh Circuit precedent, where the Government pursues one express theory, the Government is restricted to that theory for purposes of a motion for judgment of acquittal. *See United States v. Takhalov*, 838 F.3d 1168, 1170 (11th Cir. 2016) ("The government also could have argued that the April 21 email constituted 'fraud after the fact'"; because that theory was not offered at trial, it cannot be the basis for conviction); *United States v. Willner*, 795 F.3d 1297, 1310 (11th Cir. 2015) (conviction cannot be sustained on theory of guilt where "Government did not prosecute [the defendant] on that theory"). Absent affording the jury a viable theory for treating as foreign offense proceeds the interest payment from Plastiquim, S.A., the evidence was insufficient as to Count 4.

Foreign-offense proceeds theory. In relying on a foreign-offense theory to establish the requisite "specified unlawful activity" as to each count of the indictment, the government far exceeded the *narrow* exception under §

1956(c)(7)(B) to the requirement that the scope of "specified unlawful activity" is limited to domestic crimes, particularly as to Counts 1, 5, and 6.

With respect of the use of foreign crimes for § 1957 "monetary transactions" (Count 1, ¶2(c) and Counts 5 and 6) and § 1956(a)(2) "transportations" or "transfers" (Count 1, ¶2(b)), the statutory text is clear that "specified unlawful activity" proceeds must be derived from a domestic, not a foreign, crime. Notably, there are strong differences between the various provisions of the money laundering statutes. *See, e.g., Regalado Cuellar*, 553 U.S. at 557 ("Subsection (a)(1) [of 18 U.S.C. § 1956] makes it unlawful to engage in certain financial transactions, while subsection (a)(2) criminalizes certain kinds of transportation.").

Section 1956(c)(7)(A)'s "specified unlawful activity" definition requires that the unlawful activity violate U.S. law. However, § 1956(c)(7)(B) creates an exception to the domestic crime limitation for a "financial transaction" occurring in the United States. The government did not charge that the § 1957 offenses involved a "financial transaction." Instead, only § 1956(a)(1) offenses contain a "financial transaction" element. And those § 1956(a)(1) offenses may be premised on foreign proceeds only *if the indictment alleges that the "financial transaction" occurred in the United States*. *See* § 1956(c)(7)(B). Consequently, even as to the "financial

transaction" objects of the § 1956(h) conspiracy charged in Count 1, the indictment did not  sufficiently invoke the foreign-crime proceeds predicate.

Under § 1956(a)(1), a defendant who conducts a "financial transaction" with knowledge that it is conducted with the proceeds of "some unlawful activity" and where the proceeds actually are from a "specified unlawful activity," the defendant may be prosecuted for money laundering. Significantly, in the money laundering statutes, *only* the terms "some unlawful activity" and "specified unlawful activity" in relation to a "financial transaction" conducted in the United States are defined to include foreign crimes. *See* § 1956(c)(1) (defining "some unlawful activity" to include "activity that constitutes a *felony* under ... *foreign law*") (emphasis added); § 1956(c)(7)(b) (explaining that the term "special unlawful activity" includes "an offense against a foreign nation" only as to a "financial transaction" and only where such transaction occurs in the United States; failing to include either transportations or the differently-defined element of a "monetary transaction" in § 1957).

The relevant elemental definitions of a § 1957 offense do not incorporate foreign crimes under either the "criminally derived property" element (and related mens rea element) or the "specified unlawful activity" definition, where no element of "financial transaction" (a term that is not synonymous with "financial

transaction"[1]) was charged in this case as to Counts 5–6.  Unlike the "some unlawful activity" definition of § 1956, the "criminally derived property" definition of § 1957(f)(2) *does not include foreign crimes*.  *See Small v. United States*, 544 U.S. 385, 388–90 (2005) (holding, as to 18 U.S.C. § 922(g), that the term "convicted in any court" was presumed to apply only to domestic crimes, despite use of the term "any").  And, as noted, "monetary transaction," the core element of § 1957, is defined as distinct from the "financial transaction" element of § 1956(c)(4).

The text of the relevant statutes shows that neither the "criminally derived property" element nor the "monetary transaction" element can be viewed as applying to foreign crimes.  Applying the canon of statutory presumption against the application of congressional statutes to conduct occurring in the territory of a foreign sovereign, *see Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115-16 (2013), it is unsurprising that Congress limited the use of foreign crime proceeds as a laundering predicate to laundering through financial transactions occurring in whole or in part in the United States under § 1956(a)(1)(A), excluding from that section's

---

[1] Although the words "monetary" and "financial" are words that reflect similar concepts, Congress defined the elements differently and included the "financial transaction" element only as to § 1956(a)(1) offenses.  Thus, the jury was not required to find that a "financial transaction" element was satisfied in relation to the § 1957 charges.

extraterritorial reach financial transactions with foreign proceeds occurring in foreign countries, even where the defendant is a United States person. *See* § 1956(c)(4) & (7)(B). The Supreme Court in *E.E.O.C. v. Arabian American Oil Co.*, 499 U.S. 244 (1991) ("*Aramco*"), held that unless " 'the affirmative intention of the Congress is clearly expressed,' we must presume [a statute] 'is primarily concerned with domestic conditions',' " (*Id*. at 248) (quoting *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 147 (1957); *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 284–85 (1949)), and further that subject matter jurisdiction should be found only on clear evidence of congressional intention that a statute have extraterritorial application. Foreign criminal proceeds cannot form the basis for prosecution of transactions occurring in foreign countries.

The evidence was insufficient to meet the statutory burden of domestic-crime proceeds as to Counts 1, 5, and 6, and a judgment of acquittal is required. With regard to Counts 2, 3, and 4, if the Court does not grant the motion for judgment of acquittal in light of the pleading defects as to the transactional elements or other evidentiary failings as to the those counts, the Court should nevertheless grant Defendant's contemporaneously-filed motion for new trial.

WHEREFORE, the Court should grant the motion for judgment of acquittal as to all counts.

Respectfully submitted,

**BLACK SREBNICK**
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131
(305) 371-6421

/s/ *Howard Srebnick*
HOWARD SREBNICK
Florida Bar No. 919063
HSrebnick@RoyBlack.com

/s/ *Jackie Perczek*
JACKIE PERCZEK
Florida Bar No. 0042201
JPerczek@RoyBlack.com