UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20114-KMW

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CARLOS RAMON POLIT FAGGIONI,

    Defendant.
_____/

**POLIT'S REPLY IN SUPPORT OF
MOTION FOR RELEASE PENDING SENTENCING**

The government agrees that Polit poses no danger to others under 18 U.S.C. § 3143(a). ECF#222 at 2 n.1. The government's only contention, then, is that Polit allegedly fails to establish by clear and convincing evidence that he is not likely to flee before his sentencing. *Id.* at 2. But the government's response neglects to consider that Polit *voluntarily surrendered* to U.S. authorities in March of 2022, complied with every single condition of pre-trial release for two years, and nearly every personal asset of thirteen of his closest family members is under the direction of the Court. Polit, who is 73 years old and who's immediate and extended family mostly all live in the United States, has established that he is not a risk of flight given his exemplary compliance with U.S. authorities throughout the investigation and pendency of his criminal case.

The government relies on *United States v. Grobman*, 460 F. Supp. 3d 1331, 1337–38 (S.D. Fla. 2020) to argue that Polit's guideline range (which the government suspects to be 235 to 293 months) provides incentive enough for Polit to flee. ECF#222 at 2-3. But in *Grobman*, although the court considered that the defendant's PSI indicated that he was facing life imprisonment, the

primary focus of the opinion was the nature and character of the defendant's crimes which weighed against a finding that he was not likely to flee. *See Grobman*, 460 F. Supp. 3d at 1338 ("Grobman was convicted of a scheme *premised* on deception. Over the course of five years, Grobman and his co-conspirators forged documents, created fraudulent shell companies, and lied to their victims.") (Emphasis in original). Specifically, during Grobman's trial, evidence was adduced that "Grobman and his co-conspirators orchestrated a sophisticated scheme in which they engineered documents and used them to dodge legal restrictions" and "[t]here is no reason to believe that he would be unable—or unwilling—to do so again." *Id.* (citing *United States v. Ellis*, 646 F. App'x 889, 890 (11th Cir. 2016) (holding that defendant was a flight risk because the defendant "had access to sources world-wide to obtain false travel documents")). That is not the case here. There were no allegations during Polit's trial that Polit used false pretenses to obtain legal documents or that Polit falsified travel documents or had access to sources who could.

The *Grobman* court also premised its decision in favor of post-trial detention because the defendant's parents and brother resided overseas and "Grobman has the resources to flee whenever, however, and (almost) wherever he wants." *Id.* at 1338. ("Grobman, who lives in a $10 million waterfront home, complete with a 45-foot racing yacht, disclosed bank accounts showing nearly $6 million in cash."). Again, that is not at issue here. Polit's defense highlighted the lack of evidence tracing any alleged bribe proceeds to Polit—by the government's own admission, all the alleged bribe money landed in the hands of Polit's son. But there was no evidence that Polit had substantial resources or assets to his name, and the government did not trace any of the money from John Polit or his companies to Polit himself. Instead, the government introduced photos of Polit's modest home in Ecuador, which he acquired back in the 80's and lived in with his wife

through 2017. There were no allegations of private charters, expensive yachts, or lavish living by Polit. The only evidence the government introduced to (attempt to) establish Polit's wealth was the testimony of an Ecuadorian officer who assumed, without basis, that a painting found in Polit's home was a Botero. But Polit's mother-in-law testified that the art piece was *not* a Botero because her daughter, Polit's wife, painted that piece.

The government's emphasis on Polit's dual citizenship in Ecuador and Italy is also unavailing. *See* ECF#222 at 3 (citing *United States v. Kachkar*, 701 F. App'x 744, 747 (11th Cir. 2017)). Unlike in *Grobman* and *Kachkar*, where the court expressed concern over the defendants' frequent travel to countries "which do not have extradition treaties with the United States[,]" both Ecuador and Italy are signatories to extradition treaties with the U.S. *See Kachkar*, 701 F. App'x at 747 (noting that the defendant's "travels to Russia and Libya, which do not have extradition treaties with the United States, and his possession of Russian bank cards and a Russian bank account showed that Kachkar also had "significant ties and travel to foreign countries"); *Grobman*, 460 F. Supp. 3d at 1338 ("Grobman was born abroad, holds at least one foreign bank account, and has traveled extensively overseas—including to countries that have not signed extradition treaties with the United States."). And in fact, Ecuador cooperated extensively with the U.S. in responding to multiple MLAT's, produced documents, and sent an officer to testify against Polit at trial to assist in the criminal prosecution against Polit here.

The government also claims that Polit's "extensive" travel overseas is reason to deny his motion. However, Polit's frequent travel occurred in or before 2017 (over seven years ago), and as the government asserted during trial, most of Polit's travel was from Ecuador *to Miami, Florida*,

where Polit would visit his family that all reside here in the U.S. Polit also traveled internationally as part of his official duties.

The government also contends that Polit previously fled Ecuador to avoid prosecution, so he will surely do the same now to avoid sentencing. *See* ECF#222 at 3 ("[T]he defendant simply fled Ecuador to the United States in May 2017 shortly before a search warrant was executed at his residence in June 2017."). But Polit planned to travel to Miami, Florida, in May 2017 to spend time with his family, prior to any search conducted on his home in Ecuador. Specifically, Polit submitted an application to appoint Pablo Celi as the acting General Comptroller while Polit was away travelling between May 22, 2017, through June 29, 2017. *See* Exhibit 1 (Application request dated May 22, 2017).[1] Polit left Ecuador and flew to Miami only a few days later on May 26, 2017. *See* Exhibit 2 (Polit travel records for May 2017). The investigation against Polit and the search of his home in Ecuador did not occur until a week later on June 2, 2017. *See* Exhibit 3 (Search Warrant Return).

Contrary to the government's response, Polit did not flee Ecuador in response to a search warrant that had not yet been executed. And while the government correctly notes that Polit never returned to Ecuador to serve out his sentence after he was tried in absentia, they fail to recognize why. Ecuador is internationally recognized for its violence and political corruption: "By nearly all standards, the level of corruption in Ecuador ranks among the most extreme in the world and among the top two in Latin America." Valeria Merino Dirani, *The Role of Civil Society in Promoting Transparency and Fighting Corruption in Ecuador*, 10 Sw. J. L. & Trade Am. 319,

---

[1] Upon the Court's request, Polit will submit a certified translation of Exhibit 1.

321 (2004). Within this past year alone, Ecuador has witnessed the politically motivated assassinations of two prosecutors and a presidential candidate.[2] Polit, a prominent political figure in Ecuador for over a decade who had several adversaries, including the then-attorney general, Carlos Baca Mancheno, was not assured personal safety if he returned to Ecuador. Polit's immediate surrender and compliance with U.S. authorities shows he has no safety concerns here and, thus, no resistance to facing the legal process and his criminal sentence in the U.S.

Lastly, the government contends that Polit "has not established that the properties listed are not tied to his criminal conduct." ECF#222 at 4. But after ten days of trial, the government did not offer any evidence to the contrary.[3] The government only sought forfeiture as to two properties: 1902 S.W. 22nd Street and 301 Altara Avenue—and the jury unanimously found that the property located at 301 Altara was not involved in the offenses alleged.

The $2,391,098.29 increase in equity pledged is sufficient to warrant Polit's post-trial release, especially given that the Court is free to increase the personal surety bond from $14 million to any amount proposed by the Court, which would be secured by assets worth $20,419,118.39.[4] Moreover, although the government contends that the 1900/1902 S.W. 22nd Street property should

---

[2] These violent attacks were the reason the parties were unable to conduct Rule 15 depositions in Ecuador as originally planned and had to change the deposition location to a neutral country only weeks before the depositions were scheduled to take place.

[3] The Indictment (ECF#1) initially sought forfeiture of another property located at 1010-30 N.W. 9th Court, but the government chose not to pursue this property at the forfeiture trial.

[4] Polit identified the real property located at 1900 S.W. 22nd Street in his motion because it was originally included in the assets pledged to secure Polit's pre-trial release. Without this property, the current estimated equity of the assets pledged would be about $20,419,118.39. Thus, the total increase in value of the assets pledged from 2022 through present remains substantial at a total of $ 2,391,098.29.

not be considered, Polit's original bond remains secured by this property and this property is still at stake in the litigation: If Polit flees and fails to appear at sentencing, Polit will also forfeit the right to appeal the forfeiture of that property.

Polit has met his burden under § 3143, and accordingly, this Court should grant Polit's Motion for Release Pending Sentencing (ECF#214) and allow Polit to voluntarily surrender to BOP post-sentencing.

        Respectfully submitted,

**BLACK SREBNICK**
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
(305) 371-6421

/s/ *Howard Srebnick*
HOWARD SREBNICK
Florida Bar No. 919063
HSrebnick@RoyBlack.com

/s/ *Jackie Perczek*
JACKIE PERCZEK
Florida Bar No. 0042201
JPerczek@RoyBlack.com
**COFFEY BURLINGTON, P.L.**
*Permanent Counsel for Carlos Polit*
2601 South Bayshore Drive, Penthouse
Miami, Florida 33133
Tel:  305-858-2900

/s/ *Fernando Tamayo*
FERNANDO TAMAYO
Florida Bar No. 28530
ftamayo@coffeyburlington.com
lmaltz@coffeyburlington.com
service@coffeyburlington.com